# Exhibit A

| SERFF Tracking #: TSMP-126036314 | State Tracking #: 09-4985 | Company Tracking #: CVS-FL-CA-01 (F)(R) |
|---|---|---|

| State: | California | Filing Company: | Starr Indemnity & Liability Company |
|---|---|---|---|
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies | | |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | |

## Filing at a Glance

| | |
|---|---|
| Company: | Starr Indemnity & Liability Company |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| State: | California |
| TOI: | 17.0 Other Liability-Occ/Claims Made |
| Sub-TOI: | 17.0019 Professional Errors and Omissions Liability |
| Filing Type: | New Program |
| Date Submitted: | 06/15/2009 |
| SERFF Tr Num: | TSMP-126036314 |
| SERFF Status: | Closed-Approved |
| State Tr Num: | 09-4985 |
| State Status: | Approved |
| Co Tr Num: | CVS-FL-CA-01 (F)(R) |
| | |
| Effective Date Requested (New): | 07/16/2009 |
| Effective Date Requested (Renewal): | |
| Author(s): | Audrey Smith |
| Reviewer(s): | Gerald Hill (primary), Raquel Ortiz |
| Disposition Date: | 08/19/2009 |
| Disposition Status: | Approved |
| Effective Date (New): | |
| Effective Date (Renewal): | |

*SERFF Tracking #:* TSMP-126036314    *State Tracking #:* 09-4985    *Company Tracking #:* CVS-FL-CA-01 (F)(R)

| | |
|---|---|
| *State:* | California |
| *TOI/Sub-TOI:* | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| *Product Name:* | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies |
| *Project Name/Number:* | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

*Filing Company:* Starr Indemnity & Liability Company

## General Information

Project Name: Resolute PortfolioSM For Private Companies Program

Project Number: CVS-FL-CA-01 (F)(R)

Reference Organization:

Reference Title:

Filing Status Changed: 08/19/2009

State Status Changed: 08/19/2009

Created By: Kathleen Morrissey

Status of Filing in Domicile: Pending

Domicile Status Comments: Forms and rates are pending in their state of domicile, Texas.

Reference Number:

Advisory Org. Circular:

Deemer Date: 09/01/2009

Submitted By: Kathleen Morrissey

Corresponding Filing Tracking Number:

Filing Description:

Tressler, Soderstrom, Maloney & Priess, LLP is submitting the above referenced Resolute Portfolio for Private Companies Insurance Program ("Program") for your review on behalf of Starr Indemnity and Liability Company. This Program provides the following type of coverage to private companies: (1) directors' and officers' liability; (2) employment practices liability (3) fiduciary liability; and (4) crime/fidelity.  The Insureds may purchase any or all of the coverage sections. We have attached an Explanatory Memorandum that briefly describes the coverage afforded by the Program.

## Company and Contact

### Filing Contact Information
Carrie Cope, Attorney At Law

233 South Wacker Drive

Sears Tower, 22nd Floor

Chicago, IL 60606-6399

ccope@tsmp.com

312-627-4188 [Phone]

312-627-1717 [FAX]

### Filing Company Information
(This filing was made by a third party - tresslersoderstrom)

Starr Indemnity & Liability Company

8401 North Central Expressway, #890

Dallas, TX  75255

(212) 230-5043 ext. [Phone]

CoCode: 38318

Group Code:

Group Name: None

FEIN Number: 75-1670124

State of Domicile: Texas

Company Type: Starr Indemnity & Liability Company

State ID Number:

## Filing Fees

Fee Required?          No

Retaliatory?             No

Fee Explanation:

| *SERFF Tracking #:* | TSMP-126036314 | *State Tracking #:* | 09-4985 | *Company Tracking #:* | CVS-FL-CA-01 (F)(R) |

| | | | |
|---|---|---|---|
| *State:* | California | *Filing Company:* | Starr Indemnity & Liability Company |
| *TOI/Sub-TOI:* | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | |
| *Product Name:* | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies | | |
| *Project Name/Number:* | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | |

## Correspondence Summary

### Dispositions

| Status | Created By | Created On | Date Submitted |
|---|---|---|---|
| Approved | Gerald Hill | 07/28/2009 | 08/19/2009 |

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
|---|---|---|---|---|
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | | |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies | | | |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | | |

## Disposition

Disposition Date: 08/19/2009

Effective Date (New):

Effective Date (Renewal):

Status: Approved

Comment: Please see the attached approval letter. Thank you.

| Company Name: | Overall % Indicated Change: | Overall % Rate Impact: | Written Premium Change for this Program: | Number of Policy Holders Affected for this Program: | Written Premium for this Program: | Maximum % Change (where req'd): | Minimum % Change (where req'd): |
|---|---|---|---|---|---|---|---|
| Starr Indemnity & Liability Company | 0.000% | 0.000% | $0 | 0 | $0 | 0.000% | 0.000% |

| Schedule | Schedule Item | Schedule Item Status | Public Access |
|---|---|---|---|
| Supporting Document (revised) | Prior Approval Rate Application | | Yes |
| Supporting Document | Authorization Letter | | Yes |
| Supporting Document | Explanatory Memorandum | | Yes |
| Supporting Document (revised) | Forms Index | | Yes |
| Supporting Document (revised) | Actuarial Memorandum | | Yes |
| Supporting Document | Expense Component and Rate Exhibits | | Yes |
| Supporting Document | Cover Letter | | Yes |
| Supporting Document | Response Letter | | Yes |
| Supporting Document | Underwriting Guidelines | | No |
| Supporting Document | LCM Template | | Yes |
| Supporting Document | Prior Approval Rate Application | | Yes |
| Supporting Document | Forms Index | | Yes |
| Supporting Document | Actuarial Memorandum | | Yes |
| Form | Resolute Portfolio For Private Companies Insurance Application | | Yes |
| Form | Resolute Portfolio For Private Companies Declarations | | Yes |
| Form | Resolute Portfolio For Private Companies General Terms & Conditions | | Yes |
| Form | Resolute Portfolio For Private Companies Directors and | | Yes |

Exhibit A, Page 8

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| **State:** | California | **Filing Company:** | Starr Indemnity & Liability Company |
| **TOI/Sub-TOI:** | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | |
| **Product Name:** | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies | | |
| **Project Name/Number:** | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | |

| Schedule | Schedule Item | Schedule Item Status | Public Access |
|---|---|---|---|
| | Officers Liability Coverage Section | | |
| Form | Resolute Portfolio For Private Companies Employment Practices Liability Coverage Section | | Yes |
| Form | Resolute Portfolio For Companies Fiduciary Liability Coverage Section | | Yes |
| Form | Resolute Portfolio For Private Companies Crime and Fidelity Coverage Section | | Yes |
| Form | Delete Exclusion | | Yes |
| Form | Exclusion of Certified Acts of Terrorism | | Yes |
| Form | Exclusion of Non-Certified Acts of Terrorism and Coverage of Certified Acts of Terrorism | | Yes |
| Form | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act | | Yes |
| Form | OFAC Exclusion (all Coverage Sections) | | Yes |
| Form | Pending or Prior Litigation Exclusion - Increased Limits | | Yes |
| Form | Prior Acts Exclusion | | Yes |
| Form | Reliance Endorsement (other applications) | | Yes |
| Form | Specific Litigation/Event Exclusion - Includes SEC Filings | | Yes |
| Form | Amend Sponsor Organization Securities Coverage - Sublimit of Liability and Retention (Fiduciary Coverage Section) | | Yes |
| Form | Specific Litigation/Event Exclusion | | Yes |
| Form | Amend Sponsor Securities Investment Coverage - Separate Retention (Fiduciary Coverage Section) | | Yes |
| Form | Amend Definition of "Loss" - Investment Loss Coverage (Fiduciary Coverage Section) | | Yes |
| Form | Amend Definition of Plan By Adding Specific Plans (Fiduciary Coverage Section) | | Yes |
| Form | Amend Declarations Page | | Yes |
| Form | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) | | Yes |
| Form | Conditions Amended Termination as to Any Employee (Crime & Fidelity Coverage Section) | | Yes |
| Form | Amend Territory Clause (General Terms & Conditions) | | Yes |
| Form | Amend Trading Exclusion (Crime & Fidelity Coverage Section) | | Yes |

Exhibit A, Page 9

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
|---|---|---|---|---|
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | | |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies | | | |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | | |

| Schedule | Schedule Item | Schedule Item Status | Public Access |
|---|---|---|---|
| Form | Amend Warehouse Receipts Exclusion (Crime & Fidelity Coverage Section) | | Yes |
| Form | Amend Definition of "Employee" – Convert to Schedule (Crime & Fidelity Coverage Section) | | Yes |
| Form | Conditions Amended Duties in the Event of Loss (Crime & Fidelity Coverage Section) | | Yes |
| Form | Conditions Amended Extended Period to Discover Loss (Crime & Fidelity Coverage Section) | | Yes |
| Form | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) | | Yes |
| Form | Amend Defense of Claim and Settlement Clause – Delete Insurer's Duty to Defend; With Option to Tender Defense | | Yes |
| Form | Absolute Bodily Injury/Property Damage Exclusion (D&O Coverage Section) | | Yes |
| Form | Amend Contract Exclusion (D&O Coverage Section) | | Yes |
| Form | Amend Definition of "Subsidiary" – Change Revenue Threshold (D&O Coverage Section) | | Yes |
| Form | Amend Pollution Exclusion – Delete Exception for Securities Claims (D&O Coverage Section) | | Yes |
| Form | Anti-Trust Claim Coverage Extension – With Separate Retention, Sublimit and Co-Insurance (D&O Coverage Section) | | Yes |
| Form | Anti-Trust Claim Coverage Extension – With Sublimit (D&O Coverage Section) | | Yes |
| Form | Anti-Trust Exclusion- Applies to Entity Only (D&O Coverage Section) | | Yes |
| Form | Delete Non-Rescindable Clause (Fiduciary Coverage Section) | | Yes |
| Form | Delete Non-Rescindable Clause (D&O Coverage Section) | | Yes |
| Form | Director Exclusion (EPL Coverage Section) | | Yes |
| Form | Employed Lawyers Coverage Extension (D&O Coverage Section) | | Yes |
| Form | California Amendatory Endorsement | | Yes |
| Rate (revised) | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 1 - Pgs. 1-42 | | Yes |

Exhibit A, Page 10

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

| Schedule | Schedule Item | Schedule Item Status | Public Access |
|---|---|---|---|
| **Rate** | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 1 - Pgs. 1-42 | | Yes |
| **Rate (revised)** | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 2 - Pgs. 43-71 | | Yes |
| **Rate** | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 2 - Pgs. 43-71 | | Yes |
| **Rate** | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage | | Yes |

STATE OF CALIFORNIA                                    Steve Poizner, *Insurance Commissioner*

**DEPARTMENT OF INSURANCE**
RATE REGULATION DIVISION
RATE FILING BUREAU
45 FREMONT STREET, 23rd FLOOR
SAN FRANCISCO, CA 94105



August 19, 2009

Starr Indemnity & Liability Company
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive
Sears Tower, 22nd Floor
Chicago, IL 60606-6399

Attn:    Carrie E. Cope, Attorney At Law

RE:    **APPROVAL OF APPLICATION**

Starr Indemnity & Liability Company has submitted the following application for approval regarding the following line of business or program:

| | |
|---|---|
| **CDI App. No.:** | **09-4985** |
| **Insurer File No.:** | **SERFF-CVS-FL-CA-01-(F)(R)** |
| **Line of Insurance:** | **Commercial Other Liability** |
| **Program:** | **E&O-Resolute Portfolio For Private Companies** |
| **% Rate Change Approved:** | **0.00%** |

Only the proposals specifically indicated in the application set forth above, as it may have been amended, are approved. Nothing in this letter shall constitute approval of any other application, whether incorporated by reference, or filed prior or subsequent to the application set forth above. The Company shall begin issuing policies pursuant to this approval within 90 days of the date of this approval, provided that the insurer is licensed in California to transact the line of insurance for which the approval is given. The Company may implement this approval earlier if it is able to do so. Regardless of the implementation date, the Company shall implement this approval with the same effective date for both new and renewal business and shall offer this product to all eligible applicants as of the implementation date. This approval shall continue to have full force and effect until such time as a subsequent change for the referenced lines or programs may be approved or ordered by the Insurance Commissioner.

If any portion of the application or related documentation conflicts with California law, that portion is specifically not approved. This approval does not constitute an approval of underwriting guidelines nor the specific language, coverages, terms, covenants and conditions contained in any forms, or of the forms themselves. Policy forms and underwriting guidelines included in this filing were reviewed only insofar as they relate to rates contained in this filing or currently on file with the California Department of Insurance. Any subsequent changes to underwriting guidelines or coverages, terms, covenants and conditions contained in any forms must be submitted with supporting documentation when those changes result in any rating impact. The Commissioner may at any time take any action allowed by law if he determines that any underwriting guidelines, forms or procedures for application of rates, or any other portions of the application conflict with any applicable laws or regulations.

Sincerely,

*Richard E. Holbrook*

Richard E. Holbrook
Chief, Rate Filing Bureau SF1
415.538.4328
HolbrookR@insurance.ca.gov

*Consumer Hotline (800) 927-HELP ● Producer Licensing (800) 967-9331*

Exhibit A, Page 12

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

## Form Schedule

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | Resolute Portfolio For Private Companies Insurance Application | CVS FL 12000 PV | 01/09 | ABE | New | | 0.000 | CVS FL 12000 PV - Resolute Portfolio SM For Private Companies App.pdf |
| 2 | | Resolute Portfolio For Private Companies Declarations | CVS FL 12001 PV | 01/09 | DEC | New | | 0.000 | CVS FL 12001 PV - Resolute Portfolio SM For Private Companies DEC.pdf |
| 3 | | Resolute Portfolio For Private Companies General Terms & Conditions | CVS FL 12002 PV | 01/09 | PCF | New | | 0.000 | CVS FL 12002 PV - Resolute Portfolio SM For Private Companies GTC.pdf |
| 4 | | Resolute Portfolio For Private Companies Directors and Officers Liability Coverage Section | CVS FL 12003 PV | 01/09 | PCF | New | | 0.000 | CVS FL 12003 PV - Resolute Portfolio SM For Private Companies DO Section.pdf |
| 5 | | Resolute Portfolio For Private Companies Employment Practices Liability Coverage Section | CVS FL 12004 PV | 01/09 | PCF | New | | 0.000 | CVS FL 12004 PV - Resolute Portfolio SM For Private Companies EPL Section.pdf |
| 6 | | Resolute Portfolio For Companies Fiduciary Liability Coverage Section | CVS FL 12005 PV | 01/09 | PCF | New | | 0.000 | CVS FL 12005 PV - Resolute Portfolio SM For Private Companies Fiduciary Section.pdf |

Exhibit A, Page 13

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | | |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies | | | |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | | |

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 7 | | Resolute Portfolio For Private Companies Crime and Fidelity Coverage Section | CVS FL 12006 PV | 01/09 | PCF | New | | 0.000 | CVS FL 12006 PV - Resolute Portfolio SM For Private Companies Crime Section.pdf |
| 8 | | Delete Exclusion | CVS FL 10000 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10000 PPVNP - Delete Exclusion.pdf |
| 9 | | Exclusion of Certified Acts of Terrorism | CVS FL 10002 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10002 PPVNP - Exclusion of Certified Acts of Terrorism.pdf |
| 10 | | Exclusion of Non-Certified Acts of Terrorism and Coverage of Certified Acts of Terrorism | CVS FL 10003 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10003 PPVNP - Exclusion of Non-Certified Acts of Terrorism and Coverage of Certified Acts of Terrorism.pdf |
| 11 | | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act | CVS FL 10004 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10004 PPVNP - Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act.pdf |
| 12 | | OFAC Exclusion (all Coverage Sections) | CVS FL 10005 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10005 PPVNP - OFAC Exclusion (all Coverage Sections).pdf |

Exhibit A, Page 14

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| **State:** | California | | | **Filing Company:** | Starr Indemnity & Liability Company |
| **TOI/Sub-TOI:** | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | | | |
| **Product Name:** | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies | | | | |
| **Project Name/Number:** | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | | | |

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 13 | | Pending or Prior Litigation Exclusion - Increased Limits | CVS FL 10006 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10006 PPVNP - Pending or Prior Litigation Exclusion - Increased Limits.pdf |
| 14 | | Prior Acts Exclusion | CVS FL 10007 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10007 PPVNP - Prior Acts Exclusion.pdf |
| 15 | | Reliance Endorsement (other applications) | CVS FL 10008 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10008 PPVNP - Reliance Endorsement.pdf |
| 16 | | Specific Litigation/Event Exclusion - Includes SEC Filings | CVS FL 10014 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10014 PPVNP - Specific Litigation Event Exclusion - Includes SEC Filings.pdf |
| 17 | | Amend Sponsor Organization Securities Coverage - Sublimit of Liability and Retention (Fiduciary Coverage Section) | CVS FL 10015 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10015 PPVNP - Amend Sponsor Organization Securities Coverage - Sublimit of Liability and Retention (Fiduciary Coverage Section).pdf |
| 18 | | Specific Litigation/Event Exclusion | CVS FL 10016 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10016 PPVNP - Specific Litigation Event Exlclusion.pdf |

Exhibit A, Page 15

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|

| **State:** | California | **Filing Company:** | Starr Indemnity & Liability Company |
|---|---|---|---|
| **TOI/Sub-TOI:** | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | |
| **Product Name:** | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies | | |
| **Project Name/Number:** | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | |

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 19 | | Amend Sponsor Securities Investment Coverage - Separate Retention (Fiduciary Coverage Section) | CVS FL 10020 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10020 PPVNP - Amend Sponsor Securities Investment Coverage - Separate Retention (Fiduciary Coverage Section).pdf |
| 20 | | Amend Definition of "Loss" - Investment Loss Coverage (Fiduciary Coverage Section) | CVS FL 10021 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10021 PPVNP - Amend Definition of Loss -Investment Loss Coverage (Fiduciary Coverage Section).pdf |
| 21 | | Amend Definition of Plan By Adding Specific Plans (Fiduciary Coverage Section) | CVS FL 10023 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10023 PPVNP - Amend Definition of Plan by Adding Specific Plans (Fiduciary Coverage Section).pdf |
| 22 | | Amend Declarations Page | CVS FL 10024 PPVNP | 07/08 | END | New | | 0.000 | CVS FL 10024 PPVNP - Amend Declarations Page.pdf |
| 23 | | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) | CVS FL 10027 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10027 PPVNP - Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section).pdf |

Exhibit A, Page 16

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | | Company Tracking #: | CVS-FL-CA-01 (F)(R) | | |

| | |
|---|---|
| **State:** | California |
| **TOI/Sub-TOI:** | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| **Product Name:** | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| **Project Name/Number:** | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

**Filing Company:** Starr Indemnity & Liability Company

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 24 | | Conditions Amended Termination as to Any Employee (Crime & Fidelity Coverage Section) | CVS FL 10028 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10028 PPVNP - Conditions Amended Termination As to Any Employee (Crime & Fidelity Coverage Section).pdf |
| 25 | | Amend Territory Clause (General Terms & Conditions) | CVS FL 10029 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10029 PPVNP - Amend Territory Clause (General Terms and Conditions Section).pdf |
| 26 | | Amend Trading Exclusion (Crime & Fidelity Coverage Section) | CVS FL 10030 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10030 PPVNP - Amend Trading Exclusion (Crime & Fidelity Coverage Section).pdf |
| 27 | | Amend Warehouse Receipts Exclusion (Crime & Fidelity Coverage Section | CVS FL 10031 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10031 PPVNP - Amend Warehouse Receipts Exclusion (Crime & Fidelity Coverage Section).pdf |
| 28 | | Amend Definition of "Employee" – Convert to Schedule (Crime & Fidelity Coverage Section) | CVS FL 10032 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10032 PPVNP - Amend Definition of Employee - Convert to Schedule (Crime & Fidelity Coverage Section).pdf |

Exhibit A, Page 17

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| | |
|---|---|
| **State:** | California |
| **TOI/Sub-TOI:** | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| **Product Name:** | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| **Project Name/Number:** | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

**Filing Company:** Starr Indemnity & Liability Company

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 29 | | Conditions Amended Duties in the Event of Loss (Crime & Fidelity Coverage Section) | CVS FL 10033 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10033 PPVNP - Conditions Amended Duties in the Event of Loss (Crime & Fidelity Coverage Section).pdf |
| 30 | | Conditions Amended Extended Period to Discover Loss (Crime & Fidelity Coverage Section) | CVS FL 10034 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10034 PPVNP - Conditions Amended Extended Period to Discover Loss (Crime & Fidelity Coverage Section).pdf |
| 31 | | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) | CVS FL 10035 PPVNP | 01/09 | END | New | | 0.000 | CVS FL 10035 PPVNP - Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section).pdf |
| 32 | | Amend Defense of Claim and Settlement Clause – Delete Insurer's Duty to Defend; With Option to Tender Defense | CVS FL 10085 PV | 07/08 | END | New | | 0.000 | CVS FL 10085 PV - Amend Defense of Claim and Settlement Clause - Delete Insurer's Duty to Defend; with Option to Tender Defense.pdf |
| 33 | | Absolute Bodily Injury/Property Damage Exclusion (D&O Coverage Section) | CVS FL 10086 PV | 07/08 | END | New | | 0.000 | CVS FL 10086 PV - Absolute Bodily Injury Property Damage Exclusion (D&O Coverage Section).pdf |

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|---|

| State: | California |
|---|---|
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 34 | | Amend Contract Exclusion (D&O Coverage Section) | CVS FL 10087 PV | 07/08 | END | New | | 0.000 | CVS FL 10087 PV - Amend Contract Exclusion (D&O Coverage Section).pdf |
| 35 | | Amend Definition of "Subsidiary" – Change Revenue Threshold (D&O Coverage Section) | CVS FL 10088 PV | 07/08 | END | New | | 0.000 | CVS FL 10088 PV - Amend Definition of Subsidiary - Change Revenue Threshold (D&O Coverage Section).pdf |
| 36 | | Amend Pollution Exclusion – Delete Exception for Securities Claims (D&O Coverage Section) | CVS FL 10090 PV | 07/08 | END | New | | 0.000 | CVS FL 10090 PV - Amend Pollution Exclusion - Delete Exception for Securities Claims (D&O Coverage Section).pdf |
| 37 | | Anti-Trust Claim Coverage Extension – With Separate Retention, Sublimit and Co-Insurance (D&O Coverage Section) | CVS FL 10091 PV | 07/08 | END | New | | 0.000 | CVS FL 10091 PV - Anti-Trust Claim Coverage Extension - with Separate Retention, Sublimit and Co-Insurance (D&O Coverage Section).pdf |
| 38 | | Anti-Trust Claim Coverage Extension – With Sublimit (D&O Coverage Section) | CVS FL 10092 PV | 07/08 | END | New | | 0.000 | CVS FL 10092 PV - Anti-Trust Claim Coverage Extension - With Sublimit (D&O Coverage Section).pdf |

Exhibit A, Page 19

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

| Item No. | Schedule Item Status | Form Name | Form Number | Edition Date | Form Type | Form Action | Action Specific Data | Readability Score | Attachments |
|---|---|---|---|---|---|---|---|---|---|
| 39 | | Anti-Trust Exclusion-Applies to Entity Only (D&O Coverage Section) | CVS FL 10093 PV | 07/08 | END | New | | 0.000 | CVS FL 10093 PV - Anti-Trust Exclusion - Applies to Entity Only (D&O Coverage Section).pdf |
| 40 | | Delete Non-Rescindable Clause (Fiduciary Coverage Section) | CVS FL 10096 PV | 07/08 | END | New | | 0.000 | CVS FL 10096 PV - Delete Non-Rescindable Clause (Fiduciary Coverage Section).pdf |
| 41 | | Delete Non-Rescindable Clause (D&O Coverage Section) | CVS FL 10097 PV | 07/08 | END | New | | 0.000 | CVS FL 10097 PV - Delete Non-Rescindable Clause (D&O Coverage Section).pdf |
| 42 | | Director Exclusion (EPL Coverage Section) | CVS FL 10170 PPV | 07/08 | END | New | | 0.000 | CVS FL 10170 PPV - Director Exclusion (EPL Coverage Section).pdf |
| 43 | | Employed Lawyers Coverage Extension (D&O Coverage Section) | CVS FL 10172 PPV | 07/08 | END | New | | 0.000 | CVS FL 10172 PPV - Employed Lawyers Coverage Extension (D&O Coverage Section).pdf |
| 44 | | California Amendatory Endorsement | CVS FL 10107 | 02/09 | END | New | | 0.000 | CA Amendatory Endorsement.pdf |

**Form Type Legend:**

| ABE | Application/Binder/Enrollment | ADV | Advertising |
|---|---|---|---|
| BND | Bond | CER | Certificate |
| CNR | Canc/NonRen Notice | DEC | Declarations/Schedule |
| DSC | Disclosure/Notice | END | Endorsement/Amendment/Conditions |

Exhibit A, Page 20

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| | |
|---|---|
| State: | California |
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

**Filing Company:** Starr Indemnity & Liability Company

| **ERS** | Election/Rejection/Supplemental Applications | **OTH** | Other |

Exhibit A, Page 21

# Starr Indemnity & Liability Company

90 Park Avenue

New York, NY 10016

Tel. (646) 227-6300 * Fax (646) 227-6718

---

## RESOLUTE PORTFOLIO℠

### For Private Companies

(Inclusive of Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Crime & Fidelity)

**INSURANCE APPLICATION**

---

**NOTICE: APPLICABLE TO ALL COVERAGE SECTIONS EXCEPT CRIME & FIDELITY, THE INSURANCE POLICY FOR WHICH THIS APPLICATION IS SUBMITTED, PROVIDES CLAIMS-MADE AND REPORTED COVERAGE, WHICH GENERALLY APPLIES ONLY TO CLAIMS FIRST MADE, AGAINST THE INSUREDS DURING THE POLICY PERIOD OR ANY DISCOVERY PERIOD, IF APPLICABLE, AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS THEREIN. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE TO NEW YORK APPLICANTS: APPLICABLE TO ALL COVERAGE SECTIONS EXCEPT CRIME & FIDELITY, THE POLICY FOR WHICH THIS APPLICATION IS SUBMITTED IS WRITTEN ON A CLAIMS-MADE BASIS. EXCEPT AS OTHERWISE PROVIDED HEREIN, THE POLICY ONLY APPLIES TO CLAIMS FIRST MADE OR INCIDENTS REPORTED DURING THE POLICY PERIOD, THE AUTOMATIC DISCOVERY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, THE DISCOVERY PERIOD APPLIES. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC DISCOVERY PERIOD SHALL APPLY FOR AN ADDITIONAL PREMIUM AS INDICATED IN ITEM 8 OF THE DECLARATIONS. NO COVERAGE SHALL EXIST AFTER THE EXPIRATION OF THE DISCOVERY PERIOD WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER CARRIER. DURING THE FIRST SEVERAL YEARS OF CLAIMS-MADE RELATIONSHIPS, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY. PLEASE READ THIS POLICY CAREFULLY.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS UNDER THE LIABILITY COVERAGE SECTIONS OF THIS POLICY SHALL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS. THE INSURER IS NOT OBLIGATED TO PAY ANY LOSS, INCLUDING DEFENSE COSTS, AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED BY PAYMENT OF LOSS, INCLUDING DEFENSE COSTS.**

**NOTICE TO MINNESOTA APPLICANTS: APPLICABLE TO ALL COVERAGE SECTIONS EXCEPT CRIME & FIDELITY, THE POLICY FOR WHICH THIS APPLICATION IS SUBMITTED IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS SUBJECT TO ITS**

1

CVS FL 12000 PV (1/09)

TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD, PROVIDED SUCH CLAIM IS REPORTED TO THE INSURER OR THE INSURER'S AGENT OR BROKER IN ACCORDANCE WITH THE TERMS OF THE POLICY. THIS MEANS THAT ONLY CLAIMS ACTUALLY MADE DURING THE POLICY PERIOD ARE COVERED UNLESS COVERAGE FOR A DISCOVERY PERIOD IS PURCHASED. IF A DISCOVERY PERIOD IS NOT MADE AVAILABLE TO THE INSURED, THE INSURED RISKS HAVING GAPS IN COVERAGE WHEN SWITCHING FROM ONE COMPANY TO ANOTHER. MOREOVER, EVEN IF SUCH REPORTING PERIOD IS MADE AVAILABLE TO THE INSURED, THE INSURED MAY STILL BE PERSONALLY LIABLE FOR CLAIMS REPORTED AFTER THE PERIOD EXPIRES. CLAIMS-MADE POLICIES MAY NOT PROVIDE COVERAGE FOR WRONGFUL ACTS COMMITTED BEFORE A FIXED RETROACTIVE DATE. RATES FOR CLAIM-MADE POLICIES ARE DISCOUNTED IN THE EARLY YEARS OF A POLICY, BUT INCREASE STEADILY OVER TIME. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY. PLEASE READ THIS POLICY CAREFULLY.

NOTICE: APPLICABLE TO ALL COVERAGE SECTIONS AND JURISDICTIONS: PLEASE READ THE ENTIRE APPLICATION CAREFULLY, BEFORE SIGNING.

Please answer all questions and submit the requested information:

| 1. GENERAL INFORMATION | |
|---|---|
| a) | Name of Applicant: |
| b) | Address: |
| c) | Nature of Business: |
| d) | Date of Incorporation: |
| e) | State of Incorporation: |
| f) | Company Website: |
| g) | NAICS Code: |
| h) | Form of Organization:  Corporation: _____  Partnership: _____  Limited Liability Company: _____  Other: _____ |

i) Please list all Subsidiaries for which coverage is desired:

| Name | Nature of Business | Date Acquired or Created | Percentage Owned or Management Control | Domiciled State or Country |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

2. COVERAGE REQUESTED

2

CVS FL 12000 PV (1/09)

a) Proposed Effective Date: _____

b) Coverage Sections and Limits of Liability requested:

| Coverage Desired (indicate with an *X*) | Coverage Section | Separate Limit of Liability (indicate *Yes* or *No*) | Combined Limit of Liability (indicate *Yes* or *No*) | Limit of Liability Requested ($) |
|---|---|---|---|---|
|  | Directors & Officers Liability |  |  |  |
|  | Employment Practices Liability (EPL) |  |  |  |
|  | Fiduciary Liability |  |  |  |

| Coverage Desired (indicate with an *X*) | Coverage Section | Separate Limit of Liability | Limit of Liability Requested Per Occurrence ($) |
|---|---|---|---|
|  | Crime & Fidelity |  |  |

c) Optional Coverages and Sub-limits of Liability requested:

| Coverage Desired (indicate with an *X*) | Coverage | Sub-limit of Liability Requested ($) |
|---|---|---|
|  | Derivative Demand Coverage (part of the D&O Limit of Liability) |  |
|  | Third-Party Coverage (part of the EPL Limit of Liability) |  |
|  | Voluntary Compliance Program Coverage (part of the Fiduciary Limit of Liability) |  |
|  | Credit, Debit, Charge Card Forgery (Crime and Fidelity Coverage Section) |  |
|  | Clients Property (Crime and Fidelity Coverage Section) |  |
|  | Investigative Expense Incurred to Establish Amount of Covered Loss (Crime and Fidelity Coverage Section) |  |

3

CVS FL 12000 PV (1/09)

Exhibit A, Page 24

**3. COMPANY INFORMATION**

a) Please provide the following information for the Company (including all Subsidiaries)

|  | Current  Fiscal Year __/__/__ | Prior Fiscal Year __/__/__ |
|---|---|---|
| Total Revenue |  |  |
| Total Assets |  |  |
| Net Income (Loss) |  |  |
| Total Equity |  |  |

b) Is the Company and its Subsidiaries in compliance with any and all lender covenants?  Yes ___ No ___
If No, please provide complete details: _____
_____

**PLEASE PROVIDE THE FOLLOWING INFORMATION FOR ALL COVERAGE SECTIONS, PLUS THE ADDITIONAL INFORMATION REQUESTED WITHIN THE COVERAGE SECTIONS IN WHICH COVERAGE IS REQUESTED:**

- Most recent audited Financial Statement or Annual Report
- Latest CPA letter to management and any written response thereto
- Complete List of Directors and Officers; position and affiliation with outside organizations
- Other information deemed necessary by the Underwriter or that may be helpful in evaluating your risk

**4. DIRECTORS & OFFICERS LIABILITY COVERAGE SECTION**
   (Complete Question 4 only if such Coverage Section is requested)

   a)  OWNERSHIP STRUCTURE:

      i)     Total number of common shares outstanding:          _____
      ii)    Total number of common shareholders:                  _____
      iii)   % of shares held directly or beneficially by Directors: _____
      iv)    % of shares held directly or beneficially by Officers who are not Directors: _____
      v)     List any shareholders who own greater than 10% of the outstanding shares of the Company:
             _____
             _____

      vi)    Are there any securities that are convertible to common stock? Yes _____ No _____
             If yes, provide details of such stock.
             _____
             _____

      vii)   Does the Company have more than one class of stock? Yes ___ No ___
             If Yes, provide details of such stock.
             _____
             _____

4

Exhibit A, Page 25

b) BUSINESS ACTIVITIES

i)  Have there been any changes to the board of directors, executive officers or senior management of
the Company during the past three years or do they expect any within the next year?
Yes ____ No ____ If yes, please provide complete details.

_____

_____

_____

ii) Does the Company have an annual CPA audit? Yes ____ No ____
If Yes, have there been any changes in the auditor in the last three years? Yes ___ No ___
Has the auditor identified any material weaknesses in internal controls in the past three years?
Yes ___ No ___ If yes, please provide copy of the auditor's letter to management and the
management's response.

iii) Has the Company in the last three years completed or agreed to, or does it contemplate in the
next twelve (12) months any of the following:
A. Acquisition, merger or sale of assets or operations? Yes ___ No ___
B. Private Placement of any securities? Yes ___ No ___
C. Public Offering of any securities? Yes ___ No ___
If yes to A, B, or C above, please provide complete details.

_____

_____

---

## 5. EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION
(Complete Question 5 only if such Coverage Section is requested)

a) Please provide the following information for the Company (including Subsidiaries)
   i)  Total Number of Employees:          _____
   ii)

| Type of employee | Total number current year | Total number previous year |
|---|---|---|
| Full Time | | |
| Part Time (including seasonal, temporary and/or volunteers) | | |
| Non-US based | | |
| Independent Contractors | | |
| Leased Employees | | |

   iii) Does the Company have locations in states other than the state of the corporate
   headquarters?  Yes ___  No ___  If yes, provide details of the locations:

   _____

   _____

5

Exhibit A, Page 26

iv) Total number of employees in the following jurisdiction(s):  If none, check here _____

| **Jurisdiction** | **Number of employees** | **Jurisdiction** | **Number of employees** |
|---|---|---|---|
| California | | Alabama | |
| Michigan | | Arizona | |
| Florida | | Washington DC | |
| New Jersey | | Illinois | |
| Texas | | Massachusetts | |
| New York | | Minnesota | |
| | | Oregon | |

v) Please provide the following information:

| | **Current Year** | **Prior Year** |
|---|---|---|
| Employee Turnover Rate of Reduction in Workforce | | |
| Percent of employees earning more than $100,000 annually | | |

vi) Human Resource Practices and Policies:

| | **Yes** | **No** |
|---|---|---|
| A. Full Time HR Professional | | |
| B. Employee Handbook or written guidelines | | |
| C. Are the handbook and guidelines uniform for all locations and all Subsidiaries? | | |
| D. At Will Statement | | |
| E. Employee training (i.e.: harassment, discrimination) | | |
| F. Annual written performance reviews for all employees | | |
| G. All terminations are reviewed by: (advise for each) - Human Resources - In-House Counsel - Outside Counsel | | |

**PLEASE PROVIDE THE FOLLOWING INFORMATION:**

- Copy of all Human Resource Policies and Procedures including the Employee Handbook

**Optional Coverage:  Third-Party Liability Coverage**
(Complete the below questions only if Third-Party Liability Coverage is requested)

    a) Does the Company have written procedures:
        i)  describing conduct when working with third-parties, such as customers and vendors, including anti-discrimination and/or anti-harassment statements? Yes _____ No _____
        ii) for responding to complaints of discrimination or harassment by third-parties?  Yes ___ No ___

    b) What percentage of the Company's employees deal with the general public, work at customer locations or perform a majority of their functions off-site?

    _____

    _____

    c) Has the Company had any loss history as a result of receiving complaints from a non-employee? Yes _____ No ___If yes, please provide complete listing, including number of complaints, defense and/or settlement costs.

CVS FL 12000 PV (1/09)

Exhibit A, Page 27

**6. FIDUCIARY LIABILITY COVERAGE SECTION**
   (Complete Question 6 only if such Coverage Section is requested)

a)  For Each Plan to be covered, please list the following:

| Plan Name and Plan Number | Type of Plan * | Number of Participants | Plan Assets | Plan Status** |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

   \*   Welfare (W), Defined Benefit (DB), Defined Contribution (DC), ESOP (ESOP), Other (O)
   \*\*   Active (A), Merged (M), Sold (S), Terminated (T), Frozen (F)

b)  Are any Plans under funded or over funded by 15%? Yes ____ No ____
    If yes, please provide details. _____
    _____
    _____

c)  Are any of the Plans assets invested in Company securities?  Yes ____ No ____  If yes, please provide
    details. _____
    _____
    _____

    If yes, are the investments Company directed or at the discretion of the employee? _____
    _____
    _____

d)  Have any Plan benefits been modified within the last two years?  Yes ____ No ____  If yes, please
    provide details. _____
    _____
    _____
    _____

e)  Are Plans managed by an independent third-party administrator/investment manager?
    Yes ____ No ____  If yes, please provide details. _____
    _____
    _____

    i)   How often is the third-party's performance reviewed? _____
         _____

    ii)  How often are the third-party guidelines reviewed and established? _____
         _____

f)  Does the Company have any non-qualified plans? Yes ____ No ____  If yes, please provide details.
    _____
    _____

7

Exhibit A, Page 28

g)  Please answer the following questions should coverage for an ESOP plan be requested.
    i)      What percent of the company stock does the ESOP own? _____
    ii)     Who votes the shares of the ESOP? _____
    iii)    How often are the shares of the Company valued for purposes of the ESOP? _____
             _____
             _____

## PLEASE PROVIDE THE FOLLOWING INFORMATION:
- Audited Plan financials for the five (5) largest Plans (in terms of total plan assets)
- Latest Audited Plan financials for any Plan which invests in Company securities
- Latest audited plan financial or schedule of investments for any non-qualified plan

## 7.  CRIME AND FIDELITY COVERAGE SECTION
(Complete Question 7 only if such Coverage Section is requested)

a)  Please provide the following information for the Company (including Subsidiaries) *Note: Skip to Question 7.b. if the following information provided under Questions 5.a.i., 5.a.ii. and 5.a.iii above*

    i)     Total Number of Employees:

| Type of employee | Total number current year | Total number previous year |
|---|---|---|
| Full Time | | |
| Part Time | | |
| Non-US based | | |

    ii)    Total Number of Locations:
           _____
           _____

b)  AUDIT AND INTERNAL CONTROLS:
    i)     Are all active bank accounts reconciled monthly, regardless of the average balance?
                           Yes___No___

    ii)    Is the reconciliation of all active bank accounts current?      Yes___No___

          If the response to any Question 7.b.i to 7.b.ii above was **No**, please provide complete details. _____
          _____
          _____

    iii)   Were there any reportable conditions or material weaknesses identified in any of the last four (4) quarters and/or at the last fiscal year end?    Yes___No___

    iv)   If the response to Question 7.b.iii above was **Yes**, has management remediated all:
          (1) reportable conditions?                Yes___No___
          (2) material weaknesses?               Yes___No___

CVS FL 12000 PV (1/09)

Exhibit A, Page 29

v)  If the response to either Question 7.b.iv(1) or 7.b.iv(2) was **No**, please provide full details of the remediation plan, progress to date and target date for completion. _____

_____

vi)  If the Total Number of Non-US based employees is greater than 10% of the Total Number of employees for the current year, describe any differences in the Company's control systems at your foreign premises as compared to the US premises.

_____

## PLEASE PROVIDE THE FOLLOWING INFORMATION IF LIMIT OF LIABILITY REQUESTED FOR CRIME AND FIDELITY COVERAGE SECTION EXCEEDS $2.5 Million

- Most recently issued Internal Audit Report and management's response

### ALL Applicants must complete the below questions 8 and 9.

**8.  PREVIOUS INSURANCE:**

a) Please provide the following details regarding the Company's Insurance programs:

| Coverage | Yes | None | Limit of Liability | Retention | Premium | Policy Period |
|----------|-----|------|-------------------|-----------|---------|---------------|
| D&O      |     |      |                   |           |         |               |
| EPL      |     |      |                   |           |         |               |
| Fiduciary|     |      |                   |           |         |               |
| Crime    |     |      |                   |           |         |               |

b) Have any of the Company's prior carriers cancelled or indicated an intent to not offer renewal terms? *(Note: Not applicable to Missouri Applicants)*    Yes ___ No ___ If yes, provide details.

_____

c) Has any person or entity for whom this insurance is being applied given written notice under the provisions of any prior or current insurance policy of facts or circumstances that might give rise to a Claim being made against any person or entity for whom this insurance is being applied?  **(Note that this question 8 (c) does not apply to the Crime and Fidelity Coverage Section of any policy that may be issued pursuant to this Application)**
Yes ___ No ____ If yes, please provide details. _____

_____

d) Have any payments been made on behalf of any person or entity for whom this insurance is being applied under any policy of insurance similar to any proposed insurance hereunder? Yes ___ No ____
If Yes, please provide details. _____

_____

**9.  PRIOR KNOWLEDGE (RENEWAL APPLICANTS: Question 9. need not be answered) (Note that this question 9 does not apply to the Crime and Fidelity Coverage Section of any policy that may be issued pursuant to this Application)**

9

CVS FL 12000 PV (1/09)

a) No person or entities for whom this insurance is being applied have any knowledge of any fact, circumstance, situation, or information of any error, misstatement, misleading statement, act, omission, neglect, breach of duty or other matter that may give rise to a Claim which may fall within the scope of coverage of the proposed insurance? Yes ___No ___
If yes, please provide complete details (use supplemental attachment if additional space is necessary).

_____
_____
_____

b) No Claims have been made against any person(s) or entities for whom this insurance is being applied. Yes ____ No ____ If yes, please provide details. _____

_____
_____

c) No person(s) or entity(ies) proposed for whom this insurance is being applied has knowledge of any inquiry, investigation or communication that he/she/it has reason to believe might give rise to a Claim that might fall within the scope of the coverage of the proposed insurance. Yes ___ No ___
If yes, please provide details.

_____
_____

IT IS AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS WITH REGARD TO QUESTIONS 9 a), b), or c), REGARDLESS OF WHETHER IT IS DISCLOSED IN THIS APPLICATION, ANY CLAIM BASED ON, ARISING FROM, OR IN ANY WAY RELATING TO SUCH ERROR, MISSTATEMENT, MISLEADING STATEMENT, ACT, OMISSION, NEGLECT, BREACH OF DUTY OR OTHER MATTER OF WHICH THERE IS KNOWLEDGE OR INFORMATION SHALL BE EXCLUDED FROM COVERAGE UNDER THE INSURANCE BEING APPLIED FOR AND THE INSURER SHALL NOT BE LIABLE FOR SUCH LOSS AND, TO THE EXTENT THIS POLICY PROVIDES DUTY TO DEFEND COVERAGE, THE INSURER SHALL HAVE NO DUTY TO DEFEND.

**NOTICES TO COMPANY:**

The undersigned authorized representative of the Company declares that the statements set forth herein are true, and reasonable effort has been made to obtain sufficient information from all persons proposed for this insurance to facilitate the accurate completion of the Application. The undersigned authorized representative agrees that if the information supplied on this Application changes between the date of this Application and the effective date of the insurance, he/she will, in order for the information to be accurate on the effective date of the insurance, immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations or agreement to bind insurance.

The submission of this Application by the Company to the Insurer or signing of this Application by the Company does not obligate the Insurer to issue the insurance.  It is agreed that this Application shall be the basis of the contract if a policy is issued and shall be deemed to be attached to, incorporated into and become a part of, the policy.  However, this paragraph does not apply in the states of Utah and Wisconsin.

ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.  NOTHING

10

CVS FL 12000 PV (1/09)

CONTAINED HEREIN OR INCORPORATED HEREIN BY REFERENCE SHALL CONSTITUTE NOTICE OF A CLAIM OR POTENTIAL CLAIM SO AS TO TRIGGER COVERAGE UNDER ANY CONTRACT OF INSURANCE. PROVIDED, HOWEVER, THIS PARAGRAPH DOES NOT APPLY IN THE STATES OF UTAH AND WISCONSIN.

NOTICE TO UTAH AND WISCONSIN RESIDENTS: THE SUBMISSION OF THIS APPLICATION BY THE COMPANY TO THE INSURER OR SIGNING OF THIS APPLICATION BY THE COMPANY DOES NOT OBLIGATE THE INSURER TO ISSUE THE INSURANCE. NOTHING CONTAINED HEREIN SHALL CONSTITUTE NOTICE OF A CLAIM OR POTENTIAL CLAIM SO AS TO TRIGGER COVERAGE UNDER ANY CONTRACT OF INSURANCE.  ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION ARE MADE A PART HEREOF PROVIDED THIS APPLICATION AND SUCH MATERIALS ARE ATTACHED TO THE POLICY AT THE TIME OF ITS DELIVERY.

### WARNING

ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT S(HE) IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE  OR DECEPTIVE STATEMENT MAY BE GUILTY OF INSURANCE FRAUD.

**NOTICE TO ARKANSAS APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO COLORADO APPLICANTS**: "IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.    PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.  ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES."

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** "WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT."

**NOTICE TO FLORIDA APPLICANTS**: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE."

11

Exhibit A, Page 32

**NOTICE TO HAWAII APPLICANTS:** " FOR YOUR PROTECTION, HAWAII LAW REQUIRES YOU TO BE INFORMED THAT PRESENTING A FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OF BENEFIT IS A CRIME PUNISHABLE BY FINES OR IMPRISONMENT, OR BOTH."

**NOTICE TO KENTUCKY APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

**NOTICE TO LOUISIANA APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO MAINE APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS."

**NOTICE TO NEW JERSEY APPLICANTS**: "ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES."

**NOTICE TO NEW MEXICO APPLICANTS:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES."

**NOTICE TO OHIO APPLICANTS**: "ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

**NOTICE TO OKLAHOMA APPLICANTS**: "WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY".

**NOTICE TO OREGON APPLICANTS**: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO MAY BE GUILTY OF INSURANCE FRAUD WHICH MAY SUBJECT SUCH PERSON TO CRIMINAL

12

Exhibit A, Page 33

AND CIVIL PENALTIES, INCLUDING BUT NOT LIMITED TO FINES, DENIAL OF INSURANCE BENEFITS, CIVIL DAMAGES, CRIMINAL PROSECUTION AND CONFINEMENT IN STATE PRISONS."

**NOTICE TO PENNSYLVANIA APPLICANTS**: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES."

**NOTICE TO TENNESSEE APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS."

**NOTICE TO TEXAS APPLICANTS:** "ANY PERSON WHO KNOWLINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON."

**NOTICE TO VIRGINIA APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS."

**NOTICE TO WASHINGTON APPLICANTS:** "IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS."

**NOTICE TO WEST VIRGINIA:** "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS OR THE BENEFIT OF KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

**NOTICE TO NEW YORK APPLICANTS**: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

**DECLARATION AND SIGNATURE**

THE UNDERSIGNED AUTHORIZED REPRESENTATIVE IS MAKING THE REPRESENTATIONS IN THIS APPLICATION ON BEHALF OF THE COMPANY AND ALL ENTITIES OR PERSONS PROPOSED FOR COVERAGE UNDER THE POLICY.

13

CVS FL 12000 PV (1/09)

Exhibit A, Page 34

Signed: _____

Title: _____
                    (President, CEO or CFO)
Date: _____

> **NOTE:** This Application must be signed by the President, CFO and/or CEO of the Applicant acting as the authorized agent of the persons and entity(ies) proposed for this insurance.
>
> If this Application is completed in Florida, please provide the Insurance Agent's name and license number as designated.  If this Application is completed in Iowa, please provide the Insurance Agent's name only.

| PRODUCER (Insurance Agent or Broker) | INSURANCE AGENCY OR BROKERAGE |
|---|---|
| INSURANCE AGENCY TAXPAYER I.D. OR SOCIAL SECURITY NO. | AGENT OR BROKER LICENSE NO. |
| ADDRESS OF AGENT OR BROKER (Include Street, City and Zip Code) | |
| E-MAIL ADDRESS OF AGENT OR BROKER | |
| SUBMITTED BY (Insurance Agency) | INSURANCE AGENCY TAXPAYER I.D. OR SOCIAL SECURITY NO. |
| ADDRESS OF AGENT OR BROKER (Include Street, City and Zip Code) | |

*If this Application is completed in Wisconsin, the following notices apply:*

- *If any Aggregate Limit of Liability as set forth in Item 4A. or 4B. of the Declarations is exhausted by the payment of Loss, all obligations of the **Insurer** under this policy as respects the applicable Coverage Section(s) will be completely fulfilled and the **Insurer** will have no further obligations under this policy of any kind as respects the applicable Coverage Section(s) and the premium as respects the applicable Coverage Section(s) as set forth in Item 7 of the Declarations will be fully earned.*

14

CVS FL 12000 PV (1/09)

Exhibit A, Page 35

- *If the Aggregate Policy Limit of Liability as set forth in Item 4C. of the Declarations is exhausted by the payment of **Loss**, the **Insurer** will have no further obligations of any kind as respects this policy and the applicable premium set forth in Item 7 of the Declarations will be fully earned.*

- *The Discovery Period premium shall be fully earned at the inception of the Discovery Period.*

- *In the event the policy is canceled by the **Parent Company**, the **Insurer** shall retain the customary short rate proportion of the premium.*

- *This policy shall be non-cancellable and the entire premium shall be deemed fully earned upon the effective time of the **Organizational Change**.*

---

RESOLUTE PORTFOLIO℠ is a registered service mark owned by C. V. Starr & Co., Inc.  All rights reserved.

CVS FL 12000 PV (1/09)

Exhibit A, Page 36

**STARR INDEMNITY AND LIABILITY COMPANY**

90 Park Avenue, New York, NY 10016 • Tel. (646) 227-6300

# RESOLUTE PORTFOLIO[SM]
## For Private Companies

POLICY NUMBER:
RENEWAL OF:

**NOTICE  (Applicable to all Coverage Sections Other Than the Crime and Fidelity Coverage Section): EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.**

**NOTICE  (Applicable to all Coverage Sections Other Than the Crime and Fidelity Coverage Section): THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS.  AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE  (Applicable to all Coverage Sections Other Than the Crime and Fidelity Coverage Section): THE INSURER HAS NO DUTY TO DEFEND ANY CLAIM UNDER THIS POLICY EXCEPT WITH RESPECT TO ANY CLAIM FOR WHICH THE POLICY SPECIFICALLY STATES THAT DUTY TO DEFEND COVERAGE IS PROVIDED.**

**NOTICE  (Applicable to All Coverage Sections): PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

## DECLARATIONS

**ITEM 1:   PARENT COMPANY**:

       **ADDRESS**:

**ITEM 2:   POLICY PERIOD**:     From:                    To:
                                    (12:01 a.m. Standard Time at the address stated in Item 1)

**ITEM 3:   COVERAGE SECTIONS**

This policy provides coverage only for the following Coverage Sections if purchased by the **Insured** and indicated by an X.

| | | |
|---|---|---|
| Directors & Officers Liability Coverage Section | Yes ____ | No ____ |
| Derivative Demand Coverage | Yes ____ | No ____ |
| Employment Practices Liability Coverage Section | Yes ____ | No ____ |
| Third-Party Liability Coverage | Yes ____ | No ____ |
| Fiduciary Liability Coverage Section | Yes ____ | No ____ |
| Voluntary Compliance Program Coverage | Yes ____ | No ____ |
| Crime and Fidelity Coverage Section | Yes ____ | No ____ |

CVS FL 12001 PV (1/09)

Exhibit A, Page 37

**DECLARATIONS** (continued)                                         **POLICY NO.:**

**ITEM 4:  LIMITS OF LIABILITY**

The Limits of Liability of this policy apply solely to the Coverage Section(s) for which a corresponding limit of liability amount is set forth below.

**A.     AGGREGATE LIMIT OF LIABILITY FOR EACH SEPARATE COVERAGE SECTION OTHER THAN THE CRIME AND FIDELITY COVERAGE SECTION**

(i)

| | |
|---|---|
| Separate Coverage Section: Directors & Officers Liability | $ |
| Sublimit of Liability for Derivative Demand Coverage | $ |

(ii)

| | |
|---|---|
| Separate Coverage Section: Employment Practices Liability | $ |
| Sublimit of Liability for Third-Party Liability Coverage | $ |

(iii)

| | |
|---|---|
| Separate Coverage Section: Fiduciary Liability | $ |
| Sublimit of Liability for Voluntary Compliance Program Coverage | $ |
| Sublimit of Liability for HIPAA Claim Coverage | $ |

Each Sublimit of Liability set forth in Item 4 A. above is part of, and not in addition to, the Limit of Liability for the corresponding Separate Coverage Section.

**B.     AGGREGATE LIMIT OF LIABILITY FOR EACH COMBINED COVERAGE SECTION OTHER THAN THE CRIME AND FIDELITY COVERAGE SECTION**

(i)

| | |
|---|---|
| Combined Coverage Section: Directors & Officers Liability / Employment Practices Liability / Fiduciary Liability | $ |
| Sublimit of Liability for Derivative Demand Coverage | $ |
| Sublimit of Liability for Third-Party Liability Coverage | $ |
| Sublimit of Liability for Voluntary Compliance Program Coverage | $ |
| Sublimit of Liability for HIPAA Claim Coverage | $ |

(ii)

| | |
|---|---|
| Combined Coverage Section: Directors & Officers Liability / Employment Practices Liability | $ |
| Sublimit of Liability for Derivative Demand Coverage | $ |
| Sublimit of Liability for Third-Party Liability Coverage | $ |

(iii)

| | |
|---|---|
| Combined Coverage Section: Directors & Officers Liability / Fiduciary Liability | $ |
| Sublimit of Liability for Derivative Demand Coverage | $ |
| Sublimit of Liability for Voluntary Compliance Program Coverage | $ |
| Sublimit of Liability for HIPAA Claim Coverage | $ |

CVS FL 12001 PV (1/09)

Exhibit A, Page 38

**DECLARATIONS** (continued)                                    **POLICY NO.:**

(iv)

| | |
|---|---|
| Combined Coverage Section:<br>Employment Practices Liability / Fiduciary Liability | $ |
| Sublimit of Liability for Third-Party Liability Coverage | $ |
| Sublimit of Liability for Voluntary Compliance Program Coverage | $ |
| Sublimit of Liability for HIPAA Claim Coverage | $ |

Each Sublimit of Liability set forth in Item 4 B. above is part of, and not in addition to, the Limit of Liability for the corresponding Combined Coverage Section.

The Limits of Liability set forth in Item 4 A. and B. above are the maximum limits of liability for all **Loss** including **Defense Costs,** under the applicable Coverage Section(s).

**C.    AGGREGATE POLICY LIMIT OF LIABILITY**                              $ _____

The above Limit of Liability set forth in Item 4 C. above is the maximum limit of liability for all **Loss**, including **Defense Costs,** for all Coverage Sections purchased other than the Crime and Fidelity Coverage Section.

**D.    PER OCCURRENCE LIMIT OF LIABILITY- CRIME AND FIDELITY COVERAGE SECTION**

The Limits of Liability of this policy apply solely to the Crime and Fidelity Coverage Section(s) for which a corresponding limit of liability amount is set forth below.

**Crime and Fidelity Coverage Section:**

| | | |
|---|---|---|
| (i) | Insuring Agreement A, Employee Theft | $ |
| (ii) | Insuring Agreement B, Forgery or Alteration | $ |
| (iii) | Insuring Agreement C, Inside the Premises – Loss of Money and Securities | $ |
| (iv) | Insuring Agreement D, Inside the Premises - Robbery or Safe Burglary of Other Property | $ |
| (v) | Insuring Agreement E, Outside the Premises | $ |
| (vi) | Insuring Agreement F, Computer Fraud | $ |
| (vii) | Insuring Agreement G, Funds Transfer | $ |
| (viii) | Insuring Agreement H, Money Orders and Counterfeit Money | $ |
| (ix) | Insuring Agreement I, Credit, Debit, Charge Card Forgery | $ |
| (x) | Insuring Agreement J, Clients' Property | $ |
| (xi) | Insuring Agreement K, Investigative Expense Incurred to Establish Amount of Covered Loss | $ |

CVS FL 12001 PV (1/09)

**DECLARATIONS** (continued)                                    POLICY NO.:

**ITEM 5:        RETENTION OR DEDUCTIBLE AMOUNTS**

### RETENTION AMOUNTS

**A. Directors & Officers Liability Coverage Section:**

| | |
|---|---|
| (i)  Insuring Agreement A. | $ |
| (ii) Insuring Agreement B. and C. | $ |
| (iii) Insuring Agreement D. | $0 |

**B. Employment Practices Liability Coverage Section:**

| | |
|---|---|
| (i)   Insuring Agreement A. - Employment Practices Liability Coverage | $ |
| (ii)  Insuring Agreement B. - Third-Party Liability Coverage | $ |

**C. Fiduciary Liability Coverage Section:**

| | |
|---|---|
| (i)  Insuring Agreement A. - Fiduciary Liability Coverage<br>     All Claims, except HIPAA Claims<br>     HIPAA Claims | <br>$<br>$0 |
| (ii) Insuring Agreement B. - Voluntary Compliance Program Coverage | $0 |

### DEDUCTIBLE AMOUNTS

**D.  Crime and Fidelity Coverage Section:**

| | | |
|---|---|---|
| (i) | Insuring Agreement A, Employee Theft | $ |
| (ii) | Insuring Agreement B, Forgery or Alteration | $ |
| (iii) | Insuring Agreement C, Inside the Premises – Loss of Money and Securities | $ |
| (iv) | Insuring Agreement D, Inside the Premises - Robbery or Safe Burglary of Other Property | $ |
| (v) | Insuring Agreement E, Outside the Premises | $ |
| (vi) | Insuring Agreement F, Computer Fraud | $ |
| (vii) | Insuring Agreement G, Funds Transfer | $ |
| (viii) | Insuring Agreement H, Money Orders and Counterfeit Money | $ |
| (ix) | Insuring Agreement I, Credit, Debit, Charge Card Forgery | $ |
| (x) | Insuring Agreement J, Clients' Property | $ |
| (xi) | Insuring Agreement K, Investigative Expense Incurred to Establish Amount of Covered Loss | $ |

**ITEM 6:        PENDING OR PRIOR DATE**

**A. Directors & Officers Liability Coverage Section:**

| | |
|---|---|
| (i)  Insuring Agreement A. | |
| (ii) Insuring Agreement B. and C. | |

**B. Employment Practices Liability Coverage Section:**

| | |
|---|---|
| (i)  Insuring Agreement A - Employment Practices Liability Coverage | |
| (ii) Insuring Agreement B. – Third-Party Liability Coverage | |

**C. Fiduciary Liability Coverage Section:**

| | |
|---|---|
| (i) Fiduciary Liability Coverage | |

**D. Crime and Fidelity Coverage Section:**                        **Not Applicable**

CVS FL 12001 PV (1/09)

**DECLARATIONS** (continued)                              **POLICY NO.:**

**ITEM 7:      PREMIUM**

| | |
|---|---|
| A. Directors & Officers Liability Coverage Section: | $ |
| B. Employment Practices Liability Coverage Section: | $ |
| C. Fiduciary Liability Coverage Section: | $ |
| D. Crime and Fidelity Coverage Section: | $ |
| E. Total Policy Premium: | $ |

**ITEM 8:      DISCOVERY PERIOD (APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN CRIME AND FIDELITY)**

      A.    One Year: **100% of the applicable premium**
      B.    Two to Six Years: **Premium to be determined**

**ITEM 9:      ADDRESS OF INSURER AND ITS AUTHORIZED CLAIMS AGENT FOR NOTICES UNDER THIS POLICY**

      A.    <u>**Claims-Related Notices**</u>

          LVL CLAIMS SERVICES, LLC
          111 JOHN STREET
          SUITE 1500
          NEW YORK, NEW YORK  10038
          e-mail: <u>notice@lvlclaims.com</u>

      B.    <u>**All Other Notices To The Insurer:**</u>

          C. V. STARR & COMPANY
          ATTN:  FINANCIAL LINES DEPARTMENT
          90 PARK AVE.  6TH FLOOR
          NEW YORK, NY 10016

In Witness Whereof, the **Insurer** has caused this policy to be executed and attested. This policy shall not be valid unless countersigned by a duly authorized representative of the **Insurer**.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 12001 PV (1/09)

Exhibit A, Page 41

**STARR INDEMNITY AND LIABILITY COMPANY**

---

## RESOLUTE PORTFOLIO℠
### For Private Companies

### *Directors & Officers Liability Coverage Section*

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this policy, and subject to the General Terms & Conditions Section and this Coverage Section, if purchased by the **Insured** as indicated in Item 3 of the Declarations, STARR INDEMNITY AND LIABILITY COMPANY (the **"Insurer"**) and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

1. **INSURING AGREEMENTS**

   **A.** The **Insurer** shall pay on behalf of any **Insured Person** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, except if the **Company** has indemnified the **Insured Person** for such **Loss**.

   **B.** The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against any **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, if the **Company** has indemnified the **Insured Person** for such **Loss**.

   **C.** The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

   **D.** The **Insurer** shall reimburse the **Company** for the **Derivative Costs** incurred by the **Company** in response to a **Derivative Demand** first made during the **Policy Period** (or Discovery Period, if applicable) for any **Wrongful Act** of any **Executive**, and reported to the **Insurer** in accordance with the terms of this policy. This Insuring Agreement D. shall apply only if purchased by the **Insured** as indicated in Item 3 of the Declarations and is subject to the Sublimit of Liability set forth in Item 4 of the Declarations which is the **Insurer's** maximum limit of liability under this Insuring Agreement D. for all **Derivative Costs** arising from all **Derivative Demands**. The Sublimit of Liability for **Derivative Costs** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section. This Insuring Agreement D. shall not provide coverage for any civil proceeding that is based upon or arises from a **Derivative Demand**.

2. **DEFINITIONS**

   (a) **"Claim"** means any:

       (1)    written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

       (2)    judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

           (i)    service of a complaint or similar pleading;

Exhibit A, Page 42

      (ii)   return of an indictment, information or similar document (in the case of a criminal proceeding); or

      (iii)  receipt or filing of a notice of charges;

(3)    arbitration proceeding commenced against an **Insured** by service of a demand for arbitration;

(4)    formal civil, criminal, administrative or regulatory investigation of an **Insured Person**, which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying such **Insured Person** as a person against whom a proceeding identified in (2) or (3) above may be commenced;

(5)    written request to toll or waive the applicable statute of limitations relating to a potential **Claim** against an **Insured** for a **Wrongful Act**; or

(6)    **Derivative Demand**, solely under Insuring Agreement D. if purchased by the **Insured**.

(b) **"Derivative Costs"** means the reasonable and necessary fees, costs, charges, or expenses incurred by the **Company**, its board of directors or any committee of its board of directors, solely in response to a **Derivative Demand** and do not include any settlements, judgments or damages, nor any compensation or benefits of any **Insured Persons**, or any overhead expenses of the **Company**. **Derivative Costs** shall be reimbursed by the **Insurer** sixty (60) days after the **Company** provides written notice to the **Insurer** of its final decision not to bring a civil proceeding against an **Executive**.

(c) **"Derivative Demand"** means a written demand by one or more shareholders of the **Company** upon the **Company's** board of directors to bring a civil proceeding on behalf of the **Company** against any **Executive** for a **Wrongful Act**.

(d) **"Employee"** means:

(1)    any person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, but only while that person is acting in the capacity as such;

(2)    any person leased to the **Company** so long as this person is working solely for the **Company** and only for conduct within his or her duties as such, but only if the **Company** indemnifies such leased person in the same manner as the **Company's** employees; and

(3)    any volunteer whose labor and service is engaged and directed by the **Company**, but only while that person is acting in the capacity as such.

(e) **"Executive"** means any:

(1)    past, present or future duly elected or appointed director, officer, trustee, governor, management committee **Member** or **Member** of the board of managers;

(2)    past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a foreign jurisdiction that is equivalent to an executive position listed in item (1) above; or

(3)    past, present or future general counsel and risk manager (or equivalent position) of the **Company**.

(f) **"Insured"** means the **Company** and any **Insured Person**.

(g) **"Insured Person(s)"** means any:

    (1)   **Executive;**

    (2)   **Employee;** or

    (3)   **Outside Entity Insured Person**.

(h) **"Loss"** means:

    (1)   damages, settlements or judgments;

    (2)   pre-judgment or post-judgment interest;

    (3)   costs or fees awarded in favor of the claimant;

    (4)   punitive, exemplary or the multiplied portion of any multiple damages awards, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

    (5)   **Derivative Costs**, solely under Insuring Agreement D. if purchased by the **Insured**; and

    (6)   **Defense Costs**.

    **"Loss"** does not include:

        (i)   any amounts for which the **Insureds** are not legally liable;

        (ii)   any amounts which are without legal recourse to the **Insureds**;

        (iii)   taxes;

        (iv)   fines and penalties, except as provided for in Definition (h) (4) above;

        (v)   matters which may be deemed uninsurable under applicable law;  or

        (vi)   any amounts paid or incurred in complying with a judgment or settlement for non-monetary or injunctive relief, but solely as respects the **Company**.

(i) **"Outside Entity"** means: (1) any not-for-profit entity which is exempt from taxation under Section 501(c)(3), (4) or (10) of the IRS Code, as amended, or any rule or regulation promulgated thereunder; or (2) any other entity listed as such by endorsement to this policy, for which an **Executive** acts as a director, officer, trustee or governor (or the equivalent thereof) at the written request of the **Company.** Any such person shall be referred to herein as an **"Outside Entity Insured Person"**, but only while that person is acting in the capacity as a director, officer, trustee or governor (or the equivalent thereof) of an **Outside Entity**.

(j) **"Securities Claim"** means a **Claim,** other than an administrative or regulatory proceeding against the **Company** or an investigation of the **Company**, made against any **Insured**:

    (1)   alleging a violation of any foreign, federal, state or local regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

        (i)   brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the **Company**; or

        (ii)   brought by a security holder of the **Company** with respect to such security holder's interest in securities of such **Company**; or

    (2)   brought derivatively on behalf of the **Company** by a security holder of such **Company**.

Notwithstanding the foregoing, **Securities Claim** shall include any formal administrative or regulatory proceeding against the **Company**, but only if and only during the time that such proceeding also constitutes a **Securities Claim** commenced and continuously maintained against an **Insured Person**.

The **Insurer** shall not assert that a **Loss** incurred in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, constitutes uninsurable loss and, subject to all other terms and conditions of this policy, shall deem that portion of such **Loss** as constituting **Loss** under this policy.

(k)  **"Subsidiary"** means any privately-held for-profit entity (except a partnership) of which the **Parent Company**:

    (1)   has **Management Control** ("Controlled Entity") before the inception of the **Policy Period**, either directly or indirectly through one or more other Controlled Entities;

    (2)   first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's annual revenue totals less than 25% of the consolidated revenue of the **Parent Company** as of its latest fiscal year; or

    (3)   first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's annual revenue totals 25% or more of the consolidated revenue of the **Parent Company** as of its latest fiscal year, but only if the **Parent Company** provides the **Insurer** with full particulars of the new **Subsidiary** within ninety (90) days after its creation or acquisition and pays any additional premium with respect to such entity within thirty (30) days after being requested to do so by the **Insurer**;

provided, however, that **Subsidiary** as defined in items (2) and (3) above shall not mean any entity which is a financial institution, including but not limited to a bank, insurance company, insurance agent/broker, securities broker/dealer, investment advisor, mutual fund or hedge fund, unless such entity is included in the definition of **Subsidiary** by specific written endorsement attached to this policy.

**"Subsidiary"** also means any not-for-profit entity which is under the exclusive control of the **Company.**

With respect to a **Claim** made against any **Subsidiary** or any **Insured Person** thereof, this policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective time such entity becomes a **Subsidiary** and prior to the effective time that such entity ceases to be a **Subsidiary**.

(l)  **"Wrongful Act(s)"** means:

    (1)   with respect to an **Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an **Insured Person** in his or her capacity as such or any matter claimed against an **Insured Person** by reason of such capacity;

    (2)   with respect to an **Outside Entity Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading

statement by a person in his or her capacity as an **Outside Entity Insured Person** or any matter claimed against such **Outside Entity Insured Person** by reason of such capacity; or

(3)   with respect to the **Company,** any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Company**.

## 3.  EXCLUSIONS

This policy shall not cover any **Loss** in connection with any **Claim**:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage or improper or illegal remuneration if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

(b) arising out of, based upon or attributable to any deliberate fraudulent act or any willful violation of law by an **Insured** if a final judgment or adjudication establishes that such act or violation occurred;

(c) arising out of, based upon or attributable to the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and any amendments thereto or similar provisions of any state statutory law if a final judgment or adjudication establishes that a violation of Section 16(b) occurred;

In determining the applicability of Exclusions (a), (b) and (c), the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured** shall not be imputed to any other **Insured**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company**.

(d) alleging, arising out of, based upon or attributable to any facts or circumstances of which an **Insured Person** had actual knowledge or information of, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, and that he or she reasonably believed may give rise to a **Claim** under this policy;

(e) based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement, except to the extent that such **Insured** would have been liable in the absence of such contract or agreement; provided, however, that this exclusion shall apply only to any **Claim** under Insuring Agreement C.;

(f) alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(g) alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

(h) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any **Insured Person** serving in any capacity other than as an **Executive** or an **Employee** or an **Outside Entity Insured Person:**

(i) brought by or on behalf of any **Insured**, other than an **Employee**;  provided, however, that this exclusion shall not apply to:

    (i) any **Claim** brought by an **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, a nd results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

    (ii) a shareholder derivative action, but only if such action is brought and maintained without the solicitation, approval, assistance, active participation or intervention of any **Insured**;

    (iii) any **Claim** brought by any **Executive** who has not served in such capacity, nor has acted as a consultant to the **Company**,  for at least three (3) years prior to the **Claim** being first made;

    (iv) any **Claim** brought against an **Insured  Person** arising out of or based upon any protected activity specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

    (v) any **Claim** brought by any **Executive** of a **Company** formed and operating in a foreign jurisdiction against such **Company** and any **Insured Person** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);  or

    (vi) any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Company** or any assignee of such trustee, examiner, receiver or similar official.

(j) alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**; provided, however, that this exclusion shall not apply to any **Claim** under Insuring Agreement A. or any **Securities Claim**, except for **Loss** constituting **Cleanup Costs**;

(k) alleging, arising out of, based upon or attributable to  any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law;

(l) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly any public offering of securities by the **Company** or an **Outside Entity**, or alleging a purchase or sale of such securities subsequent to such public offering; provided, however, that this exclusion shall not apply to:

    (i) any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933.  Coverage for such purchase or sale transaction shall be conditioned  solely upon the **Company** giving the **Insurer** written notice of any such public offering, including all details thereof, as soon as practicable, but not later than thirty days after the effective date of such offering; or

Exhibit A, Page 47

(ii)   any public offering of securities, other than an offering described in paragraph (i) above, as well as any purchase or sale of securities subsequent to such public offering. Coverage for such transaction shall be conditioned upon, within thirty days prior to the effective time of such public offering, the **Company**: (a) giving the **Insurer** written notice of such offering, including all details thereof, and any underwriting information required by the **Insurer**; and (b) accepting such terms, conditions and additional premium required by the **Insurer** for such coverage. Coverage provided pursuant to this paragraph is also subject to the **Company** paying such additional premium when due. The **Insurer** shall provide the **Company** with a quote for such coverage if the **Company** gives written notice of the offering as required in this paragraph.

(m) for any **Wrongful Act** arising out of any **Insured Person** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof; or which is brought by any securities holder of the **Outside Entity**, whether directly or derivatively, unless such securities holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Outside Entity**, any director, officer, trustee or governor thereof, an **Executive** or the **Company**; provided, however, that this exclusion shall not apply to:

(i)   any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

(ii)   any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Outside Entity** or any assignee of such trustee, examiner, receiver or similar official;

(iii)   any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** who has not served in such capacity, nor acted as a consultant to the **Outside Entity**, for at least three (3) years prior to such **Claim** being first made; or

(iv)   any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity**, formed and operating in a foreign jurisdiction against any **Outside Entity Insured Person** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(n) for bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, violation of any right of privacy, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to any **Securities Claim**;

(o) alleging, arising out of, based upon, or attributable to any actual or alleged: (i) violation of the Foreign Corrupt Practices Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law; (ii) payments, commissions, gratuities, benefits or other favors for the direct or indirect benefit of any officials, directors, agents, partners, representatives, principal shareholders, or owners of the **Company** or employees of any customers of the **Company**; or (iii) political contributions;

(p) alleging, arising out of, based upon, or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, termination or any other employment-related or employment practice claim, including but not limited to any wage-hour claim or any third-

CVS FL 12003 PV (1/09)          7

party discrimination or harassment claim;  provided, however, that this exclusion shall not apply to any **Securities Claim**;

(q) alleging, arising out of, based upon, or attributable to the ownership, management, maintenance, operation and/or control by the **Company** of any captive insurance company or entity, including but not limited to any **Claim** alleging the insolvency or bankruptcy of the **Company** as a result of such ownership, management, maintenance, operation and/or control;

(r) alleging, arising out of, based upon, or attributable to based upon, arising from, or in consequence of any actual or alleged plagiarism,  infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided, however, that this exclusion shall apply only to any **Claim** under Insuring Agreement C.;

(s) alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the **Insured**; provided, however, that this exclusion shall not apply to any **Securities Claim**, but only if such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Company** or any **Insured Person**.

## 4.  ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this Coverage Section, the **Insurer** shall in all events:

(1) first, pay **Loss** for which coverage is provided under this Coverage Section for any **Insured Person** under Insuring Agreement A.;

(2) second, only after payment of **Loss** has been made pursuant to item (1) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for  the **Company** under Insuring Agreement B.; and

(3) third, only after payment of **Loss** has been made pursuant to items (1) and (2) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available,  pay the **Loss** for which coverage is provided under this Coverage Section for  the **Company** under Insuring Agreement C. and D.

## 5.  NON-RESCINDABLE CLAUSE

The **Insurer**  irrevocably waives any right it may have to rescind coverage available under Insuring Agreement A. of this Coverage Section, in whole or in part, on any grounds.

STARR INDEMNITY AND LIABILITY COMPANY

# RESOLUTE PORTFOLIO℠
## For Private Companies

### *General Terms & Conditions Section*

In consideration of the payment of the premium and in reliance upon the **Application**, as applicable to each Coverage Section, which shall be deemed to be attached to, incorporated into, and made a part of this policy, and subject to this General Terms & Conditions Section and any applicable Coverage Section(s), if purchased by the **Insured** as indicated in Item 3 of the Declarations, **STARR INDEMNITY AND LIABILITY COMPANY** (the "**Insurer**") and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

1. **TERMS & CONDITIONS**

   The terms and conditions set forth in this General Terms & Conditions Section shall apply to all applicable Coverage Sections of this policy. The terms appearing in this General Terms & Conditions Section, which are defined in a Coverage Section, shall have the meaning provided for such terms in such Coverage Section for purposes of coverage under such Coverage Section. All defined terms used in this Policy, whether defined in Clause 2, below, or in a Coverage Section, appear in this Policy in boldface and initial-capitalized. The terms and conditions of each Coverage Section apply only to that particular Coverage Section. If any term or condition in this General Terms & Conditions Section is inconsistent or in conflict with the terms and conditions of any Coverage Section, the terms and conditions of such Coverage Section shall control.

2. **GENERAL DEFINITIONS**

   (a)    "**Application**" means all signed applications, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this policy or for any other policy of which this policy is a renewal, replacement or which it succeeds in time. **Application** shall also include, and incorporate, all publicly available documents.

   (b)    "**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

   (c)    "**Company**" means:

       (1)    the **Parent Company**;

       (2)    any **Subsidiary** of the **Parent Company**; and

       (3)    the **Parent Company** or any **Subsidiary** as a debtor, a debtor-in-possession or equivalent status;

          provided, however, that this Definition (c) (3) shall not apply to the Fiduciary Liability Coverage Section.

   (d)    "**Defense Costs**" means:

CVS FL 12002 PV (1/09)                    1

(1)     reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;

(2)     premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond;

(3)     reasonable and necessary fees, costs, charges or expenses incurred in response to any extradition or similar proceeding brought against an **Insured** in connection with a **Claim**; and

(4)     any fees, costs, charges or expenses incurred by the **Insured** at the specific request of the Insurer to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

"**Defense Costs**" does not include: (i) amounts incurred prior to the date a Claim is first made and reported to the **Insurer**, pursuant to the terms of the applicable Coverage Section; and (ii) compensation or benefits of any **Insured Person** or any overhead expenses of the Company.

(e)     "**Financial Impairment**" means the **Company** becoming a debtor-in-possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**.

(f)     "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation; the management committee members of a joint venture; or the **Members** of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(g)     "**Manager**" means a person serving in a directorial capacity for a limited liability company.

(h)     "**Member**" means an owner of a limited liability company represented by its membership interest, who also may serve as a **Manager**.

(i)     "**Parent Company**" means the entity named in Item 1 of the Declarations.

(j)     "**Policy Period**" means the period from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.  If one or more Coverage Sections have different inception, expiration or cancellation dates from those shown in Item 2 of the Declarations, the **Policy Period** for those Coverage Sections shall be set forth in an endorsement to this Policy.

(k)     "**Pollutants**" means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on, any list of hazardous substances issued by the United States Environmental Protection Agency or any foreign, state, county, municipality, or locality counterpart thereof.  Such substances shall include, without limitation, nuclear material or waste, any solid, liquid, gaseous or thermal irritant or contaminant, or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials.  **Pollutants** shall also mean any other air emission,

Exhibit A, Page 51

odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(l) "**Pollution**" means the actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere. **Pollution** also means any **Cleanup Costs**.

3. **LIMITS OF LIABILITY**

The Aggregate Limit of Liability For Each Separate Coverage Section, as set forth in Item 4 A. of the Declarations, is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, for each applicable Separate Coverage Section.

The Aggregate Limit of Liability For Each Combined Coverage Section, as set forth in Item 4 B. of the Declarations, is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, for all of the Coverage Sections that comprise the applicable Combined Coverage Section. Any **Loss** paid under one of the Coverage Sections that comprises a Combined Coverage Section will reduce, and may exhaust, the limit of liability available under the other Coverage Section(s) that comprise(s) such Combined Coverage Section.

Any Sublimit(s) of Liability, whether set forth in Item 4 of the Declarations or as otherwise provided under the terms of this policy, shall be part of, and not in addition to, the applicable Aggregate Limit of Liability set forth in Item 4 A. or 4 B. of the Declarations. Each Sublimit of Liability is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, to which the Sublimit(s) of Liability applies.

The Aggregate Policy Limit of Liability, as set forth in Item 4 C. of the Declarations, is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claims** first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy, for all Coverage Section(s) combined.

If any Aggregate Limit of Liability as set forth in Item 4 A. or 4 B. of the Declarations is exhausted by the payment of **Loss**, all obligations of the **Insurer** under this policy as respects the applicable Coverage Section(s) will be completely fulfilled and the **Insurer** will have no further obligations under this policy of any kind as respects the applicable Coverage Section(s) and the premium as respects the applicable Coverage Section(s) as set forth in Item 7 of the Declarations will be fully earned.

**Any** payment of **Loss** under any Aggregate Limit of Liability as set forth in Item 4 A. or 4 B. of the Declarations shall reduce and may exhaust the Aggregate Policy Limit of Liability as set forth in Item 4 C. of the Declarations. If the Aggregate Policy Limit of Liability is exhausted by the payment of such **Loss**, the **Insurer** will have no further obligations of any kind as respects this policy and the applicable premium set forth in Item 7 of the Declarations will be fully earned.

**Defense Costs** are part of, and not in addition to, the Aggregate Limit of Liability as set forth in Item 4 of the Declarations for each applicable Coverage Section, other than the Crime and Fidelity Coverage Section, and payment by the **Insurer** of **Defense Costs** shall reduce and

may exhaust such Aggregate Limit(s) of Liability. **Defense Costs** are subject to the Aggregate Policy Limit of Liability set forth in Item 4 C. of the Declarations.

If a Discovery Period is purchased by the **Insured** pursuant to Clause 8 of this General Terms & Conditions Section, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the applicable Limits of Liability as set forth in Item 4 of the Declarations.

The Limit of Liability applicable to the Crime and Fidelity Coverage Section is set forth in Clause 4 of that Coverage Section.

**4.    RETENTION CLAUSE**

Subject to all other terms and conditions of this policy, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount as set forth in Item 5 of the Declarations for each Insuring Agreement of the applicable Coverage Section(s). A single Retention amount shall apply to all **Loss** alleging the same or related **Wrongful Acts**. The Retention amount shall be borne by the **Insureds** and remain uninsured.

The application of a Retention to **Loss** under one Insuring Agreement shall not reduce the Retention that applies to **Loss** under any other Insuring Agreement. If different Retention amounts apply to different parts of a single **Loss**, the applicable Retention shall be applied separately to each part of the **Loss** and the sum of such Retention amounts shall not exceed the largest of the applicable Retention amounts as set forth in Item 5 of the Declarations.

If the **Company** is required or permitted to indemnify an **Insured Person** for any **Loss** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a **Company** and does not do so for any reason, the **Insurer** shall not require payment of the applicable Retention by the **Insured P erson**. However, the **Company** h ereby agrees to reimburse the **Insurer** for the full amount of such applicable Retention, unless the **Company** is unable to do so because of **Financial Impairment**.

Provided, however that this Clause No. 4, shall not apply to the Crime and Fidelity Coverage Section.

**5.    NOTICE OF CLAIM**

The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice of a **Claim** made against an **Insured** or an **O ccurrence**, as applicable under the appropriate Coverage Section, to the **Insurer** at the address set forth in Item 9 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

With respect to the Directors & Officers Liability Coverage Section, the **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** pursuant to this Clause 5, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** general counsel or risk manager (or individuals with equivalent responsibilities) becomes aware of the **Claim**; however, in no event shall such notice be provided later than sixty (60) days after the expiration of the **Policy Period** (or Discovery Period, if applicable).

With respect to the Employment Practices Liability Coverage Section and the Fiduciary Liability Coverage Section, the **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** pursuant to this Clause 5, of a **Claim** made against an **Insured** as soon as practicable after any **Insured Person** becomes

aware of the **Claim**; however, in no event shall such notice be provided later than thirty (30) days after the expiration of the **Policy Period** (or Discovery Period, if applicable).

With respect to all Coverage Sections, except the Crime and Fidelity Coverage Section, if written notice of a **Claim** has been given to the **Insurer** pursuant to this Clause 5, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** pursuant to this Clause 5, alleging, arising out of, based upon or attributable to the facts alleged in the previously noticed **Claim**, or alleging the same or related **Wrongful Act** alleged in the previously noticed **Claim**, shall be considered related to the previously noticed **Claim** and shall be deemed to have been made at the time notice of the previously noticed **Claim** was provided to the **Insurer**.

With respect to all Coverage Sections, except the Crime and Fidelity Coverage Section, if during the **Policy Period** (or Discovery Period, if applicable) an **Insured** becomes aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured**, the **Insured** may provide written notice to the **Insurer's** authorized agent of such circumstances. This written notice shall include the **Wrongful Act** allegations anticipated and the reasons for anticipating a **Claim**, with full particulars as to dates, persons and entities involved. If a **Claim** is subsequently made against such **Insured** and reported to the **Insurer** arising out of, based upon or attributable to the previously noticed circumstances, such **Claim** shall be considered first made at the time notice of such circumstances was provided to the **Insurer**.

6.    **DEFENSE OF CLAIM AND SETTLEMENT**

The **Insurer** has the right and duty to defend any **Claim** against any **Insured** covered under this policy, even if such **Claim** is false, fraudulent or groundless; however, the **Insurer** shall not have the right or duty to defend any **Claim** under: (1) Insuring Agreement D.: Derivative Demand Coverage of the Directors & Officers Liability Coverage Section; or (2) Insuring Agreement B: Voluntary Compliance Program Coverage of the Fiduciary Liability Coverage Section.

With respect to Insuring Agreement D.: Derivative Demand Coverage of the Directors & Officers Liability Coverage Section, the **Company,** and not the **Insurer**, has the duty to investigate and evaluate the **Derivative Demand**. The **Insurer** shall have the right to effectively associate with the **Company** in such process.

With respect to Insuring Agreement B: Voluntary Compliance Program Coverage of the Fiduciary Liability Coverage Section, the **Company**, and not the **Insurer**, has the duty to investigate and evaluate the **Voluntary Compliance Program Loss**. The **Insurer** shall have the right to effectively associate with the **Company** in such process, including the negotiation of any settlement as respects the **Voluntary Compliance Program Loss**.

The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention.

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

The **Insurer** shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate.  In the event the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, the **Insurer's** liability for **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled the **Claim**; plus (2) any **Defense Costs** incurred up to the date the **Insured** refused to settle such **Claim**; plus (3) eighty percent (80%) of covered **Loss**, other than **Defense Costs**, in excess of the amount for which the **Insurer** could have settled the **Claim**. However, in no event shall the **Insurer's** liability exceed the applicable Limit of Liability as set forth in Item 4 of the Declarations.

The **Insurer** shall pay **Defense Costs** prior to the final disposition of any **Claim**, excess of the applicable retention and subject to all other terms and conditions of this policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

7.    **ALLOCATION**

In the event the **Insured(s)** incurs **Loss** that is both covered and not covered by this policy, either because the **Claim** includes both covered and uncovered matters or because the **Claim** includes both insured and uninsured parties, the **Insured** and the **Insurer** agree to use their best efforts to determine a fair and appropriate allocation between covered and uncovered **Loss** based upon the relative legal and financial exposures of the parties to such matters. In the event of a settlement of such **Claim**, the allocation shall also be based upon the relative benefits to the **Insureds** from such a settlement.

If an allocation of **Loss** cannot be agreed to by the **Insurer** and the **Insured**: (1) the **Insurer** shall pay those amounts which it believes to be fair and equitable until an amount shall be agreed upon or determined pursuant to the provisions of this policy; and (2) there will be no presumption of allocation of **Loss** in any arbitration, suit or other proceeding.

8.    **DISCOVERY CLAUSE**

With respect to all Coverage Sections, except the Crime and Fidelity Coverage Section, if the **Company** or the **Insurer** refuses to renew one or more Coverage Sections of this policy, or if this policy is terminated by the **Insurer** for any reason (except for non-payment of premium), or if an **Organizational Change** as defined in Clause 13 occurs, the **Insured(s)** shall have the right to purchase a Discovery Period of up to six years following the effective date of such non-renewal, termination or **Organizational Change.** In the event of the non-renewal of one or more Coverage Sections of this policy, the **Insured** may purchase a Discovery Period solely as respects the Coverage Section(s) that has been non-renewed.

The **Insured's** right to purchase a Discovery Period shall lapse unless written notice of election to purchase such Discovery Period and the additional premium for such Discovery Period is received by the **Insurer** or its authorized agent within sixty days after such non-renewal, termination or **Organizational Change**. The additional premium for a Discovery Period of one or two years is set forth in Item 8 of the Declarations and shall be determined by multiplying the applicable percentage set forth in Item 8 of the Declarations by the premium for each applicable Coverage Section(s) as set forth in Item 7 of the Declarations. The additional premium for a Discovery Period of more than two years shall be determined by the **Insurer**.

During such **Discovery Period**, the **Insured** may provide the **Insurer** with written notice, pursuant to Clause 5 of this policy, of **Claims** made against an **Insured** solely with respect to

**Wrongful Acts** occurring prior to the effective date of the non-renewal or termination of the policy or the effective date of the **Organizational Change** and otherwise covered by this policy.

The Limit of Liability for the Discovery Period shall be part of, and not in addition to, the applicable Limits of Liability set forth in Item 4 of the Declarations.

The Discovery Period premium shall be fully earned at the inception of the Discovery Period. The Discovery Period is non-cancellable.

## 9. OTHER INSURANCE

The insurance provided by this policy shall apply only as excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess insurance over the applicable Limit of Liability provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. This policy shall not be subject to the terms and conditions of any other insurance policy.

In connection with any covered **Claim** made against an **Outside Entity Insured Person**, a leased employee, or an **Independent Contractor**, and subject to all other terms and conditions herein, this policy shall apply specifically excess of any indemnification and any other insurance coverage available to an **Outside Entity Insured Person**, a leased employee or an **Independent Contractor**. In the event such other insurance coverage available to an **Outside Entity Insured Person**, a leased employee or an **Independent Contractor** is provided by the **Insurer** (or would be provided except for the application of any retention, exhaustion of a limit of liability or failure to submit notice of a claim) then the **Insurer's** maximum aggregate limit of liability for all **Loss** combined in connection with a **Claim** covered, in whole or in part, by this policy and such other insurance policy, shall be the greater of (1) the Limit of Liability of the applicable Coverage Section(s) of this policy; or (2) the limit of liability of such other insurance policy.

## 10. REPRESENTATIONS AND SEVERABILITY

It is agreed that the **Insurer** has relied upon the information contained in the **Application**, as applicable to each Coverage Section, in issuing this policy. In regard to the statements, warranties, representations and information contained in the **Application**, no knowledge of any **Insured** shall be imputed to any other **Insured** for the purpose of determining whether coverage is available under this policy for any **Claim** made against such **Insured**. However, the knowledge possessed by any **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company**.

## 11. COVERAGE EXTENSIONS

This policy shall cover **Loss** arising from any **Claims** made against the estates, heirs, or legal representatives of any deceased person who was an **Insured Person** at the time the **Wrongful Acts** upo n which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such estates, heirs, or legal representatives, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

This policy shall also cover **Loss** arising from any **Claims** made against the legal representatives of any incompetent, insolvent or bankrupt person who was an **Insured Person**

Exhibit A, Page 56

at the time the **Wrongful Acts** upon which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such legal representatives, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

This policy shall also cover **Loss** arising from any **Claims** made against the lawful spouse or domestic partner (whether such status is derived by reason of statutory law, common law or otherwise) of any applicable jurisdiction in the world or any formal program established by the

**Company**) of an **Insured Person** for all **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of the spouse or domestic partner, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

The coverage extensions set forth in this Clause 11 are subject to all other terms and conditions of this policy.

12. **CANCELLATION AND NON RENE WAL CLAUSE**

This policy, or any applicable Coverage Section(s), may be cancelled by the **Parent Company** by sending written prior notice to the **Insurer** or its authorized agent as set forth in Item 9 of the Declarations stating when thereafter the cancellation of the policy, or the applicable Coverage Section(s), shall be effective. The policy, or the applicable Coverage Section(s), terminates at the date and hour specified in such notice. This policy may also be cancelled by the **Parent Company** by surrender of this policy to the **Insurer** or its authorized agent as set forth in Item 9 of the Declarations.  The policy terminates as of the date and time of surrender. The **Insurer** shall retain the customary short rate proportion of the premium, unless stated otherwise herein.

This policy, or any applicable Coverage Section(s), shall not be cancelled by or on behalf of the **Insurer** except by reason of non-payment of the premium set forth in Item 7 of the Declarations.  The **Insurer** may cancel the policy by delivering to the **Parent Company** or by mailing to the **Parent Company**, by registered mail, or by courier at the **Parent Company's** address set forth in the Declarations, written notice stating when, not less than twenty (20) days thereafter, the cancellation shall be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice.  In the event of such cancellation, the policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Parent Company**.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

The **Insurer** shall have no obligation to renew this policy or any applicable Coverage Section. In the event the **Insurer** decides to non-renew this policy or any applicable Coverage Section, it shall deliver or mail to the **Parent Company**, as identified in Item 1 of the Declarations, written notice of such decision at least sixty (60) days prior to the expiration of the **Policy Period**.

13.    **ORGANIZATIONAL CHANGES**

If during the **Policy Period:**

(1)    the **Parent Company** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2)    any person or entity or group of persons or entities acting in concert shall acquire more than 50% of the **Parent Company,**

(any events described in (1) or (2) are referred to herein as an **"Organizational Change")** then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of an **Organizational Change.** However, there shall be no coverage afforded by this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Organizational Change.** This policy shall be non-cancellable and the entire premium shall be deemed fully earned upon the effective time of the **Organizational Change.** The **Insured(s)** shall also have the right to purchase a Discovery Period described in Clause 8 in the event of an **Organizational Change.**

The **Parent Company** shall give the **Insurer** written notice of the **Organizational Change** as soon as practicable, but no later than thirty days after the effective date of the **Organizational Change.**

14.    **AUTHORIZATION AND NOTICES**

**The Parent Company** shall act on behalf of all **Insureds** with respect to all matters as respects this policy including: (1) giving of notice of **Claim;** (2) giving and receiving of all correspondence and information; (3) giving and receiving notice of cancellation; (4) payment of premiums; (5) receiving of any return premiums; (6) receiving and accepting of any endorsements issued to form a part of this policy; and (7) the exercising of any right to a Discovery Period.

15.    **VALUATION AND CURRENCY**

All amounts stated in this policy are expressed in United States dollars and all amounts payable under this policy are payable in United States dollars. If a judgment rendered or settlement entered into under this policy are stated in a currency other than United States dollars. then payment under this policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the final judgment is rendered or the settlement payment is established.

16.    **TERRITORY**

This policy extends to **Wrongful Acts** taking place, **Occurrences,** or **Claims** made anywhere in the world to the extent permitted by law.

17.    **ASSIGNMENT AND CHANGES TO THE POLICY**

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer.**

Notice to any agent or knowledge possessed by any agent or person acting on behalf of the **Insurer,** other than the **Insurer's** authorized agent as identified in Item 9 of the Declarations, will not result in a waiver or change in any part of this policy or prevent the **Insurer** from

CVS FL 12002 PV (1/09)                    9

asserting any right under the terms and conditions of this policy. The terms and conditions of this policy may only be waived or changed by written endorsement signed by the **Insurer** or its authorized agent.

18.    **BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of any of its obligations hereunder.

It is understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding involving the **Company** is commenced (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered **Claim** under this policy, the **Insureds** shall:

a.    waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the policy or its proceeds under such Bankruptcy Law; and

b.    agree not to oppose or object to any efforts by the **Company**, the **Insurer** or any **Insured Person** to obtain relief from any such stay or injunction.

In the event the **Company** becomes a debtor-in-possession or equivalent status under such Bankruptcy Law, and the total covered **Loss** under this policy exceeds the available applicable Limit of Liability, the **Insurer** shall:

a.    first pay the **Loss** allocable to **Wrongful Acts** that are actually or allegedly caused, committed, or attempted prior to the **Company** becoming a debtor-in-possession or some equivalent status, then

b.    pay any remaining **Loss** allocable to **Wrongful Acts** that are actually or allegedly caused, committed, or attempted after the **Company** became a debtor-in-possession or some equivalent status.

19.    **SUBROGATION**

In addition to any right of subrogation existing at law, in equity or otherwise, in the event of any payment by the **Insurer** under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured(s)'** rights of recovery. The **Insured(s)** shall execute all papers required (including those documents necessary for the **Insurer** to bring suit or other form of proceeding in their name) and do everything that may be necessary to pursue and secure such rights.

20.    **ACTION AGAINST THE INSURER**

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all material terms of this policy and the amount of the **Insured's** obligation has been fully determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No person or entity shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the **Insurer** be impleaded by such **Insured** or legal representatives of such **Insured**.

Exhibit A, Page 59

21. **CONFORMITY TO STATUTE**

Any terms of this policy which are in conflict with the terms of any applicable laws construing this policy, including any endorsement to this policy which is required by any state Department of Insurance, or equivalent authority ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement.

In the event any portion of this policy shall be declared or deemed invalid or unenforceable under applicable law, such invalidity or unenforceability shall not affect the validity or enforceability of any other portion of this policy.

22. **HEADINGS**

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of this policy's terms or conditions.

Exhibit A, Page 60

STARR INDEMNITY AND LIABILITY COMPANY

RESOLUTE PORTFOLIO℠
For Private Companies

*Directors & Officers Liability Coverage Section*

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this policy, and subject to the General Terms & Conditions Section and this Coverage Section, if purchased by the **Insured** as indicated in Item 3 of the Declarations, STARR INDEMNITY AND LIABILITY COMPANY (the **"Insurer"**) and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

1. **INSURING AGREEMENTS**

    A. The **Insurer** shall pay on behalf of any **Insured Person** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, except if the **Company** has indemnified the **Insured Person** for such **Loss**.

    B. The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against any **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy, if the **Company** has indemnified the **Insured Person** for such **Loss**.

    C. The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

    D. The **Insurer** shall reimburse the **Company** for the **Derivative Costs** incurred by the **Company** in response to a **Derivative Demand** first made during the **Policy Period** (or Discovery Period, if applicable) for any **Wrongful Act** of any **Executive**, and reported to the **Insurer** in accordance with the terms of this policy. This Insuring Agreement D. shall apply only if purchased by the **Insured** as indicated in Item 3 of the Declarations and is subject to the Sublimit of Liability set forth in Item 4 of the Declarations which is the **Insurer's** maximum limit of liability under this Insuring Agreement D. for all **Derivative Costs** arising from all **Derivative Demands**. The Sublimit of Liability for **Derivative Costs** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section. This Insuring Agreement D. shall not provide coverage for any civil proceeding that is based upon or arises from a **Derivative Demand**.

2. **DEFINITIONS**

    (a) **"Claim"** means any:

        (1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

        (2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

            (i) service of a complaint or similar pleading;

(ii)    return of an indictment, information or similar document (in the case of a criminal proceeding); or

(iii)    receipt or filing of a notice of charges;

(3)    arbitration proceeding commenced against an **Insured** by service of a demand for arbitration;

(4)    formal civil, criminal, administrative or regulatory investigation of an **Insured Person**, which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying such **Insured Person** as a person against whom a proceeding identified in (2) or (3) above may be commenced;

(5)    written request to toll or waive the applicable statute of limitations relating to a potential **Claim** against an **Insured** for a **Wrongful Act**; or

(6)    **Derivative Demand**, solely under Insuring Agreement D. if purchased by the **Insured**.

(b) **"Derivative Costs"** means the reasonable and necessary fees, costs, charges, or expenses incurred by the **Company**, its board of directors or any committee of its board of directors, solely in response to a **Derivative Demand** and do not include any settlements, judgments or damages, nor any compensation or benefits of any **Insured Persons**, or any overhead expenses of the **Company**. **Derivative Costs** shall be reimbursed by the **Insurer** sixty (60) days after the **Company** provides written notice to the **Insurer** of its final decision not to bring a civil proceeding against an **Executive**.

(c) **"Derivative Demand"** means a written demand by one or more shareholders of the **Company** upon the **Company's** board of directors to bring a civil proceeding on behalf of the **Company** against any **Executive** for a **Wrongful Act**.

(d) **"Employee"** means:

(1)    any person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, but only while that person is acting in the capacity as such;

(2)    any person leased to the **Company** so long as this person is working solely for the **Company** and only for conduct within his or her duties as such, but only if the **Company** indemnifies such leased person in the same manner as the **Company's** employees; and

(3)    any volunteer whose labor and service is engaged and directed by the **Company**, but only while that person is acting in the capacity as such.

(e) **"Executive"** means any:

(1)    past, present or future duly elected or appointed director, officer, trustee, governor, management committee **Member** or **Member** of the board of managers;

(2)    past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a foreign jurisdiction that is equivalent to an executive position listed in item (1) above; or

(3)    past, present or future general counsel and risk manager (or equivalent position) of the **Company**.

(f) **"Insured"** means the **Company** and any **Insured Person**.

CVS FL 12003 PV (1/09)          2

(g) **"Insured Person(s)"** means any:

    (1)   **Executive;**

    (2)   **Employee;** or

    (3)   **Outside Entity Insured Person**.

(h) **"Loss"** means:

    (1)   damages, settlements or judgments;

    (2)   pre-judgment or post-judgment interest;

    (3)   costs or fees awarded in favor of the claimant;

    (4)   punitive, exemplary or the multiplied portion of any multiple damages awards, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

    (5)   **Derivative Costs**, solely under Insuring Agreement D. if purchased by the **Insured**; and

    (6)   **Defense Costs**.

**"Loss"** does not include:

    (i)   any amounts for which the **Insureds** are not legally liable;

    (ii)   any amounts which are without legal recourse to the **Insureds**;

    (iii)   taxes;

    (iv)   fines and penalties, except as provided for in Definition (h) (4) above;

    (v)   matters which may be deemed uninsurable under applicable law; or

    (vi)   any amounts paid or incurred in complying with a judgment or settlement for non-monetary or injunctive relief, but solely as respects the **Company**.

(i) **"Outside Entity"** means: (1) any not-for-profit entity which is exempt from taxation under Section 501(c)(3), (4) or (10) of the IRS Code, as amended, or any rule or regulation promulgated thereunder; or (2) any other entity listed as such by endorsement to this policy, for which an **Executive** acts as a director, officer, trustee or governor (or the equivalent thereof) at the written request of the **Company**. Any such person shall be referred to herein as an **"Outside Entity Insured Person"**, but only while that person is acting in the capacity as a director, officer, trustee or governor (or the equivalent thereof) of an **Outside Entity**.

(j) **"Securities Claim"** means a **Claim**, other than an administrative or regulatory proceeding against the **Company** or an investigation of the **Company**, made against any **Insured**:

    (1)   alleging a violation of any foreign, federal, state or local regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

        (i)   brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the **Company**; or

CVS FL 12003 PV (1/09)        3

      (ii)   brought by a security holder of the **Company** with respect to such security holder's interest in securities of such **Company**; or

  (2)   brought derivatively on behalf of the **Company** by a security holder of such **Company**.

Notwithstanding the foregoing, **Securities Claim** shall include any formal administrative or regulatory proceeding against the **Company**, but only if and only during the time that such proceeding also constitutes a **Securities Claim** commenced and continuously maintained against an **Insured Person**.

The **Insurer** shall not assert that a **Loss** incurred in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, constitutes uninsurable loss and, subject to all other terms and conditions of this policy, shall deem that portion of such **Loss** as constituting **Loss** under this policy.

(k) **"Subsidiary"** means any privately-held for-profit entity (except a partnership) of which the **Parent Company**:

  (1)   has **Management Control** ("Controlled Entity") before the inception of the **Policy Period**, either directly or indirectly through one or more other Controlled Entities;

  (2)   first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's annual revenue totals less than 25% of the consolidated revenue of the **Parent Company** as of its latest fiscal year; or

  (3)   first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's annual revenue totals 25% or more of the consolidated revenue of the **Parent Company** as of its latest fiscal year, but only if the **Parent Company** provides the **Insurer** with full particulars of the new **Subsidiary** within ninety (90) days after its creation or acquisition and pays any additional premium with respect to such entity within thirty (30) days after being requested to do so by the **Insurer**;

provided, however, that **Subsidiary** as defined in items (2) and (3) above shall not mean any entity which is a financial institution, including but not limited to a bank, insurance company, insurance agent/broker, securities broker/dealer, investment advisor, mutual fund or hedge fund, unless such entity is included in the definition of **Subsidiary** by specific written endorsement attached to this policy.

**"Subsidiary"** also means any not-for-profit entity which is under the exclusive control of the **Company.**

With respect to a **Claim** made against any **Subsidiary** or any **Insured Person** thereof, this policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective time such entity becomes a **Subsidiary** and prior to the effective time that such entity ceases to be a **Subsidiary**.

(l) **"Wrongful Act(s)"** means:

  (1)   with respect to an **Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an **Insured Person** in his or her capacity as such or any matter claimed against an **Insured Person** by reason of such capacity;

  (2)   with respect to an **Outside Entity Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading

CVS FL 12003 PV (1/09)           4

statement by a person in his or her capacity as an **Outside Entity Insured Person** or any matter claimed against such **Outside Entity Insured Person** by reason of such capacity; or

(3)  with respect to the **Company,** any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Company**.

## 3. EXCLUSIONS

This policy shall not cover any **Loss** in connection with any **Claim**:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage or improper or illegal remuneration if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

(b) arising out of, based upon or attributable to any deliberate fraudulent act or any willful violation of law by an **Insured** if a final judgment or adjudication establishes that such act or violation occurred;

(c) arising out of, based upon or attributable to the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and any amendments thereto or similar provisions of any state statutory law if a final judgment or adjudication establishes that a violation of Section 16(b) occurred;

In determining the applicability of Exclusions (a), (b) and (c), the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured** shall not be imputed to any other **Insured**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company**.

(d) alleging, arising out of, based upon or attributable to any facts or circumstances of which an **Insured Person** had actual knowledge or information of, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, and that he or she reasonably believed may give rise to a **Claim** under this policy;

(e) based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement, except to the extent that such **Insured** would have been liable in the absence of such contract or agreement; provided, however, that this exclusion shall apply only to any **Claim** under Insuring Agreement C.;

(f) alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(g) alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

Exhibit A, Page 65

(h) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any **Insured Person** serving in any capacity other than as an **Executive** or an **Employee** or an **Outside Entity Insured Person:**

(i) brought by or on behalf of any **Insured**, other than an **Employee**;  provided, however, that this exclusion shall not apply to:

    (i) any **Claim** brought by an **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, a nd results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

    (ii) a shareholder derivative action, but only if such action is brought and maintained without the solicitation, approval, assistance, active participation or intervention of any **Insured**;

    (iii) any **Claim** brought by any **Executive** who has not served in such capacity, nor has acted as a consultant to the **Company**,  for at least three (3) years prior to the **Claim** being first made;

    (iv) any **Claim** brought against an **Insured  Person** arising out of or based upon any protected activity specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

    (v) any **Claim** brought by any **Executive** of a **Company** formed and operating in a foreign jurisdiction against such **Company** and any **Insured Person** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);  or

    (vi) any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Company** or any assignee of such trustee, examiner, receiver or similar official.

(j) alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**; provided, however, that this exclusion shall not apply to any **Claim** under Insuring Agreement A. or any **Securities Claim**, except for **Loss** constituting **Cleanup Costs**;

(k) alleging, arising out of, based upon or attributable to  any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law;

(l) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly any public offering of securities by the **Company** or an **Outside Entity**, or alleging a purchase or sale of such securities subsequent to such public offering; provided, however, that this exclusion shall not apply to:

    (i) any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933.  Coverage for such purchase or sale transaction shall be conditioned  solely upon the **Company** giving the **Insurer** written notice of any such public offering, including all details thereof, as soon as practicable, but not later than thirty days after the effective date of such offering; or

Exhibit A, Page 66

(ii)     any public offering of securities, other than an offering described in paragraph (i) above, as well as any purchase or sale of securities subsequent to such public offering. Coverage for such transaction shall be conditioned upon, within thirty days prior to the effective time of such public offering, the **Company**: (a) giving the **Insurer** written notice of such offering, including all details thereof, and any underwriting information required by the **Insurer**; and (b) accepting such terms, conditions and additional premium required by the **Insurer** for such coverage. Coverage provided pursuant to this paragraph is also subject to the **Company** paying such additional premium when due. The **Insurer** shall provide the **Company** with a quote for such coverage if the **Company** gives written notice of the offering as required in this paragraph.

(m)   for any **Wrongful Act** arising out of any **Insured Person** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof; or which is brought by any securities holder of the **Outside Entity**, whether directly or derivatively, unless such securities holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Outside Entity**, any director, officer, trustee or governor thereof, an **Executive** or the **Company**; provided, however, that this exclusion shall not apply to:

(i)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

(ii)     any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Outside Entity** or any assignee of such trustee, examiner, receiver or similar official;

(iii)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** who has not served in such capacity, nor acted as a consultant to the **Outside Entity**, for at least three (3) years prior to such **Claim** being first made; or

(iv)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity**, formed and operating in a foreign jurisdiction against any **Outside Entity Insured Person** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(n)   for bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, violation of any right of privacy, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to any **Securities Claim**;

(o)   alleging, arising out of, based upon, or attributable to any actual or alleged: (i) violation of the Foreign Corrupt Practices Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law; (ii) payments, commissions, gratuities, benefits or other favors for the direct or indirect benefit of any officials, directors, agents, partners, representatives, principal shareholders, or owners of the **Company** or employees of any customers of the **Company**; or (iii) political contributions;

(p)   alleging, arising out of, based upon, or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, termination or any other employment-related or employment practice claim, including but not limited to any wage-hour claim or any third-

CVS FI. 12003 PV (1/09)         7

party discrimination or harassment claim;  provided, however, that this exclusion shall not apply to any **Securities Claim**;

(q) alleging, arising out of, based upon, or attributable to the ownership, management, maintenance, operation and/or control by the **Company** of any captive insurance company or entity, including but not limited to any **Claim** alleging the insolvency or bankruptcy of the **Company** as a result of such ownership, management, maintenance, operation and/or control;

(r) alleging, arising out of, based upon, or attributable to based upon, arising from, or in consequence of any actual or alleged plagiarism,  infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided, however, that this exclusion shall apply only to any **Claim** under Insuring Agreement C.;

(s) alleging, arising out of, based upon or attributable to the rendering or failure to render any professional service to a customer or client of the **Insured**; provided, however, that this exclusion shall not apply to any **Securities Claim**, but only if such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Company** or any **Insured Person**.

## 4.   ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this Coverage Section, the **Insurer** shall in all events:

(1) first, pay **Loss** for which coverage is provided under this Coverage Section for any **Insured Person** under Insuring Agreement A.;

(2) second, only after payment of **Loss** has been made pursuant to item (1) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for  the **Company** under Insuring Agreement B.; and

(3) third, only after payment of **Loss** has been made pursuant to items (1) and (2) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available,  pay the **Loss** for which coverage is provided under this Coverage Section for  the **Company** under Insuring Agreement C. and D.

## 5.   NON-RESCINDABLE CLAUSE

The **Insurer** irrevocably waives any right it may have to rescind coverage available under Insuring Agreement A. of this Coverage Section, in whole or in part, on any grounds.

Exhibit A, Page 68

**STARR INDEMNITY AND LIABILITY COMPANY**

---

# RESOLUTE PORTFOLIO℠
## For Private Companies

### *Employment Practices Liability Coverage Section*

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this policy, and subject to the General Terms & Conditions Section and this Coverage Section, if purchased by the **Insured** as indicated in Item 3 of the Declarations, STARR INDEMNITY AND LIABILITY COMPANY (the **"Insurer"**) and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

## 1. INSURING AGREEMENTS

### A. Employment Practices Liability Coverage

The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

### B. Third-Party Liability Coverage (Optional)

The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Third-Party Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Third-Party Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy. This Insuring Agreement B. shall apply only if purchased by the **Insured** as indicated in Item 3 of the Declarations and is subject to the Sublimit of Liability set forth in Item 4 of the Declarations which is the **Insurer's** maximum limit of liability under this Insuring Agreement B. for all Loss arising from all **Third-Party Claims.** The Sublimit of Liability for **Third-Party Claims** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section.

## 2. DEFINITIONS

(a) **"Benefits"** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with any employee-related plan. **Benefits** shall not include salary, wages, bonuses or non-deferred cash incentive compensation.

(b) **"Claim"** means any:

    (1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

    (2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

CVS FL 12004 PV (1/09)                                    1

       (i)     service of a complaint or similar pleading;

       (ii)    return of an indictment, information or similar document (in the case of a criminal proceeding); or

       (iii)   receipt or filing of a notice of charges;

(3)    arbitration proceeding commenced against an **Insured** by service of a demand for arbitration;

(4)    notification of an investigation of an **Insured** by the Equal Employment Opportunity Commission ("EEOC") or similar governmental agency commenced by the filing of a notice of charges, formal investigative order or similar document;

(5)    audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"), but only if commenced by the receipt of a notice of violation, order to show cause, or a written demand for monetary or non-monetary or injunctive relief;

(6)    written request to toll or waive the applicable statute of limitations relating to a potential **Claim** against an **Insured** for a **Wrongful Act**; or

(7)    **Third-Party Claim,** solely under Insuring Agreement B. if purchased by the **Insured**.

**Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(c)    **"Discrimination"** means any violation of employment discrimination laws, including but not limited to any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation or segregation of any **Employee** or applicant for employment by the **Company** in any way that would deprive any person of employment opportunities based on such person's race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, veteran status or any other status that is protected pursuant to any foreign, federal, state, or local statutory law or common law.

(d)    **"Employee"** means any:

(1)    person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company,** but only while that person is acting in the capacity as such;

(2)    person leased to the **Company** or any **Independent Contractor** so long as this person is working solely for the **Company** and only for conduct within his or her duties as such, but only if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees; and

(3)    volunteer whose labor and service is engaged and directed by the **Company**, but only while that person is acting in the capacity as such.

(e)    **"Executive"** means:

(1)    any past, present or future duly elected or appointed director, officer, trustee, governor, management committee **Member** or **Member** of the board of managers, but only while that person is acting in the capacity as such; or

Exhibit A, Page 70

(2) any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a foreign jurisdiction that is equivalent to an executive position listed in (1) above, but only while that person is acting in the capacity as such.

(f) **"Harassment"** means:

(1) sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**; or

(2) workplace harassment, including work-related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**.

(g) **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company** which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

(h) **"Insured(s)"** means the **Company** and any **Insured Person**.

(i) **"Insured Person(s)"** means any:

(1) **Executive**;

(2) **Employee**; or

(3) **Outside Entity Insured Person**.

(j) **"Loss"** means:

(1) damages (including back pay and front pay), settlements or judgments;

(2) pre-judgment or post-judgment interest;

(3) costs or fees awarded in favor of the claimant;

(4) punitive, exemplary and multiplied damages (including the multiple or liquidated damages awarded pursuant to the Age Discrimination in Employment Act or Equal Pay Act), but only to the extent such damages are insurable under the applicable law most favorable to the insurability of such damages; and

(5) **Defense Costs**.

**"Loss"** does not include:

(i) any amounts for which the **Insureds** are not legally liable;

(ii) any amounts which are without legal recourse to the **Insureds**;

(iii) taxes;

Exhibit A, Page 71

(iv)   fines and penalties, except as provided for in Definition (j) (4) above;

(v)    matters which may be deemed uninsurable under applicable law;

(vi)   any costs or liability incurred by any **Insured** to modify any building or property to make it more accessible or accommodating to any disabled person, or in connection with any educational, sensitivity or other corporate program, policy or seminar;

(vii)  **Stock Benefits** due or to become due or the equivalent value of such **Stock Benefits**; or

(viii) any future compensation, including any **Benefits**, for any person hired, promoted or reinstated pursuant to a judgment, settlement, order or other resolution of a **Claim**.

However, this policy shall provide coverage for **Defense Costs** incurred in a **Claim** involving items (i) through (viii) above, subject to all other terms, conditions and exclusions of this policy.

(k)   **"Outside Entity"** means: (1) any not-for-profit entity which is exempt from taxation under Section 501(c)(3), (4) or (10) of the IRS Code, as amended, or any rule or regulation promulgated thereunder; or (2) any other entity listed as such by endorsement to this policy, for which an **Executive** acts as a director, officer, trustee or governor (or the equivalent thereof) at the specific request of the **Company**. Any such **Executive** shall be referred to herein as an **"Outside Entity Insured Person"**, but only while that person is acting in the capacity as a director, officer, trustee or governor (or the equivalent thereof) of an **Outside Entity**.

(l)   **"Retaliation"** means retaliatory treatment of an **Employee** or an employee of an **Outside Entity** alleged to be on account of such individual:

(1)  exercising his or her rights under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

(2)  refusing to violate any law or opposing any unlawful practice;

(3)  having assisted or testified in or cooperated with any legal proceeding or formal governmental investigation regarding alleged violations of law by any **Insured**;

(4)  disclosing or expressing an intent to disclose to a superior or to any governmental agency any alleged violations of law; or

(5)  filing or expressing an intent to file any claim against the **Company** or **Outside Entity** under the Federal False Claims Act or any other similar foreign, federal, state, or local "whistle blower" law.

(m)  **"Stock Benefits"** means any offering, plan or agreement between the **Company** and any **Insured Person** thereof, which grants stock or stock options or stock appreciation rights to such individual, including but not limited to stock options, restricted stock or any other stock grant, but not including employee stock ownership plans or employee stock purchase plans.

Exhibit A, Page 72

(n) **"Subsidiary"** means any privately-held for-profit entity (except a partnership) of which the **Parent Company**:

   (1) has **Management Control** ("Controlled Entity") before the inception of the **Policy Period,** either directly or indirectly through one or more other Controlled Entities;

   (2) first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's employee count totals less than 25% of the consolidated employee count of the **Parent Company**; or

   (3) first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's employee count totals 25% or more of the consolidated employee count of the **Parent Company**, but only if the **Parent Company** provides the **Insurer** with full particulars of the new **Subsidiary** within ninety (90) days after its creation or acquisition and pays any additional premium with respect to such entity within thirty (30) days after being requested to do so by the **Insurer**;

   provided, however, that **Subsidiary** as defined in items (2) and (3) above shall not include any entity which is a financial institution, such as a bank, insurance company, insurance agent/broker, securities broker/dealer, investment advisor, mutual fund or hedge fund, unless such entity is included in the definition of **Subsidiary** by specific written endorsement attached to this policy.

   **"Subsidiary"** also means any not-for-profit entity which is under the exclusive control of the **Company**.

   With respect to a **Claim** made against any **Subsidiary** or any **Insured Person** thereof, this policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective time such entity becomes a **Subsidiary** and prior to the effective time that such entity ceases to be a **Subsidiary**.

(o) **"Third-Party"** means any natural person who is a customer, vendor, service provider or other business invitee of the **Company**. **Third-Party** shall not include an **Insured Person**.

(p) **"Third-Party Claim"** means a **Claim** for any **Third-Party Wrongful Act**.

(q) **"Third-Party Wrongful Act"** means any actual or alleged:

   (1) discrimination against a **Third-Party** based upon such **Third-Party's** race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, veteran status or any other status that is protected pursuant to any foreign, federal, state, or local statutory law or common law; or

   (2) sexual harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **Third-Party**.

(r) **"Workplace Tort"** means any employment-related:

   (1) misrepresentation, defamation (including libel and slander), false arrest, detention, imprisonment, invasion of privacy, negligent evaluation, wrongful discipline or wrongful deprivation of a career opportunity; or

Exhibit A, Page 73

(2)    negligent retention, supervision, hiring or training, wrongful infliction of emotional distress, mental anguish or humiliation or failure to provide or enforce consistent employment-related corporate policies and procedures,

when alleged as part of a **Claim** for actual or alleged **Wrongful Employment Decision**, **Discrimination**, **Harassment**, or **Retaliation**.

(s)    **"Wrongful Act(s)"** means any actual or alleged **Discrimination, Harassment, Retaliation, Workplace Tort** or **Wrongful Employment Decision** committed by the **Insured** but only if such act relates to an **Employee** or an applicant for employment with the **Company** or an **Outside Entity**.

(t)    **"Wrongful Employment Decision"** means any actual or alleged: (1) wrongful termination, dismissal, or discharge of employment, demotion, denial of tenure, or failure or refusal to hire or promote; or (2) breach of any implied employment contract or obligation, including but not limited to any such obligation arising out of any personnel manual, employee handbook or policy statement.

3.    **EXCLUSIONS**

This policy shall not cover any **Loss** in connection with any **Claim**:

(a)    alleging, arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act by an **Insured** if a final judgment or adjudication establishes that such criminal or fraudulent act occurred;

In determining the applicability of Exclusion (a), the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured** shall not be imputed to any other **Insured**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company**.

(b)    alleging, arising out of, based upon or attributable to any actual or alleged liability of the **Insured** under any express contract or agreement, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement; provided, however, that this exclusion shall not apply to any **Claim** brought against an **Insured Person**;

(c)    alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, any pending or prior: (i) litigation; or (ii) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(d)    alleging, arising out of, based upon or attributable to the same facts or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

(e)    for any **Wrongful Act** arising out of any **Insured Person** serving as a director, officer,

Exhibit A, Page 74

trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof;

(f)    for bodily injury (except emotional distress or mental anguish when associated with a **Wrongful Act**), sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(g)    alleging, arising out of, based upon, attributable to or in any way relating to the refusal, failure or inability of any **Insured** to pay wages or overtime pay for services rendered (exclusive of tort-based front pay or back pay), improper classification of any **Employee(s)**, improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee,** or failure to provide or enforce legally required meal or rest break periods; provided, however, that this exclusion shall not apply to any **Claim** for **Retaliation**;

(h)    alleging, arising out of, based upon or attributable to  any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law; provided, however, that this exclusion shall not apply to any **Claim** for **Retaliation**;

(i)    alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, that this exclusion shall not apply to any **Claim** for **Retaliation**;

(j)    alleging, arising out of, based upon or attributable to any lockout, strike, picket line, hiring of replacement workers, or other similar actions in connection with labor disputes or labor negotiations; provided, however, that this exclusion shall not apply to any **Claim** for **Retaliation**;

(k)    alleging, arising out of, based upon or attributable to any **Claim** brought by a securities holder of a **Company** or an **Outside Entity** in their capacity as such;

(l)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in any capacity, other than as an **Insured Person**.

Exhibit A, Page 75

STARR INDEMNITY AND LIABILITY COMPANY

RESOLUTE PORTFOLIO℠
For Private Companies

*Fiduciary Liability Coverage Section*

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this policy, and subject to the General Terms & Conditions Section and this Coverage Section, if purchased by the **Insured** as indicated in Item 3 of the Declarations, STARR INDEMNITY AND LIABILITY COMPANY (the **"Insurer"**) and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

**1. INSURING AGREEMENTS**

    **A. Fiduciary Liability Coverage**

        The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy.

        The **Insurer** shall also pay on behalf of any **Insured** the **Loss** arising from a **HIPAA Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with the terms of this policy. Coverage for **HIPAA Claims** under this Insuring Agreement A. is subject to the Sublimit of Liability set forth in Item 4 of the Declarations which is the **Insurer's** maximum limit of liability under this Insuring Agreement A. for all Loss arising from all **HIPAA Claims**. The Sublimit of Liability for **HIPAA Claims** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section.

    **B. Voluntary Compliance Program Coverage (Optional)**

        The **Insurer** shall reimburse any **Insured** the **Voluntary Compliance Program Loss** incurred by the **Insured** during the **Policy Period** (or Discovery Period, if applicable), and reported to the **Insurer** in accordance with the terms of this policy. This Insuring Agreement B. shall apply only if purchased by the **Insured** as indicated in Item 3 of the Declarations and is subject to the Sublimit of Liability set forth in Item 4 of the Declarations which is the **Insurer's** maximum limit of liability under this Insuring Agreement B. for all **Voluntary Compliance Program Losses**. The Sublimit of Liability for **Voluntary Compliance Program Loss** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section.

        The reimbursement by the **Insurer** to the **Insured** of any **Voluntary Compliance Program Loss** under this Coverage Section shall not waive any of the **Insurer's** rights under this policy or at law, including in the event that such **Loss** results in a **Claim** under Insuring Agreement A. of this Coverage Section.

**2. DEFINITIONS**

    (a) **"Administration"** means:

        (1) advising, counseling or giving notice to **Employees** with respect to any **Plan**;

Exhibit A, Page 76

      (2)   providing interpretations to **Employees**, participants or beneficiaries with respect to any **Plan**; or

      (3)   handling of records or effecting enrollment, termination or cancellation of **Employees**, participants or beneficiaries under any **Plan**.

(b)  "**Benefits**" means any obligation under a **Plan** to a participant or beneficiary under a **Plan** which is a payment of money or property, or the grant of a privilege, right, option or perquisite.

(c)  "**Claim**" means any:

      (1)   written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

      (2)   judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

          (i)     service of a complaint or similar pleading;
          (ii)    return of an indictment, information or similar document (in the case of a criminal proceeding); or
          (iii)   receipt or filing of a notice of charges;

      (3)   written notice of commencement of a fact finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including but not limited to, the Pensions Ombudsman appointed by the United Kingdom Pensions Regulator or any successor body thereto;

      (4)   **Voluntary Settlement Program Loss**, solely under Insuring Agreement B. if purchased by the **Insured**; or

      (5)   written request to toll or waive the applicable statute of limitations relating to a potential **Claim** against an **Insured** for a **Wrongful Act**.

(d)  "**Employee(s)**" means any natural person whose labor or service is engaged or directed by the **Company** or any **Plan** including any part-time, seasonal, leased or temporary employees or volunteers. **Employee** shall not include any **Independent Contractor**.

(e)  "**ERISA**" means the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law;

(f)  "**ESOP**" means any employee stock ownership plan as defined in **ERISA**, or any other **Plan** under which investments are made in securities of or issued by the **Company**;

(g)  "**HIPAA Claim**" means a **Claim** alleging, arising out of, based upon or attributable to the Health Insurance Portability and Accountability Act of 1996 and any amendments thereto ("**HIPAA**").

(h)  "**HIPAA Penalties**" means civil money penalties imposed upon an **Insured** for violation of **HIPAA's** privacy provisions.

Exhibit A, Page 77

(i) **"Indemnifiable Loss"** means **Loss** for which the **Company** has indemnified or is permitted or required to indemnify any **Insured Person**.

(j) **"Independent Contractor"** means any person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company** which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

(k) **"Insured(s)"** means:

　　(1) the **Company**;

　　(2) any **Plan**;

　　(3) any **Insured Person**; and

　　(4) any other person or entity in his, her or its capacity as a fiduciary, administrator or trustee of a **Plan** and included in the Definition of **Insured** by specific written endorsement attached to this policy.

(l) **"Insured Person(s)"** means any: (1) past, present or future natural person director, officer, trustee, general partner, management committee member, member of board of managers, governor (or any foreign equivalent); or (2) **Employee** of the **Company** or the **Plan** while acting in his or her capacity as a fiduciary of a **Plan**.

(m) **"Loss"** means:

　　(1)　damages, settlements or judgments;

　　(2)　pre-judgment or post-judgment interest;

　　(3)　costs or fees awarded in favor of the claimant;

　　(4)　punitive, exemplary or the multiplied portion of any multiple damages awards, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

　　(5)　**Voluntary Compliance Program Loss,** solely under Insuring Agreement B. if purchased by the **Insured**; and

　　(6)　**Defense Costs**.

　　**"Loss"** does not include:

　　　　(i)　any amounts for which the **Insureds** are not legally liable;

　　　　(ii)　any amounts which are without legal recourse to the **Insureds**;

　　　　(iii)　taxes;

　　　　(iv)　fines and penalties, except:

　　　　　　(a)　as provided for in Definition (m) (4) above;

CVS FI. 12005 PV (1/09)　　　　　　　　3

(b)    the five percent (5%) or less civil penalty imposed upon an **Insured** under Section 502 (i) of **ERISA**;

(c)    the twenty percent (20%) or less civil penalty imposed upon an **Insured** under Section 502 (l) of **ERISA**;

(d)    any civil fines and penalties imposed by either the Pension Ombudsman appointed by the United Kingdom Secretary of State for Social Services, by the United Kingdom Occupational Pensions Regulatory Authority, by the United Kingdom Pensions Regulator or any successor body thereto; provided, however, that any coverage for such fines and penalties applies only if the funds or assets of the subject **Plan** are not used to fund, pay or reimburse the premium for this Coverage Section;

(e)    fines and penalties as respects **Voluntary Compliance Program Loss**, solely under Insuring Agreement B. if purchased by the **Insured**; or

(f)    **HIPAA Penalties**, solely under Insuring Agreement A.

(v)    the return or reversion to an employer of any contribution or asset of a **Plan**;

(vi)    **Benefits,** or that portion of any settlement or award in an amount equal to such **Benefits**, unless to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person**;

(vii)    matters which may be deemed uninsurable under applicable law; or

(viii)    any amounts paid or incurred in complying with a judgment or settlement for non-monetary or injunctive relief, but solely as respects the **Company**.

However, this policy shall provide coverage for **Defense Costs** incurred in a **Claim** involving items (i) through (viii) above, subject to all other terms, conditions and exclusions of this policy.

(n)    **"Non-qualified Plan"** means any of the following plans for a select group of management or highly compensated directors, officers and/or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan, or excess benefit plan. **Non-qualified Plan** shall not include any **ESOP** or stock option plan.

(o)    **"Plan"** means any plan, fund, trust, program or **Non-qualified Plan** regardless of whether or not it is subject to regulation under Title I of **ERISA** or any part thereof, or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended, and which is:

(1)    a welfare plan, as defined in **ERISA**, sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees**;

(2)    a pension plan, as defined in **ERISA** (other than an **ESOP**), sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees**, provided that, prior to the inception date of this policy, such plan has been reported in writing to the **Insurer** pursuant to the terms of the **Application** for this policy or pursuant to the terms of any prior policy issued by the

CVS FL 12005 PV (1/09)                    4

**Insurer** or the **Application** for such policy and the **Company** shall have paid the premium required for such plan;

(3) a pension plan, as defined in **ERISA** (other than an **ESOP**), which, during the **Policy Period** becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees**, subject to the following:

    (i) if the assets of such **Plan** total 25% or less of the total consolidated assets of the **Plans** covered by this policy as of the inception date of this Coverage Section, this policy shall provide coverage with respect to **Wrongful Acts** that occurred after the date of such sponsorship. As a condition precedent to such coverage, the **Company** shall give written notice of such sponsorship to the **Insurer** prior to the end of the **Policy Period**; and

    (ii) if the assets of such **Plan** total more than 25% of the total consolidated assets of the **Plans** covered by this policy as of the inception date of this Coverage Section, this policy shall provide coverage with respect to **Wrongful Acts** that occurred after the date of such sponsorship. As a condition precedent to such coverage, the **Company** shall give written notice of such sponsorship to the **Insurer** within ninety (90) days after the date of such sponsorship, with full particulars regarding such plan, and the **Company** shall have paid the premium required for such plan.

(4) a plan which is both a welfare plan and a pension plan as defined in **ERISA** (other than an **ESOP**);

(5) a government-mandated program for workers compensation, unemployment, social security or disability benefits for **Employees**; solely with respect to a **Wrongful Act** as defined in Definition (r) (2) by an **Insured Person**;

(6) an **ESOP** that is included in the definition of **Plan** by written endorsement to this policy; or

(7) any other plan, fund, trust or program, including a multi-employer plan(s), solely with respect to a **Wrongful Act** by an **Insured Person** if acting at the specific request of the **Company**, which is included in the definition of **Plan** by specific written endorsement attached to this policy.

With respect to paragraphs (1) and (2) of this Definition, coverage under this policy shall apply to any pension or welfare plan that was merged, sold, spun-off or terminated prior to the **Policy Period** with respect to **Wrongful Acts** that occurred prior to the date of such merger, sale or spin-off or prior to the final date of asset distribution of such plan. As a condition precedent to such coverage, the **Company** s hall give written notice of such transaction to the **Insurer** prior to the inception date of this policy and the **Company** shall have paid the premium required for such plan.

With respect to paragraphs (1) and (2) of this Definition, coverage under this policy shall apply to any pension or welfare plan that was merged, sold, spun-off or terminated during the **Policy Period** with respect to **Wrongful Acts** that occurred prior to the date of such merger, sale or spin-off or prior to the final date of asset distribution of such plan. As a condition precedent to such coverage, the **Company** s hall give written notice of such transaction to the **Insurer** prior to the end of the **Policy Period.**

(p) "**Subsidiary**" means any for-profit entity (except a partnership) of which the **Parent Company**:

Exhibit A, Page 80

(1)    has **Management Control** ("Controlled Entity") before the inception of the **Policy Period,** either directly or indirectly through one or more other Controlled Entities;

(2)    first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities,  if such entity's assets total less than 35% of the consolidated assets of the **Parent Company** as of its most recently filed Form 10-Q; or

(3)    first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's assets total 35% or more of the consolidated assets of the **Parent Company** as of its most recently filed Form 10-Q,  but only if the **Parent Company** provides the **Insurer** with full particulars of the new **Subsidiary** within ninety (90) days after its creation or acquisition and pays any additional premium with respect to such entity within thirty (30) days after being requested to do so by the **Insurer**;

provided, however, that **Subsidiary** as defined in (2) and (3) above shall not mean any entity which is a financial institution, including but not limited to a bank, insurance company, insurance agent/broker, securities broker/dealer, investment advisor, mutual fund or hedge fund, unless such entity is included in the definition of **Subsidiary** by specific written endorsement attached to this policy.

**"Subsidiary"** also means any not-for-profit entity which is under the exclusive control of the **Company**.

With respect to a **Claim** made against any **Subsidiary** or any **Insured Person** thereof, this policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective time such entity becomes a **Subsidiary** and prior to the effective time that such entity ceases to be a **Subsidiary**.

(q)    **"Voluntary Compliance Program Loss"** means:

(1)    fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees imposed upon or collected from an **Insured** by the Internal Revenue Service ("IRS") under the Employee Plans Compliance Resolution System pursuant to a written agreement with the IRS, but only in the event that the **Insured** first becomes aware during the **Policy Period** that a **Plan** must be corrected;

(2)    penalties imposed upon an **Insured** by the IRS or the U.S. Department of Labor ("DOL") under a Delinquent Filer Voluntary Compliance Program, but only in the event that the failure to timely file Form 5500  occurs during the **Policy Period**; and

(3)    damages incurred by an **Insured** in connection with the DOL's Voluntary Fiduciary Correction Program, but only in the event that the **Insured's** compliance with such program results in the **Insured** obtaining a "No Action" letter from the DOL and that the breach of fiduciary duty occurs during the **Policy Period;** provided, however, that **Voluntary Compliance Program Loss** under this Definition (q) (3) shall not include fines, penalties or sanctions.

**Voluntary Compliance Program Loss** shall not include any costs to correct the **Insured's** non-compliance.

(r)    **"Wrongful Act"** means, with respect to any **Plan**, any actual or alleged:

(1)  breach of the responsibilities, obligations or duties imposed upon fiduciaries of the **Plan** by **ERISA**;

(2)  negligent act, error or omission in the **Administration** of any **Plan**;

(3)  matter claimed against an **Insured Person** solely by reason of his or her service as a fiduciary of any **Plan**; or

(4)  negligent hiring of a third-party to administer a **Plan** or **Benefits** provided thereunder.

## 3. EXCLUSIONS

This policy shall not cover any **Loss** in connection with any **Claim**:

(a)  arising out of, based upon or attributable to the gaining of any profit or advantage or improper or illegal remuneration if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

(b)  arising out of, based upon or attributable to any deliberate fraud or any wilful violation of law by an **Insured** if a final judgment or adjudication establishes that such fraud or violation occurred;

In determining the applicability of Exclusions (a) and (b), the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured** shall not be imputed to any other **Insured**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current chairman of the board, chief executive officer, president or chief financial officer of the **Company** shall be imputed to the **Company**.

(c)  for failure to fund a **Plan** in accordance with **ERISA** or the **Plan** instrument or to collect an employer's contributions owed to a **Plan**; provided, however, this exclusion shall not apply to: (i) the portion of **Loss** that is payable as a personal obligation of an **Insured Person**; or (ii) **Defense Costs**;

(d)  alleging, arising out of, based upon or attributable to the liability of others assumed by any **Insured** under any contract or agreement, either oral or written; provided, however, that this exclusion shall not apply: (i) to the extent that an **Insured** would have been liable in the absence of such contract or agreement; (ii) if the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which the **Plan** was established; or (iii) to **Defense Costs**.

(e)  alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, any pending or prior: (i) litigation; or (ii) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)  alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as

set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

(g) alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**; provided, however, that this exclusion shall not apply to any non-**Indemnifiable Loss** alleging damage to a **Plan**, except for non-**Indemnifiable Loss** constituting **Cleanup Costs**;

(h) for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to **Defense Costs** incurred in defending a **Claim** alleging a violation of the responsibilities, obligations or duties of **ERISA**;

(i) for any actual or alleged violation of any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law, anywhere in the world, except: (1) the Consolidated Omnibus Budget Reconciliation Act of 1985; (2) **HIPAA**; or (3) any amendments thereto or any rules or regulations promulgated thereunder;

(j) by or on behalf of a fidelity insurer against a natural person whose conduct has resulted in a loss which has been paid under a fidelity bond;

(k) alleging, arising out of, based upon, or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, termination or any other employment-related or employment practice claim; provided, however, that this exclusion shall not apply to any **Claim** asserted under Section 510 of **ERISA**;

(l) alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when the **Company** did not sponsor such **Plan** or when the **Insured Person** was not a fiduciary, administrator, trustee, director, officer, governor, management committee member, member of the board of managers, general partner or employee of the **Company** or, if applicable, a **Plan**;

(m) alleging, arising out of, based upon or attributable to any act or omission of an **Insured** in his, her or its capacity as a fiduciary or administrator of any plan, fund or program, other than a **Plan** as defined in this Coverage Section, or by reason of his, her or its status as a fiduciary or administrator of such other plan, fund or program.

**4.   RIGHT OF RECOURSE**

In the event an **Insured** breaches a fiduciary obligation under **ERISA**, the **Insurer** has the right of recourse against such **Insured** for any amount paid by the **Insurer** as a result of such breach of fiduciary duty, subject to all other terms and conditions of this policy; however, the **Insurer** shall have no right of recourse if the policy has been purchased by a fiduciary or by an employer or an employee organization.

**5.   ORDER OF PAYMENTS**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this Coverage Section, the **Insurer** shall in all events:

(1)   first, pay **Loss** for which coverage is provided under this Coverage Section for any **Insured Person**;

Exhibit A, Page 83

(2)    second, only after payment of **Loss** has been made pursuant to item (1) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for any covered **Plan**; and

(3)    third, only after payment of **Loss** has been made pursuant to items (1) and (2) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for the **Company**.

## 6.  NON-RESCINDABLE CLAUSE

Solely with respect to the coverage provided by this Coverage Section for any non-**Indemnifiable Loss**, the **Insurer** irrevocably waives any right it may have to rescind such coverage, in whole or in part, on any grounds.

Exhibit A, Page 84

**STARR INDEMNITY AND LIABILITY COMPANY**

---

# RESOLUTE PORTFOLIO℠
## For Private Companies

### *Crime and Fidelity Coverage Section*

In consideration of the payment of the premium and subject to the Insuring Agreements, terms, conditions and exclusions of this Coverage Section, if purchased by the **Company** as indicated in Item 3 of the Declarations, STARR INDEMNITY AND LIABILITY COMPANY (the "**Insurer**") and the **Parent Company**, on behalf of the **Company**, agree as follows:

1.    **INSURING AGREEMENTS**

        Coverage is provided under the following Insuring Agreements for which a Limit of Liability is indicated in Item 4 of the Declarations, and, applies to loss sustained by the **Company** resulting directly from an **Occurrence** taking place during the **Policy Period**, except as indicated in Condition 6.(a)(10), Loss Sustained During Prior Insurance Issued By The Insurer Or Any Affiliate, or Condition 6.(a)(11), Loss Sustained During Prior Insurance Not Issued By The Insurer Or Any Affiliate, and which is **Discovered** by the **Company** during the **Policy Period** or during the period of time provided in Condition 6.(a)(6), Extended Period To Discover Loss, of this Coverage Section.

        **A.**    **Employee Theft Insuring Agreement**

                The **Insurer** shall pay the **Parent Company** for direct loss of **Money**, **Securities** or **Other Property** sustained by the **Company** resulting from **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

        **B.**    **Forgery Or Alteration Insuring Agreement**

            (1)    The **Insurer** shall pay the **Parent Company** for loss resulting directly from **Forgery** o r alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **Money** that are:

                    a.     made or drawn by or drawn upon the **Company**, or
                    b.     made or drawn by one acting as an agent of the **Company**, or
                    c.     that are purported to have been so made or drawn.

                  For the purposes of this Insuring Agreement B, a substitute check as defined in the *Check Clearing for the 21ˢᵗ Century Act* shall be treated the same as the original it replaced.

            (2)    If the **Company** is sued for refusing to pay any instrument covered item in B.(1) above, on the basis that it has been forged or altered, and the **Company** has the written consent of the **Insurer** to defend against the suit, the **Insurer** will pay for any reasonable legal expenses incurred and paid by the **Company** in that defense. The amount that the **Insurer** shall pay is in addition to the Limit of Liability applicable to Insuring Agreement B.(1).

Exhibit A, Page 85

C.  **Inside the Premises – Loss of Money and Securities Insuring Agreement**

    (1)  The **Insurer** shall pay the **Parent Company** for the loss of **Money** and **Securities** inside the **Premises** or **Banking Premises**:

        a.  resulting directly from **Theft** committed by a person present inside such **Premises** or **Banking Premises**; or

        b.  resulting directly from disappearance or destruction.

    (2)  The **Insurer** shall pay the **Parent Company** for loss from damage to the **Premises** or its exterior resulting directly from an actual or attempted **Theft** of **Money** and **Securities**, if the **Company** is the owner of the **Premises** or is liable for damage to it.

    (3)  The **Insurer** shall pay the **Parent Company** for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the **Premises** resulting directly from an actual or attempted **Theft** of or unlawful entry into those containers.

D.  **Inside the Premises – Robbery Or Safe Burglary of Other Property Insuring Agreement**

    (1)  The **Insurer** shall pay the **Parent Company** for loss of or damage to **Other Property**:

        a.  inside the **Premises** resulting directly from an actual or attempted **Robbery** of a **Custodian**; or

        b.  inside the **Premises** in a safe or vault resulting directly from an actual or attempted **Safe Burglary**.

    (2)  The **Insurer** shall pay the **Parent Company** for loss from damage to the **Premises** or its exterior resulting directly from an actual or attempted **Robbery** of **Other Property**, if the **Company** is the owner of the **Premises** or is liable for damage to it.

    (3)  The **Insurer** will pay the **Parent Company** for loss of or damage to a locked safe or vault located inside the **Premises** resulting directly from an actual or attempted **Robbery** or **Safe Burglary**.

E.  **Outside The Premises Insuring Agreement**

    (1)  The **Insurer** shall pay the **Parent Company** for loss of **Money** and **Securities** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from **Theft**, disappearance or destruction.

    (2)  The **Insurer** shall pay the **Parent Company** for loss of or damage to **Other Property** outside the **Premises** in the care and custody of a **Messenger** or an armored motor vehicle company resulting directly from an actual or attempted **Robbery**.

F.    **Computer Fraud Insuring Agreement**

The **Insurer** shall pay the **Parent Company** for loss of or damage to **Money, Securities** and **Other Property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **Premises** or **Banking Premises**:

a.    to a person (other than a **Messenger**) outside those **Premises**.
b.    to a place outside those **Premises**.

G.    **Funds Transfer Insuring Agreement**

The **Insurer** shall pay the **Parent Company** for loss of **Funds** resulting directly from a **Fraudulent Instruction** directing a financial institution to transfer, pay or deliver **Funds** from the **Company's Transfer Account**.

H.    **Money Orders and Counterfeit Money Insuring Agreement**

The **Insurer** shall pay the **Parent Company** for loss resulting directly from the **Company** having accepted in good faith, in exchange for merchandise, **Money**, or services:

a.    money orders issued by any post office, express company or bank that are not paid upon presentation; or
b.    **Counterfeit Money** that is acquired during the regular course of business.

I.    **Credit, Debit, Charge Card Forgery Insuring Agreement**

The **Insurer** shall pay the **Parent Organization** for loss sustained by the **Company** resulting directly from **Credit Card Forgery** committed by a **Third Party**.

J.    **Clients Property Insuring Agreement**

The **Insurer** shall pay the **Parent Organization** for the direct loss of **Money, Securities**, or **Other Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

K.    **Investigative Expense Incurred to Establish Amount of Covered Loss Insuring Agreement**

The **Insurer** shall pay the **Parent Company** for reasonable investigative expense incurred by the **Company**, excluding the **Company's** internal corporate costs (such as salary, wages, commissions, benefits or overhead expenses), to establish the existence and amount of a covered loss. Investigative expenses shall not include expenses incurred by any **Client**. Coverage as provided by this Insuring Agreement K shall be subject to the prior written consent of the **Insurer**.

**2)    DEFINITIONS**

(a)    "**Banking Premises**" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

(b)     "**Client**" means a customer of the **Company** to whom the **Company** provides goods or services for a fee under written contract.

(c)     "**Credit Card Forgery**" means the **Forgery** or alteration of, on or in any written instrument required in connection with any credit, debit or charge card issued to the **Company** or, at the request of the **Company**, to an **Employee**.

(d)     "**Counterfeit Money**" means an imitation of **Money** that is intended to deceive and to be taken as genuine.

(e)     "**Custodian**" means the **Company**, any partners, any **Members**, or any **Employee** while having care and custody of property inside the **Premises**, excluding any person while acting as a **Watchperson** or janitor.

(f)     "**Discover(s)**", "**Discovery**" or "**Discovered**" means the time when the **Company's** General Counsel, any **Employee** of the Risk Management Department or Human Resources Department, or any **Employee** or officer at the level of corporate Vice President or above first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this Coverage Section has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"**Discover(s)**", "**Discovery**" or "**Discovered**" also means the time when the **Company's** General Counsel, any **Employee** of the Risk Management Department or Human Resources Department, or any **Employee** or officer at the level of corporate Vice President or above first receives notice of an actual or potential claim in which it is alleged that the **Company** is liable to a **Third Party** under circumstances, which, if true, would constitute a loss under this Coverage Section.

(g)     "**Employee**" means
(1)     any natural person:
　　　　(i)      while in the regular service of the **Company** and for the first forty-five (45) days immediately after termination of service, unless such termination is due to **Theft** or any other dishonest act committed by the **Employee**;
　　　　(ii)     who is compensated directly by the **Company** by salary, wages or commissions; and
　　　　(iii)    who the **Company** has the right to direct and control while performing services for the **Company**;
(2)     any natural person who is furnished temporarily to the **Company**:
　　　　(i)      to substitute for a permanent **Employee** as defined in 2.(g)(1) above who is on leave; or
　　　　(ii)     to meet seasonal or short-term workload conditions:
　　　　　　　　a.      while that person is subject to the **Company's** direction and control, and
　　　　　　　　b.      performing services for the **Company**, excluding, however, any such person while having care and custody of property outside the **Premises**;

(3)    any natural person who is leased to the **Company** under a written agreement between the **Company** and a labor leasing firm to perform duties related to the conduct of the **Company's** business, but does not mean a temporary employee as defined in 2.(g)(2) above;

(4)    any natural person who is:

    (i)    a trustee, officer, **Employee**, administrator or manager of any **Employee Benefit Plan,** excep t an administrator or manager who is an independent contractor; and

    (ii)    a director or trustee of the **Company** while that person is engaged in handling **Funds** or **Other Property** of any **Employee Benefit Plan**;

(5)    Any natural person fiduciary, trustee, administrator or other plan official, while in the regular service of an **Employee Benefit Plan**, who is required to be bonded by the **Company** in connection with such **Employee Benefit Plan** as required by Title 1 of the *Employee Retirement Income Security Act of 1974*, as amended, but does not mean a natural person as defined in 2.(g)(4) above;

(6)    any natural person who is a former **Employee**, **Member, Manager**, director or trustee retained as a consultant while performing services for the **Company**;

(7)    any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the **Premises**;

(8)    any **Employee** of an entity merged or consolidated with the **Company** prior to the effective date of this Coverage Section; or

(9)    any **Managers**, directors or trustees of the **Company** while:

    (i)    performing acts within the scope of the usual duties of an **Employee**; or

    (ii)    acting as a member of any committee duly elected or appointed by resolution of the **Company's** board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on behalf of the **Company.**

"**Employee**" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in 2.(g)(1) through 2.(g)(9) above.

(h)    "**Employee Benefit Plan**" means any welfare or pension benefit plan, defined and required to be bonded under Title 1 of the *Employee Retirement Income Security Act of 1974*, as amended, which is operated solely by the **Company** or jointly by the **Company** and a labor organization for the benefit of **Employees** and which existed on or before the inception date of the **Policy Period** or the inception date of this Coverage Section, if the dates differ.

(i)    "**Forgery**" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

Exhibit A, Page 89

(j)  "**Fraudulent Instruction**" means

    (1)  an electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by the **Company**, but which was in fact fraudulently transmitted by someone else without the **Company's** knowledge or consent;

    (2)  a written instruction (other than those described in Insuring Agreement B) issued by the **Company**, which was forged or altered by someone other than the **Company** without the **Company's** knowledge or consent, or which purports to have been issued by the **Company**, but was in fact fraudulently issued without the **Company's** knowledge or consent; or

    (3)  an electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by the **Company** which purports to have been transmitted by an **Employee** but which was in fact fraudulently transmitted by someone else without the **Employee's** knowledge or consent.

(k)  "**Funds**" means **Money** and **Securities**.

(l)  "**Messenger**" means the **Company**, a relative of the **Company,** or any partners or **Members**, or any **Employee** while having care and custody of property outside the **Premises**.

(m)  "**Money**" means

    (1)  currency, coins and bank notes in current use and having a face value; and

    (2)  travelers checks, register checks and money orders held for sale to the public.

(n)  "**Occurrence**" means

    (1)  Under Insuring Agreement A

        (i)  an individual act;

        (ii)  the combined total of all separate acts whether or not related; or

        (iii)  a series of acts whether or not related

    committed by an **Employee** acting alone or in collusion with other persons, during the **Policy Period**, except as provided under Condition 6.(a)(10) Loss Sustained During Prior Insurance Issued By The Insurer Or Any Affiliate, or, Condition 6.(a)(11) Loss Sustained During Prior Insurance Not Issued By The Insurer Or Any Affiliate, of this Coverage Section.

    (2)  Under Insuring Agreement B

        (i)  an individual act;

        (ii)  the combined total of all separate acts whether or not related; or

        (iii)  a series of acts whether or not related

    committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the **Policy Period**, except as provided under Condition 6.(a)(10) Loss Sustained During Prior Insurance Issued By The Insurer Or Any Affiliate, or, Condition 6.(a)(11) Loss Sustained During Prior Insurance Not Issued By The Insurer Or Any Affiliate, of this Coverage Section.

Exhibit A, Page 90

(3)    Under All Other Insuring Agreements:
      (i)    an individual act or event;
      (ii)    the combined total of all separate acts or events whether or not related; or
      (iii)    a series of acts or events whether or not related
    committed by a person acting alone or in collusion with other persons, or not committed by any person, during the **Policy Period**, except as indicated under Condition 6.(a)(10) Loss Sustained During Prior Insurance Issued By The Insurer Or Any Affiliate, or, Condition 6.(a)(11) Loss Sustained During Prior Insurance Not Issued By The Insurer Or Any Affiliate, of this Coverage Section.

(o)    "**Other Property**" means any tangible property other than **Money** and **Securities** that has intrinsic value. **Other Property** does not include computer programs, electronic data or any property specifically excluded under this Coverage Section.

(p)    "**Premises**" means the interior of that portion of any building occupied by the **Company** in conducting its business.

(q)    "**Robbery**" means the unlawful taking of property from the care and custody of a person by one who has:
    (1)    caused or threatened to cause that person bodily harm; or
    (2)    committed an obviously unlawful act witnessed by that person.

(r)    "**Safe Burglary**" means the unlawful taking of
    (1)    property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or
    (2)    a safe or vault from inside the **Premises**.

(s)    "**Securities**" means negotiable and non negotiable instruments or contracts representing either **Money** or property and includes
    (1)    tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and
    (2)    evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **Company**;
    but does not include **Money**.

(t)    "**Subsidiary**" means any privately-held for-profit entity of which the **Parent Company**:
    (1)    has **Management Control** ("Controlled Entity") before the inception of the **Policy Period**, either directly or indirectly through one or more other Controlled Entities;
    (2)    first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities, if such entity's annual revenue totals less than 25% of the consolidated revenue of the **Parent Company** as of its latest fiscal year; or

Exhibit A, Page 91

(3)    first acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled entities, if such entity's annual revenue totals 25% or more of the consolidated revenue of the **Parent Company** as of its latest fiscal year, but only if the **Parent Company** provides the **Insurer** with full particulars of the new **Subsidiary** within ninety (90) days after its creation or acquisition and pays any additional premium with respect to such entity within thirty (30) days after being requested to do so by the **Insurer**.

Provided, however, that **Subsidiary** as indicated in items 2.(t)(2) and 2.(t)(3) above shall not include any entity which is a financial institution, such as a bank, insurance company, insurance agent or broker, securities broker or dealer, investment advisor, mutual fund or hedge fund, unless such entity is included in the definition of **Subsidiary** by specific written endorsement attached to this policy.

"**Subsidiary**" also means any not-for-profit entity which is under the exclusive control of the **Company**.

(u)    "**Theft**" means the unlawful taking of property to the deprivation of the **Company**.

(v)    "**Third Party**" means a natural person other than:
(1)    an **Employee**; or
(2)    a natural person acting in collusion with an **Employee**.

(w)    "**Transfer Account**" means an account maintained by the **Company** at a financial institution from which the **Company** can initiate the transfer, payment or delivery of **Funds**:
(1)    by means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or
(2)    by means of written instructions (other than those described in Insuring Agreement B) establishing conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

(x)    "**Watchperson**" means any person the **Company** retains specifically to have care and custody of property inside the **Premises** and who has no other duties.

**3.**    **EXCLUSIONS**

(a)    The insurance afforded under this Coverage Section shall not apply to:

**(1)**    Loss resulting from **Theft** or any other dishonest act committed by:
(i)    the **Company**; or
(ii)    any partners or **Members** of the **Company**;
whether acting alone or in collusion with other persons.

**(2)**    Loss caused by an **Employee** if the **Employee** had also committed **Theft** or any other dishonest act prior to the effective date of this policy and the **Company** or

any of partners, **Members**, **Managers**, officers, directors or trustees, not in collusion with the **Employee**, learned of that **Theft** or dishonest act prior to the inception date of the **Policy Period** or the inception date of this Coverage Section, if the dates differ; However, this exclusion shall not apply if the value of that **Theft** or dishonest act was valued at $10,000 or less.

(3)     Loss resulting from **Theft** or any other dishonest act committed by any of the **Company's Employees**, **Managers**, directors, trustees, or authorized representatives:
    (i)      whether acting alone or in collusion with other persons; or
    (ii)     while performing services for the **Company** or otherwise;
except when covered under Insuring Agreement A.

(4)     Loss resulting from:
    (i)      the unauthorized disclosure of the **Company's** confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or
    (ii)     the unauthorized use or disclosure of confidential information of another person or entity which is held by the **Company** including, but not limited to, financial information, credit card information or similar non-public information.

(5)     Loss resulting from seizure or destruction of property by order of governmental authority.

(6)     Loss that is an indirect result of an **Occurrence** covered by this Coverage Section including, but not limited to, loss resulting from:

    (i)      The **Company's** inability to realize income that would have been realized by the **Company** had there been no loss of or damage to **Money**, **Securities**, or **Other Property**;
    (ii)     Payment of damages of any type for which the **Company** is legally liable. But the **Insurer** will pay compensatory damages arising directly from a loss covered under this Coverage Section;
    (iii)    Payment of costs, fees or other expenses incurred by the **Company** in establishing either the existence or the amount of loss under this Coverage Section, except when covered under Insuring Agreement K.

(7)     Fees, costs and expenses incurred by the **Company** which are related to any legal action, except when covered under Insuring Agreement B.

(8)     Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

(9)     Loss or damage resulting from:
    (i)      war, including undeclared or civil war;
    (ii)     warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
    (iii)    insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

(b) The insurance afforded under Insuring Agreement A shall not apply to:

    **(1)**    Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:
        (i)    an inventory computation; or
        (ii)    a profit and loss computation.

        However, where the **Company** establishes wholly apart from such computations that the **Company** has sustained a loss, then the **Company** may offer its inventory records and actual physical count of inventory in support of the amount of loss claimed.

    **(2)**    Loss resulting from trading, whether in the **Company's** name or in a genuine or fictitious account.

    **(3)**    Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

(c)   The insurance afforded under Insuring Agreements C, D, and E shall not apply to:

    **(1)**    Loss resulting from accounting or arithmetical errors or omissions.

    **(2)**    Loss resulting from the giving or surrendering of property in any exchange or purchase.

    **(3)**    Loss or damage resulting from fire, however caused, except:
        (i)    loss of or damage to **Money** and **Securities**, and,
        (ii)    loss from damage to a safe or a vault.

    **(4)**    Loss of property contained in any **Money** operated device unless the amount of **Money** deposited in it is recorded by a continuous recording instrument in the device.

    **(5)**    Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

    **(6)**    Loss of or damage to property after it has been transferred or surrendered to a person or place outside the **Premises** or **Banking Premises**:
        (i)    on the basis of unauthorized instructions;
        (ii)    as a result of a threat to do bodily harm to any person;
        (iii)    as a result of a threat to do damage to any property;
        (iv)    as a result of a threat to introduce a denial of service attack into the **Company's** computer system;
        (v)    as a result of a threat to introduce a virus or other malicious instruction into the **Company's** computer system which is designed to damage, destroy or corrupt data or computer programs stored within the **Company's** computer system;
        (vi)    as a result of a threat to contaminate, pollute or render substandard the **Company's** products or goods; or

(vii)    as a result of a threat to disseminate, divulge or utilize:

    a.    the **Company's** confidential information; or

    b.    weaknesses in the **Company's** source code within its computer system.

However this exclusion shall not apply, under Insuring Agreement E, to loss of **Money**, **Securities** or **Other Property** while outside the **Premises** in the care and custody of a **Messenger** if the **Company**:

(i)    had no knowledge of any threat at the time the conveyance began; or

(ii)    had knowledge of a threat at the time the conveyance began, but, the loss was not related to the threat.

**(7)**    Loss from damage to the **Premises** or its exterior, or to any safe, vault, cash register, cash box, cash drawer or **Other Property** by vandalism or malicious mischief.

**(8)**    Loss resulting from the **Company's**, or anyone acting on the **Company's** express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

(d)    The insurance afforded under Insuring Agreement F shall not apply to:

**(1)**    Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**(2)**    Loss resulting from a **Fraudulent Instruction** directing a financial institution to transfer, pay or deliver **Funds** from the **Company's Transfer Account**.

**(3)**    Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(i)    an inventory computation; or

(ii)    a profit and loss computation.

(e)    The insurance afforded under Insuring Agreement G shall not apply to loss resulting from the use of any computer to fraudulently cause a transfer of **Money**, **Securities** or **Other Property**.

## 4.    LIMIT OF LIABILITY

The most the **Insurer** will pay for all loss resulting directly from an **Occurrence** is the applicable Limit of Liability as indicated in Item 4 D. of the Declarations.

If any loss is covered under more than one Insuring Agreement in this Coverage Section, the most the **Insurer** will pay for such loss shall not exceed the largest Limit of Liability indicated in Item 4 D. of the Declarations under any one of the Insuring Agreements.

## 5.    DEDUCTIBLE

The **Insurer** will not pay for loss resulting directly from an **Occurrence** unless the amount of loss exceeds the Deductible Amount shown in Item 5 D. of the Declarations. The **Insurer** will

then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Liability as indicated in Item 4.D of the Declarations .

6.    **CONDITIONS**

(a)    **Conditions Applicable To All Insuring Agreements**

(1)    **Additional Premises Or Employees**
If, while this Coverage Section is in force, the **Company** establishes any additional **Premises** or hires additional **Employees,** other than through consolidation or merger with, or purchase or acquisition or assets or liabilities of, another entity, such **Premises** and **Employees** shall automatically be covered under this Coverage Section.  Notice to the **Insurer** of an increase in the number of **Premises** or **Employees** need not be given and no additional premium need be paid for the remainder of the **Policy Period**.

(2)    **Concealment, Misrepresentation Or Fraud**
Notwithstanding Section 10 in the General Terms & Conditions Section, this Coverage Section is void in any case of fraud by the **Company** as it relates to this Coverage Section at any time.  It is also void if the **Company**, at any time, intentionally conceals or misrepresents a material fact concerning:
(i)    this Coverage Section;
(ii)    the property covered under this Coverage Section;
(iii)    the **Company's** interest in the property covered under this Coverage Section; or
(iv)    a claim under this Coverage Section.

(3)    **Duties In the Event of Loss**
After the **Company Discovers** a loss or a situation that may result in loss of or damage to **Money, Securities,** or **Other Property,** the **Company** must:
(i)    notify the **Insurer** as soon as possible if the **Company** has reason to believe that the value of any loss will equal or exceed one-fourth (1/4) of the Deductible Amount specified in Item 5. D of the Declarations
(ii)    if the **Company** has reason to believe that any loss (except for loss covered under Insuring Agreements A and B) involves a violation of law, the **Company** must also notify the local law enforcement authorities.
(iii)    submit to examination under oath at the **Insurer's** request and give the **Insurer** a signed statement of its answers.
(iv)    produce for the **Insurer's** examination all pertinent records.
(v)    give the **Insurer** a detailed, sworn proof of loss within 120 days.
(vi)    cooperate with the **Insurer** in the investigation and settlement of any claim.

With respect to knowledge, belief or **Discovery** referenced in this Condition 6.(a) (3), **Company** shall mean the **Company's** Corporate Compliance, Ethics or Responsibility Officer, General Counsel, any **Employee** of the Risk Management Department or Human Resources Department.

(4)    **Employee Benefit Plans**
(i)    **Employee Benefit Plans** are included in the definition of **Company** solely with respect to Insuring Agreement A.

(ii) If any **Employee Benefit Plan** is covered jointly with any other entity under this Coverage Section, the **Company** or the plan administrator must select a Limit of Liability for Insuring Agreement A that is sufficient to provide a Limit of Liability for each **Employee Benefit Plan** that is at least equal to that required if each **Employee Benefit Plan** were separately insured.

(iii) With respect to loss sustained or **Discovered** by any such **Employee Benefit Plan**, Insuring Agreement A is replaced by the following: The **Insurer** will pay for loss of or damage to **Funds** and **Other Property** resulting directly from fraudulent or dishonest acts committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

(iv) If the **Parent Company** is an entity other than an **Employee Benefit Plan**, any payment the **Insurer** makes for loss sustained by any **Employee Benefit Plan** will be made to the **Employee Benefit Plan** sustaining the loss.

(v) If two or more **Employee Benefit Plans** are covered under this Coverage Section, any payment the **Insurer** makes for loss
    a.   sustained by two or more **Employee Benefit Plans**, or
    b.   of commingled **Funds** or **Other Property** of two or more **Employee Benefit Plans**,
resulting directly from an **Occurrence** will be made to each **Employee Benefit Plan** sustaining loss in the proportion that the Limit of Liability, as indicated in Item 4 D. of the Declarations, required for each **Employee Benefit Plan** bears to the total Limit of Liability of all **Employee Benefit Plans** sustaining loss.

(vi) The Deductible Amount as indicated in Item 5 D. of the Declarations and applicable to Insuring Agreement A does not apply to loss sustained by any **Employee Benefit Plan**.

(5) **Examination Of The Company's Books And Records**
The **Insurer** may examine and audit the **Company's** books and records as they relate to this Coverage Section at any time during the **Policy Period** and up to three (3) years thereafter.

(6) **Extended Period To Discover Loss**
The **Insurer** will pay for loss sustained by the **Company** prior to the effective date of cancellation of this Coverage Section, which is **Discovered** by the **Company**:

(i) no later than one (1) year from the effective date of such cancellation. However, this extended period to **Discover** loss terminates immediately upon the effective date of any other insurance obtained by the **Company**, whether from the **Insurer** or another insurer, replacing in whole or in part the coverage afforded under this Coverage Section, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(ii) no later than one (1) year from the date of that cancellation with regard to any **Employee Benefit Plans**

CVS FL 12006 PV (1/09)              13

(7)     **Inspections And Surveys**
    (i)     The **Insurer** has the right to:
        a.    make inspections and surveys at any time;
        b.    give the **Company** reports on the conditions found; and
        c.    recommend changes.
    (ii)     The **Insurer** is not obligated to make any inspections, surveys, reports or recommendations and any such actions undertaken by the **Insurer** relate only to insurability and the premiums charged. The **Insurer** does not make safety inspections. The **Insurer** does not undertake to perform the duty of any person or organization to provide for the health and safety of workers or the public. The **Insurer** does not warrant that conditions:
        a.    are safe or healthful; or
        b.    comply with laws, regulations, codes or standards.
Conditions 6.(a)(7)(i) and 6.(a)(7)(ii) above apply not only to the **Insurer** but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

(8)     **Parent Company**
    (i)     If the **Parent Company**, or any partner, **Member**, or officer of the **Parent Company** or of any **Company** has knowledge of any information relevant to this Coverage Section, that knowledge is considered knowledge of the **Company**.
    (ii)     An **Employee** of the **Parent Company** or of any **Company** covered under this Coverage Section is considered to be an **Employee** of the **Parent Company** and every **Company** covered under this Coverage Section.
    (iii)     If this Coverage Section or any of its Agreements is cancelled as to any **Company**, loss sustained by that **Company** is covered only if it is **Discovered** by the **Company**:
        a.    no later than one (1) year from the date of that cancellation. However, this extended period to **Discover** loss terminates immediately upon the effective date of any other insurance obtained by that **Company**, whether from the **Insurer** or another insurer, replacing in whole or in part the coverage afforded under this Coverage Section, whether or not such other insurance provides coverage for loss sustained prior to its effective date.
        b.    no later than one (1) year from the date of that cancellation with regard to any **Employee Benefit Plan**.
    (iv)     The **Insurer** will not pay more for loss sustained by the **Parent Company,** any one or more **Subsidiary** and/or any one or more **Employee Benefit Plan** than the amount the **Insurer** would pay if all such loss had been sustained only by the **Parent Company** or only one **Subsidiary**, or only one **Employee Benefit Plan**.
    (v)     Payment by the **Insurer** to the **Parent Company** for loss sustained by any **Company**, other than an **Employee Benefit Plan**, shall fully release the **Insurer** on account of such loss.

Exhibit A, Page 98

(9)     **Liberalization**
If the **Insurer** adopts any revision that would broaden the coverage under this Coverage Section without additional premium within forty-five (45) days prior to or during the **Policy Period**, the broadened coverage will immediately apply to this Coverage Section.

(10)    **Loss Sustained During Prior Insurance Issued By The Insurer Or Any Affiliate**

(i)     Loss Sustained Partly During This Coverage Section and Partly During Prior Insurance
If the **Company Discovers** loss during the **Policy Period**, resulting directly from an **Occurrence** taking place:

a.      partly during the **Policy Period**; and

b.      partly during the **Policy Period(s)** of any prior cancelled insurance that the **Insurer** or any affiliate issued to the **Company** or any predecessor in interest; and

c.      this Coverage Section became effective at the time of cancellation of the prior insurance,

the **Insurer** will first settle the amount of loss sustained by the **Company** during this **Policy Period**.  The **Insurer** will then settle the remaining amount of loss sustained by the **Company** during the policy period(s) of the prior insurance.

(ii)    Loss Sustained Entirely During Prior Insurance
If the **Company Discovers** loss during the **Policy Period**, resulting directly from an **Occurrence** taking place entirely during the policy period(s) of any prior cancelled insurance that the **Insurer** or any affiliate issued to the **Company** or any predecessor in interest, the **Insurer** will pay for the loss provided:

a.      this Coverage Section became effective at the time of cancellation of the prior insurance; and

b.      the loss would have been covered under this Coverage Section had it been in effect at the time of the **Occurrence**.

(iii)   In settling loss subject to this Condition:

a.      the most the **Insurer** will pay for the entire loss is the highest single Limit of Liability applicable during the period of loss, whether such limit was written under this Coverage Section or was written under the prior insurance issued by the **Insurer**.

b.      the **Insurer** will apply the applicable Deductible Amount shown in Item 5 D. of the Declarations to the amount of loss sustained under the **Policy Period**.  If no loss was sustained under the **Policy Period**, the **Insurer** will apply the Deductible Amount shown in Item 5 D. of the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount, provided in Item 5 D. of the Declarations, is larger than the amount of loss sustained under this Coverage Section, or the most recent prior insurance, the **Insurer** will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.  The **Insurer** will not apply any other Deductible Amount that may have been applicable to the loss.

CVS FL 12006 PV (1/09)                    15

(iv)    The following examples demonstrate how the **Insurer** will settle losses subject to this Condition:

**EXAMPLE NO. 1:**

The Company sustained a covered loss of $10,000 resulting directly from an occurrence taking place during the terms of Policy **A** and Policy **B.**

### POLICY A

The current policy. Written at a limit of liability of $50,000 and a deductible amount of $5,000.

### POLICY B

Issued prior to Policy **A.** Written at a limit of liability of $50,000 and a deductible amount of $5,000.

The amount of loss sustained under Policy A is $2,500 and under Policy B is $7,500.

The highest single limit of liability applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** deductible amount of $5,000 applies. The loss is settled as follows:

1.    The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount the Insurer will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

2.    The **remaining** amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining deductible amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most the Insurer will pay for this loss is $5,000.

**EXAMPLE NO. 2:**

The Company sustained a covered loss of $250,000 resulting directly from an occurrence taking place during the terms of Policy **A** and Policy **B.**

### POLICY A

The current policy. Written at a limit of liability of $125,000 and a deductible amount of $10,000.

### POLICY B

Issued prior to Policy **A.** Written at a limit of liability of $150,000 and a deductible amount of $25,000.

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B** is $75,000.

The highest single limit of liability applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** deductible amount of $10,000 applies. The loss is settled as follows:

1.    The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount the Insurer will pay is the Policy **A** Limit of $125,000 because $175,000

loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.

2. The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount the Insurer will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most the Insurer will pay for this loss is $150,000.

**EXAMPLE NO. 3:**

The Company sustained a covered loss of $2,000,000 resulting directly from an occurrence taking place during the terms of Policies **A, B, C** and **D.**

### POLICY A

The current policy. Written at a limit of liability of $1,000,000 and a deductible amount of $100,000.

### POLICY B

Issued prior to Policy **A.** Written at a limit of liability of $750,000 and a deductible amount of $75,000.

### POLICY C

Issued prior to Policy **B.** Written at a limit of liability of $500,000 and a deductible amount of $50,000.

### POLICY D

Issued prior to Policy **C.** Written at a limit of liability of $500,000 and a deductible amount of $50,000.

The amount of loss sustained under Policy **A** is $350,000, under Policy **B** is $250,000, under Policy **C** is $600,000 and under Policy **D** is $800,000.

The highest single limit of liability applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** deductible amount of $100,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount the Insurer will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

2. The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount the Insurer will pay is $250,000 (no deductible is applied).

3. The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount the Insurer will pay is $500,000, the policy limit (no deductible is applied).

4. The Insurer will not make any further payment under Policy **D** as the maximum amount payable under the highest single limit of liability applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most the Insurer will pay for this loss is $1,000,000.

(11) **Loss Sustained During Prior Insurance Not Issued By the Insurer Or Any Affiliate**

    (i)    If the **Company Discovers** loss during the **Policy Period**, resulting directly from an **Occurrence** taking place during the policy period of any prior cancelled insurance that was issued to the **Company** or to a predecessor in interest in another insurer, and the period of time to discover loss under that insurance had expired, the **Insurer** will pay for the loss under this Coverage Section, provided:

        a.    this Coverage Section became effective at the time of cancellation of the prior insurance; and

        b.    the loss would have  been covered under this Coverage Section had it been in effect at the time of the **Occurrence**

    (ii)    In settling loss subject to this Condition:

        a.    the most the **Insurer** will pay for the entire loss is the lesser of the Limits of Liability as indicated in Item 4.D of the Declarations applicable during the period of loss, whether such limit was written under this Coverage Section or was written under the prior cancelled insurance.

        b.    the **Insurer** will apply the applicable Deductible Amount as indicated in Item 5.D of the Declarations to the amount of loss sustained under the prior cancelled insurance.

    (iii)    The insurance provided under this section is subject to the following:

        a.    If loss covered under this Condition 6.(a)(11) is also partially covered under Condition 6.(a)(10) above, the amount recoverable under this Condition 6.(a)(11) is part of, not in addition to, the amount recoverable under Condition 6.(a)(10) above.

        b.    For loss covered under this Condition 6.(a)(11) the amount recoverable under this section is part of, not in addition to, the Limit of Liability as indicated in Item 4 of the Declarations applicable to the loss covered under this Coverage Section and is limited to the lesser of the amount recoverable under:

            i.    this Coverage Section as of its effective date; or

            ii.    the prior cancelled insurance had it remained in effect.

(12) **Ownership of Property; Interests Covered**

The property covered under this Coverage Section is limited to property:

    (i)    that the **Company** owns or leases; or

    (ii)    that the **Company** holds for others whether or not the **Company** is legally liable for the loss of such property.

However, this Coverage Section is for the **Company's** benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this Coverage Section must be presented by the **Company**.

(13) **Records**

The **Company** must keep records of all property covered under this Coverage Section so the **Insurer** can verify the amount of any loss.

(14) **Recoveries**

Any recoveries, whether effected before or after any payment under this Coverage Section, whether made by the **Insurer** or the **Company**, shall be applied net of the expense of such recovery:

CVS FL 12006 PV (1/09)            18

(i)     first, to the **Company** in satisfaction of the **Company's** covered loss in excess of the amount paid under this Coverage Section;

(ii)    second, to the **Insurer** in satisfaction of amounts paid in settlement of the **Company's** claim;

(iii)   third, to the **Company** in satisfaction of any Deductible Amount as indicated in Item 5 of the Declarations; and

(iv)    fourth, to the **Company** in satisfaction of any loss not covered under this Coverage Section.

Recoveries do not include any recovery:

(i)     from insurance, suretyship, reinsurance, security or indemnity taken for the **Insurer's** benefit; or

(ii)    of original **Securities** after duplicates of them have been issued.
.

(15)   **Transfer Of The Company's Rights And Duties Under This Coverage Section**
The **Company's** rights and duties under this Coverage Section may not be transferred without the **Insurer's** written consent.

(16)   **Transfer Of The Company's Rights Of Recovery Against Others To The Insurer**
The **Company** must transfer to the **Insurer** all of its rights of recovery against any person or organization for any loss the **Company** sustained and for which the **Insurer** has paid or settled. The **Company** must also do everything necessary to secure those rights and do nothing after loss to impair them.

(17)   **Valuation-Settlement**
(i)     The value of any loss for purposes of coverage under this Coverage Section shall be determined as follows:

(a)    loss of **Money** but only up to and including its face value. The **Insurer** will, at the **Company's** option, pay for loss of **Money** issued by any country other than the United States of America:

1.     At face value in the **Money** issued by that country; or

2.     In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was **Discovered**.

(b)    loss of **Securities** but only up to and including their value at the close of business on the day the loss was **Discovered**. The **Insurer** may, at its option:

1.     pay the market value of such **Securities** or replace them in kind, in which event the **Company** must assign to the **Insurer** all the **Company's** rights, title and interest in and to those **Securities**; or

2.     pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **Securities**. However, the **Insurer** will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(i)     market value of the **Securities** at the close of business on the day the loss was **Discovered**; or

(ii)    the Limit of Liability applicable to the **Securities**.

Exhibit A, Page 103

(c) loss of or damage to **Other Property** or loss from damage to the **Premises** or its exterior for the replacement cost of the property without deduction for depreciation. However, the **Insurer** will not pay more than the least of the following:

1. the cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

2. the amount the **Company** actually spends that is necessary to repair or replace the lost or damaged property; or

3. the Limit of Liability applicable to the lost or damaged property. With regard to Conditions 6.(a)(17)(i)(c)(1) through 6.(a)(17)(i)(c)(3), the **Insurer** shall not pay on a replacement cost basis for any loss or damage:

i. until the lost or damaged property is actually repaired or replaced; and

ii. unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, the **Insurer** will pay on an actual cash value basis.

(ii) the **Insurer** will, at the **Company's** option, settle loss or damage to property other than **Money**:

(a) in the **Money** of the country in which the loss or damage occurred; or

(b) in the United States of America dollar equivalent of the **Money** of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was **Discovered**.

(iii) Any property that the **Insurer** pays for or replaces becomes the **Insurer's** property.

**(b)    Conditions Applicable To Insuring Agreement A**

(1) Termination As To Any Employee
This Insuring Agreement terminates as to any **Employee**:

a. as soon as the **Company's** Corporate Compliance, Ethics or Responsibility Officer, General Counsel, any **Employee** of the Risk Management Department or Human Resources Department, or, any corporate Vice President or above not in collusion with the **Employee**; or

b. as soon as any of the **Company's** partners, **Managers, Members**, officers, directors, or trustees not in collusion with the **Employee**;

learn of **Theft** or any other dishonest act committed by the **Employee** whether before or after the **Employee** became employed by the **Company**.

c. on the date specified in a notice mailed to the **Parent Company**. That date will be at least thirty (30) days after the date of mailing. The **Insurer** will mail or deliver its notice to the **Parent Company's** last mailing address known to the **Insurer**. If notice is mailed, proof of mailing will be sufficient proof of notice.

**(c)    Conditions Applicable To Insuring Agreement B**

(1) Deductible Amount
The Deductible Amount as provided in Item 5.D of the Declarations does not apply to legal expenses paid under Insuring Agreement B.

CVS FL 12006 PV (1/09)                    20

(2)    Electronic And Mechanical Signatures

The **Insurer** will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

(3)    Proof Of Loss

The **Company** must include with its proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**(d)**    **Conditions Applicable To Insuring Agreements D and E**

(1)    Armored Motor Vehicle Companies

    a.    Under Insuring Agreement E, the **Insurer** will only pay for the amount of loss the **Company** cannot recover:

        (i)    under the **Company's** contract with the armored motor vehicle company; and

        (ii)    from any insurance or indemnity carried by, or for the benefit of customers of the armored motor vehicle company.

(2)    Special Limit of Liability For Specified Property

The **Insurer** will only pay up to $5,000 for any one **Occurrence** of loss of or damage to:

    a.    precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

    b.    manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**(e)**    **Conditions Applicable To Insuring Agreement F**

(1)    Special Limit of Liability For Specified Property

The **Insurer** will only pay up to $5,000 for any one **Occurrence** of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## DELETE EXCLUSION

It is understood and agreed that Clause 3, EXCLUSIONS, of the _____
Liability Coverage Section is amended by deleting Exclusion ( ) in its entirety.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10000 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

A.   It is agreed that this policy does not apply to loss arising out "injury or damage" caused directly or indirectly by, contributed to by, resulting from, or arising out of or in connection with a "certified act of terrorism". Such "injury or damage" is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the "injury or damage".

   This exclusion also applies to a "certified act of terrorism":

   1.   That involves the use, release, or escape of nuclear materials, or that directly or indirectly results in a nuclear reaction or radiation or radioactive contamination; or

   2.   That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   3.   In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

      In the event a "certified act of terrorism" involves nuclear reaction or radiation, or radioactive contamination, this exclusion supersedes any Nuclear Hazard Exclusion.

B.   The following definitions are added:

   1.   "Injury or damage" means any "injury or damage" covered under this policy  to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in this policy.

   2.   A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an "act of terrorism" pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

      a.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

      b.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

1

CVS FL 10002 PPVNP (07/08)

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

2

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## EXCLUSION OF NON-CERTIFIED ACTS OF TERRORISM AND
## COVERAGE OF CERTIFIED ACTS OF TERRORISM

A.  It is agreed that this policy does not apply to loss arising out of "injury or damage" caused directly or indirectly by, contributed to by, resulting from, or arising out of or in connection with an "act of terrorism", including action in hindering, controlling, preventing, suppressing, retaliating against, responding to or defending against an actual or expected "act of terrorism" where: 1.) the act or acts of terrorism result(s) in industry-wide losses that exceed $25,000,000 for related incidents that occur within a 72 hour period; or 2.) fifty or more persons sustain death or serious physical injury for related incidents that occur within a 72 hour period. For purposes of this provision serious physical injury means:

   a.  Physical injury involves a substantial risk of death;
   b.  Protracted and obvious physical disfigurement; or
   c.  Protracted loss of or impairment of the function of a bodily member or organ.

Provided however, this exclusion for "acts of terrorism" is not subject to the limitations 1.) and 2.) above if:

   a.  The act involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination;
   b.  The act is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
   c.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

"Injury or damage" is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the "injury or damage". In the event an "act of terrorism" involves nuclear reaction or radiation, or radioactive contamination, this exclusion supersedes any Nuclear Hazard Exclusion.

This exclusion does not apply to a "certified act of terrorism". This exception to the exclusion is limited to an "insured loss" as defined in the federal Terrorism Risk Insurance Act.

B.  The following definitions are added:

1.  "Injury or damage" means any "injury or damage" covered under this policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in this policy.

1

CVS FL 10003 PPVNP (1/09)

2. An "act of terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      i. Use or threat of force or violence; or

      ii. Commission or threat of a dangerous act; or

      iii. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      i. The effect is to intimidate or coerce a government, de jure or de facto of any nation or any political division thereof, or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      ii. It appears that the intent is to intimidate or coerce a government, de jure or de facto of any nation or any political division thereof, or to further political, ideological, religious, social, economic or similar objectives or to express (or express opposition to) a philosophy or ideology.

3. A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an "act of terrorism" pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or any act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


                    **AUTHORIZED REPRESENTATIVE**

2

CVS FL 10003 PPVNP (1/09)

## POLICYHOLDER DISCLOSURE STATEMENT
## UNDER THE TERRORISM RISK INSURANCE ACT

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property; or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism covered by the Act is final and not subject to review.

Coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government will generally pay 85% of terrorism losses exceeding a statutorily established deductible that must be met by the Insurer, and which deductible is based on a percentage of the Insurer's direct earned premiums for the year preceding the Act of Terrorism.

Be advised that there is a $100 billion cap on all losses resulting from Acts of Terrorism. If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year (January 1 through December 31), the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year and the Insurer has met its deductible under the Act, the Insurer shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Acts of Terrorism.

The Insured should know that under federal law, the Insured is not required to purchase coverage for losses caused by Acts of Terrorism.

Please indicate the selection of the Insured below.

_____     The Insured hereby elects to purchase coverage in accordance with the Act for a premium of $0.

_____     The Insured hereby rejects coverage and accepts reinstatement of the exclusion in accordance with the Act.

_____           <    INSURED NAME>
Signature of Insured

_____           <Policy Number>
Print/Title

_____
Date

CVS FL 10004 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

<div align="center">

**OFAC EXCLUSION**
**(all Coverage Sections)**

</div>

It is understood and agreed that Clause 3, EXCLUSIONS, of all applicable Coverage Sections is amended by adding the following exclusion:

> This policy shall not cover any **Loss** in connection with any **Claim** in the event that such coverage would not be in compliance with any United States of America economic or trade sanctions, laws or regulations, including but not limited to the U.S. Treasury Department's Office of Foreign Assets Control, or any similar foreign, federal, state or statutory law or common law.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED  REPRESENTATIVE**

CVS FL 10005 PPVNP (07/08)

Exhibit A, Page 112

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### PENDING OR PRIOR LITIGATION EXCLUSION – INCREASED LIMITS

It is understood and agreed that Clause 3, EXCLUSIONS, of the _____ Liability Coverage Section is amended by adding the following exclusion:

> This policy shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to, as of the *(insert date)* as respects this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

It is further understood and agreed that this endorsement applies only to the Limit of Liability of $_____ in excess of the $_____ Limit of Liability applicable to the _____ Liability Coverage Section as set forth in Item 4 of the Declarations.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10006 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## PRIOR ACTS EXCLUSION

It is understood and agreed that Clause 3, EXCLUSIONS, of the _____ Liability Coverage Section is amended by adding the following exclusion:

> This policy shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act(s)** committed, attempted, or allegedly committed or attempted in whole, or in part,  prior to *(insert date).*

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10007 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### RELIANCE ENDORSEMENT
### (other applications)

In granting coverage under this policy, it is understood and agreed that the **Insurer** has relied upon the statements, representations and warranties contained in all applications, warranty statements, together with attachments and any other materials submitted for this policy (including all such previous policy applications, and their attachments and materials, for which this policy is a renewal or succeeds in time), as being accurate and complete. It is further understood and agreed that the **Insureds** warrant and represent to the **Insurer** that the statements, representations and warranties made in such application(s) were accurate on the date such statements and representations were so given. All such statements and representations in such application(s) are the basis of this policy and are to be considered as incorporated into this policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10008 PPVNP (07/08)

Exhibit A, Page 115

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### SPECIFIC LITIGATION / EVENT EXCLUSION - INCLUDES SEC FILINGS

It is understood and agreed that Clause 3, EXCLUSIONS, of the _____ Liability Coverage Section is amended by adding the following exclusion:

   This policy shall not cover any **Loss** in connection with:

     (i)    the prosecution, adjudication, settlement, disposition, resolution or defense of any of the claims, notices, events, investigations or actions described below (hereinafter **"Event"**); or

     (ii)   any **Claim** alleging, arising out of, based upon or attributable to any fact, circumstance, or situation that is the same or substantially similar to those alleged or set forth in any **Event**.

For the purposes of this endorsement only, the term **"Event"** shall include the following:


It is further understood and agreed that Clause 3, EXCLUSIONS, of the _____ Liability Coverage Section is amended by adding the following exclusion:

   This policy shall not cover any **Loss** in connection with:

     A.   any restatement, retraction, amendment or revision, in part or in whole, of any:

        (i)    document or statement filed or submitted or required to be filed or submitted with the SEC or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports); or

        (ii)   written or oral statement made regarding the assets, revenues, sales or financial condition of any **Insured** entity,

     resulting from, arising out of, based upon or attributable to any **Event** or the resolution of said **Event**; or

     B.   any **Claim** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to a **Related Wrongful Act** (as defined below), regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same

CVS FL 10014  PPVNP (07/08)       1

or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purpose of this endorsement only, the following defined terms shall apply:

**"Related Wrongful Act"** means: (i) any fact, circumstance, act or omission alleged in any **Event**; or (ii) any **Wrongful Act** which is the same as, similar to or a repetition of any **Wrongful Act** alleged in any **Event**.

**"Event"** shall include the following:

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10014  PPVNP (07/08)                    2

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### AMEND SPONSOR ORGANIZATION SECURITIES COVERAGE - SUBLIMIT OF LIABILITY AND RETENTION
### (Fiduciary Coverage Section)

It is understood and agreed that the Fiduciary Liability Coverage Section is amended by adding the following:

> With respect to all **Loss** in connection with any **Claim** arising out of, based upon or attributable to any securities of the **Company** ("Sponsor Organization Claim"), the **Insurer's** aggregate liability shall be subject to a Sublimit of Liability of $_____. This Sublimit of Liability shall be part of, and not in addition to, the Limit of Liability applicable to the Fiduciary Liability Coverage Section as set forth in Item 4 of the Declarations.

It is further understood and agreed that Item 5 B. of the Declarations, RETENTION, is amended by adding the following:

> Sponsor Organization Claim Coverage    $ _____

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10015 PPVNP (07/08)

Exhibit A, Page 118

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## SPECIFIC LITIGATION / EVENT EXCLUSION

It is understood and agreed that Clause 3, EXCLUSIONS, of the _____
Liability Coverage Section is amended by adding the following exclusion:

This policy shall not cover any **Loss** in connection with:

(i)   the prosecution, adjudication, settlement, disposition, resolution or defense of any of the claims, notices, events, investigations or actions described below (hereinafter **"Event"**); or

(ii)  any **Claim** alleging, arising out of, based upon or attributable to any fact, circumstance, or situation that is the same or substantially similar to those alleged or set forth in any **Event**.

For the purposes of this endorsement only, the term **"Event"** shall include the following:

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED  REPRESENTATIVE**

CVS FL 10016 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### AMEND SPONSOR SECURITIES INVESTMENT COVERAGE - SEPARATE RETENTION
### (Fiduciary Coverage Section)

It is understood and agreed that the Fiduciary Liability Coverage Section is amended by adding the following:

Solely with respect to all **Loss** in connection with any **Claim** arising out of, based upon or attributable to the investment of **Plan** assets in the securities of the entity named in Item 1 of the Declarations or any **Subsidiary** thereof ("Sponsor Securities Investment Claim"), Item 5 B. of the Declarations, RETENTION, is amended by adding the following:

Sponsor Securities Investment Claim  $ _____

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10020 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## AMEND DEFINITION OF "LOSS" – INVESTMENT LOSS COVERAGE
### (Fiduciary Coverage Section)

It is understood and agreed that Definition (m), **"Loss"** of the Fiduciary Liability Coverage Section is amended by deleting item (vi) in its entirety and replacing it with the following:

    (vi)    **Benefits,** or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person**;  provided, however, that **Loss** shall include a monetary award or a settlement payment as respects a **Claim** against the **Insured** alleging a loss to the **Plan** and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such a **Claim** are characterized by plaintiffs as "benefits" or held by a court as "benefits".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

*CVS FL 10021 PPVNP (07/08)*

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

<div align="center">

**AMEND DEFINITION OF PLAN BY ADDING SPECIFIC PLANS**
**(Fiduciary Coverage Section)**

</div>

It is understood and agreed that Definition (o), "**Plan**", in Clause 2, DEFINITIONS, is amended by adding the following:

"**Plan**" shall also mean the following:

    1.

    2.

    3.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

<div align="center">

_____
**AUTHORIZED REPRESENTATIVE**

</div>

CVS FL 10023 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

**AMEND DECLARATIONS PAGE**

It is understood and agreed that Item __ of the Declarations is deleted in its entirety and replaced with the following:

**ITEM __:**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10024 PPVNP (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## AMEND EXCLUSION
### Prior Theft or Dishonest Acts
### (Crime & Fidelity Coverage Section)

It is understood and agreed that Clause 3, EXCLUSIONS, of the Crime and Fidelity Coverage Section is amended as follows:

(a)**(2)** is deleted in its entirety and replaced with the following:

Loss caused by an **Employee** if the **Employee** had also committed **Theft** or any other dishonest act prior to the effective date of this policy and the **Company** or any of partners, **Members**, **Managers**, officers, directors or trustees, not in collusion with the **Employee**, learned of that **Theft** or dishonest act prior to the inception date of the **Policy Period** or the inception date of this Coverage Section, if the dates differ; However, this exclusion shall not apply if the value of that **Theft** or dishonest act was valued at $ *insertamount (lower than $10,000)* or less.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10027 PPVNP (1/09)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### CONDITIONS AMENDED
### Termination As To Any Employee
### (Crime & Fidelity Coverage Section)

It is understood and agreed that Clause 6, CONDITIONS, of the Crime & Fidelity Coverage Section, is amended as follows:

**(b)**    **Conditions Applicable To Insuring Agreement A** is amended by deleting (1) Termination As To Any Employee, in its entirety and replacing it with the following:

This Insuring Agreement terminates as to any **Employee**:
a.    as soon as the **Company's** Corporate Compliance, Ethics or Responsibility Officer, General Counsel, any **Employee** of the Risk Management Department or Human Resources Department, or, any corporate Vice President or above not in collusion with the **Employee**; or
b.    as soon as any of the **Company's** partners, **Managers**, **Members**, officers, directors, or trustees not in collusion with the **Employee**; learn of **Theft** or any other dishonest act committed by the **Employee** whether before or after the **Employee** became employed by the **Company**
However, the above exclusion shall not apply if the value of that **Theft** or any other dishonest act committed by that **Employee** was valued at $ *insert an amount not to exceed $10,000* whether committed before or after the **Employee** became employed by the **Company**.

This Insuring Agreement terminates as to any **Employee**:
c.    on the date specified in a notice mailed to the **Parent Company**. That date will be at least thirty (30) days after the date of mailing.  The **Insurer** will mail or deliver its notice to the **Parent Company's** last mailing address known to the **Insurer**. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10028 PPVNP (1/09)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

<div align="center">

**AMEND TERRITORY CLAUSE**
**(General Terms and Conditions Section)**

</div>

It is understood and agreed that **Clause 16, TERRITORY**, of the General Terms & Conditions Section is replaced with the following:

> This policy extends to **Wrongful Acts** taking place, or **Claims** made anywhere in the world to the extent permitted by law.

> This policy extends to **Occurrences** taking place in the United States of America, its possessions, Canada and the following countries:



| Name of Country |
| --- |
|  |

Coverage as modified by this endorsement shall apply only as respects the Crime & Fidelity Coverage Section

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10029 PPVNP (1/09)

Exhibit A, Page 126

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## AMEND TRADING EXCLUSION
### (Crime & Fidelity Coverage Section)

It is understood and agreed that Clause 3, EXCLUSIONS, of the Crime & Fidelity Coverage Section is amended as follows:

    (b)**(2)** is deleted in its entirety and replaced with the following:

    Loss resulting from trading, whether in the **Company's** name or in a genuine or fictitious account, provided, however, that this exclusion shall not apply when covered under Insuring Agreement A.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10030 PPVNP (1/09)

Exhibit A, Page 127

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## AMEND WAREHOUSE RECEIPTS EXCLUSION
### (Crime & Fidelity Coverage Section)

It is understood and agreed that Clause 3, EXCLUSIONS, of the Crime & Fidelity Coverage Section is amended as follows:

> (b)**(3)** is deleted in its entirety and replaced with the following:

> Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it, provided, however, that this exclusion shall not apply when covered under Insuring Agreement A.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10031 PPVNP (1/09)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## AMEND DEFINITION OF "EMPLOYEE" – CONVERT TO SCHEDULE
### (Crime & Fidelity Coverage Section)

It is understood and agreed that Definition (g), "**Employee**" in Clause 2 DEFINITIONS, of the Crime & Fidelity Coverage Section is deleted in its entirety and replaced with the following:

"**Employee**" means only the individuals listed below:

| Name of Individual | Name of Position |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10032 PPVNP (1/09)

Exhibit A, Page 129

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## CONDITIONS AMENDED
### Duties In the Event of Loss
### (Crime & Fidelity Coverage Section)

It is understood and agreed that Clause 6, CONDITIONS, of the Crime & Fidelity Coverage Section, is amended as follows:

**(a)**(3)   **Duties In the Event of Loss** is deleted in its entirety and replaced with the following:

After the **Company Discovers** a loss or a situation that may result in loss of or damage to **Money**, **Securities**, or **Other Property**, the **Company** must:
(i)      notify the **Insurer** as soon as possible if the **Company** has reason to believe that the value of any loss will equal or exceed one-fourth (1/4) of the Deductible Amount specified in Item 5. D of the Declarations
(ii)     if the **Company** has reason to believe that any loss (except for loss covered under Insuring Agreements A and B) involves a violation of law, the **Company** must also notify the local law enforcement authorities.
(iii)    submit to examination under oath at the **Insurer's** request and give the **Insurer** a signed statement of its answers.
(iv)     produce for the **Insurer's** examination all pertinent records.
(v)      give the **Insurer** a detailed, sworn proof of loss within 120 days.
(vi)     cooperate with the **Insurer** in the investigation and settlement of any claim.

With respect to knowledge, belief or **Discovery** referenced in this Condition **6.(a)**(3), **Company** shall mean the **Company's** *insert positions/titles—must include three or more individuals OR two or more Departments.*

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10033 PPVNP (1/09)

Exhibit A, Page 130

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## CONDITIONS AMENDED
### Extended Period to Discover Loss
### (Crime & Fidelity Coverage Section)

It is understood and agreed that Clause 6, CONDITIONS, of the Crime & Fidelity Coverage Section is amended as follows:

> **(a)**(6)(i), **Extended Period To Discover Loss**, is deleted in its entirety and replaced with the following:

>> no later than *insert an amount less than one year* from the effective date of such cancellation.  However, this extended period to **Discover** loss terminates immediately upon the effective date of any other insurance obtained by the **Company**, whether from the **Insurer** or another insurer, replacing in whole or in part the coverage afforded under this Coverage Section, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10034 PPVNP (1/09)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

**AMEND EXCLUSION**
**Prior Theft or Dishonest Acts**
**(Crime & Fidelity Coverage Section)**

It is understood and agreed that Clause 3, EXCLUSIONS, of the Crime and Fidelity Coverage Section is amended as follows:

(a)**(2)** is deleted in its entirety and replaced with the following:

Loss caused by an **Employee** if the **Employee** had also committed **Theft** or any other dishonest act prior to the effective date of this policy and the **Company** or any of partners, **Members**, **Managers**, officers, directors or trustees, not in collusion with the **Employee**, learned of that **Theft** or dishonest act prior to the inception date of the **Policy Period** or the inception date of this Coverage Section, if the dates differ.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10035 PPVNP (1/09)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### AMEND DEFENSE OF CLAIM AND SETTLEMENT CLAUSE -
### DELETE INSURER'S DUTY TO DEFEND; WITH OPTION TO TENDER DEFENSE

It is understood and agreed that the General Terms & Conditions Liability Coverage Section is amended by deleting Clause 6, DEFENSE OF CLAIM AND SETTLEMENT, in its entirety and replacing with the following:

### 6. DEFENSE OF CLAIM AND SETTLEMENT

The **Insurer** does not assume any duty to defend any **Claim** under this policy. However, the **Insurer** shall have the right to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Claim**.

The **Insured(s)** shall defend and contest any **Claim** made against them. The **Insured** shall obtain the **Insurer's** written consent in the selection of defense counsel to represent the **Insured** as respects any **Claim**, such consent shall not be unreasonably withheld.

The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention.

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

The **Insurer** shall reimburse **Defense Costs** prior to the final disposition of any **Claim**, subject to all other terms and conditions of this policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

**Right to Tender Defense**

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**; however, the **Insureds** shall not have the right to tender the defense of any **Claim** under: (1) Insuring Agreement D.: Derivative Demand Coverage of the Directors & Officers Liability Coverage Section; or (2) Insuring Agreement B: Voluntary Compliance Program Coverage of the Fiduciary Liability Coverage Section.

1

CVS FL 10085 PV (07/08)

Exhibit A, Page 133

This right shall be exercised by the **Parent Company** on behalf of all **Insureds** by providing written notice to the **Insurer's** authorized agent identified in Item 9 of the Declarations. The **Insured's** right to tender the defense of a **Claim** shall terminate if it is not exercised within thirty days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The **Insurer's** assumption of the defense of the **Claim** shall be effective upon the **Insurer** providing written confirmation sent thereof to the **Parent Company**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause 6; provided, however, the **Insurer** shall not be obligated to defend such **Claim** after the applicable Limit of Liability has been exhausted.

When the **Insurer** has assumed the duty to defend, it shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate. In the event the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, the **Insurer's** liability for **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled the **Claim**; plus (2) any **Defense Costs** incurred up to the date the **Insured** refused to settle such **Claim**; plus (3) eighty percent (80%) of covered **Loss**, other than **Defense Costs**, in excess of the amount for which the **Insurer** could have settled the **Claim**. However, in no event shall the **Insurer's** liability exceed the applicable Limit of Liability as set forth in Item 4 of the Declarations.

When the **Insurer** has assumed the duty to defend, it shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

**Derivative Demand Coverage**

With respect to Insuring Agreement D.: Derivative Demand Coverage of the Directors & Officers Liability Coverage Section, the **Company,** and not the **Insurer**, has the duty to investigate and evaluate the **Derivative Demand**. The **Insurer** shall have the right to effectively associate with the **Company** in such process.

**Voluntary Settlement Program Loss**

With respect to Insuring Agreement B: Voluntary Compliance Program Coverage of the Fiduciary Liability Coverage Section, the **Company**, and not the **Insurer**, has the duty to investigate and evaluate the **Voluntary Compliance Program Loss.** The **Insurer** shall have the right to effectively associate with the **Company** in such process, including the negotiation of any settlement as respects the **Voluntary Compliance Program Loss.**

2

CVS FL 10085 PV (07/08)

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

3

CVS FL 10085 PV (07/08)

Exhibit A, Page 135

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### ABSOLUTE BODILY INJURY/PROPERTY DAMAGE EXCLUSION
### (D&O Coverage Section)

It is understood and agreed that Clause 3, EXCLUSIONS, of the Directors & Officers Liability Coverage Section is amended by deleting Exclusion (n) in its entirety and replacing it with the following:

   (n)    alleging, arising out of, based upon or attributable to bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, violation of any right of privacy, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10086 PV (07/08)

Exhibit A, Page 136

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## AMEND CONTRACT EXCLUSION
### (D&O Coverage Section)

It is understood and agreed that Exclusion (e) of Clause 3, EXCLUSIONS, of the Directors & Officers Liability Coverage Section is deleted and replaced by the following exclusion:

    (e)  based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement, except to the extent that such **Insured** would have been liable in the absence of such contract or agreement;

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10087 PV (07/08)

Exhibit A, Page 137

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## AMEND DEFINITION OF "SUBSIDIARY" –
## CHANGE REVENUE THRESHOLD
### (D&O Coverage Section)

It is understood and agreed that Definition (k), **"Subsidiary"** of the Directors & Officers Liability Coverage Section is amended by changing the automatic subsidiary threshold in items (2) and (3) of such Definition from 25% to __%.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10088 PV (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

**AMEND POLLUTION EXCLUSION -
DELETE EXCEPTION FOR SECURITIES CLAIMS
(D&O Coverage Section)**

It is understood and agreed that Clause 3, EXCLUSIONS, of the Directors & Officers Liability Coverage Section is amended by deleting Exclusion (j) in its entirety and replacing it with the following:

    (j)    alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, **Pollution**; provided, however, that this exclusion shall not apply to any **Claim** under Insuring Agreement A, except for **Loss** constituting **Cleanup Costs**;

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10090 PV (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## ANTI - TRUST CLAIM COVERAGE EXTENSION –
## WITH SEPARATE RETENTION, SUBLIMIT AND CO-INSURANCE
### (D&O Coverage Section)

It is understood and agreed that the Directors & Officers Liability Coverage Section is amended as follows:

1.  This policy shall include coverage for **Loss** in connection with an **Anti -Trust Claim**.

2.  Solely with respect to this endorsement, the following defined term applies:

    **"Anti-Trust Claim"** means any **Claim** alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

3.  Item 4 of the Declarations, LIMIT OF LIABILITY, is amended by adding the following:

    Sublimit of Liability for Anti -Trust Claim Coverage          $

    The above Sublimit of Liability is part of, and not in addition to, the Limit of Liability applicable to the Directors & Officers Liability Coverage Section set forth in Item 4 of the Declarations.

4.  Item 5 A. of the Declarations, RETENTION, is amended by adding the following:

    Anti -Trust Claims          $

5.  Notwithstanding any other provision of this policy to the contrary, the **Insurer's** maximum liability for each **Loss** arising from an **Anti-Trust Claim** covered under this policy shall be __% of such **Loss**. The remaining __% of each such **Loss** shall not be covered by this policy and shall be paid by the **Insured**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10091 PV (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## ANTI - TRUST CLAIM COVERAGE EXTENSION – WITH SUBLIMIT
### (D&O Coverage Section)

It is understood and agreed that the Directors & Officers Liability Coverage Section is amended as follows:

1. This policy shall include coverage for **Loss** in connection with an **Anti -Trust Claim**.

2. Solely with respect to this endorsement, the following defined term applies:

    **"Anti-Trust Claim"** means any **Claim** alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

3. Item 4 of the Declarations, LIMIT OF LIABILITY, is amended by adding the following:

    Sublimit of Liability for Anti -Trust Claim Coverage            $

    The above Sublimit of Liability is part of, and not in addition to, the Limit of Liability applicable to the Directors & Officers Liability Coverage Section as set forth in Item 4 of the Declarations.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10092 PV (07/08)

Exhibit A, Page 141

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## ANTI - TRUST EXCLUSION –
## APPLIES TO ENTITY ONLY
### (D&O Coverage Section)

It is understood and agreed that Clause 3, EXCLUSIONS, of the Directors & Officers Liability Coverage Section is amended by adding the following exclusion:

> This policy shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships; provided, however, that this exclusion shall apply only to the **Company**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10093 PV (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### DELETE NON-RESCINDABLE CLAUSE
### (Fiduciary Coverage Section)

It is understood and agreed that Clause 6, NON-RESCINDABLE CLAUSE, of the Fiduciary Liability Coverage Section is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10096 PV (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

### DELETE NON-RESCINDABLE CLAUSE
### (D&O Coverage Section)

It is understood and agreed that Clause 5, NON-RESCINDABLE CLAUSE, of the Directors & Officers Liability Coverage Section is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10097 PV (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## DIRECTOR EXCLUSION
### (EPL Coverage Section)

It is understood and agreed that Clause 3, EXCLUSIONS, of the Employment Practices Liability Coverage Section is amended by adding the following exclusion:

> This policy shall not cover any **Loss** in connection with any **Claim** brought by or on behalf of any **Insured Person** who is or was a director of any **Company**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10170 PPV (07/08)

Endorsement No.:
This endorsement, effective:
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.:
Issued to:
By:

## EMPLOYED LAWYERS COVERAGE EXTENSION
### (D&O Coverage Section)

It is understood and agreed that the Directors & Officers Liability Coverage Section is amended by adding the following:

1. This policy shall include coverage for **Employed Lawyers** but solely with respect to **Wrongful Acts** (as defined below) by an **Employed Lawyer** acting in the capacity as such and subject to the terms and conditions of this endorsement.

2. The coverage provided by this endorsement is specifically excess of any other valid and collectible lawyers professional liability insurance, legal malpractice or errors and omissions insurance and shall drop down and provide primary insurance only in the event of the exhaustion of such other insurance due to the payment of losses thereunder.

3. In determining whether the Retention amount for the Directors & Officers Liability Coverage Section as stated in Item 5 of the Declarations applies to a **Claim** under this endorsement, it is presumed that the **Company** shall indemnify the **Employed Lawyer** to the fullest extent permitted by statutory or common law or the charter, by-laws, operating agreement or similar document of the **Company**.

4. The Definition of **"Insured Person(s)"** is amended to include any **Employed Lawyer**.

5. Solely with respect to the coverage provided by this endorsement, this policy shall not cover any **Loss** in connection with any **Claim** made against an **Employed Lawyer**:

   (a) alleging, arising out of, based upon or attributable to any **Wrongful Act** which occurred at a time when the **Employed Lawyer** was not employed as a lawyer by the **Company**;

   (b) alleging, arising out of, based upon or attributable to any **Wrongful Act** if, as of the **Pending or Prior Date** set forth below, an **Employed Lawyer** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**; or

   (c) alleging, arising out of, based upon or attributable to any activities or conduct of the **Employed Lawyer** as an officer, director or governor of any entity other than the **Company**.

6. Solely with respect to this endorsement, the following defined terms apply:

   **"Employed Lawyer"** means any employee of the **Company** who is admitted to practice law and who is employed, or was employed, at the time of the alleged **Wrongful Act** as a full-time lawyer for, and salaried by, the **Company**.

CVS FL 10172 PPV (07/08)

1

"**Pending or Prior Date**" means, for each **Employed Lawyer**, the later of *(insert date)* or the first date that such person became an **Employed Lawyer**.

"**Wrongful Act**" means any act, error, or omission by an **Employed Lawyer** in the rendering or failure to render professional legal services for the **Company**, but solely in his or her capacity as such. "**Wrongful Act**" shall not mean any act, error, or omission in connection with such activities by such **Employed Lawyer**: (i) which are not related to such **Employed Lawyer's** employment with the **Company**; (ii) which are not rendered on behalf of the **Company** at the **Company's** written request; or (iii) which are performed by the **Employed Lawyer** for others for a fee.

7.  The Sublimit of Liability for the coverage provided by this endorsement shall be $_____. This Sublimit of Liability shall be part of, and not in addition to, the Limit of Liability applicable to the Directors & Officers Liability Coverage Section as set forth in Item 4 of the Declarations.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10172 PPV (07/08)

Endorsement No.: _____
This endorsement, effective: _____
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Form a part of Policy No.: _____
Issued to: _____
By: _____

# CALIFORNIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance coverage provided under the RESOLUTE PORTFOLIO FOR PRIVATE COMPANIES INSURANCE POLICY.
COVERAGE PART:  GENERAL TERMS AND CONDITIONS SECTION

It is understood and agreed:

A. The second paragraph of Clause **12. CANCELLATION AND NON RENEWAL CLAUSE** is amended by the addition of the following:

Notice of cancellation shall also be sent to the producer of record, if applicable, provided that the producer of record is not an employee of the **Insurer**.

B. The last paragraph of Clause **12. CANCELLATION AND NON RENEWAL CLAUSE** is deleted and replaced by the following:

The **Insurer** shall have no obligation to renew this policy or any applicable Coverage Section.  In the event the **Insurer** decides to non-renew this policy or any applicable Coverage Section, or to condition renewal upon a reduction of the Policy's Limit of liability, an elimination of coverage or an increase of more than twenty-five percent (25%) of the current policy's premium, the **Insurer** shall deliver or mail to the **Parent Company**, as identified in Item 1 of the Declarations, written notice of such decision at least sixty (60) days, but not more than one hundred twenty (120) days, prior to the expiration of the **Policy Period**.  The notice shall state the reason for non-renewal.

C. Notwithstanding anything to the contrary in the definition of **Loss** in any liability Coverage Section purchased by the **Insured**, punitive damages are not insurable in California.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

CVS FL 10107 PV (02/09)

| *SERFF Tracking #:* | TSMP-126036314 | *State Tracking #:* | 09-4985 | | *Company Tracking #:* | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|---|

| *State:* | California | | *Filing Company:* | Starr Indemnity & Liability Company |
|---|---|---|---|---|
| *TOI/Sub-TOI:* | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | | |
| *Product Name:* | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies | | | |
| *Project Name/Number:* | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | | |

## Rate Information

Rate data applies to filing.

| | |
|---|---|
| **Filing Method:** | SERFF - New Program |
| **Rate Change Type:** | Neutral |
| **Overall Percentage of Last Rate Revision:** | 0.000% |
| **Effective Date of Last Rate Revision:** | 06/15/2009 |
| **Filing Method of Last Filing:** | N/A |
| **SERFF Tracking Number of Last Filing:** | |

## Company Rate Information

| Company Name: | Overall % Indicated Change: | Overall % Rate Impact: | Written Premium Change for this Program: | Number of Policy Holders Affected for this Program: | Written Premium for this Program: | Maximum % Change (where req'd): | Minimum % Change (where req'd): |
|---|---|---|---|---|---|---|---|
| Starr Indemnity & Liability Company | 0.000% | 0.000% | $0 | 0 | $0 | 0.000% | 0.000% |

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|---|

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
|---|---|---|---|---|
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | | |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies | | | |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | | |

## Rate/Rule Schedule

| Item No. | Schedule Item Status | Exhibit Name | Rule # or Page # | Rate Action | Previous State Filing Number | Attachments |
|---|---|---|---|---|---|---|
| 1 | | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 1 - Pgs. 1-42 | 0 | Withdrawn | | |
| 2 | | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 2 - Pgs. 43-71 | 0 | Withdrawn | | |
| 3 | | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage | 0 | New | | California Private Company Range Rating Plan 0709 Pages.pdf |

Exhibit A, Page 150

**Private Company Management Liability:**
**Coverage including Directors and Officers Insurance, Employment Practices**
**Insurance, Fiduciary Liability and Crime & Fidelity Coverage (ed. 07-2009)**

This policy will provide primary coverage in excess of retentions. The following rating practice will be utilized in the development of policy premium.

The annual premium is determined based upon the sum of the coverage sections.
Annual Premium =D&O + EPL+ FL+CR

Coverage Sections are available to purchase on a stand alone basis as well as in conjunction with other Coverage Sections. The General Terms and Conditions section shall serve as the basis of the policy form and the Coverage Sections shall be included upon selection by the Company. In the event Coverage Sections are not purchased, such premium calculation shall not be included in the overall sum of the annual premium.

D&O = D&O Base premium * D&O risk modifiers * limit of liability modifier * retention modifier

EPL= EPL Base premium * EPL risk modifiers * limit of liability modifier * retention modifier

FL= FL Base premium * FL risk modifiers * limit of liability modifier * retention modifier
Should the Company wish to purchase combined or shared limits of liability, a combined limit modifier will be applied to the coverage parts sharing the limit of liability. Those coverage parts shall be added to any additional coverage part(s) not combining the limits with any other coverage parts, and therefore has a separate limit of liability available to such liability. The overall maximum limit of liability shall be the total of the combined limits for shared Coverage Sections plus the separate limit for specified Coverage Sections

CR is determined using the Crime & Fidelity Rate Plan as provided below. A separate limit of liability shall apply to this coverage section.

This rating plan does not contemplate any substantial shift in trends involving legal environment, loss severity or newly emerging exposures not previously contemplated in the pricing of the risk.

CA Private Range Rate 7-09

1

**D&O Premium Calculation**

The base premium for the first $1mm of limits with $25,000 retention will be determined on the basis of assets of the covered entity and its covered affiliates.

| Total Revenue | Base Rate |
|---|---|
| Less than $100,000 | $1,800 |
| $100,001 - $250,000 | $2,000 |
| $251,000- $500,000 | $2,200 |
| $500,001-$1,000,000 | $2,500 |
| $1,000,001- $2,000,000 | $3,500 |
| $2,000,001- $3,000,000 | $4,000 |
| $3,000,001- $4,000,000 | $4,400 |
| $4,000,001- $5,000,000 | $4,700 |
| $5,000,001-$7,500,000 | $5,350 |
| $7,500,001-$10,000,000 | $6,000 |
| $10,000,001-$15,000,000 | $7,000 |
| $15,000,001-$20,000,000 | $8,000 |
| $20,000,001- $30,000,000 | $9,000 |
| $30,000,001- $40,000,000 | $10,000 |
| $40,000,001- $50,000,000 | $11,000 |
| $50,000,001- $75,000,000 | $13,000 |
| $75,000,001- $100,000,000 | $16,500 |
| $100,000,001- $125,000,000 | $17,500 |
| $125,000,001-$150,000,000 | $18,500 |
| $150,000,001- $175,000,000 | $19,500 |
| $175,000,001- $200,000,000 | $20,500 |
| $200,000,001- $300,000,000 | $21,000 |
| $300,000,001-$400,000,000 | $22,000 |
| $400,000,001-$500,000,000 | $23,000 |
| $500,000,001-$750,000,000 | $24,000 |
| $750,000,001-$1,000,000,000 | $25,000 |

**D&O Risk Modifiers**

| D&O Risk Analysis (each modifier should be underwritten separately and a risk factor should be applied to each risk characteristic) | | Factor |
|---|---|---|
| Ownership Structure Factor is applied to take into account the amount of shareholder exposure | - Insiders own all the shares | .75-.90 |
| | - Insiders own majority of shares | 1.0-1.1 |
| | - Non-affiliated individuals and/or institutional investors own majority of | 1.1-1.3 |

CA Private Range Rate 7-09

2

| | shares | |
|---|---|---|
| the organization has based upon the number and type of shareholders as well as their "voice" within the company | | |
| Number of years in business:<br>Factor is applied to take into account the amount of time the Insured has been in operation. The relevance of such time in operation is assessed with regards to its bearing on the particular risk being evaluated. | - Greater than 10 years<br>- 5 to 10 years<br>- 2 to 5 years<br>- Less than 2 years | .75- .90<br>.90-1.0<br>1.0-1.15<br>1.15-1.25 |
| Quality of Management and Board Composition:<br>Factor is determined by assigning a rating factor (as described) which reflects the degree of underwriting concern/confidence as respects the experience and expertise of the Board and management | - Excellent (Broad diversification of experience and knowledge with industry, legal, accounting and business experience, majority of board composed of outside representatives, separation of CEO and chairman of board positions)<br>- Average (Variety of experience and knowledge of industry, outsider members present, shared or separate positions for CEO and Chairman of board)<br>- Below Average (Majority of board are insiders, limited experience of board and management, shared CEO and Chairman of Board position)<br>- Poor (Lack of outside board representation, lack of diversified experience of board, shared CEO and Chairman of Board) | .75-1.0<br><br><br><br><br>1.0-1.15<br><br><br><br>1.15-1.25<br><br><br><br>1.25-1.35 |
| Offering of Securities:<br>Private Placement or public exempt filings Activity:<br>Factor takes into account the securities offering activity that a risk has had during the past 12 months or that the risk will have over the next 12 months | - None<br>- Minimal (Less than 35% of assets/revenues)<br>- Material (Greater than 25% of assets/revenues, but no more than 35% of assets/revenues)<br>- Significant (Greater than 35% of assets/revenues | 1.0<br>1.0-1.15<br><br>1.15-1.3<br><br>1.3-1.5 |

CA Private Range Rate 7-09

| | | |
|---|---|---|
| Merger and Acquisition Strategy<br>Factor is determined by assigning a rating factor that reflects the degree of underwriting confidence/concern regarding the account's mergers/acquisitions history or anticipation for future mergers/acquisition activity. | - No activity in last two years<br>- Limited Activity in last two years (2 or less acquisitions with revenue of less than 20% of Company)<br>- Moderate Activity in last two years (2 or less acquisitions with revenues of 25% of Company)<br>- Significant Activity (More than 2 acquisitions with revenue greater than 25% of Company) | .85-1.0<br>1.0-1.10<br><br>1.1-1.25<br><br>1.25-1.75 |
| Equity and debt structure:<br>Factor is determined based upon the current ownership and debt structure that the organization utilizes and the impact on the company financially to meet its obligations | - Private Equity, Private Debt<br>- Private Equity , Public debt | 1.0<br>1.2-2.0 |
| Financial Condition<br>Financial Condition (Factor is determined based upon the strength of the Balance Sheet and or/Income Statement ratios and trends and the Insured's compliance with Banking lines of credit.  The balance sheet, income statement and cash flows are thoroughly analyzed and individually evaluated. The level is determined based upon their current position as well as the position relative to the current market conditions, competitors | Debt to Equity position<br>- Below Average<br>- Average<br>- Above average<br><br>Earnings trend<br>-Below Average<br>- Average<br>- Above average<br><br>Bank credit compliance<br>- Below Average<br>- Average<br>- Above average | <br>1.15<br>1.0<br>.9<br><br><br>1.15<br>1.0<br>.9<br><br><br>1.15<br>1.0<br>.9 |

CA Private Range Rate 7-09

4

| and other industry conditions.) | | |
|---|---|---|
| Prior D&O Claim activity: Activity Factor is determined by assigning a factor that reflects the degree of the account's current litigation or current conditions which could potentially lead to future litigation. | - None in three years<br>- Minimal (payment within suggested retention and less than policy limits)<br>- Significant (payment above suggested retention and above policy limits) | .80-1.0<br>1.0-1.2<br><br>1.2-1.5 |

**Limit of Liability Modifier**

| Limit of Liability | Factor |
|---|---|
| $100,000 | .550 |
| $250,000 | .650 |
| $500,000 | .825 |
| $750,000 | .90 |
| $1,000,000 | 1.0 |
| $2,000,000 | 1.5 |
| $3,000,000 | 1.85 |
| $5,000,000 | 2.1 |
| $7,500,000 | 2.35 |
| $10,000,000 | 3.5 |

**Retention Modifier**

| Retention | Factor |
|---|---|
| $0 | 1.325 |
| $2500 | 1.300 |
| $5000 | 1.250 |
| $7500 | 1.200 |
| $10000 | 1.150 |
| $15,000 | 1.100 |
| $20,000 | 1.05 |
| $25,000 | 1.00 |
| $35,000 | 0.920 |
| $50,000 | 0.850 |
| $75,000 | 0.775 |
| $100,000 | 0.725 |
| $250,000 | 0.675 |
| $500,000 | 0.600 |

CA Private Range Rate 7-09

**EPL Premium Calculation**

The base premium for the first $1mm of limits with $25,000 retention will be determined on the basis of employee count of the covered entity and its covered affiliates.
(Part time, seasonal, temporary, non-US based employees shall be counted as ½ employee.)

**EPL Base Rates**

| Employee Count | Base Rate per employee | Cumulative Totals |
|---|---|---|
| 0- 25 | $2000 flat charge | $2,000 |
| 26-50 | $50 | 2000+1200= $3,200 |
| 51- 150 | $35 | 3200+3465= $6,665 |
| 151-250 | $30 | 6665+2970= $9,635 |
| 251-350 | $25 | 9635+2475= $12,110 |
| 351-500 | $23 | 12110+3427= $15,537 |
| 501-1000 | $18 | 15537+13972= $29,509 |
| 1001-2000 | $16 | 29509+15984= $45,493 |
| 2001-5000 | $13 | 45493+38987= $84,480 |
| 5001-10000 | $10 | 84480+ 49990= $134,470 |
| 10,001-20,000 | $7 | 134470+ 69993= $204,463 |
| 20,001-50,000 | $5 | 204463+149995= $354,458 |

CA Private Range Rate 7-09

Exhibit A, Page 156

**EPL Risk Modifiers**

| EPL Risk Analysis (apply factor to each risk characteristic) | | Factor |
|---|---|---|
| Financial Condition: Factor is applied to an account on the basis of Balance Statement and/or Income statement ratios and trends and the Insured's compliance with Banking lines of credit. The account's key financial statements (Balance Sheet, Income Statement and Cash Flows) are thoroughly analyzed and individually evaluated | Profitable last three years -Yes -No  Debt to Equity position - Below Average - Average - Above average | .90-1.0 1.0-1.1   1.1 1.0 .9 |
| Number of years in business: Factor is applied to take into account the amount of time the Insured has been in operation. The relevance of such time in operation is assessed with regards to its bearing on the particular risk being evaluated. | - Greater than 10 years - 5 to 10 years - 2 to 5 years - Less than 2 years | .75- .90 .90-1.0 1.0-1.15 1.15-1.35 |
| Territorial Modifier: Factor is determined by the where the Insured's employees are located. Specific rate factors are then used on the basis of state modifier rate frequency/severity potential in those particular states | High Risk (California) High to Medium Risk (FL, NY Michigan, NJ, TX) Medium Risk (AL, AZ, DC, IL, MA,MN, OR) Low Risk (All other States) | 1.30 1.15   1.0   .90 |
| Prior EPL Claim activity: Activity Factor is determined by assigning a factor which reflects the degree of the account's current litigation or current conditions which could potentially lead to future | - None in last three years - Minimal (claims reported but unlikely payout expected greater than retention) in last three years - Material (claims payout anticipated, overall severity less than policy limits) in last three years - Significant (payment exceeds | .80 – 1.0 1.0-1.3    1.3-1.5 |

CA Private Range Rate 7-09

| litigation. | suggested policy limits and retention) in last three years | 1.5-2.0 |
|---|---|---|
| Industry Modifier: Factor applied based upon the type and level of employee base | Low –highly regulated, lower salaried employees, etc Medium- High- high salaried employees, specialists, complex pay packages etc | .8-1.0 1.0-1.15 1.15-1.5 |
| Employee Turnover Rate and or Reductions in workforce: Factor applied based upon amount of layoffs and turnover in employee base | Less than 10% 10-20% 21%- 30% Greater than 30% | .85 .85-1.0 1.0-1.1 1.1-1.2 |
| HR Practices and Policies: Factors applied based upon the level and types of policies, procedures  and practices instituted within the company | At Will statement   -  Yes   -  No Employee Handbook/Written Guidelines   -  Yes   -  No Annual Performance Reviews   -  Yes   -  No Employee Training for Harassment   -  Yes   -  No Full Time HR Professional - Yes - No | .85-1.0 1.0-1.2 .85-1.0 1.1-1.2 .9-1.0 1.0-1.1 .90-1.0 1.1-1.2 .85-1.0 1.0-1.1 |
| Merger and Acquisition Strategy Factor is determined by assigning a rating factor which reflects the degree of underwriting confidence/concern regarding the account's mergers/acquisitions history or anticipation for future mergers/acquisition activity. | - No activity in last two years - Limited Activity in last two years - Significant Activity | .85 – 1.0 1.0-1.10 1.1-1.2 |
| Punitive Damages** | - No coverage | .80 – 1.0 |

**Interpolation should be used if sub-limits or modified retentions are applied.

CA Private Range Rate 7-09

**Limit Of Liability Modifier**

| Limit of Liability | Factor |
|---|---|
| $100,000 | .60 |
| $250,000 | .65 |
| $500,000 | .75 |
| $1,000,000 | 1.0 |
| $2,000,000 | 1.55 |
| $3,000,000 | 1.95 |
| $5,000,000 | 2.575 |
| $7,500,000 | 3.375 |
| $10,000,000 | 3.9 |

**Retention**

| Retention Modifiers | Factor |
|---|---|
| $2500 | 1.40 |
| $5000 | 1.325 |
| $7500 | 1.275 |
| $10000 | 1.225 |
| $15,000 | 1.150 |
| $20,000 | 1.05 |
| $25,000 | 1.00 |
| $35,000 | .950 |
| $50,000 | .900 |
| $75,000 | .825 |
| $100,000 | .775 |
| $150,000 | .760 |
| $175,000 | .750 |
| $250,000 | .700 |
| $500,000 | .675 |
| $1,000,000 | .650 |
| $2,500,000 | .625 |

**Third Party Coverage Modifier**

| Third Party Coverage ** | | |
|---|---|---|
| Factor applied based upon the level of interaction employees have with outside vendors and customers | - No coverage requested<br>- Third Party Exposure:<br> *Low- limited customer/vendor interaction<br> *Medium- average customer/vendor interaction<br> *High- high customer/vendor interaction | 1.0<br><br>1.0-1.1<br><br>1.05-1.20<br><br>1.20-1.4 |

**Interpolation should be used if sub-limits or modified retentions are applied.

CA Private Range Rate 7-09

**Fiduciary Liability Premium Calculation**

The base premium for the first $1mm of limits with $25,000 retention will be determined on the basis of plan assets of the covered entity and its covered affiliates.

| Total Plan Assets | Base Rate |
|---|---|
| $0-$100,000 | $1000 |
| $100,000- $500,000 | $1,250 |
| $500,005-$1,000,000 | $1,500 |
| $1,000,001-$2,000,000 | $1,850 |
| $2,000,001-$3,000,000 | $2,100 |
| $3,000,001-$4,000,000 | $2,450 |
| $4,000,001-$5,000,000 | $2,800 |
| $5,000,001-$7,5000,000 | $3,100 |
| $7,500,001-$10,000,000 | $3,800 |
| $10,000,001-$12,500,000 | $4,100 |
| $12,500,001-$15,000,000 | $4,200 |
| $15,000,001-$20,000,000 | $4,400 |
| $20,000,001-$30,000,000 | $5000 |
| $30,000,001-$50,000,000 | $5,700 |
| $50,000,001-$75,000,000 | $6,250 |
| $75,000,001-$100,000,000 | $7,400 |
| $100,000,001-$150,000,000 | $8,400 |
| $150,000,001-$200,000,000 | $9,150 |
| $200,000,001-$250,000,000 | $10,450 |
| $250,000,001-$300,000,000 | $11,700 |
| $300,000,001-$400,000,000 | $12,700 |
| $400,000,001-$500,000,000 | $13,750 |
| $500,000,001-$600,000,000 | $15,000 |
| $600,000,001-$750,000,000 | $16,250 |
| $750,000,001-$1,000,000,000 | $18,250 |

**Fiduciary Liability Risk Modifier**

| FL Risk Analysis | | Factor |
|---|---|---|
| Financial Condition of Company (Factor is determined based upon the strength of the Balance Sheet and trends.  The balance sheet is thoroughly analyzed and individually evaluated.  The level is determined based upon their current position as well as the position relative to the | Profitable last three years<br>-Yes<br>-No<br><br>Debt to Equity position<br>- Below Average<br>- Average<br>- Above average | .90-1.0<br>1.0-1.1<br><br><br>1.1<br>1.0<br>.9 |

CA Private Range Rate 7-09

10

| | | |
|---|---|---|
| current market conditions, competitors and other industry conditions.) | | |
| Type of Plan: Factor applied based upon the type of plans covered and overall size based upon all plan assets | - Welfare Only<br>- Welfare and Defined Contribution<br>- Welfare, Defined Contribution and Defined Benefit | .75-.90<br>1.0-1.15<br><br>1.1-1.25 |
| Employee Stock Ownership Plan (ESOP): Factor applied if company has an ESOP and to what extent the ESOP holds the shares of the company | - None<br>- ESOP owns less than 50% of shares<br>- ESOP owns more than 50% of shares | 1.0<br>1.0-1.15<br><br>1.15-1.4 |
| Funding Level: Factor applied based upon the funding level of the defined benefit plans and other plan obligations of the company | - Funding level requirements within 10%<br>- Over Funded or under funded by >10% but <25%<br>- Over funded or under funded by > 25% | 1.0<br><br>1.0-1.15<br><br><br>1.15-1.25 |
| Investment in Company Securities: Factor applied based upon the amount of investment the plans have of company stock and to what extent the employees determine the holding of such shares and the time frame required, if any | - None<br>- Minimal investments, employee discretion<br>- Significant investments, employer directed | 1.0<br>1.0-1.1<br><br>1.1-1.4 |
| Investments: Factor applied based upon the diversification of the plan assets and the type of investments that the plans are dependent upon | - Quality of Plan investments and diversification are above average<br>- Quality of Plan investments and diversification are average<br>- Quality of Plan investments and diversification are below average | .85-1.0<br><br><br>1.0<br><br><br><br>1.05-1.15 |

CA Private Range Rate 7-09

11

| Administrative Expenses: Factor applied based upon the level of administrative expenses charged to the plans | - Expenses greater than 5%<br>- Expenses less than 5% | 1.05-1.1<br><br>1.0 |
|---|---|---|
| Benefits: Factor applied based upon the stability of the plan benefits offered to employees | - Plan benefits have been modified within the last two years or are in the process of being modified<br>- Plan benefits have not been modified within the last two years or are not in the process of being modified | 1.1-1.25<br><br><br><br>1.0 |
| Third Party Administrator Coverage: Factor applied in the event a third party administrator is used and the expertise they offer | - Yes<br>- No | 1.1-1.25<br>1.0 |
| Prior PTL Claim activity: Activity Factor is determined by assigning a factor which reflects the degree of the account's current litigation or current conditions which could potentially lead to future litigation. | - None in last three years<br>- Minimal (claims reported but unlikely payout expected greater than retention) in last three years<br>- Material (claims payout anticipated, overall severity less than policy limits) in last three years<br>- Significant (payment exceeds suggested policy limits and retention) in last three years | .80-1.0<br>1.0-1.1<br><br><br><br>1.1-1.2<br><br><br>1.2-1.4 |

**Limit of Liability Modifier**

| Limit of Liability | Factor |
|---|---|
| $100,000 | .600 |
| $250,000 | .650 |
| $500,000 | .750 |
| $1,000,000 | 1.00 |
| $2,000,000 | 1.45 |
| $3,000,000 | 1.75 |
| $5,000,000 | 2.30 |
| $7,500,000 | 2.90 |

CA Private Range Rate 7-09

| $10,000,000 | 3.30 |
|---|---|

**Retention Modifier**

| Retention | Factor |
|---|---|
| $0 | 1.10 |
| $1000 | 1.075 |
| $2500 | 1.05 |
| $5000 | 1.00 |
| $7500 | .975 |
| $10000 | .950 |
| $15,000 | .915 |
| $20,000 | .900 |
| $25,000 | .885 |
| $35,000 | .860 |
| $50,000 | .835 |
| $75,000 | .810 |
| $100,000 | .780 |
| $250,000 | .750 |
| $500,000 | .725 |

**Other Coverage Modifiers:**

**Combined/Shared Limit of Liability Modifier**
Credit applied to the total premium of the Coverage Sections combining/sharing limits of liability

| No Coverage Section combining or sharing limit of liability | 0.0% |
|---|---|
| Two Coverage Sections combining or sharing limit of liability | .80 |
| Three Coverage Sections combining or sharing limit of liability | .65 |

| Change Defense Provision to Optional Duty to Defend | .85 |
|---|---|

*All limit and retention tables for each Coverage Section allow for interpolation if intermediate values are needed. In the event further values are needed outside of the tables provided, extrapolation should be used to develop such values.*

CA Private Range Rate 7-09

13

Exhibit A, Page 163

**Crime and Fidelity Premium Calculation**

This Coverage Section will provide primary coverage on a per-occurrence Limit of Liability basis, excess of a per-occurrence Deductible. The following rating practice will be utilized in the development of policy premium.

The annual premium is determined based upon the sum of the premium for all Insuring Agreements elected by the Insured and for the Limit of Liability and Deductible chosen for each Insuring Agreement:

> I.E: Annual Premium = Insuring Agreement (A) Premium + Insuring Agreement (B) Premium + Insuring Agreement (C) Premium, etc.

Insuring Agreements A through K, indicated in the Coverage Section, may be purchased individually or collectively or in varying combinations, with varying Limits of Liability and Deductible combinations. Insuring Agreement A should generally be offered to all applicants, unless there is a sound business reason in support otherwise. In any such cases, the underwriting file must be documented to confirm the rationale. The limit offered for Insuring Agreements B through K should not exceed the limit offered under Insuring Agreement A, unless there is a sound business reason in support otherwise. In such cases the underwriting file must be documented to confirm the rationale.

A base premium will be developed for each Insuring Agreement using the **Standard Rate Plan-Applicable to All Risks** beginning on the page that follows below.

Loss Cost Multipliers will be applied to the base premiums for each Insuring Agreement selected.

**Special Circumstance – Individual Risk Situations**

**1. Rating Or Classifying**

The Standard Rating Plan does not contemplate unique or unusual features that may be present for a risk. Where it can be clearly demonstrated that one or more individual risk conditions exists, the premium determined in the Standard Rate Plan will be further modified as described in **Table A** below.

**2. Restriction of Coverage**

The Standard Rating Plan does not contemplate situations where coverage is materially restricted. If the Insuring Agreement contemplated by an applicable classification and rate is endorsed to restrict coverage for hazards not common to all risks within the class, the premium determined in the Standard Rate Plan will be further modified in accordance with **Table B** below

CA Private Range Rate 7-09

14

**Standard Rate Plan – Applicable to All Risks[1]**
**Fidelity Insuring Agreements[2]**

**Employee Theft Insuring Agreement A**
**A. Rating Data**
1. Based on the predominant activity of the insured, determine the applicable Class Code. Refer to the **Table 1 Crime and Fidelity Classification Table**
2. Using the Class Code, determine the applicable rate modifiers which will be applied during the rating process
3. Determine the number of ratable employees. Ratable employees consist of:
   a. all officers;
   b. all employees (including persons or entities construed to be employees by endorsement, other than agents, partners and members of a limited liability company) who handle, have custody or maintain records of money, securities or other property;
   c. all directors, trustees, officers, employees, administrators and managers (other than independent contractors) not included in items **A.3**.a. and **A.3**.b. above, who handle funds or other property of employee benefit plans subject to the Employee Retirement Income Security Act (ERISA);
   d. all leased employees and former employees hired as consultants not included in items **A.3**.a. through **A.3**.c. above;
   e. all fiduciary, trustee, administrator or other Employee Retirement Income Security Act (ERISA) who required to be bonded by ERISA, and who is not included in items **A.3**.a. through **A.3**.d. above;
   f. one percent (1%) of all others not included in items **A.3**.a. through **A.3**.e. above. Round to the nearest whole person; for example, 2.5 = 3.
   Add the number produced in item **A.3**.f. above to the total determined in items **A.3**.a. through **A.3**.e. above.
4. Determine the number of additional premises (other than the head office).
**B. Premium Computation**
1. Select the limit of insurance to be written. If a deductible applies, add the deductible amount to the limit selected to produce the total limit of insurance used in rating.
2. Refer to **Table 2 Fidelity Exposure Units - Blanket Coverage** to determine applicable rates
3. Based on the total limit of insurance determined in item **B.1** above, compute the:
   (a)   exposure units for the number of ratable employees determined in item **A.3**.above; and
   (b)   exposure units for the number of additional premises determined in item **A.4**. above. The exposure units for the additional premises are subject to modification in accordance with the following:

| Number Of Additional Premises | Percentage Of Exposure Units To Be Charged |
|---|---|
| Each of the first 25 | 100% |
| Each of the next 25 | 25% |
| Each of the next 50 | 5% |
| Each Over 100 | No Charge |

---

[1] Note:  Premium developed in Standard Rate Plan shall be adjusted further where Special Conditions exist
[2] As used in this Rate Plan, Fidelity refers to:  Employee Theft, Forgery or Alteration, Computer Fraud, Funds Transfer Fraud, Credit Card Forgery, Clients' Property

CA Private Range Rate 7-09

15

4. Add the exposure units for the ratable employees and additional premises computed in items **B.3**(a)and **B.3**(b) above
5. If a deductible applies, using the procedures in item **B.3**.(a) and **B.3**.(b), compute the exposure units for the deductible amount for the number of ratable employees and additional premises. Add the exposure units for the ratable employees and additional premises and multiply the result by the factor shown in **Deductible Factors Table 3**
6. Subtract the deductible amount exposure units produced in Item **B.5** from the exposure units produced in Item **B4**. The result is the base premium for the Employee Theft Insuring Agreement.
7. Multiply the base premium by the assigned **Class Rate Multiplier** shown in **Table 4**
8. Multiply the adjusted base premium produced in **B.7.** by the applicable State **Loss Cost Multipliers** shown in **Table 5** for the state in which the Insured's headquarters are located.
9. The provisions of the **Crime and Fidelity Schedule Rating Plan Table 6** shall be applied to the Premium produced in **B.8**.
   > Review **Underwriting Table-Schedule Rating Plan** shown in **Table 6**. Multiply the premium produced in **B.8** by the appropriate schedule rating modifiers. Underwriting file must be documented to reflect the Undewriter's consideration of each of the Schedule Rating Plan conditions
10. If the Company has discovered no occurrences of loss within the past three (3) years, the premium produced in **B.9.** above is the final premium.
11. If the Company has discovered one or more occurrence(s) of loss within the past three (3) years prior to the proposed effective date of coverage, the premium produced in **B.9.** above shall be adjusted using the **Experience Modification Plan Table 7.**

   If no past coverage was in effect, "discovery of an occurrence", as used in **B.11.** above, shall include all circumstances that would have been covered/coverable had such coverage been in effect for a period of three (3) years prior to the proposed effective date of coverage

**Forgery Or Alteration Insuring Agreement B**
1. If limit and deductible for Insuring Agreement B are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.26.** The result is the base premium for Insuring Agreement B, or
2. If the limit and/or deductible for Insuring Agreement B vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement A. Multiply the result by **.26.** The result is the base premium for Insuring Agreement B
3. Loss Costs are to be applied to the base premium developed in either item 1 or 2 above
4. The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or2 above
5. The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Computer Fraud Insuring Agreement F**
1. If limit and deductible for Insuring Agreement F are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.20.** The result is the base premium for Insuring Agreement F, or
2. If the limit and/or deductible for Insuring Agreement F vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for

CA Private Range Rate 7-09

16

Insuring Agreement A.  Multiply the result by **.20**. The result is the base premium for Insuring Agreement B

3.  Loss Costs are to be applied to the base premium developed in either item 1 or 2 above
4.  The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above
5.  The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Funds Transfer Insuring Agreement G**

1.  If limit and deductible for Insuring Agreement G are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.10.** The result is the base premium for Insuring Agreement F, or
2.  If the limit and/or deductible for Insuring Agreement G vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps described for Insuring Agreement A.  Multiply the result by **.10**. The result is the base premium for Insuring Agreement G
3.  Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above
4.  The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above
5.  The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Credit, Debit, Charge Card Forgery Insuring Agreement I**

1.  If limit and deductible for Insuring Agreement I are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.13.** The result is the base premium for Insuring Agreement I, or
2.  If the limit and/or deductible for Insuring Agreement I vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement A.  Multiply the result by **.13**. The result is the base premium for Insuring Agreement I
3.  Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above
4.  The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above
5.  The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Clients Property Insuring Agreement J**

1.  If the limit and deductible for Insuring Agreement J are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.25.** The result is the base premium for Insuring Agreement J, or
2.  If the limit and/or deductible for Insuring Agreement J vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement A.  Multiply the result by **.25**. The result is the base premium for Insuring Agreement J
3.  Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above
4.  The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above

CA Private Range Rate 7-09

5. The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○

**Investigative Expenses Incurred to Establish Amount of Covered-Insuring Agreement K**
1. If limit and deductible for Insuring Agreement K are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.20.** The result is the base premium for Insuring Agreement B, or
2. If the limit and/or deductible for Insuring Agreement K vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement K.  Multiply the result by **.20.** The result is the base premium for Insuring Agreement K
3. Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above

○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○

**Standard Rate Plan Applicable to All Risks – Burglary & Theft (Crime) Insuring Agreements[3]**

**Inside The Premises - Loss Of Money And Securities - Insuring Agreement C**
**A.  Rating Data**
1. Based on the predominant activity of the insured, determine the applicable Class Code. Refer to the **Classification Table 1**
2. Using the Class Code, determine the applicable rate modifiers which will be applied during the rating process.
3. Determine the number of premises (including the headquarters) where the average value of "Money" on "Premises" exceeds the Deductible Amount.  For the purpose of rating this Insuring Agreement C, these premises will be referred to as "Rated Premises". If the value of "Money" on "Premises" at each locations is equal to or less than the Deductible Amount, then the "Rated Premises" will equal one (1).
**B.  Premium Computation**
1. Select the limit of insurance to be written for each Rated Premises (Rated Premises subject to a different limit by endorsement are rated separately). Divide the limit selected for each Rated Premises by 1,000 to determine the number of $1,000 units of insurance.
2. Refer to **Territory Group Table 8**. Separate the Rated Premises according to the territory group tiers shown in **Table 8**
3. The premium is calculated separately for each territory group tier:
    a. Multiply the number of $1,000 units of insurance determined in item **B.1.** by the number of Ratable Premises in the territory group tier

---

[3] For the purposes of this Rate Plan, Crime shall refer to the following Insuring Agreements:  Inside the Premises-Loss of Money and Securities; Inside the Premises-Robbery and Safe Burglary of Property Other Than Money & Securities; Outside the Premises; Money Orders & Counterfeit Paper Currency;, Inside the Premises-Theft of Property Other Than Money & Securities;, Inside the Premises-Robbery or Burglary of Property Other than Money & Securities; Inside the Premises-Robbery or Safe Burglary of Money and Securities; Lessees of Safe Deposit  Boxes, Securities Deposited with Others, Guests' Property; Safe Depository.

CA Private Range Rate 7-09

    **b.** Multiply the result produced in item **B.3.a** by the appropriate territory group multiplier

| Territory Group | Multiplier |
|---|---|
| Tier I | 1.00 |
| Tier II | 0.40 |
| Tier III | 0.31 |

    **c.** Multiply the result determined in Item **B.3.b** by the multiplier determined in Item **A.2.**

    **d.** If a deductible applies, multiply the premium produced in Item **B.3.c.** by the appropriate deductible factor shown in **Deductible Factors Table 3**. The premium produced is then subject to the minimum premium per premises. The result is the premium for the territory group tier.

    **e.** Add the separate premiums developed in Item **B.3.d.** for each of the territory group tiers. The result is the premium for the Inside The Premises - Loss Of Money And Securities Insuring Agreement C.

  **4.** Applicable State Loss Cost Multipliers are to be applied to the premium developed in Item **B.3.e.** above

  **5.** The provisions of the Crime and Fidelity Schedule Rating Plan shall be applied to the premium produced in **B.4.** above

  **6.** If the Company has discovered no occurrences of loss within the past three (3) years, the premium produced in **B.5.** above is the final premium.

  **7.** If the Company has discovered one or more occurrence(s) of loss within the past three (3) years prior to the proposed effective date of coverage, the premium produced in **B.5.** above shall be adjusted using the **Experience Modification Plan Table 7.**

    If no past coverage was in effect, "discovery of an occurrence", as used in **B.7.** above, shall include all circumstances that would have been covered/coverable had such coverage been in effect for a period of three (3) years prior to the proposed effective date of coverage

**Inside The Premises - Robbery Or Safe Burglary Of Other Property - Insuring Agreement D**
Follow the same steps as were completed in the computation of the premium for Insuring Agreement C above except select the premium per $1,000 of insurance for Insuring Agreement D

**Outside The Premises Insuring Agreement – Insuring Agreement E**
Follow the same steps as were completed in the computation of the premium for Insuring Agreement C above except select the premium per $1,000 of insurance for Insuring Agreement E

**Money Orders And Counterfeit Money - Insuring Agreement H**

**A.**    **Rating Data** – Annual Loss Cost Per $1,000 Limit of Liability is seventeen cents (.17)

**B.**    **Premium Computation**

  **1.** Multiply the selected Limit of Liability for Insuring Agreement H by .17 to determine the annual base premium.

  **2.** If a deductible applies, multiply the premium produced in item B.1 above by the appropriate deductible factor. Refer to **Crime Deductible Table** (below)[4]. The result is the premium for the Money Orders And Counterfeit Money Insuring Agreement.

  **3.** Applicable State Loss Cost Multipliers are to be applied to the premium developed in **B.2.** above

---

[4] Note this Insuring Agreement is typically written with a $10 deductible

CA Private Range Rate 7-09

4. The provisions of the Crime Schedule Rating Plan shall be applied to the premium produced in **B.3.** above

5. If the Company has discovered no occurrences of loss within the past three (3) years, the premium produced in **B.3.** above is the final premium.

6. If the Company has discovered one or more occurrence(s) of loss within the past three (3) years prior to the proposed effective date of coverage, the premium produced in **B.3.** above shall be adjusted using the **Experience Modification Plan Table 7.**

If no past coverage was in effect, "discovery of an occurrence", as used in **B.6.** above, shall include all circumstances that would have been covered/coverable had such coverage been in effect for a period of three (3) years prior to the proposed effective date of coverage

### Special Circumstance – Individual Risk Situations

#### 1. Rating Or Classifying

The Standard Rating Plan does not contemplate unique or unusual features that may be present for a risk.  Where it can be clearly demonstrated that one or more of the following conditions exists:

    **a.** the manual rate or applicable classification is clearly demonstrated to be inappropriate because of a unique or unusual feature of the risk; or

    **b. Note:**  To the extent that consent-to-rate procedures apply, they must be followed.

    **c.** the coverage written is broader than that contained in the applicable Coverage Section, or

    **d. Note:**  To the extent that forms filing requirements apply, they must be followed.

    **e.** there is proof that, for a specific coverage, the named risk is qualified in this state for placement of such insurance with an authorized insurer, and the Insured agrees to the proposed rate or premium to be charged; or

    **f.** the risk develops $100,000 or more annual manual basic limit premium individually; the premium shall be modified in accordance with **Table A** below.

#### 2. Restriction of Coverage

The Standard Rating Plan does not contemplate situations where coverage is materially restricted. If the Insuring Agreement contemplated by an applicable classification and rate is endorsed to restrict coverage for hazards not common to all risks within the class, the Standard Rate Plan premium shall be modified in accordance with **Table B** below.

The file shall be clearly documented to demonstrate that at least one of the factors identified in **1(a)** through **1(d)** or **2.** exists.  Documentation should include all details of these factors used in determining the modification.

**Note:**  Rates shall not be inadequate, excessive or unfairly discriminatory.

### Table A - Rating or Classifying

**Crime Risk Factors:**

For use in circumstances where:

    o  Condition is documented clearly in the underwriting file

    o  Factor is not already contemplated in standard rate plan

    o  **Underwriting Table 6** range limitations produce a rate that is inadequate or excessive

    o  When utilizing this rating guide, the use of Underwriting Table Debits is prohibited

**Step 1:**

Each risk factor is to be underwritten separately.  Consideration is to be given as to how its existence increases the risk of loss for each Insuring Agreement elected.  I.E.  Condition

CA Private Range Rate 7-09

may carry a significant negative weight for Insuring Agreement A, but, may present a favorable situation for Insuring Agreement C.

Example: Insured has multiple locations, spread throughout the United States. The accounting function is decentralized with each facility acting as its own profit-center. Though satisfactory basic controls are in place at all facilities, controls vary from facility to facility.

- Insuring Agreement A – Employee Theft:  There is an increased risk of loss where accounting functions are decentralized and varying controls are in place from facility to facility

- Insuring Agreement C-Loss Inside the Premises:  There is a good spread of risk across the facilities. Only petty cash exposures are present and are well below the deductible amount.  Each facility is in high-rise office building.  While rating plan calls for a surcharge for each location, the likelihood of a loss at any location is slight. The chance of loss at multiple locations is remote.

CA Private Range Rate 7-09

21

**Table A – Hazard Exposures**

*Step 1 – Determine which Insuring Agreement(s) is/ are impacted*
*Step 2 – Assign a severity weight reflecting the degree to which each Insuring Agreement is impacted*
*Step 3 – Apply the appropriate debit factor*

**Note:** *List is not all encompassing; Conditions will be varied and unique to each circumstance. Underwriting file must include evidence of the risk factor.  Underwriter must also consider any offsetting factors that mitigate the risk factor before applying debit.*

| **Condition exists currently or has existed within the past 12 months:  Heavy - Debit Factor:  3** |
| --- |
| Moderate to significant fluctuation in Company's operations due to peak season/period changes |
| Subsidiary activities are considerably different than the primary business of the Parent Company.  The nature of such activities substantially increases risk factors of the account overall. |
| Consolidation, merger, acquisition, divestiture – activity occurred within the past 12 months/projected in the upcoming 12 months |
| Material weakness in internal controls identified by independent auditor or by Company's internal audit department |
| Severe financial concern – Going concern qualification; Threat of bankruptcy: Co is in non-compliance with debt covenants and no waivers have been obtained; |
| Company conducted a layoff, staffing reduction, branch/facility closing or is expecting to conduct the same within the upcoming 12 months (greater than 20% of total employee count) |
| Limited Operating History – One year or less |
| Total foreign employee[5] count is more than 66.6% (2/3) of the total employee count of the Company/Organization |
| **Condition present 12 to 24 months prior to proposed policy inception date:  Moderate - Debit Factor:  2** |
| Consolidation, merger, acquisition, divestiture – activity occurred 12 to 24 months prior to the proposed policy inception date |
| Reportable condition in internal controls identified by independent auditor or by Company's internal audit department (currently) |
| Moderate financial concern – Going concern qualification; Threat of bankruptcy: Co is in non-compliance with debt covenants and no waivers have been obtained; or other issues of moderate concern exist currently |
| Company conducted a layoff, staffing reduction, branch/facility closing (greater than 20% of total employee count) |
| Limited Operating History – Greater than one year but less than three years;  Mgmt has limited direct experience |
| Total foreign employee count is greater than 33.3% (1/3), but less than 66.6% (2/3) of the total employee count of the Company/Organization (currently) |
| **Condition identified 24 to 36 months prior to proposed policy inception date:  Low - Debit Factor:  1.5** |
| Insured's facilities are concentrated solely in a geographic region that has been experiencing a severe economic decline and directly relates to Company's nature of operations;  The Company's operations have been negatively impacted by the decline |
| Change in auditors/disagreement (may or may not be an issue—consider other factors before debiting) |
| Total foreign employee count is greater than 25% (1/4), but less than 33.3% (1/3) of the total employee count of the Company/Organization |

---

[5] Total foreign employee count and total employee count as used here shall include all individuals included by the definition of "**Employee**" as provided in the Crime & Fidelity Coverage Section

CA Private Range Rate 7-09

22

**Table B – Restrictions of Coverage**

For use in circumstances where:
- o   condition is documented clearly in the underwriting file
- o   factors not already contemplated in standard rate plan
- o   **Underwriting Table 6** range limitations produce a rate that is inadequate or excessive
- o   When utilizing this rating guide, the use of **Underwriting Table 6** is prohibited

**Step 1**

Each risk factor is to be underwritten separately.  Consideration is to be given as to how its existence decreases the risk of loss for each Insuring Agreement elected.  I.E. Condition may carry a significant negative weight for Insuring Agreement A, but, may present a favorable situation for Insuring Agreement C.

Example:  Company has multiple locations, spread throughout the United States.  The accounting function is decentralized with each facility acting as its own profit-center.  Though satisfactory basic controls are in place at all facilities, controls vary from facility to facility.

- -   Insuring Agreement A – Employee Theft:  There is an increased risk of loss where accounting functions are decentralized and varying controls are in place from facility to facility
- -   Insuring Agreement C-Loss Inside the Premises:  There is a good spread of risk across the facilities. Only petty cash exposures are present and are well below the deductible amount.  Each facility is in high-rise office building.  While rating plan calls for a surcharge for each location, the likelihood of a loss at any location is slight. The chance of loss at multiple locations is remote.

**Note:**  *List is not all encompassing; Conditions will be varied and unique to each circumstance. Underwriting file must include evidence of the risk factor.   Underwriter must also consider any offsetting factors that mitigate the risk factor before applying debit.*

CA Private Range Rate 7-09

Exhibit A, Page 173

| Hazard Class | Condition<br>*Conditions listed are examples only*<br>*Conditions will be varied and unique to each circumstance* | Credit Ranges |
|---|---|---|
| **Reduction in risk** *factors, not contemplated elsewhere in rate plan* | • Spread of risk exists. Actual exposures of [6]Money are between 25% and 50% of the deductible amount; I.E. Retailer with 15 locations where maximum cash/securities exposures are $1,700 daily. Proposed deductible is $5,000 per occurrence for Premises Theft<br>• Warranty condition included reducing coverage to moderate degree<br>• No past-acts coverage is provided under Insuring Agreement A[7] | .75 |
| **Moderate reduction in risk factors** | • Spread of risk exists. Actual exposures of Money are between 10% and 25% of the deductible amount; I.E. Retailer with 15 locations where maximum cash/securities exposures are $1,000 daily. Proposed deductible is $10,000 per occurrence for Premises Theft<br>• No past-acts coverage is provided under Insuring Agreement A. Account has been in operation for three years or less. | .50 |
| **Significant reduction in risk factors** | • Spread of risk exists. Actual exposures of [8]Money are less than 10% of the deductible amount; I.E. Retailer with 15 locations where maximum cash/securities exposures are $1,700 daily. Proposed deductible is $25,000 per occurrence for Premises Theft<br>• Warranty condition is included substantially restricting coverage<br>• No past-acts coverage is provided under Insuring Agreement A. Account has been in operation for more than three years.<br>• Coverage has been modified to exclude certain types of property (I.E. Coverage shall apply only to loss of Securities) | .25 |

---

[6] For the purposes of this section, Actual exposures of Money is equal to the Maximum amount of Money at any one premises at any one time

[7] Weight given will depend on length of operation, size/type of risk. It generally takes longer for detection of a fraudulent situation to occur at a larger organization than for detection to occur at a smaller location. The control structure may or may not encourage earlier detection

[8] For the purposes of this section, Actual exposures of Money is equal to the Maximum amount of Money at any one premises at any one time

CA Private Range Rate 7-09

Exhibit A, Page 174

**Crime and Fidelity Classification**
**Table 1**

## INTRODUCTION

In determining the appropriate class code for a risk, use the classification description that most closely describes the predominant activity of the insured. A classification designated NOC (Not Otherwise Classified) shall apply only if no other classification more specifically describes the insured's predominant activity. Classifications designated as "wholesale" or "distributor" mean merchant or intermediary, who sells products mainly for resale or business use and who sells chiefly to dealers or retail stores, other merchants, industrial, institutional and commercial users. Classifications designated as "dealer" or "retail" mean merchant or mercantile establishment which sells products directly to the ultimate consumer and who is not a wholesaler or distributor.

| Class Code | |
|---|---|
| 1100 | **Agricultural, forestry, fishing and hunting operations, including:** <br> Animals – draft <br> Cattle ranching (not wholesaling), dairy farms, poultry farms <br> Crop spraying, cotton gin operations, farm machinery operations <br> Distillation or extracting, honey extracting <br> Fish hatcheries <br> Logging <br> Fruit or vegetable harvesting or packing, produce handling or packing <br> Greenhouses and nurseries <br> Kennels <br> Orchard and vineyard operations |
| 2150 | **Mining, quarrying, oil and gas operations, including:** <br> Drilling (other than water) <br> Gasoline recovery - from casing head or natural gas <br> Geophysical exploration <br> Ore milling or processing <br> Stone crushing <br> Salt, borax, potash or phosphate production or refining <br> Shaft sinking |
| 2210 | **Utilities, including:** <br> Electric, natural gas companies (local distribution), sewage, steam and water <br> Irrigation works operations <br> **Rural Utilities Service projects - borrowing corporations, including:** |
| 2211 | Electric light or power cooperatives <br> Power line construction |

Exhibit A, Page 175

| Class Code | |
|---|---|
| 2330 | **General construction (other than oil and gas well, and special trade contractors), including:**<br>Airport runway or warming apron paving, surfacing, or scraping<br>Blasting operations and tunneling<br>Bridge or elevated highway<br>Building structure - raising or moving<br>Cable installation in conduits or subways<br>Caisson or cofferdam work - building foundations and other<br>Concrete - mixed in transit, repair - guniting or shot creting<br>Conduit construction for cables or wires<br>Construction or project manager - independent from general contractor<br>Dam, dike, jetty or breakwater, levee, reservoir or revetment<br>Dredging<br>Electric light or power line<br>Gas mains or connections<br>Hazardous materials - removal, replacement, repair or enclosure in buildings and structures<br>Hoists - hydraulic or mechanical - for dumping materials from truck<br>Irrigation or drainage<br>Metal erection - structural<br>Pipeline construction - all (including gas, oil, slurry - nonflammable mixtures)<br>Prefabricated building and modular unit erection<br>Railroad and subway<br>Rigging - boat, ship, and other<br>Street or road construction, paving, surfacing, scraping or grading<br>Tank construction, installation, erection or repair<br>Telephone, telegraph or cable television line construction<br>Underpinning buildings or structures<br>Water and sewer mains or connections |
| 2350 | **Special trade contractors (other than general construction), including:**<br>Boiler inspection, installation, cleaning or repair<br>Carpentry - (including shop)<br>Cleaning - outside surfaces of buildings and other exterior surfaces<br>Communication equipment installation - industrial or commercial (not telephone or cable television)<br>Concrete, masonry, mosaic or terrazzo work (including marble, stone, tile), plastering or stucco work<br>Door, window or assembled millwork<br>Drilling - water<br>Dry wall or wallboard installation<br>Electrical<br>Elevator or escalator inspection, installation, service or repair<br>Excavation<br>Fence erection<br>Fire suppression systems - installation, service or repair<br>Fireproofing structures<br>Floor covering installation<br>Furniture or fixtures installation in offices or stores - portable - metal or wood |

CA Private Range Rate 7-09

| Class Code | |
|---|---|
| | Grading for buildings |
| | **2350 (contd)** |
| | Greenhouse erection |
| | Heating or air conditioning systems or equipment - installation, servicing or repair |
| | Insulation work |
| | Machinery or equipment (farm, industrial and all other) - installation only |
| | Painting - interior or exterior (including buildings, structures, bridges, tanks, ships and shop only) |
| | Paperhanging |
| | Paving, surfacing, scraping - driveway, parking area or sidewalk |
| | Pile driving - building foundation only |
| | Plumbing |
| | Refrigeration systems or equipment - installation, servicing or repair |
| | Roofing |
| | Salvage operations (including removing, sorting, reconditioning and distributing of merchandise) |
| | Sandblasting |
| | Septic tank systems - installation, servicing or repair |
| | Sheet metal work (including shop) |
| | Siding installation |
| | Sign erection, installation or repair |
| | Solar energy |
| | Steam mains or connections, steam pipe or boiler insulation |
| | Swimming pools (above and below ground) - installation only |
| | Waterproofing |
| | Welding or cutting |
| | Wrecking - buildings or structures |
| 3110 | **Food and food products - fresh, dry or frozen, including:** |
| | Bakery plants |
| | Dextrin - when used in food |
| | Extracts - used in food manufacturing |
| | Feed - animal |
| | Grain milling |
| | Hides and skins produced in slaughtering plants |
| | Milk processing |
| | Packing houses |
| | Pet food |
| | Rendering works |
| | Sugar refining |
| 3121 | **Beverages, including:** |
| | Beer, ale, malt, wine or distilled liquor |
| | Ice (except dry ice) |
| | Soft drinks |
| | Water bottling - in siphons, spring or well |
| 3122 | **Tobacco products** |

| Class Code | |
|---|---|
| 3130 | **Textile mills, including:** |
| | Fiber - synthetic and other |
| | Textile bleaching, dyeing, mercerizing, printing, finishing, silk screening - new goods |
| | Textile coating or impregnating |
| | Textile spinning, weaving or knitting mills |
| | Wool combing, pulling, scouring or separating from cotton |
| 3140 | **Textile product mills, including:** |
| | Carpet or rug |
| | Cotton batting, wadding or waste |
| | Net - safety and other |
| | Parachute |
| | Rope, twine or cordage |
| | Sail |
| | Tent or canopy |
| | Textile products - fabricated |
| 3150 | **Apparel (other than leather footwear)** |
| 3160 | **Leather and allied products, including:** |
| | Fur or pelt processing |
| | Hides - tanning, currying, dressing or finishing |
| | Luggage |
| | Saddles, harnesses or horses furnishings |
| | Shoes, boots or slippers |
| 3210 | **Wood products, including:** |
| | Boxes or containers |
| | Doors or windows |
| | Ladders |
| | Lumbering |
| | Mobile homes |
| | Plywood, veneer or veneer products |
| | Prefabricated buildings |
| | Saw mills or planing mills |
| | Straw and straw products |
| | Tie, post or pole yard |
| | Wood preserving |
| 3225 | **Paper and stationery products, including:** |
| | Adhesive tape |
| | Boxes or containers - corrugated or fiberboard |
| | Paper coating or finishing |
| | Pulp |
| 3230 | **Printing and related support activities, including:** |
| | Bookbinding |
| | Lithographing |
| | Patterns - paper |
| 3240 | **Petroleum and coal products, including:** |
| | Asphalt or tar distilling or refining, asphalt works |
| | Coke |
| | Oil refineries |

CA Private Range Rate 7-09

28

| Class Code | |
|---|---|
| 3250 | **Chemicals, including:**<br>Adhesives<br>Aerosol containers - filling or charging for others<br>Alcohol - (not beverage)<br>Caulking compounds, putty or similar products<br>Cellophane and cellophane products<br>Charcoal, coal briquette<br>Commercial, household or industrial (including toxic, flammable, explosive or reactive)<br>Color or pigment preparation<br>Cosmetics<br>Detergents<br>Dextrin - when used in adhesives<br>Extracts - used in other than food manufacturing<br>Explosives or fireworks<br>Gas (including inert, toxic, flammable, explosive or reactive)<br>Ice - dry<br>Ink<br>Lead - red or white<br>Matches<br>Paint, varnish, shellac or lacquer<br>Salts (other than table)<br>Soap<br>Turpentine or resin<br>Wax, wax products, polish |
| 3254 | **Pharmaceutical and medicine preparations and products** |
| 3260 | **Plastic and rubber products, including:**<br>Bottles or jars<br>Drums or containers<br>Floor coverings (not carpets, rugs, ceramic or stone tiles)<br>Inner tubes<br>Insulating materials - plastic<br>Ladders - fiberglass<br>Lamp shades - plastic<br>Pipes or tubes<br>Rubber reclaiming<br>Rubber stamps<br>Sponge processing<br>Tires (including retreading or recapping) |
| 3270 | **Nonmetallic mineral products, including:**<br>Abrasive or abrasive products (including wheel)<br>Asbestos goods<br>Bottles or jars - glass<br>Bricks or blocks<br>Cement, concrete mix or plaster - bulk or packaged<br>Ceramics<br>China, clay, porcelain or earthenware<br>Concrete or plaster products - prestressed, non-structural or structural |

CA Private Range Rate 7-09

| Class Code | |
|---|---|
| | Diamonds - industrial |
| | Fiberglass |
| | **3270 (Contd)** |
| | Glass or glassware |
| | Hone, oil or whetstone |
| | Insulating materials - mineral or organic |
| | Lamp shades - glass |
| | Lime (production) |
| | Marble |
| | Mica goods |
| | Mineral powder or polish |
| | Slate - milling, splitting or roofing |
| | Stone cutting or polishing |
| **3310** | **Primary metal, including:** |
| | Foundries |
| | Galvanizing or tinning |
| | Lead works - pipe, sheet or shot |
| | Metals - extraction or refining (including chemical or electrometallurgical processes) |
| | Metals - extraction or refining-ferrous and non-ferrous (blast furnace, other pyrometallurgical processes) |
| | Rolling mills - cold or hot process |
| | Wire cloth |
| **3320** | **Fabricated metal products, including:** |
| | Ammunition |
| | Cutlery (not powered) and flatware |
| | Doors or windows |
| | Electrical wire or cable |
| | Electroplating, engraving |
| | Forging work |
| | Metal foil |
| | Machine shops, metal works shops (including artistic, decorative and structural) |
| | Metal goods - stamping (not signs) |
| | Metal heat processing (for others) |
| | Patterns - metal (all except paper) |
| | Prefabricated buildings |
| | Razors and razor blades - non-electric |
| | Tools - hand type (not powered) |
| | Valves - (other than engine, intake and exhaust) |

CA Private Range Rate 7-09

Exhibit A, Page 180

| Class Code | |
|---|---|
| 3330 | **Machinery or parts, including:** |
| | Air conditioning or heating (including coal, electric, gas, kerosene or wood) |
| | Appliances and accessories - commercial |
| | Die casting |
| | Elevators, escalators or moving sidewalks |
| | Engine or turbine (not aircraft) |
| | Gas pumps and related equipment |
| | Nails or spikes |
| | Office machines |
| | Photographic supplies or equipment |
| | Power equipment - household type - outdoor or workshop |
| | Pumps or compressors |
| | Refrigeration equipment |
| | Sewing machines - commercial or household |
| | Tools - hand type (powered) |
| | Tools - machine - accessories |
| | Vending machines |
| 3347 | **Computer and electronic products and components, including:** |
| | Alarms - burglar, fire or smoke |
| | Clocks, watches and watchcase |
| | Communications or recording systems or equipment |
| | Hearing aids |
| | Instruments - non-musical - (including analytical, calibrating, control, measuring, testing or recording) |
| | Media - blank (including recordable CDs, DVDs and similar audio-visual materials) |
| | Radio, television or sound systems |
| | Telecommunications equipment |
| 3350 | **Electrical equipment, appliances and components, including:** |
| | Appliances - household - (including electric, gas and other) |
| | Batteries |
| | Electrical generating machinery |
| | Electrical power distribution or transmission equipment |
| | Lamps or lanterns (including electric and other) |
| | Lamp shades (except glass or plastic) |
| | Light bulbs or tubes |
| | Lighting fixtures |
| | Razors and razor blades - electric |
| | Television picture tubes |
| 3367 | **Transportation equipment, including:** |
| | Boat or ship building, repair or servicing - with or without motors |
| | Trailers |
| | Valves - engine, intake and exhaust |
| | Wheels (excluding tires) |
| 3370 | **Furniture and related products, including:** |
| | Mattress or box spring |
| | Venetian blinds |
| 3380 | **Jewelry and silverware, including gem stone cutting or polishing** |

CA Private Range Rate 7-09

31

| 3395 | **Other manufacturing industries NOC, including:** |
|------|---|
| | Billiard or pool table |
| | Bone, horn and ivory products |
| | Brush or broom |
| | Buttons or fasteners |
| | Candle |
| | Carbon paper or inked ribbon |
| | Coffins or caskets |
| | Composition goods (not floor coverings) |
| | Exercise or playground equipment |
| | Fire extinguishers or fire suppression systems |
| | Hobby, craft or artists' supplies |
| | Medical, dental, hospital or surgical equipment, instruments or supplies |
| | Medical, dental or surgical diagnostic or treatment machines or devices |
| | Media - pre-recorded (including CDs, DVDs and similar audio-visual materials) |
| | Musical instruments |
| | Needles, pins or tacks |
| | Optical goods |
| | Orthopedic, ambulation or prosthetic devices |
| | Pencils, pens, crayons or chalk |
| | Pipes - tobacco |
| | Signs - electric and non-electric |
| | Sporting goods or athletic equipment |
| | Swimming pools or accessories |
| | Toys or games |
| | Umbrellas or canes |
| | Wigs or hair pieces |
| **4210** | **Miscellaneous durable goods wholesalers NOC, including:** |
| | Abrasive or abrasive products (including wheel) |
| | Adhesives |
| | Adhesive tape |
| | Aerosol containers |
| | Alarms - burglar, fire or smoke |
| | Ammunition and fireworks explosives |
| | Automobile dismantling |
| | Bicycles (not motorized) |
| | Billiard or pool table |
| | Bolts, nuts, rivets, screws or washers |
| | Bottle - glass or plastic - waste |
| | Exercise or playground equipment |
| | Hobby, craft or artist's supplies |
| | Hone, oil or whetstone |
| | Firearms |
| | Fire protection and suppression equipment |
| | Junk and metal scrap dealers |
| | Lamp shades |
| | Leather goods |
| | Lighting fixtures - gas |

CA Private Range Rate 7-09

Exhibit A, Page 182

| | |
|---|---|
| | Luggage |
| | Media - pre-recorded (including CDs, DVDs and similar audio-visual materials) |
| | **4210 (Contd)** |
| | Modular units |
| | Musical instruments |
| | Parachute |
| | Pipes - tobacco |
| | Rag or rubber stock - (including secondhand) |
| | Rubber (not mechanical, medical or rubber stamps), rubber scrap and scrap tire dealers |
| | Signs - (other than electrical) |
| | Sporting goods or athletic equipment distributors |
| | Swimming pools or accessories |
| | Toys or games |
| 4211 | **Motor vehicle and motor vehicle parts and supplies, including:** |
| | Automotive glass |
| | Tires and inner tubes - automobile, bus, truck and other |
| | Tools - hand type - motor vehicle (except machinists precision) |
| | Wheels |
| 4212 | **Furniture and home furnishings, including:** |
| | Brush or broom |
| | Carpet, rug or other floor coverings |
| | China, porcelain or earthenware - household |
| | Glassware - household type |
| | Lamps or lanterns |
| | Venetian blinds |
| | **Lumber and other construction materials, including:** |
| 4213 | Ceramics |
| | Clay products |
| | Concrete or plaster products - prestressed, non-structural or structural |
| | Doors or windows |
| | Glass plate |
| | Lime (other than agricultural) |
| | Marble building products |
| | Prefabricated buildings |

CA Private Range Rate 7-09

33

|      |      |
|------|------|
| **4214** | **Professional and commercial equipment and supplies, including:** |
|      | China, porcelain or earthenware - commercial |
|      | Computers |
|      | Glassware, medical |
|      | Hearing aids |
|      | Instruments - analytical, calibrating, measuring, testing or recording (not controlling or indicating) |
|      | Medical, dental, hospital or surgical equipment or supplies stores |
|      | Office machines or appliances (no repair) |
|      | Optical goods |
|      | Orthopedic, ambulation or prosthetic devices |
|      | Photographic equipment and supplies (other than video cameras - household type) |
|      | Safes or vaults |
|      | Signs - electrical |
|      | Vending machines |
| **4215** | Metal and mineral (except petroleum), including: |
|      | Cable (not insulated) |
|      | Coke |
|      | Die casting |
|      | Metal foil |
|      | Metal goods - stamping (not signs) |
|      | Mica goods |
|      | Nails or spikes |
|      | Steel wool or wire wool |
|      | Wire cloth |
|      | Wire rope or cable - metal |
| **4216** | Electrical goods and equipment, including: |
|      | Appliances - household type (electric), including: vacuum, sewing machines, cooking ranges, refrigerators, washing machines, dryers, air conditioners (room), radio, television, stereo, compact disc players and video cameras |
|      | Battery |
|      | Cable (insulated) |
|      | Communication or recording systems or equipment |
|      | Electrical generating machinery |
|      | Electrical power distribution or transmission equipment |
|      | Electrical wire or cable |
|      | Light bulbs or tubes |
|      | Lighting fixtures - electric |
|      | Media - blank (including CDs, DVDs and similar audio-visual materials) |
|      | Telecommunication equipment |

CA Private Range Rate 7-09

34

**4217**   Hardware, plumbing and heating equipment and supplies, including:
Air conditioning equipment (excluding room)
Appliances - household type (gas), including: cooking ranges and dryers
Cutlery (not powered) and flatware
Heating equipment (including coal, electric, gas, kerosene or wood)
Heating or combined heating and air conditioning systems or equipment
Needles, pins or tacks
Refrigeration systems or equipment - commercial
Tools - hand type (except motor vehicle and machinists precision tools)
Valves - plumbing and heating

**4218**   Machinery, equipment and supplies, including:
Aircraft or aircraft parts
Barber or beauty shop supplies
Bearings
Boat or ship - with or without motors
Bottle - glass or plastic - except waste
Coffins or caskets
Contractor's equipment dealers, including ladders, hoists, scaffolds or towers
Diamonds - industrial
Drums or containers - metal or plastic
Elevators, escalators or moving sidewalks
Engine or turbine (not aircraft)
Gardening and light farming supply
Ink - printing
Instruments - controlling or indicating
Janitorial equipment and supplies (except chemicals)
Ladders - wood and other than wood
Machinery (and parts) - construction, farm, industrial, mining, metalworking, materials handling type
Machinery or equipment - construction or industrial - mobile type, farm, yard or garden
Oil or gas well supplies or equipment dealers - secondhand
Pumps or compressors
Patterns
Power equipment (except household type - outdoor or workshop)
Railroad engine, cars or car parts
Rope (except wire rope)
Rubber goods - mechanical
Sewing machines - commercial
Tools - hand type - machinists precision only (except motor vehicle)
Twine or cordage
Valves (other than plumbing and heating)

CA Private Range Rate 7-09

Exhibit A, Page 185

**4219**   Jewelry, watch, precious stone and precious metals, including:
Clocks
Diamonds - (except industrial)
Electronic games
Silverware

**4221**   Paper and stationery products, including:
Bookbinding and printers supplies
Boxes or containers - corrugated, fiberboard or wood
Carbon paper or inked ribbon
Cellophane tape
Ink - writing
Pencils, pens, crayons or chalk
Printers or electrotypers supplies
Rubber stamps
Stationery products

**4222**   Drug and druggists' sundries, including:
Drug, medicine or pharmaceutical preparations
Razors and razor blades - electric and non-electric
Rubber goods - medical
Salts - bath

**4223**   Apparel, piece goods and notions, including:
Fur garments and pelts
Nets - safety and other
Textile products
Umbrellas or canes

CA Private Range Rate 7-09

| | |
|---|---|
| 4225 | Farm product raw material, including: |
| | Cotton or wool merchants |
| | Grain elevator operations |
| | Feed, hay or straw - sales and/or storage including feed, hay or straw products |
| | Hide dealers and distributors - raw |
| | Livestock dealers or commission merchants or sales companies |
| 4226 | **Chemicals and allied products, including:** |
| | Alcohol - (not beverage) |
| | Anhydrous ammonia |
| | Caulking compounds, putty or similar products |
| | Detergents |
| | Explosives (except ammunition and fireworks) |
| | Gas (including inert, toxic, flammable, explosive, reactive) |
| | Ice - dry |
| | Janitorial chemicals |
| | Plastic or rubber goods - household and other |
| | Plastic - raw material |
| | Salts - industrial |
| | Soap |
| | Turpentine or resin |
| | Wax (except petroleum), wax products or polish |
| 4227 | **Petroleum and petroleum products, including:** |
| | Oil distributing - oil terminals and LPG tank farms |
| 4228 | **Beer, ale, malt, wine or distilled alcoholic beverages** |
| 4229 | **Books, periodicals and newspapers** |
| 4230 | **Groceries and related products, including:** |
| | Beverages - nonalcoholic |
| | Commission merchants - produce |
| | Milk depots or dealers or distributors |
| | Pet food |
| 4240 | **Miscellaneous non-durable goods wholesalers NOC, including:** |
| | Candles |
| | Charcoal, coal briquette |
| | Cotton batting, wadding or waste |
| | Fertilizer |
| | Ice (except dry ice) |
| | Matches |
| | Paint, varnish, shellac or lacquer |
| | Saddles, harnesses or horse furnishings |
| | Seed merchants |
| | Tobacco products |
| | Wigs or hair pieces |

CA Private Range Rate 7-09

**Retail Trade**

| | |
|---|---|
| **4410** | **Motor vehicle dealers, including:** |
| | Aircraft or aircraft parts |
| | Boats |
| | Campers or travel trailers |
| | Mobile homes |
| | Motorcycles, mopeds, scooters |
| | Recreational vehicles (including snowmobiles, all-terrain vehicles) |
| **4413** | **Automotive parts, supplies, accessories and tire stores** |
| **4420** | Furniture, home furnishings and floor covering stores |
| **4430** | Electronics and appliance stores - household, including: |
| | Air conditioning systems or equipment (room) dealers |
| | Camera and photographic equipment |
| | Computer |
| **4440** | **Building material, garden equipment and supplies dealers, including:** |
| | Electrical and lighting |
| | Feed, grain or hay dealers (other than pet) |
| | Fence |
| | Fertilizer |
| | Glass dealers and glaziers |
| | Hardware |
| | Heating and/or air conditioning |
| | Machinery or equipment |
| | Plumbing supplies and fixtures |
| | Paint, wallpaper or wall covering |
| | Power equipment (household type) outdoor or workshop |
| | Refrigeration systems or equipment |
| | Tools (hand type) - powered and not powered |
| **4451** | **Supermarkets, grocery and convenience stores** |
| **4452** | **Specialty food stores, including:** |
| | Bakeries |
| | Beverage - soft drinks |
| | Dairy products or butter and egg |
| | Fruit or vegetable |
| | Health or natural food |
| | Ice cream |
| | Meat, fish, poultry or seafood |
| **4453** | **Beer, wine and liquor stores (packaged)** |
| **4461** | **Pharmacies and drug stores (except mail order or on-line drug stores)** |
| **4462** | **Health and personal care stores, including:** |
| | Hearing aid |
| | Optical goods |
| **4470** | **Gasoline stations (full or self-service), including:** |
| | Convenience food/gasoline stores (if food store is predominant activity, use code 4451) |
| **4480** | **Clothing, clothing accessories and shoe stores, including:** |
| | Army and Navy |
| | Tailor merchants |
| | Tailoring or dressmaking establishments - custom |

CA Private Range Rate 7-09

| 4483 | **Jewelry, luggage and leather goods stores** |
|---|---|
| 4510 | **Sporting goods, hobby, toy, book and music stores, including:** |
| | Bicycle - sales and servicing |
| | Books and magazines |
| | Dry goods (including fabrics, yarn and piece goods) |
| | Newsstands |
| | Painting, picture or frame |
| | Video stores (other than stores renting video tapes, disks or electronic game cartridges) |
| 4520 | **General merchandise stores, including:** |
| | Catalog or premium coupon redemption stores |
| 4530 | **Miscellaneous store retailers NOC, including:** |
| | Antique stores |
| | Auctions |
| | Bazaars |
| | Fire protection equipment dealers |
| | Florists |
| | Gift shops |
| | Monuments, tombstones and statuary |
| | Office machines or appliances (with or without repair) |
| | Pet stores |
| | Powered equipment dealers |
| | Precision and scientific tools and instruments |
| | Sales or service organizations |
| | Secondhand or salvage dealers or distributors |
| | Ship chandler stores |
| | Stationery or paper products stores |
| | Swimming pools and supplies |
| | Tobacco products stores |
| 4540 | **Nonstore retailers NOC, including:** |
| | Internet retailers |
| | Mail order houses or on-line drug stores |
| | Vending machine operations (incl. beverage, confection, food, ice and tobacco products) |
| 4543 | **Fuel dealers (other than gasoline), including:** |
| | Coal, oil, kerosene or wood |
| | Gas (other than gasoline) including LPG |
| | **Transportation And Warehousing** |
| 4810 | **Air transportation - passenger and freight (not scenic or sightseeing)** |
| 4820 | **Rail transportation-haul/short line (not urban transit, commuter, scenic or sightseeing)** |
| 4835 | **Water transportation-boat/ship, passenger/freight (not scenic or sightseeing), including:** |
| | Towing services - boat or ship |
| 4840 | **Truck transportation** |

CA Private Range Rate 7-09

| | |
|---|---|
| **4850** | **Transit and ground passenger transportation, including:** |
| | Bus stations or terminals - not independently operated |
| | Bus transportation companies - passenger and commuter (not scenic or sightseeing) |
| | Limousine or taxi service |
| | Railroads - urban transit and commuter rail systems |
| **4860** | **Pipeline transportation (including gas, oil, slurry-nonflammable mixtures, other NOC)** |
| **4870** | **Scenic and sightseeing transportation, including: air, boat, bus, rail or ship** |
| **4880** | **Support activities for transportation, including:** |
| | Airport-lessees part of airport engaged in sale, servicing/repair of aircraft/pilot instructions |
| | Airports - commercial and private |
| | Bus stations or terminals - independent operation |
| | Dock operations (including coal, grain or ore) |
| | Freight forwarders or handlers |
| | Ship ceiling or scaling |
| | Snow and ice removal - streets and highways |
| | Stevedoring |
| | Stockyards |
| | Street cleaning |
| | Toll bridges |
| | Towing services - motor vehicles |
| | Weighers/samplers/inspectors of merchandise-vessels, docks, railway stations/warehouses |
| | Wharf/waterfront property-occupied by insured for freight/passenger purpose & ferry docks or terminals |
| | Wrecking - marine |
| **4920** | **Couriers, messengers and express companies** |
| **4930** | **Warehousing and storage, including:** |
| | Automobile storage |
| | Cotton compressing |
| | Tobacco re-handling or warehousing |
| | Warehouses (not lessor's risk) - including cold storage, public, private, and mini-warehouses |
| | **Information** |
| **5111** | **Newspaper, periodical, book and database publishers** |
| **5112** | **Software publishers, including pre-packaged computer software** |
| **5125** | **Motion picture and sound recording industries, including:** |
| | Recording studios and teleproduction studios |
| | Theaters - drive-in or motion picture |
| **5135** | **Broadcasting and telecommunications and other information services, including:** |
| | Cable or subscription television companies |
| | Radio or television broadcasting stations |
| | Telecommunication equipment or service providers |
| | Telegraph companies |

CA Private Range Rate 7-09

| 5145 | Information services and data processing services, including: |
|---|---|
| | Internet access or service providers |
| | Libraries |

| Finance And Insurance | |
|---|---|
| 5222 | Automated teller machine providers - non-bank |
| 5223 | Mortgage and non-mortgage loan agents, brokers and correspondents |
| 5224 | Factors and pawn shops |
| 5225 | Automated clearing houses and associations |
| 5229 | Check cashiers, currency exchanges and non-financial institution safe deposit companies |
| 5232 | Commodity brokers and dealers, Commodity exchanges |
| 5233 | Securities sales organizations, including mutual fund sales organizations |
| 5234 | Escrow agencies - other than real estate |
| 5239 | Investment advice |
| 5241 | Health maintenance organizations |
| 5242 | Insurance agents and brokers (other than insurance carriers), including: |
| | Claims adjusters, investigation services, loss prevention services and other related activities |
| 5252 | Employee benefit plans (labor union plans only) including health, pension and welfare |
| 5253 | Employee benefit plans (other than labor union plans) including health, pension and welfare |
| Real Estate And Rental And Leasing | |
| 5310 | Real estate operators and lessors, including: |
| | Apartment buildings or hotels |
| | Auditoriums and halls |
| | Buildings or premises - including bank, office, mercantile, manufacturing (lessor's risk only) |
| | Dwellings - family (lessor's risk only) |
| | Exhibition or convention buildings |
| | Gasoline or oil supply stations - retail (lessor's risk only) |
| | Hotels or motels (lessor's risk only) |
| | Markets - open air and not open air (lessor's risk only) |
| | Model homes |
| | Parking (public) - shopping centers (lessor's risk only) |
| | Real estate development property |
| | Shopping centers and indoor malls (lessor's risk only) |
| | Warehouses (lessor's risk only) |
| | Wharf and waterfront property (lessor's risk only) |
| 5312 | Real estate agents, brokers managers |
| 5313 | Escrow agencies (real estate) and title agents |
| 5320 | Rental and leasing services, including: |
| | Agricultural equipment and machinery |
| | Automobile renting or leasing |
| | Beach chairs and umbrellas |
| | Bicycles |
| | Boats, including canoes, motor boats, rowboat and sail boats |
| | Chairs |

CA Private Range Rate 7-09

| Finance And Insurance | |
|---|---|
| | Concrete or cementing distributing towers |
| | Contractors equipment |
| | Golf mobiles |
| | Medical, hospital and surgical supplies |
| | Rental stores, including machinery and equipment |
| | Tents or canopies |
| | Trailers |
| | Video stores |
| | Water softening equipment |

| Professional, Scientific And Technical Services | |
|---|---|
| **5405** | **Offices of lawyers and other legal services** |
| **5409** | **Accounting, tax preparation, bookkeeping and payroll services** |
| **5413** | **Architectural, engineering and related services, including:** |
| | **Draftsmen** |
| | **Surveyors - land** |
| **5414** | **Specialized design services, including interior decorating** |
| **5415** | **Computer systems design and related services, including:** |
| | Computer software (not hardware) service or repair |
| | Consulting or programming |
| | Data processing - time sharing and other operations |
| | Web site designers |
| **5416** | **Management, scientific and technical consulting services NOC** |
| **5417** | **Scientific, research and development services** |
| **5418** | **Advertising and related services, including outdoor sign companies** |
| **5419** | **Other professional, scientific and technical services NOC, including:** |
| | Diving - marine |
| | Fire extinguishers - servicing, refilling or testing |
| | Inspection and appraisal companies - inspecting for insurance or valuation purposes |
| | Marine appraisers or surveyors |
| | Photographers |
| | Sign painting or lettering inside or on buildings or structures |
| | Veterinarian or veterinary hospitals |

| Administrative, Support, Waste Management And Remediation Services | |
|---|---|
| **5613** | **Employment services (agencies)** |
| | **Business support services, including:** |
| **5614** | Auctioneers - sales conducted away from the insured's premises |
| | Copying and duplicating services - retail |
| | Internet auctions (facilitators only) |
| | Mailbox or packing stores |
| | Mailing or addressing companies |
| **5615** | **Travel arrangement and reservation services (except ticket agencies), including travel agency tours** |
| | **Management, scientific and technical consulting companies, including:** |
| **5616** | Alarms and alarm systems - installation, servicing, repair, or monitoring |
| | Detective or investigative agencies - private |
| | Locksmiths |
| | Security and patrol agencies |

CA Private Range Rate 7-09

| Professional, Scientific And Technical Services | |
|---|---|
| 5617 | **Services to buildings and dwellings, including:** |
| | Carpet, rug, furniture or upholstery cleaning - in shop or on customer's premises |
| | Chimney cleaning |
| | Floor waxing |
| | Fumigating |
| | Handyperson |
| | Janitorial services |
| | Landscape gardening |
| | Lawn care services |
| | Pest control services |
| | Snow and ice removal - driveways and parking lots |
| | Swimming pools (above or below ground) - servicing or repair |
| | Tree pruning, dusting, spraying, repairing, trimming or fumigating |
| | Water softening equipment - installation, servicing or repair |
| | Window cleaning or decorating |
| 5618 | **Collection agencies and credit reporting agencies** |
| 5620 | **Waste management and remediation services, including:** |
| | Debris removal - construction site |
| | Garbage or refuse dumps |
| | Portable toilet rentals |
| | Recycling collection centers |
| | Septic tank systems and sewer cleaning |
| | Waste and reclaimed materials |
| 5630 | **Ticket agencies** |
| 5640 | **Armored car services** |
| Education Services | |
| 6111 | **Educational services (private/public-for-profit and not-for-profit), including school and dormitory facilities** |
| Healthcare And Social Assistance | |
| 6210 | **Offices of physicians, dentists and other health practitioners (other than home health care), including:** |
| | Ambulance service, first aid or rescue squads (private) |
| | Blood banks |
| | Health care facilities, clinics, dispensaries or infirmaries - outpatient care only |
| | Medical, dental and diagnostic laboratories |
| 6216 | **Home health care services** |
| 6220 | **Hospitals, including convalescent homes (not mental or psychopathic institutions)** |
| 6230 | **Nursing and residential care facilities, including:** |
| | Health care facilities - alcohol and drug |
| | Health care facilities - homes for the aged, physically handicap., mental and psychopathic |
| | Orphan homes |
| | Shelters, mission, settlement or halfway houses |
| 6240 | **Social assistance services, including day care centers - adult and children** |

CA Private Range Rate 7-09

43

Exhibit A, Page 193

| Arts, Entertainment And Recreation | |
|---|---|
| 7110 | **Performing arts, spectator sports and related industries, including:** |
| | Athletic teams - professional or semi-professional |
| | Carnivals, circuses or fairs |
| | Entertainers |
| | Stadiums and sports arenas |
| | Taxidermists |
| | Theaters (other than motion picture) |
| | Theatrical companies - traveling |
| 7112 | **Racetracks and racing (motor vehicle and other)** |
| 7120 | **Museums, art galleries, historical sites, zoos and similar institutions** |
| 7130 | **Amusement and recreation (except casinos, private country clubs or golf courses, and racetracks) NOC, including:** |
| | Amusement devices operated in connection with carnivals or fairs |
| | Animals (saddle) - for rent or private |
| | Archery ranges |
| | Bathhouses or bathing pavilions |
| | Beaches |
| | Billiard or pool halls |
| | Bingo games - in public halls or theaters (commercially operated) |
| | Boat storage and moorage |
| | Boatyards or marinas - public |
| | Boats - canoes or rowboats - not for rent - not equipped with motors |
| | Boats - motor or sail (not for rent); and nonowned over 26 feet |
| | Bowling lanes |
| | Carnival or circus companies |
| | Children's play centers - indoors |
| | Clubs - handball, horseback riding (no commercial instructions), racket sports, swimming |
| | Community recreational facilities (not operated by government agency) |
| | Dance halls, ballrooms or discotheques |
| | Fireworks exhibitions |
| | Fishing piers |
| | Fishing ponds or lakes - commercially operated |
| | Golf courses - miniature |
| | Golf courses-municipal or public, driving ranges (not private country clubs or golf courses) |
| | Guides or outfitters |
| | Gymnasiums |
| | Health or exercise clubs, studios or facilities |
| | Parades |
| | Riding academies |
| | Rifle or pistol ranges, skeet shooting or trap shooting |
| | Rodeos |
| | Skating rinks - ice or roller |
| | Ski lifts, tows or runs |
| | Soap box derbies |
| | Stables - boarding, livery or racing |

CA Private Range Rate 7-09

| Arts, Entertainment And Recreation | |
|---|---|
| | Swimming pools (commercially operated) |
| | Youth recreation programs |
| 7132 | **Casinos** |
| 7139 | **Private country clubs or golf courses and similar facilities, including** |
| | **Clubs providing food, drink or lodging** |

| Accommodation And Food Services | |
|---|---|
| 7215 | **Accommodations, including:** |
| | Bed and breakfasts |
| | Boarding or rooming houses |
| | Camps and campgrounds |
| | Dormitories |
| | Dude ranches |
| | Hotels and motels |
| | Mobile home parks or courts |
| | Nurses homes |
| 7225 | **Food services and drinking places, including:** |
| | Caterers |
| | Commissary work |
| | Delicatessens |
| | Night clubs, cabarets and comedy clubs |

| Other Services (Except Public Administration) | |
|---|---|
| 8111 | **Automotive mechanical and electrical repair and maintenance, including:** |
| | Car washes - self-service and other |
| | Quick lubrication services |
| | Rust proofing |
| 8112 | **Electronic equipment, commercial equipment and personal and household goods repair, including:** |
| | Agricultural equipment and machinery |
| | Appliances and accessories - installation, service or repair |
| | Blacksmithing |
| | Computer hardware (not software) service or repair |
| | Electrical apparatus NOC - installation, service or repair |
| | Furniture or woodworking (shop only) - stripping, refinishing or repairing |
| | Gunsmiths |
| | Home furnishings installation |
| | Machinery or equipment (farm, industrial and all other) - servicing or repair |
| | Office machines or appliances - installation, servicing or repair |
| | Piano tuning |
| | Shoe repair shops |
| | Television or radio receiving set installation or repair |
| | Upholstering - shop and other |
| 8121 | **Other personal care services NOC, including:** |
| | Barber shops |
| | Beauty parlors, nail and hair styling salons |
| | Event, party or wedding planners |
| | Pet grooming or training |

CA Private Range Rate 7-09

Exhibit A, Page 195

| Other Services (Except Public Administration) | |
|---|---|
| | Photo finishing laboratories |
| | Saunas and baths (public) |
| | Spas or personal enhancement facilities |
| | Sun tanning salons |
| | Tattoo parlors |
| **8122** | **Death care services** |
| **8123** | **Dry cleaning and laundry services** |
| **8129** | **Parking lots and garages (public and private)** |
| **8131** | **Religious, grant making and giving services, including:** |
| | Churches or other houses of worship |
| | Convents or monasteries |
| | Rectories |
| **8133** | **Social advocacy and civic, social, business, professional, political and similar organizations, including:** |
| | Athletic programs - amateur |
| | Boy or girl scout councils |
| | Clubs (civic, service or social) - not providing food, drink or lodging |
| | Fraternal orders |
| | Fraternities and sororities |
| | Political campaign headquarters or offices |
| | Professional and trade associations |
| | Social gatherings and meetings |
| | Social services (consulting services only) - operated by the private sector |
| | Sports or outdoor activities - commercially operated |
| | YMCA, YWCA or similar institutions |
| **8139** | **Condominium, co-operative and townhouse owners' associations and planned unit developments** |
| **8140** | **Labor unions - national or international unions including local unions under a single policy** |
| **8141** | **Labor unions - national or international unions only** |
| **8142** | **Labor unions - local unions only** |

| Public Administration | |
|---|---|
| **9202** | **Federal government** |
| **9203** | **State, county, city, town, township, village, borough - including police department** |
| **9204** | **State, county, city, town, township, village, borough - excluding police department** |
| **9205** | **A police department of any state, county, city, town, township, village, borough or other political subdivision** |
| **9206** | **A department, division, office or institution of any state, county, city, town, township, village, borough or other political subdivision NOC, including:** |
| | Fire departments |
| | First aid squads |
| | Penal institutions |
| **9250** | **Local public housing authorities and urban renewal projects under the supervision of the Department of Housing and Urban Development (HUD)** |

CA Private Range Rate 7-09

**Fidelity Exposure Units - Blanket**
**TABLE 2**
*Interpolate exposure units for limits of liability not shown*

**Limit Of Liability $100 - $750**

| No. of Ratable Employees/Persons | | Limit Of Liability | | | |
|---|---|---|---|---|---|
| | | $100 | $250 | $500 | $750 |
| 5 or less | | 29.375 | 33.125 | 41.875 | 46.250 |
| 6 | | 29.750 | 33.750 | 43.750 | 48.750 |
| 7 | | 30.125 | 34.375 | 45.625 | 51.250 |
| 8 | | 30.500 | 35.000 | 47.500 | 53.750 |
| 9 | | 30.875 | 35.625 | 49.375 | 56.250 |
| 10 | | 31.250 | 36.250 | 51.250 | 58.750 |
| 11 | | 31.625 | 36.875 | 53.125 | 61.250 |
| 12 | | 32.000 | 37.500 | 55.000 | 63.750 |
| 13 | | 32.375 | 38.125 | 56.875 | 66.250 |
| 14 | | 32.750 | 38.750 | 58.750 | 68.750 |
| 15 | | 33.125 | 39.375 | 60.625 | 71.250 |
| 16 | | 33.500 | 40.000 | 62.500 | 73.750 |
| 17 | | 33.875 | 40.625 | 64.375 | 76.250 |
| 18 | | 34.250 | 41.250 | 66.250 | 78.750 |
| 19 | | 34.625 | 41.875 | 68.125 | 81.250 |
| 20 | | 35.000 | 42.500 | 70.000 | 83.750 |
| 21 | | 35.375 | 43.125 | 71.875 | 86.250 |
| 22 | | 35.750 | 43.750 | 73.750 | 88.750 |
| 23 | | 36.125 | 44.375 | 75.625 | 91.250 |
| 24 | | 36.500 | 45.000 | 77.500 | 93.750 |
| 25 | | 36.875 | 45.625 | 79.375 | 96.250 |
| **Each of next** | | | | | |
| " 25 | (26 - 50) | 0.375 | 0.625 | 1.875 | 2.500 |
| " 50 | (51 - 100) | 0.300 | 0.500 | 1.500 | 2.000 |
| " 50 | (101 - 150) | 0.225 | 0.375 | 1.125 | 1.500 |
| " 50 | (151 - 200) | 0.150 | 0.250 | 0.750 | 1.000 |
| " 100 | (201 - 300) | 0.120 | 0.200 | 0.600 | 0.800 |
| " 200 | (301 - 500) | 0.090 | 0.150 | 0.450 | 0.600 |
| " 500 | (501 - 1,000) | 0.075 | 0.125 | 0.375 | 0.500 |
| " 500 | (1,001 - 1,500) | 0.060 | 0.100 | 0.300 | 0.400 |
| " 1,000 | (1,501 - 2,500) | 0.045 | 0.075 | 0.225 | 0.300 |
| " 2,500 | (2,501 - 5,000) | 0.030 | 0.050 | 0.150 | 0.200 |
| " 5,000 | (5,001 - 10,000) | 0.021 | 0.035 | 0.105 | 0.140 |
| " 10,001 | Or more | 0.015 | 0.025 | 0.075 | 0.100 |

CA Private Range Rate 7-09

Exhibit A, Page 197

| No. Of Ratable | Limit Of Liability | | | |
|---|---|---|---|---|
| All of first: | $100 | $250 | $500 | $750 |
| 50 | 46.250 | 61.250 | 126.250 | 158.750 |
| 100 | 61.250 | 86.250 | 201.250 | 258.750 |
| 150 | 72.500 | 105.000 | 257.500 | 333.750 |
| 200 | 80.000 | 117.500 | 295.000 | 383.750 |
| 300 | 92.000 | 137.500 | 355.000 | 463.750 |
| 500 | 110.000 | 167.500 | 445.000 | 583.750 |
| 1,000 | 147.500 | 230.000 | 632.500 | 833.750 |
| 1,500 | 177.500 | 280.000 | 782.500 | 1,033.750 |
| 2,500 | 222.500 | 355.000 | 1,007.500 | 1,333.750 |
| 5,000 | 297.500 | 480.000 | 1,382.500 | 1,833.750 |
| 10,000 | 402.500 | 655.000 | 1,907.500 | 2,533.750 |
| Exposure Units Per Premises | 5.500 | 6.000 | 6.500 | 6.750 |

**Limit Of Liability $1,000 - $5,000**

| No. Of Ratable | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| Employees/Persons | $1,000 | $1,500 | $2,000 | $2,500 | $5,000 |
| 5 or less | 50.625 | 55.000 | 59.375 | 63.750 | 76.250 |
| 6 | 53.750 | 58.750 | 63.750 | 68.750 | 82.500 |
| 7 | 56.875 | 62.500 | 68.125 | 73.750 | 88.750 |
| 8 | 60.000 | 66.250 | 72.500 | 78.750 | 95.000 |
| 9 | 63.125 | 70.000 | 76.875 | 83.750 | 101.250 |
| 10 | 66.250 | 73.750 | 81.250 | 88.750 | 107.500 |
| 11 | 69.375 | 77.500 | 85.625 | 93.750 | 113.750 |
| 12 | 72.500 | 81.250 | 90.000 | 98.750 | 120.000 |
| 13 | 75.625 | 85.000 | 94.375 | 103.750 | 126.250 |
| 14 | 78.750 | 88.750 | 98.750 | 108.750 | 132.500 |
| 15 | 81.875 | 92.500 | 103.125 | 113.750 | 138.750 |
| 16 | 85.000 | 96.250 | 107.500 | 118.750 | 145.000 |
| 17 | 88.125 | 100.000 | 111.875 | 123.750 | 151.250 |
| 18 | 91.250 | 103.750 | 116.250 | 128.750 | 157.500 |
| 19 | 94.375 | 107.500 | 120.625 | 133.750 | 163.750 |
| 20 | 97.500 | 111.250 | 125.000 | 138.750 | 170.000 |
| 21 | 100.625 | 115.000 | 129.375 | 143.750 | 176.250 |
| 22 | 103.750 | 118.750 | 133.750 | 148.750 | 182.500 |
| 23 | 106.875 | 122.500 | 138.125 | 153.750 | 188.750 |
| 24 | 110.000 | 126.250 | 142.500 | 158.750 | 195.000 |
| 25 | 113.125 | 130.000 | 146.875 | 163.750 | 201.250 |
| Each of next: | | | | | |
| "        25      (26 - 50) | 3.125 | 3.750 | 4.375 | 5.000 | 6.250 |
| "        50      (51 - 100) | 2.500 | 3.000 | 3.500 | 4.000 | 5.000 |
| "        50     (101 - 150) | 1.875 | 2.250 | 2.625 | 3.000 | 3.750 |
| "        50     (151 - 200) | 1.250 | 1.500 | 1.750 | 2.000 | 2.500 |
| "       100    (201 - 300) | 1.000 | 1.200 | 1.400 | 1.600 | 2.000 |

CA Private Range Rate 7-09

48

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $1,000 | $1,500 | $2,000 | $2,500 | $5,000 |
| "    200   (301 - 500) | 0.750 | 0.900 | 1.050 | 1.200 | 1.500 |
| "    500   (501 - 1,000) | 0.625 | 0.750 | 0.875 | 1.000 | 1.250 |
| "    500   (1,001 - 1,500) | 0.500 | 0.600 | 0.700 | 0.800 | 1.000 |
| "  1,000  (1,501 - 2,500) | 0.375 | 0.450 | 0.525 | 0.600 | 0.750 |
| "  2,500  (2,501 - 5,000) | 0.250 | 0.300 | 0.350 | 0.400 | 0.500 |
| "  5,000  (5,001 - 10,000) | 0.175 | 0.210 | 0.245 | 0.280 | 0.350 |
| " 10,001    or more | 0.125 | 0.150 | 0.175 | 0.200 | 0.250 |
| All of first: | | | | | |
| "      50 | 191.250 | 223.750 | 256.250 | 288.750 | 357.500 |
| "     100 | 316.250 | 373.750 | 431.250 | 488.750 | 607.500 |
| "     150 | 410.000 | 486.250 | 562.500 | 638.750 | 795.000 |
| "     200 | 472.500 | 561.250 | 650.000 | 738.750 | 920.000 |
| "     300 | 572.500 | 681.250 | 790.000 | 898.750 | 1,120.000 |
| "     500 | 722.500 | 861.250 | 1,000.000 | 1,138.750 | 1,420.000 |
| "   1,000 | 1,035.000 | 1,236.250 | 1,437.500 | 1,638.750 | 2,045.000 |
| "   1,500 | 1,285.000 | 1,536.250 | 1,787.500 | 2,038.750 | 2,545.000 |
| "   2,500 | 1,660.000 | 1,986.250 | 2,312.500 | 2,638.750 | 3,295.000 |
| "   5,000 | 2,285.000 | 2,736.250 | 3,187.500 | 3,638.750 | 4,545.000 |
| "  10,000 | 3,160.000 | 3,786.250 | 4,412.500 | 5,038.750 | 6,295.000 |
| Exposure Units Per Premises | 7.000 | 7.250 | 7.500 | 7.750 | 9.000 |

**Limit Of Liability $7,500- $20,000**

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $7,500 | $10,000 | $12,500 | $15,000 | $20,000 |
| 5 or less | 88.750 | 101.250 | 109.375 | 117.500 | 133.750 |
| 6 | 96.250 | 110.000 | 118.750 | 127.500 | 145.000 |
| 7 | 103.750 | 118.750 | 128.125 | 137.500 | 156.250 |
| 8 | 111.250 | 127.500 | 137.500 | 147.500 | 167.500 |
| 9 | 118.750 | 136.250 | 146.875 | 157.500 | 178.750 |
| 10 | 126.250 | 145.000 | 156.250 | 167.500 | 190.000 |
| 11 | 133.750 | 153.750 | 165.625 | 177.500 | 201.250 |
| 12 | 141.250 | 162.500 | 175.000 | 187.500 | 212.500 |
| 13 | 148.750 | 171.250 | 184.375 | 197.500 | 223.750 |
| 14 | 156.250 | 180.000 | 193.750 | 207.500 | 235.000 |
| 15 | 163.750 | 188.750 | 203.125 | 217.500 | 246.250 |
| 16 | 171.250 | 197.500 | 212.500 | 227.500 | 257.500 |
| 17 | 178.750 | 206.250 | 221.875 | 237.500 | 268.750 |
| 18 | 186.250 | 215.000 | 231.250 | 247.500 | 280.000 |
| 19 | 193.750 | 223.750 | 240.625 | 257.500 | 291.250 |

CA Private Range Rate 7-09

49

Exhibit A, Page 199

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $7,500 | $10,000 | $12,500 | $15,000 | $20,000 |
| 20 | 201.250 | 232.500 | 250.000 | 267.500 | 302.500 |
| 21 | 208.750 | 241.250 | 259.375 | 277.500 | 313.750 |
| 22 | 216.250 | 250.000 | 268.750 | 287.500 | 325.000 |
| 23 | 223.750 | 258.750 | 278.125 | 297.500 | 336.250 |
| 24 | 231.250 | 267.500 | 287.500 | 307.500 | 347.500 |
| 25 | 238.750 | 276.250 | 296.875 | 317.500 | 358.750 |
| **Each of next:** | | | | | |
| "    25    (26 - 50) | 7.500 | 8.750 | 9.375 | 10.000 | 11.250 |
| "    50    (51 - 100) | 6.000 | 7.000 | 7.500 | 8.000 | 9.000 |
| "    50    (101 - 150) | 4.500 | 5.250 | 5.625 | 6.000 | 6.750 |
| "    50    (151 - 200) | 3.000 | 3.500 | 3.750 | 4.000 | 4.500 |
| "    100    (201 - 300) | 2.400 | 2.800 | 3.000 | 3.200 | 3.600 |
| "    200    (301 - 500) | 1.800 | 2.100 | 2.250 | 2.400 | 2.700 |
| "    500    (501 - 1,000) | 1.500 | 1.750 | 1.875 | 2.000 | 2.250 |
| "    500    (1,001 - 1,500) | 1.200 | 1.400 | 1.500 | 1.600 | 1.800 |
| "    1,000    (1,501 - 2,500) | 0.900 | 1.050 | 1.125 | 1.200 | 1.350 |
| "    2,500    (2,501 - 5,000) | 0.600 | 0.700 | 0.750 | 0.800 | 0.900 |
| "    5,000    (5,001 - 10,000) | 0.420 | 0.490 | 0.525 | 0.560 | 0.630 |
| "    10,001    or more | 0.300 | 0.350 | 0.375 | 0.400 | 0.450 |
| **All of first:** | | | | | |
| "    50 | 426.250 | 495.000 | 531.250 | 567.500 | 640.000 |
| "    100 | 726.250 | 845.000 | 906.250 | 967.500 | 1,090.000 |
| "    150 | 951.250 | 1,107.500 | 1,187.500 | 1,267.500 | 1,427.500 |
| "    200 | 1,101.250 | 1,282.500 | 1,375.000 | 1,467.500 | 1,652.500 |
| "    300 | 1,341.250 | 1,562.500 | 1,675.000 | 1,787.500 | 2,012.500 |
| "    500 | 1,701.250 | 1,982.500 | 2,125.000 | 2,267.500 | 2,552.500 |
| "    1,000 | 2,451.250 | 2,857.500 | 3,062.500 | 3,267.500 | 3,677.500 |
| "    1,500 | 3,051.250 | 3,557.500 | 3,812.500 | 4,067.500 | 4,577.500 |
| "    2,500 | 3,951.250 | 4,607.500 | 4,937.500 | 5,267.500 | 5,927.500 |
| "    5,000 | 5,451.250 | 6,357.500 | 6,812.500 | 7,267.500 | 8,177.500 |
| "    10,000 | 7,551.250 | 8,807.500 | 9,437.500 | 10,067.500 | 11,327.500 |
| **Exposure Units Per Premises** | **10.250** | **11.500** | **12.500** | **13.500** | **15.500** |

### Limits of Liability $25,000 to $75,000

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $25,000 | $30,000 | $40,000 | $50,000 | $75,000 |
| 5 or less | 150.000 | 161.250 | 183.750 | 206.250 | 256.250 |
| 6 | 162.500 | 174.500 | 198.500 | 222.500 | 275.000 |
| 7 | 175.000 | 187.750 | 213.250 | 238.750 | 293.750 |

CA Private Range Rate 7-09

| No. Of Ratable Employees/Persons | | Limit Of Liability | | | | |
|---|---|---|---|---|---|---|
| | | $25,000 | $30,000 | $40,000 | $50,000 | $75,000 |
| 8 | | 187.500 | 201.000 | 228.000 | 255.000 | 312.500 |
| 9 | | 200.000 | 214.250 | 242.750 | 271.250 | 331.250 |
| 10 | | 212.500 | 227.500 | 257.500 | 287.500 | 350.000 |
| 11 | | 225.000 | 240.750 | 272.250 | 303.750 | 368.750 |
| 12 | | 237.500 | 254.000 | 287.000 | 320.000 | 387.500 |
| 13 | | 250.000 | 267.250 | 301.750 | 336.250 | 406.250 |
| 14 | | 262.500 | 280.500 | 316.500 | 352.500 | 425.000 |
| 15 | | 275.000 | 293.750 | 331.250 | 368.750 | 443.750 |
| 16 | | 287.500 | 307.000 | 346.000 | 385.000 | 462.500 |
| 17 | | 300.000 | 320.250 | 360.750 | 401.250 | 481.250 |
| 18 | | 312.500 | 333.500 | 375.500 | 417.500 | 500.000 |
| 19 | | 325.000 | 346.750 | 390.250 | 433.750 | 518.750 |
| 20 | | 337.500 | 360.000 | 405.000 | 450.000 | 537.500 |
| 21 | | 350.000 | 373.250 | 419.750 | 466.250 | 556.250 |
| 22 | | 362.500 | 386.500 | 434.500 | 482.500 | 575.000 |
| 23 | | 375.000 | 399.750 | 449.250 | 498.750 | 593.750 |
| 24 | | 387.500 | 413.000 | 464.000 | 515.000 | 612.500 |
| 25 | | 400.000 | 426.250 | 478.750 | 531.250 | 631.250 |
| **Each of next:** | | | | | | |
| " 25 | (26 - 50) | 12.500 | 13.250 | 14.750 | 16.250 | 18.750 |
| " 50 | (51 - 100) | 10.000 | 10.600 | 11.800 | 13.000 | 15.000 |
| " 50 | (101 - 150) | 7.500 | 7.950 | 8.850 | 9.750 | 11.250 |
| " 50 | (151 - 200) | 5.000 | 5.300 | 5.900 | 6.500 | 7.500 |
| " 100 | (201 - 300) | 4.000 | 4.240 | 4.720 | 5.200 | 6.000 |
| " 200 | (301 - 500) | 3.000 | 3.180 | 3.540 | 3.900 | 4.500 |
| " 500 | (501 - 1,000) | 2.500 | 2.650 | 2.950 | 3.250 | 3.750 |
| " 500 | (1,001 - 1,500) | 2.000 | 2.120 | 2.360 | 2.600 | 3.000 |
| " 1,000 | (1,501 - 2,500) | 1.500 | 1.590 | 1.770 | 1.950 | 2.250 |
| " 2,500 | (2,501 - 5,000) | 1.000 | 1.060 | 1.180 | 1.300 | 1.500 |
| " 5,000 | (5,001 - 10,000) | 0.700 | 0.742 | 0.826 | 0.910 | 1.050 |
| " 10,001 | or more | 0.500 | 0.530 | 0.590 | 0.650 | 0.750 |
| **All of first:** | | | | | | |
| " 50 | | 712.500 | 757.500 | 847.500 | 937.500 | 1,100.000 |
| " 100 | | 1,212.500 | 1,287.500 | 1,437.500 | 1,587.500 | 1,850.000 |
| " 150 | | 1,587.500 | 1,685.000 | 1,880.000 | 2,075.000 | 2,412.500 |
| " 200 | | 1,837.500 | 1,950.000 | 2,175.000 | 2,400.000 | 2,787.500 |
| " 300 | | 2,237.500 | 2,374.000 | 2,647.000 | 2,920.000 | 3,387.500 |
| " 500 | | 2,837.500 | 3,010.000 | 3,355.000 | 3,700.000 | 4,287.500 |
| " 1,000 | | 4,087.500 | 4,335.000 | 4,830.000 | 5,325.000 | 6,162.500 |
| " 1,500 | | 5,087.500 | 5,395.000 | 6,010.000 | 6,625.000 | 7,662.500 |
| " 2,500 | | 6,587.500 | 6,985.000 | 7,780.000 | 8,575.000 | 9,912.500 |
| " 5,000 | | 9,087.500 | 9,635.000 | 10,730.000 | 11,825.000 | 13,662.500 |

CA Private Range Rate 7-09

Exhibit A, Page 201

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $25,000 | $30,000 | $40,000 | $50,000 | $75,000 |
| "        10,000 | 12,587.500 | 13,345.000 | 14,860.000 | 16,375.000 | 18,912.500 |
| Exposure Units Per Premises | **17.500** | **19.000** | **22.000** | **25.000** | **32.500** |

### Limits of Liability $100,000 to $250,000

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $100,000 | $125,000 | $150,000 | $200,000 | $250,000 |
| 5 or less | 287.500 | 303.125 | 318.750 | 346.875 | 375.000 |
| 6 | 307.500 | 323.750 | 340.000 | 368.750 | 397.500 |
| 7 | 327.500 | 344.375 | 361.250 | 390.625 | 420.000 |
| 8 | 347.500 | 365.000 | 382.500 | 412.500 | 442.500 |
| 9 | 367.500 | 385.625 | 403.750 | 434.375 | 465.000 |
| 10 | 387.500 | 406.250 | 425.000 | 456.250 | 487.500 |
| 11 | 407.500 | 426.875 | 446.250 | 478.125 | 510.000 |
| 12 | 427.500 | 447.500 | 467.500 | 500.000 | 532.500 |
| 13 | 447.500 | 468.125 | 488.750 | 521.875 | 555.000 |
| 14 | 467.500 | 488.750 | 510.000 | 543.750 | 577.500 |
| 15 | 487.500 | 509.375 | 531.250 | 565.625 | 600.000 |
| 16 | 507.500 | 530.000 | 552.500 | 587.500 | 622.500 |
| 17 | 527.500 | 550.625 | 573.750 | 609.375 | 645.000 |
| 18 | 547.500 | 571.250 | 595.000 | 631.250 | 667.500 |
| 19 | 567.500 | 591.875 | 616.250 | 653.125 | 690.000 |
| 20 | 587.500 | 612.500 | 637.500 | 675.000 | 712.500 |
| 21 | 607.500 | 633.125 | 658.750 | 696.875 | 735.000 |
| 22 | 627.500 | 653.750 | 680.000 | 718.750 | 757.500 |
| 23 | 647.500 | 674.375 | 701.250 | 740.625 | 780.000 |
| 24 | 667.500 | 695.000 | 722.500 | 762.500 | 802.500 |
| 25 | 687.500 | 715.625 | 743.750 | 784.375 | 825.000 |
| **Each of next:** | | | | | |
| "    25    (26 - 50) | 20.000 | 20.625 | 21.250 | 21.875 | 22.500 |
| "    50    (51 - 100) | 16.000 | 16.500 | 17.000 | 17.500 | 18.000 |
| "    50    (101 - 150) | 12.000 | 12.375 | 12.750 | 13.125 | 13.500 |
| "    50    (151 - 200) | 8.000 | 8.250 | 8.500 | 8.750 | 9.000 |
| "    100    (201 - 300) | 6.400 | 6.600 | 6.800 | 7.000 | 7.200 |
| "    200    (301 - 500) | 4.800 | 4.950 | 5.100 | 5.250 | 5.400 |
| "    500    (501 - 1,000) | 4.000 | 4.125 | 4.250 | 4.375 | 4.500 |
| "    500    (1,001 - 1,500) | 3.200 | 3.300 | 3.400 | 3.500 | 3.600 |
| "    1,000    (1,501 - 2,500) | 2.400 | 2.475 | 2.550 | 2.625 | 2.700 |

CA Private Range Rate 7-09

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $100,000 | $125,000 | $150,000 | $200,000 | $250,000 |
| " 2,500 (2,501 - 5,000) | 1.600 | 1.650 | 1.700 | 1.750 | 1.800 |
| " 5,000 (5,001 - 10,000) | 1.120 | 1.155 | 1.190 | 1.225 | 1.260 |
| " 10,001 or more | 0.800 | 0.825 | 0.850 | 0.875 | 0.900 |
| **All of first:** | | | | | |
| " 50 | 1,187.500 | 1,231.250 | 1,275.000 | 1,331.250 | 1,387.500 |
| " 100 | 1,987.500 | 2,056.250 | 2,125.000 | 2,206.250 | 2,287.500 |
| " 150 | 2,587.500 | 2,675.000 | 2,762.500 | 2,862.500 | 2,962.500 |
| " 200 | 2,987.500 | 3,087.500 | 3,187.500 | 3,300.000 | 3,412.500 |
| " 300 | 3,627.500 | 3,747.500 | 3,867.500 | 4,000.000 | 4,132.500 |
| " 500 | 4,587.500 | 4,737.500 | 4,887.500 | 5,050.000 | 5,212.500 |
| " 1,000 | 6,587.500 | 6,800.000 | 7,012.500 | 7,237.500 | 7,462.500 |
| " 1,500 | 8,187.500 | 8,450.000 | 8,712.500 | 8,987.500 | 9,262.500 |
| " 2,500 | 10,587.500 | 10,925.000 | 11,262.500 | 11,612.500 | 11,962.500 |
| " 5,000 | 14,587.500 | 15,050.000 | 15,512.500 | 15,987.500 | 16,462.500 |
| " 10,000 | 20,187.500 | 20,825.000 | 21,462.500 | 22,112.500 | 22,762.500 |
| **Exposure Units Per Premises** | **37.500** | **40.000** | **42.500** | **47.500** | **52.500** |

## Limits of Liability - $500,000 to $5,000,000

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $500,000 | $1,000,000 | $1,500,000 | $2,500,000 | $5,000,000 |
| 5 or less | 515.625 | 787.500 | 928.125 | 1,156.250 | 1,656.250 |
| 6 | 541.250 | 817.500 | 961.250 | 1,195.000 | 1,707.500 |
| 7 | 566.875 | 847.500 | 994.375 | 1,233.750 | 1,758.750 |
| 8 | 592.500 | 877.500 | 1,027.500 | 1,272.500 | 1,810.000 |
| 9 | 618.125 | 907.500 | 1,060.625 | 1,311.250 | 1,861.250 |
| 10 | 643.750 | 937.500 | 1,093.750 | 1,350.000 | 1,912.500 |
| 11 | 669.375 | 967.500 | 1,126.875 | 1,388.750 | 1,963.750 |
| 12 | 695.000 | 997.500 | 1,160.000 | 1,427.500 | 2,015.000 |
| 13 | 720.625 | 1,027.500 | 1,193.125 | 1,466.250 | 2,066.250 |
| 14 | 746.250 | 1,057.500 | 1,226.250 | 1,505.000 | 2,117.500 |
| 15 | 771.875 | 1,087.500 | 1,259.375 | 1,543.750 | 2,168.750 |
| 16 | 797.500 | 1,117.500 | 1,292.500 | 1,582.500 | 2,220.000 |
| 17 | 823.125 | 1,147.500 | 1,325.625 | 1,621.250 | 2,271.250 |
| 18 | 848.750 | 1,177.500 | 1,358.750 | 1,660.000 | 2,322.500 |
| 19 | 874.375 | 1,207.500 | 1,391.875 | 1,698.750 | 2,373.750 |
| 20 | 900.000 | 1,237.500 | 1,425.000 | 1,737.500 | 2,425.000 |
| 21 | 925.625 | 1,267.500 | 1,458.125 | 1,776.250 | 2,476.250 |
| 22 | 951.250 | 1,297.500 | 1,491.250 | 1,815.000 | 2,527.500 |
| 23 | 976.875 | 1,327.500 | 1,524.375 | 1,853.750 | 2,578.750 |
| 24 | 1,002.500 | 1,357.500 | 1,557.500 | 1,892.500 | 2,630.000 |
| 25 | 1,028.125 | 1,387.500 | 1,590.625 | 1,931.250 | 2,681.250 |
| **Each of next:** | | | | | |

CA Private Range Rate 7-09

Exhibit A, Page 203

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $500,000 | $1,000,000 | $1,500,000 | $2,500,000 | $5,000,000 |
| "      25      (26 - 50) | 25.625 | 30.000 | 33.125 | 38.750 | 51.250 |
| "      50      (51 - 100) | 20.500 | 24.000 | 26.500 | 31.000 | 41.000 |
| "      50      (101 - 150) | 15.375 | 18.000 | 19.875 | 23.250 | 30.750 |
| "      50      (151 - 200) | 10.250 | 12.000 | 13.250 | 15.500 | 20.500 |
| "      100      (201 - 300) | 8.200 | 9.600 | 10.600 | 12.400 | 16.400 |
| "      200      (301 - 500) | 6.150 | 7.200 | 7.950 | 9.300 | 12.300 |
| "      500      (501 - 1,000) | 5.125 | 6.000 | 6.625 | 7.750 | 10.250 |
| "      500      (1,001 - 1,500) | 4.100 | 4.800 | 5.300 | 6.200 | 8.200 |
| "      1,000      (1,501 - 2,500) | 3.075 | 3.600 | 3.975 | 4.650 | 6.150 |
| "      2,500      (2,501 - 5,000) | 2.050 | 2.400 | 2.650 | 3.100 | 4.100 |
| "      5,000      (5,001 - 10,000) | 1.435 | 1.680 | 1.855 | 2.170 | 2.870 |
| "      10,001      or more | 1.025 | 1.200 | 1.325 | 1.550 | 2.050 |
| All of first: | | | | | |
| "      50 | 1,668.750 | 2,137.500 | 2,418.750 | 2,900.000 | 3,962.500 |
| "      100 | 2,693.750 | 3,337.500 | 3,743.750 | 4,450.000 | 6,012.500 |
| "      150 | 3,462.500 | 4,237.500 | 4,737.500 | 5,612.500 | 7,550.000 |
| "      200 | 3,975.000 | 4,837.500 | 5,400.000 | 6,387.500 | 8,575.000 |
| "      300 | 4,795.000 | 5,797.500 | 6,460.000 | 7,627.500 | 10,215.000 |
| "      500 | 6,025.000 | 7,237.500 | 8,050.000 | 9,487.500 | 12,675.000 |
| "      1,000 | 8,587.500 | 10,237.500 | 11,362.500 | 13,362.500 | 17,800.000 |
| "      1,500 | 10,637.500 | 12,637.500 | 14,012.500 | 16,462.500 | 21,900.000 |
| "      2,500 | 13,712.500 | 16,237.500 | 17,987.500 | 21,112.500 | 28,050.000 |
| "      5,000 | 18,837.500 | 22,237.500 | 24,612.500 | 28,862.500 | 38,300.000 |
| "      10,000 | 26,012.500 | 30,637.500 | 33,887.500 | 39,712.500 | 52,650.000 |
| **Exposure Units Per Premises** | **77.500** | **127.500** | **152.500** | **192.500** | **280.000** |

CA Private Range Rate 7-09

Exhibit A, Page 204

**Limits of Liability - $10,000,000**

| No. Of Ratable Employees/Persons | $10,000,000 |
|---|---|
| 5 or less | 2,515.625 |
| 6 | 2,588.750 |
| 7 | 2,661.875 |
| 8 | 2,735.000 |
| 9 | 2,808.125 |
| 10 | 2,881.250 |
| 11 | 2,954.375 |
| 12 | 3,027.500 |
| 13 | 3,100.625 |
| 14 | 3,173.750 |
| 15 | 3,246.875 |
| 16 | 3,320.000 |
| 17 | 3,393.125 |
| 18 | 3,466.250 |
| 19 | 3,539.375 |
| 20 | 3,612.500 |
| 21 | 3,685.625 |
| 22 | 3,758.750 |
| 23 | 3,831.875 |
| 24 | 3,905.000 |
| 25 | 3,978.125 |
| **Each of next:** | |
| "      25      (26 - 50) | 73.125 |
| "      50      (51 - 100) | 58.500 |
| "      50      (101 - 150) | 43.875 |
| "      50      (151 - 200) | 29.250 |
| "      100     (201 - 300) | 23.400 |
| "      200     (301 - 500) | 17.550 |
| "      500     (501 - 1,000) | 14.625 |
| "      500     (1,001 - 1,500) | 11.700 |
| "      1,000   (1,501 - 2,500) | 8.775 |
| "      2,500   (2,501 - 5,000) | 5.850 |
| "      5,000   (5,001 - 10,000) | 4.095 |
| "      10,001           or more | 2.925 |
| **All of first:** | |
| "      50 | 5,806.250 |
| "      100 | 8,731.250 |
| "      150 | 10,925.000 |
| "      200 | 12,387.500 |
| "      300 | 14,727.500 |
| "      500 | 18,237.500 |
| "      1,000 | 25,550.000 |
| "      1,500 | 31,400.000 |
| "      2,500 | 40,175.000 |

CA Private Range Rate 7-09

55

Exhibit A, Page 205

| No. Of Ratable Employees/Persons | $10,000,000 |
|---|---|
| "      5,000 | 54,800.000 |
| "     10,000 | 75,275.000 |
| **Exposure Units Per Premises** | **430.000** |

CA Private Range Rate 7-09

56

**Table 3**

**DEDUCTIBLES**

**Deductible Factors For Deductibles Less Than $1,000**

| Deductible | Deductible Buy-Back Factor |
|---|---|
| $ 0 | 1.08 |
| 100 | 1.05 |
| 250 | 1.02 |
| 500 | 1.00 |

**Deductible Factors For Deductibles From $1,000 To $25,000**

| Deductible | Limit Of Insurance | Deductible Factor |
|---|---|---|
| $ 1,000 | $ 50,000 or less | .84 |
| | 50,001 - 100,000 | .87 |
| | 100,001 - 250,000 | .89 |
| | Over 250,000 | .95 |
| 2,500 | 100,000 or less | .65 |
| | 100,001 - 250,000 | .72 |
| | 250,001 - 500,000 | .79 |
| | Over 500,000 | .85 |
| 5,000 | 250,000 or less | .57 |
| | 250,001 - 500,000 | .67 |
| | 500,001 - 1,000,000 | .73 |
| | Over 1,000,000 | .77 |
| 10,000 | 250,000 or less | .42 |
| | 250,001 - 500,000 | .55 |
| | 500,001 - 1,000,000 | .61 |
| | 1,000,001 - 5,000,000 | .67 |
| | Over 5,000,000 | .71 |
| 25,000 | 500,000 or less | .37 |
| | 500,001 - 1,000,000 | .48 |
| | 1,000,001 - 5,000,000 | .53 |
| | 5,000,001 - 10,000,000 | .58 |
| | Over 10,000,000 | .61 |

CA Private Range Rate 7-09

Exhibit A, Page 207

**Deductible Factors For Deductibles Over $25,000**

| Deductible | Limit Of Insurance | Deductible Factor |
|---|---|---|
| $ 50,000 | $ 1,000,000 or less | .34 |
| | 1,000,001 - 3,500,000 | .43 |
| | 3,500,001 - 5,500,000 | .45 |
| | 5,500,001 - 10,000,000 | .50 |
| | Over 10,000,000 | .53 |
| 75,000 | 1,000,000 or less | .29 |
| | 1,000,001 - 3,500,000 | .38 |
| | 3,500,001 - 5,500,000 | .40 |
| | 5,500,001 - 10,000,000 | .46 |
| | Over 10,000,000 | .48 |
| 100,000 | 1,000,000 or less | .25 |
| | 1,000,001 - 3,500,000 | .34 |
| | 3,500,001 - 5,500,000 | .36 |
| | 5,500,001 - 10,000,000 | .40 |
| | Over 10,000,000 | .44 |
| 250,000 | 1,000,000 or less | .22 |
| | 1,000,001 - 3,500,000 | .29 |
| | 3,500,001 - 5,500,000 | .32 |
| | 5,500,001 - 10,000,000 | .35 |
| | Over 10,000,000 | .39 |
| 500,000 | 1,000,000 or less | .19 |
| | 1,000,001 - 3,500,000 | .25 |
| | 3,500,001 - 5,500,000 | .27 |
| | 5,500,001 - 10,000,000 | .30 |
| | Over 10,000,000 | .33 |
| 1,000,000 | 3,500,000 or less | .12 |
| | 3,500,001 - 5,500,000 | .17 |
| | 5,500,001 - 10,000,000 | .21 |
| | Over 10,000,000 | .26 |
| 2,000,000 | 3,500,000 or less | .10 |
| | 3,500,001 - 5,500,000 | .12 |
| | 5,500,001 - 10,000,000 | .15 |
| | Over 10,000,000 | .20 |

CA Private Range Rate 7-09

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Table 4 - Class Rate Multipliers | | | | | | | | |
| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
| 1100 | 0.764 | 1.138 | 2.011 | 0.233 | 7.370 | 5.264 | 1.196 |
| 2150 | 0.647 | 1.138 | 1.340 | 0.233 | 5.071 | 3.622 | 1.196 |
| 2210 | 0.714 | 2.125 | 2.011 | 0.305 | 7.370 | 5.264 | 2.294 |
| 2211 | 0.637 | 2.125 | 1.340 | 0.305 | 5.071 | 3.622 | 2.294 |
| 2330 | 1.029 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 2350 | 1.029 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3110 | 1.299 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3121 | 1.263 | 0.632 | 2.011 | 0.186 | 7.370 | 5.264 | 0.635 |
| 3122 | 1.263 | 0.632 | 2.011 | 0.186 | 7.370 | 5.264 | 0.635 |
| 3130 | 0.970 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3140 | 0.970 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3150 | 1.674 | 0.632 | 2.011 | 0.186 | 7.370 | 5.264 | 0.635 |
| 3160 | 1.101 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3210 | 0.914 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3225 | 0.914 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3230 | 0.743 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3240 | 1.336 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3250 | 1.259 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3254 | 1.079 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3260 | 0.943 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3270 | 1.061 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3310 | 1.069 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3320 | 1.069 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3330 | 1.338 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3347 | 1.404 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3350 | 1.338 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3367 | 0.843 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3370 | 0.914 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3380 | 2.022 | 0.526 | 4.229 | 0.186 | 15.967 | 11.405 | 0.520 |
| 3395 | 1.101 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 4210 | 1.138 | 1.217 | 4.229 | 0.238 | 15.967 | 11.405 | 1.284 |
| 4211 | 1.255 | 1.217 | 2.888 | 0.238 | 10.896 | 7.784 | 1.284 |
| 4212 | 0.695 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4213 | 0.868 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4214 | 1.138 | 1.217 | 4.229 | 0.238 | 15.967 | 11.405 | 1.284 |
| 4215 | 0.707 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |

CA Private Range Rate 7-09

59

| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
|---|---|---|---|---|---|---|---|
| 4216 | 1.315 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4217 | 0.906 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4218 | 0.903 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4219 | 1.377 | 1.217 | 4.229 | 0.238 | 15.967 | 11.405 | 1.284 |
| 4221 | 0.868 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4222 | 1.151 | 1.217 | 2.888 | 0.238 | 10.896 | 7.784 | 1.284 |
| 4223 | 1.020 | 1.503 | 4.229 | 0.238 | 15.967 | 11.405 | 1.594 |
| 4225 | 1.486 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4226 | 0.781 | 1.217 | 2.888 | 0.238 | 10.896 | 7.784 | 1.284 |
| 4227 | 0.904 | 1.503 | 2.011 | 0.238 | 7.370 | 5.264 | 1.594 |
| 4228 | 1.252 | 2.525 | 2.888 | 0.238 | 10.896 | 7.784 | 2.708 |
| 4229 | 0.806 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4230 | 1.486 | 1.503 | 1.340 | 0.238 | 5.071 | 3.622 | 1.594 |
| 4240 | 1.138 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4410 | 1.508 | 3.820 | 4.229 | 0.435 | 15.967 | 11.405 | 4.166 |
| 4413 | 1.566 | 3.820 | 4.229 | 0.435 | 15.967 | 11.405 | 4.166 |
| 4420 | 1.429 | 3.820 | 2.011 | 0.435 | 7.370 | 5.264 | 4.166 |
| 4430 | 1.429 | 3.820 | 2.888 | 0.435 | 10.896 | 7.784 | 4.166 |
| 4440 | 1.092 | 3.820 | 2.011 | 0.435 | 7.370 | 5.264 | 4.166 |
| 4451 | 0.944 | 12.050 | 2.888 | 0.435 | 10.896 | 7.784 | 13.130 |
| 4452 | 0.820 | 5.326 | 2.888 | 0.435 | 10.896 | 7.784 | 5.834 |
| 4453 | 0.816 | 8.231 | 2.888 | 0.435 | 10.896 | 7.784 | 8.965 |
| 4461 | 0.761 | 8.231 | 2.888 | 0.435 | 10.896 | 7.784 | 8.965 |
| 4462 | 1.064 | 3.820 | 1.340 | 0.435 | 5.071 | 3.622 | 4.166 |
| 4470 | 1.566 | 5.326 | 2.888 | 0.413 | 10.896 | 7.784 | 5.834 |
| 4480 | 0.894 | 4.787 | 2.011 | 0.413 | 7.370 | 5.264 | 5.210 |
| 4483 | 1.362 | 3.820 | 4.229 | 0.413 | 15.967 | 11.405 | 4.166 |
| 4510 | 0.552 | 4.787 | 4.229 | 0.413 | 15.967 | 11.405 | 5.210 |
| 4520 | 1.003 | 4.787 | 2.888 | 0.413 | 10.896 | 7.784 | 5.210 |
| 4530 | 0.552 | 3.820 | 2.888 | 0.413 | 10.896 | 7.784 | 4.166 |
| 4540 | 1.003 | 3.820 | 1.340 | 0.413 | 5.071 | 3.622 | 4.166 |
| 4543 | 0.813 | 4.787 | 2.011 | 0.413 | 7.370 | 5.264 | 5.210 |
| 4810 | 1.611 | 2.125 | 1.340 | 0.305 | 5.071 | 3.622 | 2.294 |
| 4820 | 1.192 | 2.652 | 2.011 | 0.305 | 7.370 | 5.264 | 2.861 |
| 4835 | 1.412 | 2.652 | 2.011 | 0.305 | 7.370 | 5.264 | 2.861 |
| 4840 | 1.179 | 2.652 | 2.888 | 0.305 | 10.896 | 7.784 | 2.861 |
| 4850 | 1.192 | 2.652 | 2.011 | 0.305 | 7.370 | 5.264 | 2.861 |
| 4860 | 0.647 | 1.138 | 1.340 | 0.233 | 5.071 | 3.622 | 1.196 |
| 4870 | 1.166 | 4.787 | 2.011 | 0.435 | 7.370 | 5.264 | 5.210 |

CA Private Range Rate 7-09

| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
|---|---|---|---|---|---|---|---|
| 4880 | 1.179 | 2.125 | 2.011 | 0.305 | 7.370 | 5.264 | 2.294 |
| 4920 | 0.829 | 13.043 | 2.888 | 0.463 | 10.896 | 7.784 | 14.213 |
| 4930 | 1.224 | 2.125 | 2.011 | 0.305 | 7.370 | 5.264 | 2.294 |
| 5111 | 0.743 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 5112 | 0.829 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 5125 | 0.948 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 5135 | 1.071 | 3.883 | 2.011 | 0.440 | 7.370 | 5.264 | 4.235 |
| 5145 | 1.312 | 0.119 | 2.011 | 0.155 | 7.370 | 5.264 | 0.069 |
| 5222 | 2.901 | 6.144 | 2.011 | 0.294 | 7.370 | 5.264 | 6.668 |
| 5223 | 0.887 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5224 | 2.632 | 4.214 | 4.229 | 0.294 | 15.967 | 11.405 | 4.562 |
| 5225 | 2.560 | 2.344 | 1.340 | 0.320 | 5.071 | 3.622 | 2.539 |
| 5229 | 2.901 | 13.043 | 2.011 | 0.463 | 7.370 | 5.264 | 14.213 |
| 5232 | 2.566 | 3.254 | 1.340 | 0.320 | 5.071 | 3.622 | 3.547 |
| 5233 | 2.464 | 3.254 | 1.340 | 0.320 | 5.071 | 3.622 | 3.547 |
| 5234 | 0.887 | 4.448 | 1.340 | 0.381 | 5.071 | 3.622 | 4.873 |
| 5239 | 0.829 | 5.414 | 1.340 | 0.440 | 5.071 | 3.622 | 5.930 |
| 5241 | 0.424 | 3.883 | 4.229 | 0.440 | 15.967 | 11.405 | 4.235 |
| 5242 | 0.887 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5252 | 0.129 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5253 | 0.091 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5310 | 0.600 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5312 | 0.611 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5313 | 0.887 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5320 | 0.931 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5405 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5409 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5413 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5414 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5415 | 0.829 | 3.883 | 2.011 | 0.440 | 7.370 | 5.264 | 4.235 |
| 5416 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5417 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5418 | 0.853 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5419 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5613 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5614 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5615 | 1.166 | 8.231 | 1.340 | 0.435 | 5.071 | 3.622 | 8.965 |
| 5616 | 0.829 | 5.414 | 2.888 | 0.440 | 10.896 | 7.784 | 5.930 |
| 5617 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |

CA Private Range Rate 7-09

| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
|---|---|---|---|---|---|---|---|
| 5618 | 0.860 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 5620 | 1.138 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 5630 | 1.166 | 8.231 | 1.340 | 0.435 | 5.071 | 3.622 | 8.965 |
| 5640 | 0.829 | 3.883 | 2.011 | 0.440 | 7.370 | 5.264 | 4.235 |
| 6111 | 0.583 | 2.175 | 2.888 | 0.281 | 10.896 | 7.784 | 2.332 |
| 6210 | 0.341 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6216 | 0.341 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6220 | 0.495 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6230 | 0.411 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6240 | 0.411 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 7110 | 0.723 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 7112 | 0.621 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 7120 | 0.321 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 7130 | 0.723 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 7132 | 0.723 | 3.883 | 4.229 | 0.440 | 15.967 | 11.405 | 4.235 |
| 7139 | 0.549 | 5.414 | 4.229 | 0.440 | 15.967 | 11.405 | 5.930 |
| 7215 | 1.495 | 3.820 | 2.888 | 0.435 | 10.896 | 7.784 | 4.166 |
| 7225 | 1.103 | 8.231 | 2.888 | 0.435 | 10.896 | 7.784 | 8.965 |
| 8111 | 1.111 | 5.326 | 2.011 | 0.435 | 7.370 | 5.264 | 5.834 |
| 8112 | 1.111 | 3.820 | 2.888 | 0.435 | 10.896 | 7.784 | 4.166 |
| 8121 | 1.064 | 3.820 | 2.011 | 0.435 | 7.370 | 5.264 | 4.166 |
| 8122 | 0.391 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 8123 | 1.073 | 8.231 | 1.340 | 0.435 | 5.071 | 3.622 | 8.965 |
| 8129 | 1.236 | 5.326 | 2.011 | 0.435 | 7.370 | 5.264 | 5.834 |
| 8131 | 0.265 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 8133 | 0.276 | 5.413 | 2.888 | 0.440 | 10.896 | 7.784 | 5.930 |
| 8139 | 0.429 | 3.190 | 2.888 | 0.381 | 10.896 | 7.784 | 3.479 |
| 8140 | 0.968 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 8141 | 0.539 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 8142 | 0.719 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 9202 | 0.330 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9203 | 0.380 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9204 | 0.256 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9205 | 0.320 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9206 | 0.262 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9250 | 0.281 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |

*TABLE 5 Crime & Fidelity Expense Exhibit – Refer to attachment*

CA Private Range Rate 7-09

Exhibit A, Page 212

**Table 6 - Underwriting Table – Schedule Rating Plan**

**A.      Fidelity – Table 6(a)**

A schedule rating modification may also be applied to the otherwise chargeable premium for Insuring Agreements (A) Fidelity, (B) Forgery, (F) Computer Fraud, (G) Funds Transfer Fraud, (I) Credit, Debit, Charge Card Forgery and (J) Clients Property in accordance with Table 6(a), subject to a maximum credit or debit of 25%, to reflect such characteristics of the risk as are not reflected in its experience, or that have not been taken into account in calculating the otherwise chargeable premium.

| Risk Characteristic | Description | Range Of Modifications | | |
|---|---|---|---|---|
| | | Credit | | Debit |
| Audit Procedures | Conduct of audits having regard to the prescribed procedures of professional accounting organizations. | 15% | to | 15% |
| Classification Peculiarities | Particular characteristics of the risk which would make it better, or worse, than the average risk for the class of business. | 15% | to | 15% |
| Internal Controls | Procedures established by the insured to control potential dishonest acts, including safeguards relating to check signing, securities controls and separation of money handling duties. | 15% | to | 15% |
| Management And Personnel | Selection, training and supervision of employees. | 10% | to | 10% |

**B.      Burglary/Theft – Table 6(b)**

A schedule rating modification may also be applied to the otherwise chargeable premium for Insuring Agreements C-Inside the Premises Loss of Money & Securities, D-Inside the Premises-Robbery Or Safe Burglary of Other Property and E-Outside The Premises in accordance with Table 6(b) below, subject to a maximum credit or debit of 25%, to reflect such characteristics of the risk as are not reflected in its experience, or that have not been taken into account in calculating the otherwise chargeable premium.

| Risk Characteristic | Description | Range Of Modifications | | |
|---|---|---|---|---|
| | | Credit | | Debit |
| Classification Peculiarities | Particular characteristics of the risk which would make it better, or worse, than the average risk for the type of business. | 15% | to | 15% |
| Location | Accessibility to the location - and aspects of the surrounding area having a beneficial, or adverse, effect on the risk. | 7% | to | 7% |

CA Private Range Rate 7-09

| Risk Characteristic | Description | Range Of Modifications | | |
|---|---|---|---|---|
| | | Credit | | Debit |
| Personnel | Selection, training and supervision of employees. | 6% | to | 6% |
| Management | Cooperation in safeguarding insured property. | 7% | to | 7% |
| Protective Features | Quality or standard of protective features such as, safes, vaults, alarm systems and security personnel. | 20% | to | 20% |

CA Private Range Rate 7-09

64

Exhibit A, Page 214

## EXPERIENCE AND SCHEDULE RATING PLAN - Table 7

**A.    Application Of Experience Rating**
The use of the experience rating provisions of this Plan is optional. Experience rating may be applied to any risk that develops a credibility from the tables contained in **Table 7**. of 0.02 or more for the Crime and the Fidelity exposures to be rated.

**B.    Application Of Schedule Rating**
The use of the schedule rating provisions of this Plan is optional. Schedule rating may be applied to any risk rated under this plan

**C.    Expected Loss Ratio**
Expenses are not taken into consideration in the parameters of this Plan. Instead, individual companies must multiply their premiums by their own Expected Loss Ratio (ELR) to produce the annual company loss costs (expected losses) for the risk which is being rated under this Plan. In this context, company ELR represents the company's manual provision for losses excluding all expenses. This company ELR shall be that ELR which has been filed by the company for use with this Plan for the class of business being rated.

## ESTABLISHMENT OF RATING FOR THE RISK

**A.    Applicability**
The risk modification determined from the application of this Plan shall be applicable to the company premiums at the effective date of the modification.

**B.    Term And Limit Of Insurance**
Each risk modification shall be understood to be established for the premium period for which the primary insurance is to be written and, unless otherwise provided for, to be applicable to the company premiums for the total limit of each of the various forms of eligible Crime or Fidelity insurance to be carried by the risk, except in the circumstances described in Paragraph **D.**

**C.    Multi-Policy Risks**
In the event a risk involves two or more policies with different effective dates, the risk modification for the primary insurance shall apply to such policies during the premium period for which the primary insurance is to be written. That portion of the premium for insurance written beyond the premium period of the primary policy shall be calculated on the basis of the current risk modification or unity, whichever is higher, subject to adjustment when the next risk modification applicable to the primary policy is calculated.

**D.    Mid-Term Changes In The Policy**
Where there are either; additions or deletions of optional insurance, or additions, deletions or changes in deductible(s), a revised risk modification shall be established based upon the last used company rates, rating factors and experience for the unexpired portion of the original premium period. In the event the insured makes a request, in writing, for a new premium period in order to conform the anniversary date with that of other insurance, a revised risk modification shall be established, based upon the last used company rates, current company rating factors and current experience for the extended period only.

CA Private Range Rate 7-09

## COMPANY RATE MODIFICATION

**A.     Determination Of Experience Modification**
The experience modification for the risk is to be determined in accordance with the experience rating procedure described in this Plan. Separate experience modifications may be established for Crime and Fidelity coverages, utilizing the appropriate Credibility and Maximum Single Loss Tables. Those modifications are then applied to the otherwise chargeable premiums for the policy being rated.

**B.     Determination Of Schedule Modification**
Apart from any experience modification, a modification reflecting specified characteristics of the risk may be applied in accordance with the Underwriting Table Schedule Rating Plan-See Tables 6(a) and 6(b). Separate schedule modifications may be established for Crime and Fidelity coverages.

## EXPERIENCE USED

**A.     Number Of Years Of Experience**
The experience modification shall be determined from the latest available three year Crime and Fidelity experience incurred by the company establishing the rating in this state or in all states. In the event the experience for the full experience period is not available, at least one completed policy year shall be used. The experience period shall end at least three months prior to the rating date.

**B.     Other Companies' Experience And Self-Insured Experience**
Experience incurred by companies other than the company establishing the modification, or self-insured experience, may be used subject to the periods specified in Paragraph A. Such experience may be excluded from the rating if its reliability cannot be established.

## DETERMINATION OF EXPERIENCE MODIFICATION
**A.     Company Subject Loss Cost**
**1.     Definition Of Company Subject Loss Cost**
     The term "company subject loss cost" is used to describe the total company loss costs (expected losses) subject to experience modification.
**2.     Determination Of Annual Company Premium**
     Determine the annual company premium for the policy being rated. The policy being rated is the policy to which the experience modification of Paragraph F. shall apply. Annual company premium is premium prior to the application of any individual risk modification. Package modification factors and company deviations are included in the annual company premium. Multiply the annual company premium by the company Expected Loss Ratio (ELR) for the risk. The result is the annual company  loss cost (expected losses) for the risk.
**3.     Determination Of Annual Company Loss Cost Subject To Experience Modification**

CA Private Range Rate 7-09

The annual company loss cost subject to experience modification, for a given year
of the experience period, is the annual company loss cost (expected losses) for the
policy being rated multiplied by the appropriate detrend factor from the table
contained in Rule 12.

**4.     Determination Of Company Subject Loss Cost**
The sum of the annual company loss costs subject to experience modification for
the years included in the experience period is the company subject loss cost.

**B.     Losses To Be Included In Experience Modification Calculation**
The losses to be included in the rating shall be the total of paid and outstanding    losses
(exclusive of loss adjustment expenses) for each year in the experience    period, less
any salvage expense from such loss payments, with the amount of  loss resulting from
any single occurrence limited by the maximum single loss  (MSL) value specified in the
tables contained in **Table C**. based on the company  subject loss cost. Outstanding losses
shall be valued in light of all information    available at the time of evaluation.

**C.     Actual Experience Ratio**
Determine the Actual Experience Ratio (AER) by dividing the losses subject to
experience modification by the company subject loss cost.

**D.     Expected Experience Ratio**
Expected Experience Ratio (EER) is specified in **Table C.,** based on the company subject
loss cost.

**E.     Credibility**
The credibility for the risk is obtained in **Table C**, based on the company subject loss
cost.

$$\text{Experience Modification}$$
$$\frac{\text{AER} - \text{EER}}{\text{EER}} \quad \text{X} \quad \text{CREDIBILITY} = \text{EXPERIENCE MODIFICATION}$$

If the experience modification is positive, it is a debit; if negative, it is a credit.

**G.     Provisions For Deductible Coverage**
Full coverage experience for risks which are to be written on a deductible basis shall be
adjusted to the deductible basis, and vice versa, any deductible experience for operations
which are to be written on a full coverage basis shall be built up to a full coverage basis
before using in the rating calculation.

**H.     Effect Of A Significant Exposure Change In Determination Of Company
Subject Loss Costs**
If the actual exposures of the risk have been subject to a significant change in volume,
and or, composition, during or since the experience period, it may be appropriate to apply
the following advisory procedure to determine the company subject loss cost:

   1.     Determine the actual historical exposures on the present rating basis by
          classification and location for each policy of the experience period.
   2.     The actual exposures by classification and location for a given year of the
          experience period, when extended by the present company rates and then
          multiplied by the appropriate detrend factor from the tables contained in
          Rule 12., yields the annual company premium for that year of the

CA Private Range Rate 7-09

67

experience period. Multiply each of these by the company Expected Loss Ratio (ELR) for the risk to obtain the company loss cost (expected losses) for each year.

3. The sum of the annual company loss costs (expected losses) for the years included in the experience period is the company subject loss cost

## RATING EXAMPLE

**A. Introduction**

This example shows how to apply the experience rating plan. The policy is being rated on 7/1/2000 and is to be in effect from 10/1/2000 to 9/30/2001. For this example we will assume a company expected loss ratio of 0.55. The example is in respect of Fidelity coverages, utilizing the Fidelity tables in Rule 13., but the experience modification for Crime coverages would be calculated in the same way, using **Table C**

**B. Using The Example**

1. According to the experience rating plan, we determine the annual company premium as $40,000. Annual company loss cost (expected losses) is therefore $22,000 ($40,000 X .55) for the policy being rated.

2. The loss information from the policies of the experience period is as follows:

| Policy Year | Policies Of The Experience Period | Indemnity | Indemnity Limited By MSL |
|---|---|---|---|
| 10/1/1998 – 9/30/1999 | Latest Year | $    5,000 | $   5,000 |
| | | $    4,000 | 4,000 |
| 10/1/1997 – 9/30/1998 | 2nd Latest Year | $ 150,000 | 35,400 |
| 10/1/1996 – 9/30/1997 | 3rd Latest Year | NIL | NIL |
| | | | $  44,400 |

3. The incurred losses are valued as of 7/1/2000, and are limited by the Maximum Single Loss (MSL) value of $35,400 calculated later in this example. The resulting losses represent the losses subject to experience rating.

4. The final column can be filled in once the MSL value is known. In this example, an MSL value of $35,400 was assigned from **Table C** based on the company subject loss cost of $62,194 (see later in this example for more information on how these values were obtained).

5. Company subject loss cost (expected losses) is calculated using the annual company loss cost for the policy being rated and the appropriate detrend factors from the tables described below.

| Annual Company Loss Cost For The Policy Being Rated | Detrend Factor | Annual Company Loss Cost Subject To Experience Modification |
|---|---|---|
| **Latest Year** $ 22,000 | x   .961 | =    $ 21,142 |
| **2nd Latest Year** $ 22,000 | x   .942 | =    $ 20,724 |

CA Private Range Rate 7-09

| Annual Company Loss Cost For The Policy Being Rated | Detrend Factor | Annual Company Loss Cost Subject To Experience Modification |
|---|---|---|
| **3rd Latest Year** $ 22,000 | x  .924 | =   $ 20,328 $ 62,194 |

6.  The company subject loss cost being the sum of the annual company loss costs subject to experience rating is $62,194. This company subject loss cost value is then used to obtain the other applicable rating values from **Table C**

7.  The company subject loss cost falls into the $59,791 - $62,765 subject loss cost range, corresponding to a 0.29 credibility level and a $35,400 maximum single loss value. The expected experience ratio is then 0.572. To summarize, the experience rating values are:

**COMPANY EXPENSE VARIATION FACTOR**

If the Expected Loss Ratio (ELR) underlying the company premium for the class is different than the actual ELR for the risk, multiply the otherwise chargeable premium (after experience modification) by the following Expense Variation Factor (EVF):

$$EVF = \frac{ELR \text{ Underlying the company premium for the class}}{Actual \ ELR \text{ for the risk}}$$

**PROCEDURE FOR CONVERSION OF THE PLAN TO A COMPANY PREMIUM BASIS**

**A.    Conversion From A Loss Cost Basis To A Company Premium Basis**

This Plan may be converted from a Loss Cost basis to a Premium basis so  that annual company premium may be used in the rating in lieu of annual company loss costs. Under this option, once the annual company premium has been determined it is not converted to company loss cost using the company ELR for the risk as described above. All further references to company loss cost in the Plan shall then be assumed to refer instead to company premium.

**B.    Adjustments Needed To Complete Conversion**

In order to complete the conversion, the following adjustments must be made to the tables contained in **Table C**.

1.  The EER values must be multiplied by the company ELR for the risk.

2.  The upper bound of each subject loss cost range and the lower bound of the first range listed (.02 credibility) must be divided by the company ELR for the risk to obtain the corresponding subject premiums. The remaining lower bounds (credibilities .03 to 0.50) of subject premium ranges are then calculated as one dollar greater than the upper bound of the subject premium range corresponding to credibility (Z-.01). The Credibility and Maximum Single Loss values need no adjustment.

**DETREND FACTORS**

CA Private Range Rate 7-09

69

Detrend factors are applied to the company loss costs for each of the years in the experience period as part of the adjustment to reflect the ultimate level of losses. The ISO Advisory Detrend Factors are as follows:

| Year Of The Experience Period | Crime Detrend Factor | Fidelity Detrend Factor |
|---|---|---|
| Latest Year | 0.961 | 0.961 |
| 2nd Latest Year | 0.942 | 0.942 |
| 3rd Latest Year | 0.924 | 0.924 |

CA Private Range Rate 7-09

**Table C**

**CREDIBILITY AND MAXIMUM SINGLE LOSS TABLES**

The Tables of Credibility and Maximum Single Loss are used in determining the experience modification. Separate Tables are provided for Crime and Fidelity coverages.

**Credibility And Maximum Single Loss – Crime – C(a)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $    762 | - | $    1,282 | 0.02 | 0.598 | $    6,850 |
| 1,283 | - | 1,813 | 0.03 | 0.628 | 8,050 |
| 1,814 | - | 2,356 | 0.04 | 0.643 | 8,750 |
| 2,357 | - | 2,910 | 0.05 | 0.652 | 9,200 |
| 2,911 | - | 3,475 | 0.06 | 0.659 | 9,600 |
| 3,476 | - | 4,054 | 0.07 | 0.664 | 9,900 |
| 4,055 | - | 4,644 | 0.08 | 0.668 | 10,150 |
| 4,645 | - | 5,248 | 0.09 | 0.672 | 10,400 |
| 5,249 | - | 5,865 | 0.10 | 0.676 | 10,650 |
| 5,866 | - | 6,497 | 0.11 | 0.680 | 10,900 |
| 6,498 | - | 7,142 | 0.12 | 0.683 | 11,100 |
| 7,143 | - | 7,803 | 0.13 | 0.686 | 11,300 |
| 7,804 | - | 8,479 | 0.14 | 0.690 | 11,550 |
| 8,480 | - | 9,171 | 0.15 | 0.692 | 11,750 |
| 9,172 | - | 9,880 | 0.16 | 0.695 | 11,950 |
| 9,881 | - | 10,606 | 0.17 | 0.698 | 12,150 |
| 10,607 | - | 11,349 | 0.18 | 0.701 | 12,400 |
| 11,350 | - | 12,111 | 0.19 | 0.703 | 12,600 |
| 12,112 | - | 12,893 | 0.20 | 0.706 | 12,850 |
| 12,894 | - | 13,694 | 0.21 | 0.709 | 13,050 |
| 13,695 | - | 14,516 | 0.22 | 0.712 | 13,300 |
| 14,517 | - | 15,359 | 0.23 | 0.714 | 13,500 |
| 15,360 | - | 16,225 | 0.24 | 0.717 | 13,750 |
| 16,226 | - | 17,114 | 0.25 | 0.719 | 14,000 |
| 17,115 | - | 18,027 | 0.26 | 0.722 | 14,250 |
| 18,028 | - | 18,965 | 0.27 | 0.725 | 14,500 |
| 18,966 | - | 19,930 | 0.28 | 0.728 | 14,800 |
| 19,931 | - | 20,921 | 0.29 | 0.730 | 15,050 |
| 20,922 | - | 21,942 | 0.30 | 0.733 | 15,350 |
| 21,943 | - | 22,992 | 0.31 | 0.735 | 15,600 |

CA Private Range Rate 7-09

71

Exhibit A, Page 221

**Credibility And Maximum Single Loss – Fidelity Table C(b)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $ 22,993 | - | $ 24,074 | 0.32 | 0.738 | $ 15,900 |
| 24,075 | - | 25,187 | 0.33 | 0.741 | 16,200 |
| 25,188 | - | 26,335 | 0.34 | 0.743 | 16,500 |
| 26,336 | - | 27,519 | 0.35 | 0.746 | 16,850 |
| 27,520 | - | 28,740 | 0.36 | 0.749 | 17,150 |
| | | | | | |
| 28,741 | - | 30,000 | 0.37 | 0.751 | 17,500 |
| 30,001 | - | 31,300 | 0.38 | 0.754 | 17,850 |
| 31,301 | - | 32,644 | 0.39 | 0.757 | 18,200 |
| 32,645 | - | 34,033 | 0.40 | 0.759 | 18,600 |
| 34,034 | - | 35,470 | 0.41 | 0.762 | 19,000 |
| | | | | | |
| 35,471 | - | 36,956 | 0.42 | 0.765 | 19,400 |
| 36,957 | - | 38,495 | 0.43 | 0.768 | 19,800 |
| 38,496 | - | 40,090 | 0.44 | 0.770 | 20,200 |
| 40,091 | - | 41,743 | 0.45 | 0.773 | 20,650 |
| 41,744 | - | 43,457 | 0.46 | 0.776 | 21,100 |
| | | | | | |
| 43,458 | - | 45,238 | 0.47 | 0.779 | 21,600 |
| 45,239 | - | 47,087 | 0.48 | 0.781 | 22,100 |
| 47,088 | - | 49,009 | 0.49 | 0.784 | 22,600 |
| 49,010 | - | AND OVER | 0.50 | 0.787 | 23,150 |

CA Private Range Rate 7-09

Exhibit A, Page 222

**Credibility And Maximum Single Loss – Fidelity Table C(b)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $ 2,285 | - | $ 3,846 | 0.02 | 0.311 | $ 10,650 |
| 3,847 | - | 5,440 | 0.03 | 0.360 | 13,850 |
| 5,441 | - | 7,068 | 0.04 | 0.386 | 15,750 |
| 7,069 | - | 8,730 | 0.05 | 0.404 | 17,150 |
| 8,731 | - | 10,427 | 0.06 | 0.417 | 18,200 |
| 10,428 | - | 12,162 | 0.07 | 0.428 | 19,100 |
| 12,163 | - | 13,934 | 0.08 | 0.437 | 19,950 |
| 13,935 | - | 15,745 | 0.09 | 0.446 | 20,700 |
| 15,746 | - | 17,597 | 0.10 | 0.453 | 21,400 |
| 17,598 | - | 19,491 | 0.11 | 0.460 | 22,100 |
| 19,492 | - | 21,428 | 0.12 | 0.467 | 22,750 |
| 21,429 | - | 23,410 | 0.13 | 0.474 | 23,450 |
| 23,411 | - | 25,438 | 0.14 | 0.480 | 24,100 |
| 25,439 | - | 27,514 | 0.15 | 0.487 | 24,750 |
| 27,515 | - | 29,640 | 0.16 | 0.493 | 25,450 |
| 29,641 | - | 31,818 | 0.17 | 0.499 | 26,100 |
| 31,819 | - | 34,049 | 0.18 | 0.505 | 26,800 |
| 34,050 | - | 36,335 | 0.19 | 0.512 | 27,500 |
| 36,336 | - | 38,679 | 0.20 | 0.518 | 28,200 |
| 38,680 | - | 41,082 | 0.21 | 0.524 | 28,950 |
| 41,083 | - | 43,548 | 0.22 | 0.530 | 29,700 |
| 43,549 | - | 46,078 | 0.23 | 0.536 | 30,450 |
| 46,079 | - | 48,675 | 0.24 | 0.542 | 31,200 |
| 48,676 | - | 51,342 | 0.25 | 0.548 | 32,000 |
| 51,343 | - | 54,081 | 0.26 | 0.554 | 32,800 |
| 54,082 | - | 56,896 | 0.27 | 0.560 | 33,650 |
| 56,897 | - | 59,790 | 0.28 | 0.566 | 34,500 |
| 59,791 | - | 62,765 | 0.29 | 0.572 | 35,400 |
| 62,766 | - | 65,827 | 0.30 | 0.578 | 36,300 |
| 65,828 | - | 68,978 | 0.31 | 0.585 | 37,250 |

CA Private Range Rate 7-09

**Credibility and Maximum Single Loss – Fidelity – Table C (a)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $ 68,979 | - | $ 72,222 | 0.32 | 0.591 | $ 38,200 |
| 72,223 | - | 75,563 | 0.33 | 0.597 | 39,200 |
| 75,564 | - | 79,007 | 0.34 | 0.603 | 40,200 |
| 79,008 | - | 82,558 | 0.35 | 0.609 | 41,250 |
| 82,559 | - | 86,220 | 0.36 | 0.616 | 42,350 |
| | | | | | |
| 86,221 | - | 90,000 | 0.37 | 0.622 | 43,450 |
| 90,001 | - | 93,902 | 0.38 | 0.628 | 44,650 |
| 93,903 | - | 97,933 | 0.39 | 0.635 | 45,850 |
| 97,934 | - | 102,100 | 0.40 | 0.641 | 47,050 |
| 102,101 | - | 106,410 | 0.41 | 0.647 | 48,350 |
| | | | | | |
| 106,411 | - | 110,869 | 0.42 | 0.653 | 49,650 |
| 110,870 | - | 115,486 | 0.43 | 0.660 | 51,050 |
| 115,487 | - | 120,270 | 0.44 | 0.666 | 52,450 |
| 120,271 | - | 125,229 | 0.45 | 0.673 | 53,950 |
| 125,230 | - | 130,373 | 0.46 | 0.679 | 55,450 |
| | | | | | |
| 130,374 | - | 135,714 | 0.47 | 0.686 | 57,050 |
| 135,715 | - | 141,262 | 0.48 | 0.692 | 58,700 |
| 141,263 | - | 147,029 | 0.49 | 0.698 | 60,400 |
| 147,030 | - | AND OVER | 0.50 | 0.705 | 62,200 |

| Credibility Factor | EER | MSL Value |
|---|---|---|
| 0.29 | 0.572 | $35,400 |
| Total Includable Losses | AER | |
| $44,400 | | $44,400 = 0.714 $62,194 |

Since the AER is more than the EER, an experience debit is indicated, calculated as follows:

$$\text{EXPERIENCE MODIFICATION} = \frac{0.714 - 0.572}{0.572} * 0.29 = 0.072,$$

or a 7.2% debit.

CA Private Range Rate 7-09

Exhibit A, Page 224

| State | Territory – Table 8 | Code | Tier |
|---|---|---|---|
| AL | Jefferson County | | I |
| | Remainder of State | | II |
| AK | Entire State | | III |
| AZ | Entire State | | II |
| AR | Entire State | | II |
| CA | Alameda County | | I |
| | Los Angeles (excluding Catalina Island) | | I |
| | San Francisco | | I |
| | Remainder of State | | III |
| CO | Denver City and County (including Glendale) | | II |
| | Denver Suburban | | II |
| | This territory comprises all territory outside of the City and County of Denver and Glendale situated in Adams, Arapahoe, Boulder and Jefferson Counties lying west of Range Line 65 on the east and east of Range Line 71 on the west; and south of Township Line 1 South on the north and north of Township Line 6 South on the south including all of the following places in Adams, Arapahoe, Boulder and Jefferson Counties: Adams City, Arvada, Aurora, Broomfield, Broomfield Heights, Cherry Hills, Derby, Dupont, Edgewater, Englewood, Fitzsimmons, Ft. Logan, Golden, Lakeside, Lakewood, Littleton, Mount Morrison, Normandy, Sheridan, Sullivan, Thornton, Westminster and Wheat Ridge. | | |
| | Remainder of State | | III |
| CT | Entire State | | III |
| DE | Entire State | | II |
| DC | Entire District | | I |
| FL | Entire State | | I |
| GA | Entire State | | I |
| HI | Entire State | | II |
| ID | Entire State | | III |
| IL | Cook County | | II |
| | Remainder of State | | III |
| IN | Entire State | | I |
| IA | Entire State | | II |
| KS | Entire State | | I |
| KY | Entire State | | II |
| LA | Entire State | | II |
| ME | Entire State | | III |
| MD | Baltimore City and Baltimore County | | I |
| | Remainder of State | | II |
| MA | Norfolk County | | III |
| | Remainder of State | | II |

CA Private Range Rate 7-09

75

**Territorial Tier Group - Table 8**

| | | |
|---|---|---|
| **MI** | Detroit City Metro District | **I** |

Detroit Metropolitan District consists of the cities and towns within the area bounded as follows:

Commencing at the intersection of Lake St. Clair with the Wayne County Line; thence westerly along the Wayne County Line to its intersection with Inkster Road; thence southerly on Inkster Road to its intersection with Van Horn Road; thence easterly on Van Horn Road to the Detroit River; including the entire island of Grosse Isle and the following cities and villages in their entirety:

District consists of: Allen Park, Dearborn, Detroit, Ecorse, Garden City, Grosse Pointe, Grosse Pointe Farms, Grosse Pointe Park, Grosse Pointe Shores, Hamtramck, Highland Park, Inkster, Lincoln Park, Melvindale, River Rouge, Trenton and Wyandotte

(Both sides of the streets named are included in Detroit District. Garden City, Inkster and Trenton are included in the District even though not entirely within the aforesaid boundaries.)

| | | |
|---|---|---|
| | Remainder of State | **III** |
| **MN** | Hennepin County | **II** |
| | Ramsey County | **II** |
| | Remainder of State | **III** |
| **MS** | Entire State | **II** |
| **MO** | Jackson County | **I** |
| | Remainder of State | **II** |
| **MT** | Entire State | **II** |
| **NE** | Douglas County | **I** |
| | Remainder of State | **II** |
| **NV** | Entire State | **I** |
| **NH** | Entire State | **II** |
| **NJ** | Bergen County | **II** |
| | Essex County (excluding Newark International Airport and Port Newark Marine Terminal) | **II** |
| | Hudson County | **II** |
| | Remainder of State | **III** |
| **NM** | Entire State | **I** |
| **NY** | Bronx County | **I** |
| | Kings County (Brooklyn) | **I** |
| | New York County (Manhattan) | **I** |
| | Queens County | **I** |
| | Remainder of State | **II** |
| **NC** | Entire State | **III** |
| **ND** | Entire State | **II** |
| **OH** | Cuyahoga County | **II** |
| | Franklin County | **II** |
| | Mahoning County | **II** |
| | Remainder of State | **III** |
| **OK** | Oklahoma County | **I** |
| | Tulsa County | **I** |
| | Remainder of State | **II** |

CA Private Range Rate 7-09

| OR | Entire State | II |
|----|--------------|-----|
| PA | Philadelphia County | I |
|    | Remainder of State | III |
| PR | Entire Commonwealth | I |
| RI | Entire State | II |
| SC | Entire State | II |
| SD | Entire State | II |
| TN | Davidson County | I |
|    | Shelby County | I |
|    | Remainder of State | II |
| TX | Entire State | I |
| UT | Entire State | II |
| VT | Entire State | III |
| VA | Entire State | III |
| WA | Entire State | II |
| WV | Entire State | II |
| WI | Milwaukee County | II |
|    | Remainder of State | III |
| WY | Entire State | III |

CA Private Range Rate 7-09

Exhibit A, Page 227

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| State: | California | | Filing Company: | Starr Indemnity & Liability Company |
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

## Supporting Document Schedules

| Satisfied - Item: | Prior Approval Rate Application |
| Comments: | |
| Attachment(s): | CA Private Prior Approval Rate Application.pdf<br>Page 14a b c Projected Yield and Federal Income Tax Rate on Investment Income.pdf<br>CV Starr Private Prior Approval Rate Application USE.xls |
| Item Status: | |
| Status Date: | |

| Satisfied - Item: | Authorization Letter |
| Comments: | |
| Attachment(s): | Authorization Letter -Private.pdf |
| Item Status: | |
| Status Date: | |

| Satisfied - Item: | Explanatory Memorandum |
| Comments: | |
| Attachment(s): | Explanatory Memorandum.pdf |
| Item Status: | |
| Status Date: | |

| Satisfied - Item: | Forms Index |
| Comments: | |
| Attachment(s): | Res. Port. for Private Companies Forms Index California.pdf |
| Item Status: | |
| Status Date: | |

| Satisfied - Item: | Actuarial Memorandum |
| Comments: | |
| Attachment(s): | ~Private Actuarial Memorandum.pdf<br>Actuarial Memorandum, Addenda Res. Port. for Private Companies.pdf |
| Item Status: | |
| Status Date: | |

| Satisfied - Item: | Expense Component and Rate Exhibits |
| Comments: | |
| Attachment(s): | Expense Component and Exhibits.pdf |

Exhibit A, Page 228

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | Company Tracking #: | CVS-FL-CA-01 (F)(R) |

| | |
|---|---|
| State: | California |
| TOI/Sub-TOI: | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability |
| Product Name: | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies |
| Project Name/Number: | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) |

| | |
|---|---|
| **Filing Company:** | Starr Indemnity & Liability Company |

| | |
|---|---|
| **Item Status:** | |
| **Status Date:** | |

| | |
|---|---|
| **Satisfied - Item:** | Cover Letter |
| **Comments:** | |
| **Attachment(s):** | CA Cover Letter.pdf |
| **Item Status:** | |
| **Status Date:** | |

| | |
|---|---|
| **Satisfied - Item:** | Response Letter |
| **Comments:** | |
| **Attachment(s):** | California Private Response Letter.pdf |
| **Item Status:** | |
| **Status Date:** | |

| | |
|---|---|
| **Satisfied - Item:** | LCM Template |
| **Comments:** | |
| **Attachment(s):** | LCM Template Advisory Org. Filing Information 0509.pdf |
| **Item Status:** | |
| **Status Date:** | |

Exhibit A, Page 229

**SERFF Tracking #:** TSMP-126036314 **State Tracking #:** 09-4985 **Company Tracking #:** CVS-FL-CA-01 (F)(R)

| | | | |
|---|---|---|---|
| **State:** | California | **Filing Company:** | Starr Indemnity & Liability Company |
| **TOI/Sub-TOI:** | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | |
| **Product Name:** | Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies | | |
| **Project Name/Number:** | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | |

***Attachment CV Starr Private Prior Approval Rate Application USE.xls is not a PDF document and cannot be reproduced here.***

PDF Pipeline for SERFF Tracking Number TSMP-126036314 Generated 05/15/2020 10:50 AM

Exhibit A, Page 230

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
Edition Date:    5/15/2009

Company Name    Starr Indemnity & Liability
Line of Insurance    OTHER LIABILITY

# PRIOR APPROVAL RATE APPLICATION

Completed by: Carrie E. Cope          Date: 6/15/2009

Your File #:    CVS-FL-CA-01 (F)(R)
( 15 Characters Maximum )

☑ SERFF     ☐ CD (plus 1 paper copy)     ☐ Paper (1 original plus 1 copy)

Does this filing include a variance request?    No ▼

Is this a variance request submitted after the prior approval application to which it applies?    No ▼

If yes, provide the applicable CDI File Number:    _____

Does this file contain group data?    No ▼

Note: Complete page 2 if this is a group filing

Is this a specialty filing?    No ▼

Latest applicable CDI file number in this line, subline and/or program:    _____

Company Name    Starr Indemnity & Liability Company

NAIC Company Code    38318

Group Name  N/A

NAIC Group Code    0

Organized under the Laws of the State of    Texas

Line Code for this Line of Insurance:    17.0 ▼

Line of Insurance:    Other Liability-Occ./Claims Made          Subline Professional Errors and Omissions Liability

Program Resolute Portfolio For Private Companies Program

Home Office  8401 N. Central Expressway, #890, Dallas, Texas 75255

Name and Title of Contact Person    Carrie E. Cope

Toll Free Phone No.: N/A          Fax No.: 312-627-1717

Email Address

Mailing Address    ccope@tsmp.com

| DEPARTMENT USE ONLY |
|---|
| Filing No.: _____ |
| SERFF No.: _____ |
| Date Filed: _____ |
| Compliance Date: _____ |
| Date Public Notified: _____ |
| Deemer Date: _____ |
| Intake Analyst: _____ |
| Bureau & Senior: _____ |
| Group Filing:    Yes☐    No☐ |
| X-Reference No.: _____ |
| ☐ Rate    ☐ New Program    ☐ Rule |
| ☐ Form    ☐ Variance    ____ % Change |

I declare under penalty of perjury under the laws of the State of California, that the information filed is true, complete, and correct

_Carrie E. Cope_ _____ | June 15, 2009 _____ | 312-627-4188 _____
Authorized Signature | Date of Filing | Telephone Number

Important note: Refer to CDI website at http://www.insurance.ca.gov/0250-insurers/0800-rate-filings/for the most current rate template and prior approval factors.

Prior Approval Rate Application
(General Information)

Page 1

Exhibit A, Page 231

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**
**Edition Date:**    5/15/2009

Company Name    Starr Indemnity & Liability Company
Line of Insurance    OTHER LIABILITY

## INSURER GROUP MULTI-COMPANY FILING

For private passenger auto insurance only, does CIC, 1861.16(c) apply?    No ▼
If yes, please complete (Super Group) Exhibit 19.

List each insurance company in alphabetical order.

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Company Name _____    CDI Filing No. _____

NAIC Company Code _____    ( Department use only )

Exhibit A, Page 232

| STATE OF CALIFORNIA | Company Name: | Starr Indemnity & Liability Company |
|---|---|---|
| DEPARTMENT OF INSURANCE (CDI) | Line of Insurance: | OTHER LIABILITY |
| *Edition Date:*    *5/15/2009* | | |

## PROPERTY AND LIABILITY FILING SUBMISSION DATA SHEET

The purpose of this filing is as follows:  (More than one may be marked )

| TYPE OF FILING | PRIOR APPROVAL RATE APPLICATION PAGES and EXHIBITS REQUIRED |
|---|---|

☑ New Program ( Including adoption of advisory organization loss costs, forms and rules.)

Pages 1 through 7, 10, 12, 13 & 14, plus exhibit 17

☐ Rates ( Including adoption of advisory organization loss costs. )

    ☐ Increase rates — Pages 1 through 10, 13 & 14, plus exhibits

    ☐ Decrease rate — Pages 1 through 10, 13 & 14, plus exhibits

    ☐ Zero Overall rate impact — Pages 1 through 10, 13 & 14, plus exhibits

☐ Variance

    ☐ Filed together with the prior approval application to which it applies. — Page 11 and exhibit 13

    ☐ Filed after the prior approval application to which it applies. — Pages 1 through 6, 11, plus exhibit 13

☐ Coverage Forms ( Including adoption of advisory organization forms. )

    ☐ With rate impact — Pages 1 through 10, 12, 13 & 14 plus exhibits

    ☐ Without rate impact — Pages 1 through 5, 12

☐ Rules ( Including adoption of advisory organization rules. )

    ☐ With rate impact — Pages 1 through 10, 13 & 14 plus exhibits

    ☐ Without rate impact — Pages 1 through 5

*All Private Passenger Automobile class plans must be filed separately from the Prior Approval Rate Applications.*

Exhibit A, Page 233

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)

Company Name: **Starr Indemnity & Liability Company**
Line of Insurance: **OTHER LIABILITY**

*Edition Date:*          *5/15/2009*

## PROPERTY AND LIABILITY FILING SUBMISSION DATA SHEET (Continued)

Proposed Earned Premium Per Exposure:          $   20,270.27

Proposed Overall Rate Change                         0.00%

| | COVERAGE | INDICATED CHANGE (%) | PROPOSED CHANGE (%) | ADJUSTED EARNED PREMIUM* | PROJECTED EARNED PREMIUM |
|---|---|---|---|---|---|
| 1. | **Professional Errors & Omissions Liability** | 0.00% | 0.00% | | 750,000 |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| | **TOTAL:** | | | | |

Total earned premium must include all income derived from miscellaneous fees and other charges.

\* Adjusted earned premium is the historical earned premium for the most recent year adjusted to the current rate level and trended to the average date of loss of the proposed rating period.

Exhibit A, Page 234

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
*Edition Date:        5/15/2009*

Company Name: **Starr Indemnity & Liability Company**
Line of Insurance: **OTHER LIABILITY**

### FILING CHECKLIST
**Use this checklist to assemble a complete application**

- ☑ Prior Approval Rate Application, Page 1

- ☐ Group Filing, Page 2

- ☑ Property and Liability Filing Submission
  Data Sheet, Page 3

- ☑ Property and Liability Filing Submission
  Data Sheet, Page 4

- ☑ Filing Checklist, Page 5

- ☑ Supporting Data Exhibits, Page 6

- ☑ Ratemaking Data and Template (s), Page 7

- ☑ Reconciliation of Direct Earned Premium, Page 8

- ☑ Additional Data Required by Statute, Page 9

- ☑ Miscellaneous Fees and Other Charges, Page 10

- ☐ Variance Request, Page 11

- ☑ Forms, Page 12

- ☑ Excluded Expenses, Page 13

- ☑ Projected Yield and Federal Income Tax Rate on Investment Income, Page 14

- ☑ Filing Memorandum

**See the prior approval rate filing instructions regarding the following attachments.**

- ☑ Printed Rate and Rule Manual Pages

- ☐ Underwriting Rules

- ☑ Forms (Attach all independent forms and list all advisory organization forms )

- ☐ Copies of Reinsurance Agreements
  ( Applies only to Medical Malpractice with facultative reinsurance attachment points above one million dollars and Earthquake, where the cost of reinsurance is included in the rate development )

Prior Approval Rate Application
(Filing Checklist)

Page 5

Exhibit A, Page 235

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
*Edition Date:*      **5/15/2009**

**Company Name:** Starr Indemnity & Liability Company
**Line of Insurance:** OTHER LIABILITY

### SUPPORTING DATA EXHIBITS
### Use this document to assemble a complete application

- ☐ Exhibit 1:        Filing History
- ☐ Exhibit 2:        Rate Level History
- ☐ Exhibit 3:        Policy Term Distribution
- ☐ Exhibit 4:        Premium Adjustment Factor
- ☐ Exhibit 5:        Premium Trend Factor
- ☐ Exhibit 6:        Miscellaneous Fees and Other Charges
- ☐ Exhibit 7:        Loss and Defense & Cost Containment Expense ( DCCE ) Development Factors
- ☐ Exhibit 8:        Loss and DCCE Trend
- ☐ Exhibit 9:        Catastrophe Adjustment
- ☐ Exhibit 10:      Credibility Adjustment
- ☑ Exhibit 11:      Ancillary Income
- ☐ Exhibit 12:      Reinsurance Premium and Recoverables
- ☐ Exhibit 13:      Variance
- ☐ Exhibit 14:      Insurer's Ratemaking Calculations
- ☐ Exhibit 15:      Rate Distribution
- ☐ Exhibit 16:      Rate Classification Relativities
- ☑ Exhibit 17:      New Program
- ☐ Exhibit 18:      Group Filing
- ☐ Exhibit 19:      Super Group Corporate Structure Verification (PPA only)
- ☐ Exhibit 20:

Exhibit A, Page 236

## RATEMAKING DATA
*(Click + to expand for more than 3 years; - to contract)*

| | |
|---|---|
| Completed by | Carrie E. Cope |
| Date Completed | 6/15/2009 |
| Company/Group | Starr Indemnity & Liability Company |
| Line Code | 17.0 |
| Line Description | OTHER LIABILITY |
| Coverage | |

| | %Captive | %Direct | %Independent | (Must add up to 100%) |
|---|---|---|---|---|
| Marketing System | | | 100.00% | |
| Prior Effective Date (current rates | | | | |
| Proposed Effective Date (new rates | 7/16/2009 | | | |
| CDI File Number (*Department use only*) | 0 | | | |

Does the data provided below reflect a Request for Variance?   No      Variance #

Data below is:  Accident Year Data

| | 2nd Prior Year | 1st Prior Year | Most Recent Year | Projected/ New Program* |
|---|---|---|---|---|
| 1 California Direct Written Premium | | | | 750,000 |
| 2 California Direct Earned Premium | | | | 750,000 |
| 3 Premium Adjustment Factor (Developed in Exhibit 4) | | | | |
| 4 Premium Trend Factor * (Developed in Exhibit 5) | | | | 0.00% |
| 5 Miscellaneous Fees and Flat Charges  (Not included in Line 2; Developed in Exhibit 6) | | | | |
| 6 Earned Exposure Units | | | | 37 |
| 7 Historic Losses | | | | 528,750 |
| 8 Historic Defense and Cost Containment Expense (DCCE) | | | | 103,106 |
| 9 Loss Development Factor (Developed in Exhibit 7) | | | | |
| 10 DCCE Development Factor (Developed in Exhibit 7) | | | | |
| 11 Loss Trend Factor* (Developed in Exhibit 8) | | | | 0.00% |
| 12 DCCE Trend Factor* (Developed in Exhibit 8) | | | | 0.00% |
| 13 Catastrophe Adjustment Factor (Developed in Exh 9) | | | | 0 |
| 14 Credibility Factor for Losses & DCCE (Developed in Exhibit 10) | | | | 0.00% |
| 15 Excluded Expense Factor (From Page 13) | | | | 2.79% |
| 16 Ancillary Income  (Developed in Exhibit 11) | | | | - |
| 17 Projected Federal Income Tax Rate on Investment Income (From Page 14) | | | | 14.73% |
| 18 Projected Yield (From Page 14) | | | | 2.22% |
| *Complete 19, 20 & 21 For Earthquake and certain Medical Malpractice with Reinsurance Only (see instructions)* | | | | |
| 19 Direct Commissions | | | | 0.00% |
| 20 Reinsurance Premium   (Developed in Exhibit 12) | | | | |
| 21 Reinsurance Recoverables (Developed in Exhibit 12) | | | | |

| | |
|---|---|
| Variance Change to Leverage on the basis that the insurer either writes at least 90% of its direct earned premium in one line or writes at least 90% of its direct earned premium in California. (Must be accompanied by Variance Request, subject to CDI approval) | No |
| Variance Change to Efficiency Standard (Must be accompanied by Variance Request, subject to CDI approval) | |

\* For all trend factors, the Projected Column should reflect the annual trend expressed as a percentage.

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
Edition Date:    5/15/2009

Company Name    Starr Indemnity & Liability Company
Line of Insurance    OTHER LIABILITY

## STATUTORY PAGE 14 CALENDAR YEAR DATA
## RECONCILIATION OF DIRECT EARNED PREMIUM DATA PER PROGRAM

| Program | Most Recent CDI File # | 2nd Prior Year 0 | 1st Prior Year 0 | Most Recent Year 0 |
|---|---|---|---|---|
| 1. New Program | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | $ - | $ - | $ - |
| 5. | | $ - | $ - | $ - |
| 6. | | $ - | $ - | $ - |
| 7. | | $ - | $ - | $ - |
| 8. | | $ - | $ - | $ - |
| 9. | | $ - | $ - | $ - |
| 10. | | $ - | $ - | $ - |
| TOTAL | | $ - | $ - | $ - |
| Statutory Page 14 | | | | |
| Difference | | $ - | $ - | $ - |

Explain the Differences:

_____

This exhibit requires insurers to itemize **each**  program until all data is reconciled to the corresponding annual statement line of insurance ( Statutory Page 14 ).

For residual market data, a filing number is not required.

Exhibit A, Page 238

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
*Edition Date:*          *5/15/2009*

Company Name: Starr Indemnity & Liability Company
Line of Insurance:          OTHER LIABILITY

**ADDITIONAL DATA REQUIRED BY STATUTE***
             **Calendar Year**                                    Year          0

**DATA**

| | | |
|---|---|---|
| 1. | Number of claims outstanding at beginning of year | N/A |
| 2. | Number of claims during the year | N/A |
| 3. | Number of claims closed during the year | N/A |
| 4. | Number of claims outstanding at year's end ( (1) + (2) - (3) ) | N/A |
| 5. | Unearned Premiums | N/A |
| 6. | Dollar amount of claims paid | N/A |
| 7. | Net loss reserves for outstanding claims excluding claims incurred but not reported | N/A |
| 8. | Net loss reserves for claims incurred but not reported | N/A |
| 9. | Losses incurred as a percentage of premiums earned - including IBNR | N/A |
| 10. | Net investment gain or loss and other income or gain or loss allocated to the line. | N/A |
| 11. | Net income before federal and foreign income taxes ( line 10 plus line 15 ) | N/A |
| 12. | Total number of policies in force on the last day of the reporting period | N/A |
| 13. | Total number of policies cancelled | N/A |
| 14. | Total number of policies non-renewed | N/A |
| 15. | Net underwriting gain or loss ( =CY earned premiums minus CY incurred loss minus CY incurred expense ) | N/A |
| 16. | Separate allocations of expenses for: | |
| | a) commissions and brokerage expense, | N/A |
| | b) other acquisition costs, | N/A |
| | c) general office expenses, | N/A |
| | d) taxes, licenses and fees, | N/A |
| | e) loss adjustment expense ( DCCE & AOE ), and | N/A |
| | f) other expenses | N/A |

***CIC 1857.7, CIC 1857.9 and CIC 1864**

Exhibit A, Page 239

STATE OF CALIFORNIA                          **Company Name: Starr Indemnity & Liability Company**
DEPARTMENT OF INSURANCE (CDI)                **Line of Insurance: OTHER LIABILITY**
*Edition Date:*              *5/15/2009*

## MISCELLANEOUS FEES AND OTHER CHARGES

Do any fees or installment finance charges apply to this program?    | No ▾ |
If yes, identify the fee and the amount charged for each type of fee and for each transaction.

INDIVIDUAL POLICY CHARGES

|                                                          | New Business | Renewals |
|----------------------------------------------------------|--------------|----------|
| ☐ Policy fee                                             | _____    | _____ |
| ☐ Installment fee                                        | _____    | _____ |
| ☐ Installment finance charges ( ancillary income )       | _____ APR | _____ |
| ☐ Endorsement fee                                        | _____    | _____ |
| ☐ Inspection fee                                         | _____    | _____ |
| ☐ Cancellation fee                                       | _____    | _____ |
| ☐ Reinstatement fee                                      | _____    | _____ |
| ☐ Late fee                                               | _____    | _____ |
| ☐ SR 22                                                  | _____    | _____ |
| ☐ Non-sufficient funds ( NSF ) fee ( ancillary income )  | _____    | _____ |
| ☐ Membership dues ( ancillary income )                   | _____    | _____ |
| ☐ Other, specify:                                        | _____    | _____ |

Except for installment finance charges, NSF fees, and membership dues, data relating to fees must be included in the ratemaking data.
Page 7, Line 2 ( direct earned premium) or Line 5 ( miscellaneous fees ) and Exhibit 6, miscellaneous fees, must be completed. Refer to
the instructions for additional information.

Exhibit A, Page 240

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
*Edition Date:*          5/15/2009

Company Name:      **Starr Indemnity & Liability Company**
Line of Insurance:   **OTHER LIABILITY**

## Forms

*Insurers who wish to use a new or replacement form in connection with a new or existing program must furnish the following information and documentation for our review. Revisions must be highlighted and the corresponding manual pages must be provided.*

| | FORM NO. | TITLE | TYPE | SOURCE | SOURCE FORM NO | CATEGORY | Restricts Coverage [ Yes/ No ] | Broadens Coverage [ Yes/ No ] | Rate Impact [ Yes / No ] | % Change | Flat Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1] New: | CVS FL 12000 PV (1/09) | Resolute Portfolio For Private Companies Insurance Application | 1 | 3 | N/A | 1 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 2] New: | CVS FL 12001 PV (1/09) | Resolute Portfolio For Private Companies Declarations – | 4 | 3 | N/A | 1 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 3] New: | CVS FL 12002 PV (1/09) | Resolute Portfolio For Private Companies General Terms & Conditions | 3 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 4] New: | CVS FL 12003 PV (1/09) | Resolute Portfolio For Private Companies Directors and Officers Liability Coverage Section | 3 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 5] New: | CVS FL 12004 PV (1/09) | Resolute Portfolio For Private Companies Employment Practices Liability Coverage Section | 3 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |

Exhibit A, Page 241

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6] New: | CVS FL 12005 PV (1/09) | Resolute Portfolio For Private Companies Fiduciary Liability Coverage Section | 3 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 7] New: | CVS FL 12006 PV (1/09) | Resolute Portfolio For Private Companies Crime and Fidelity Coverage Section | 3 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 8] New: | CVS FL 10000 PPVNP (07/08) | Delete Exclusion | 2 | 3 | N/A | 2 | No | Yes | Yes | | |
| Old: | | | | | | | | | | | |
| 9] New: | CVS FL 10002 PPVNP (07/08) | Exclusion of Certified Acts of Terrorism | 2 | 3 | N/A | 2 | Yes | No | No | | |
| Old: | | | | | | | | | | | |
| 10] New: | CVS FL 10003 PPVNP (1/09) | Exclusion of Non-Certified Acts of Terrorism and Coverage of Certified Acts of Terrorism | 2 | 3 | N/A | 2 | Yes | No | No | | |
| Old: | | | | | | | | | | | |
| 11] New: | CVS FL 10004 PPVNP (07/08) | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act | 2 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 12] New: | CVS FL 10005 PPVNP (07/08) | OFAC Exclusion (all Coverage Sections) | 2 | 3 | N/A | 2 | Yes | No | No | | |
| Old: | | | | | | | | | | | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 13] New: | CVS FL 10006 PPVNP (07/08) | Pending or Prior Litigation Exclusion – Increased Limits | 2 | 3 | N/A | 2 | Yes | No | Yes | | |
| Old: | | | | | | | | | | | |
| 14] New: | CVS FL 10007 PPVNP (07/08) | Prior Acts Exclusion | 2 | 3 | N/A | 2 | Yes | No | Yes | | |
| Old: | | | | | | | | | | | |
| 15] New: | CVS FL 10008 PPVNP (07/08) | Reliance Endorsement (other applications) | 2 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 16] New: | CVS FL 10014 PPVNP (07/08) | Specific Litigation/Event Exclusion – Includes SEC Filings | 2 | 3 | N/A | 2 | Yes | No | Yes | | |
| Old: | | | | | | | | | | | |
| 17] New: | CVS FL 10015 PPVNP (07/08) | Amend Sponsor Organization Securities Coverage – Sublimit of Liability and Retention (Fiduciary Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | | |
| Old: | | | | | | | | | | | |
| 18] New: | CVS FL 10016 PPVNP (07/08) | Specific Litigation/Event Exclusion | 2 | 3 | N/A | 2 | Yes | No | Yes | | |
| Old: | | | | | | | | | | | |
| 19] New: | CVS FL 10020 PPVNP (07/08) | Amend Sponsor Securities Investment Coverage – Separate Retention (Fiduciary Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | | |
| Old: | | | | | | | | | | | |

Exhibit A, Page 243

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 20] New: | CVS FL 10021 PPVNP (07/08) | Amend Definition of "Loss" – Investment Loss Coverage (Fiduciary Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |
| 21] New: | CVS FL 10023 PPVNP (07/08) | Amend Definition of Plan By Adding Specific Plans (Fiduciary Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |
| 22] New: | CVS FL 10024 PPVNP (07/08) | Amend Declarations Page | 2 | 3 | N/A | 2 | No | No | No | |
| Old: | | | | | | | | | | |
| 23] New: | CVS FL 10027 PPVNP (1/09) | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |
| 24] New: | CVS FL 10028 PPVNP (1/09) | Conditions Amended Termination As To Any Employee (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |
| 25] New: | CVS FL 10029 PPVNP (1/09) | Amend Territory Clause (General Terms & Conditions Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |
| 26] New: | CVS FL 10030 PPVNP (1/09) | Amend Trading Exclusion (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |

Exhibit A, Page 244

| | Form | Description | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 27] New: | CVS FL 10031 PPVNP (1/09) | Amend Warehouse Receipts Exclusion (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | | |
| Old: | | | | | | | | | | | |
| 28] New: | CVS FL 10032 PPVNP (1/09) | Amend Definition of "Employee" – Convert to Schedule (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | Yes | | |
| Old: | | | | | | | | | | | |
| 29] New: | CVS FL 10033 PPVNP (1/09) | Conditions Amended Duties in the Event of Loss (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | No | No | No | | |
| Old: | | | | | | | | | | | |
| 30] New: | CVS FL 10034 PPVNP (1/09) | Conditions Amended Extended Period to Discover Loss (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | | |
| Old: | | | | | | | | | | | |
| 31] New: | CVS FL 10035 PPVNP (1/09) | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | Yes | | |
| Old: | | | | | | | | | | | |
| 32] New: | CVS FL 10085 PV (07/08) | Amend Defense of Claim and Settlement Clause – Delete Insurer's Duty to Defend; With Option to Tender Defense | 2 | 3 | N/A | 2 | No | Yes | Yes | | |
| Old: | | | | | | | | | | | |
| 33] New: | CVS FL 10086 PV (07/08) | Absolute Bodily Injury/Property Damage Exclusion (D&O Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | Yes | | |

Exhibit A, Page 245

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Old: | | | | | | | | | | |
| 34] New: | CVS FL 10087 PV (07/08) | Amend Contract Exclusion (D&O Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | No | |
| Old: | | | | | | | | | | |
| 35] New: | CVS FL 10088 PV (07/08) | Amend Definition of "Subsidiary" – Change Revenue Threshold (D&O Coverage Section) | 2 | 3 | N/A | 2 | No | No | No | |
| Old: | | | | | | | | | | |
| 36] New: | CVS FL 10090 PV (07/08) | Amend Pollution Exclusion – Delete Exception for Securities Claims (D&O Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | No | |
| Old: | | | | | | | | | | |
| 37] New: | CVS FL 10091 PV (07/08) | Anti-Trust Claim Coverage Extension – With Separate Retention, Sublimit and Co-Insurance (D&O Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |
| 38] New: | CVS FL 10092 PV (07/08) | Anti-Trust Claim Coverage Extension – With Sublimit (D&O Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | Yes | |
| Old: | | | | | | | | | | |
| 39] New: | CVS FL 10093 PV (07/08) | Anti-Trust Exclusion- Applies to Entity Only (D&O Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | No | |
| Old: | | | | | | | | | | |
| 40] New: | CVS FL 10096 PV (07/08) | Delete Non-Rescindable Clause (Fiduciary Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | No | |

Old: _____

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 41] New: | CVS FL 10097 PV (07/08) | Delete Non-Rescindable Clause ( D&O Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | Yes | | | |

Old: _____

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 42] New: | CVS FL 10170 PPV (07/08) | Director Exclusion (EPL Coverage Section) | 2 | 3 | N/A | 2 | Yes | No | No | | | |

Old: _____

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 43] New: | CVS FL 10172 PPV (07/08) | Employed Lawyers Coverage Extension (D&O Coverage Section) | 2 | 3 | N/A | 2 | No | Yes | No | | | |

Old: _____

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 44] New: | CVS FL 10107 PV (02/09) | California Amendatory Endorsement | 2 | 3 | N/A | 1 | No | No | No | | | |

Old: _____

Exhibit A, Page 247

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**

| | Company Name: | Starr Indemnity & Liability Com |
| | Line of Insurance: | OTHER LIABILITY |

*Edition Date:*      *5/15/2009*

# Excluded Expense Factor

**Company Organization:**   Stock ▾

| | 2nd Prior Year | 1st Prior Year | Most Recent Year 2008 |
|---|---|---|---|
| **(Insurer Group Data)** | | | |
| Countrywide direct earned premium: | | | 6,505,000 |
| Countrywide direct earned premium for lines of business subject to Proposition 103: | | | 6,505,000 |

**2644.10 (b): Executive Compensation**

| | 2nd Prior Year 0 | | 1st Prior Year 0 | | Most Recent Year 2008 | |
|---|---|---|---|---|---|---|
| | Cash & Salary | Bonus | Cash & Salary | Bonus | Cash & Salary | Bonus |
| 1st Highest Paid | 0 | 0 | 0 | 0 | 718,492 | 0 |
| 2nd Highest Paid | 0 | 0 | 0 | 0 | 91,004 | 0 |
| 3rd Highest Paid | 0 | 0 | 0 | 0 | 85,948 | 0 |
| 4th Highest Paid | 0 | 0 | 0 | 0 | 48,150 | 0 |
| 5th Highest Paid | 0 | 0 | 0 | 0 | 38,520 | 0 |

| | 2nd Prior Year 0 | | 1st Prior Year 0 | | Most Recent Year 2008 | |
|---|---|---|---|---|---|---|
| | Max Permissible Exc Comp | Excessive Compensation | Max Permissible Exc Comp | Excessive Compensation | Max Permissible Exc Comp | Excessive Compensation |
| 1st Highest Paid | 174,311 | 0 | 174,311 | 0 | 174,311 | 544,181 |
| 2nd Highest Paid | 123,071 | 0 | 123,071 | 0 | 123,071 | 0 |
| 3rd Highest Paid | 92,906 | 0 | 92,906 | 0 | 92,906 | 0 |
| 4th Highest Paid | 87,048 | 0 | 87,048 | 0 | 87,048 | 0 |
| 5th Highest Paid | 81,141 | 0 | 81,141 | 0 | 81,141 | 0 |
| **Total Excessive Executive Comp:** | | 0 | | 0 | | 544,181 |

08/20/07 Ed.

Prior Approval Rate Application
(Excluded Expense Factor)

P13a

Exhibit A, Page 248

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**

Company Name:     Starr Indemnity & Liability Com
Line of Insurance:     OTHER LIABILITY

# Excluded Expense Factor

| Countrywide Data | 2nd Prior Year 0 | 1st Prior Year 0 | Most Recent Year 2008 |
|---|---|---|---|
| 2644.10 (a): Political contribution and lobbying | 0 | 0 | 0 |
| 2644.10 (b): Excessive Executive Compensation | 0 | 0 | 544,181 |
| 2644.10 (c): Bad faith judgments and associated DCCE | | | |
| 2644.10 (d): All costs for unsuccessful defense of discrimination claims | | | |
| 2644.10 (e): Fines and penalties | | | |
| 2644.10 (f):  Institution advertising expenses | | | |
| 2644.10 (g): Excessive payments to affiliates | | | |
| **Total excluded expenses** | 0 | 0 | 544,181 |
| **Excluded expense factor** | 0.00% | 0.00% | 8.37% |

**3-year average excluded expense factor**          2.79%

08/20/07 Ed.

Prior Approval Rate Application
(Excluded Expense Factor)

P13b

Exhibit A, Page 249

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**
*Edition Date:*                    *5/15/2009*

Company Name:  **Starr Indemnity & Liability Company**
Line of Insurance:  **OTHER LIABILITY**

### PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME

| Line number | | Short Term Assets — One year or less | Intermediate Term Assets — Over 1 yr through 5 yrs | Over 5 yrs through 10 yrs | Long Term Assets — Over 10 yrs through 20 yrs | Over 20 yrs |
|---|---|---|---|---|---|---|
| 1.7 | US governments | 24,680,919 | 1,836,223 | | 171,390 | |
| 2.7 | All other governments | | | | | |
| 3.7 | States, territories and possessions | | 3,858,967 | 18,476,276 | | |
| 4.7 | Political subdivisions | | 11,614,837 | 50,665,316 | | |
| 5.7 | Special revenue and assessment obligations | | | 19,270,604 | | |
| 6.7 | Public utilities unaffiliated | | | | | |
| 7.7 | Industrial and miscellaneous | | | | | |
| 8.7 | Credit tenant loans | 13,848,544 | 16,893,371 | | | |
| 9.7 | Parent, subsidiaries and affiliates | | | | | |

| | | One year or less | Over 1 year through 10 years | Over 10 years |
|---|---|---|---|---|
| (1) | US government bonds Sum of line 1.7 and 2.7 | 24,680,919 | 1,836,223 | 171,390 |
| (2) | Other taxable bonds Sum of line 6.7, 7.7, 8.7, 9.7 and half of 5.7 | 13,848,544 | 26,528,673 | 0 |
| (3) | Tax exempt bonds Sum of line 3.7, 4.7, and half of 5.7 | 0 | 94,250,698 | 0 |

Data on line 1.7 through 9.7 are from the insurer group's most recent consolidated statutory annual statement, schedule D, part 1A, section 1.

Page 14a

*Prior Approval Rate Application*
*(Yield Tax Worksheet)*

**PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME**

| | | Invested Assets [1] | Currently Available Yield * [2] | Return On Invested Assets [3]=[1]*[2] | Federal Income Tax Rate [4] | Federal Income Taxes [5]=[3]*[4] |
|---|---|---|---|---|---|---|
| (1) | US government bonds | | | | | |
| | (A) Short | 24,680,919 | 0.15% | 37,021 | 35.00% | 12,957 |
| | (B) Intermediate | 1,836,223 | 2.60% | 47,742 | 35.00% | 16,710 |
| | (C) Long | 171,390 | 3.49% | 5,982 | 35.00% | 2,094 |
| (2) | Other taxable bonds | | | | | |
| | (A) Short | 13,848,544 | 0.95% | 131,561 | 35.00% | 46,046 |
| | (B) Intermediate | 26,528,673 | 5.44% | 1,443,160 | 35.00% | 505,106 |
| | (C) Long | 0 | 5.90% | 0 | 35.00% | 0 |
| (3) | Tax exempt bonds | | | | | |
| | (A) Short | 0 | 0.62% | 0 | 5.25% | 0 |
| | (B) Intermediate | 94,250,698 | 3.78% | 3,562,676 | 5.25% | 187,041 |
| | (C) Long | 0 | 5.18% | 0 | 5.25% | 0 |
| (4) | Common Stock | | | | | |
| | (A) Dividends | | | 0 | 14.18% | 0 |
| | (B) Capital gains | | | 0 | 34.10% | 0 |
| (5) | Preferred stock | | | | | |
| | dividends | | | 0 | 14.18% | 0 |
| (6) | Mortgage loans | | | 0 | 35.00% | 0 |
| (7) | Real estate | | | 0 | 35.00% | 0 |
| (8) | Cash** | | | 0 | 35.00% | 0 |
| (9) | Other*** | | | | | |
| | (A) Dividends | | | 0 | 14.18% | 0 |
| | (B) Capital gains | | | 0 | 34.10% | 0 |
| (10) | Total | | | | | |
| | Sum of line (1) thru (9) | 161,316,447 | | 5,228,142 | | 769,953 |

Data in column [1], line 4 through (9), are from the insurer group's most recent consolidated statutory annual statement page 2 - Assets.

* Currently available yields are defined in CCR §2644.20.  Latest values are posted at
http://www.insurance.ca.gov/0250-insurers/0800-rate-filings/0200-prior-approval-factors/

** Annual statement page 2, line 5, cash only.  Cash equivalents and short-term investments are included in Schedule D.

*** Annual statement page 2, line 6 through 9.

Page 14b

*Prior Approval Rate Application*
*(Yield Tax Worksheet)*

Exhibit A, Page 251

**PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME**

| | | Invested Assets [1] | Currently Available Yield [2] | Return On Invested Assets [3]=[1]*[2] | Federal Income Tax Rate [4] | Federal Income Taxes [5]=[3]*[4] |
|---|---|---|---|---|---|---|
| (10) | Total line (10) exhibit 13, page 2 | 161,316,447 | | 5,228,142 | | 769,953 |
| (11) | Investment expense Annual Statement (AS) page 11, line 25 | | | | 35.00% | 0 |
| (12) | Total after investment expense line (10) - line (11) | 161,316,447 | | 5,228,142 | | 769,953 |
| (13) | Federal income tax rate line (12) column [5] / column [3] | | | | 14.73% | |
| (14) | Projected yield on invested assets line (12) column [3] / column [1] | | 3.24% | | | |

Most Recent Year

| | | | |
|---|---|---|---|
| (15) | Loss reserves AS page 3, line 1 | | |
| (16) | Loss adjustment expense reserves AS page 3, line 3 | | |
| (17) | Unearned premium reserves AS page 3, line 9 | | |
| (18) | Surplus as regards to policyholders AS page 3, line 35 | | |
| (19) | Total reserves and surplus Sum of line (15) to (18) | 0 | |
| (20) | Projected yield adjusted to reserve and surplus base line (14) * line (12) / line (19) | #DIV/0! | |

Page 14c

Prior Approval Rate Application
*(Yield Tax Worksheet)*

Exhibit A, Page 252

## RATE TEMPLATE
### (No input by filer)

| | | | | Edition Date: | 5/15/2009 |
|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| CDI FILE NUMBER: | 0 | | | |
| COMPANY/GROUP: | Starr Indemnity & Liability Company | | | |
| LINE OF INSURANCE: | OTHER LIABILITY | | | |
| COVERAGE: | 0 | | | |
| PRIOR_EFF_DATE: | 1/0/1900 | | Completed by: | Carrie E. Cope |
| PROPOSED_EFF_DATE: | 7/16/2009 | | Date: | 6/15/2009 |

*DATA PROVIDED BY FILER*

| | Year: | 0 | 0 | 0 | PROJECTED/ |
|---|---|---|---|---|---|
| | | PRIOR2 | PRIOR1 | RECENT | SUMMARY |
| WRT_PREM | | 0 | 0 | 0 | 750,000 |
| ERN_PREM | | 0 | 0 | 0 | 750,000 |
| PREM_ADJ | | 1.000 | 1.000 | 1.000 | |
| PREM_TREND | | 1.000 | 1.000 | 1.000 | 0.000 |
| MISCELLANEOUS_FEES   (& other flat charges) | | 0 | 0 | 0 | 0 |
| EARNED_EXP | | 0 | 0 | 0 | 37 |
| LOSSES | | 0 | 0 | 0 | 528,750 |
| DCCE | | 0 | 0 | 0 | 103,106 |
| LOSS_DEV | | 1.000 | 1.000 | 1.000 | |
| DCCE_DEV | | 1.000 | 1.000 | 1.000 | |
| LOSS_TREND | | 1.000 | 1.000 | 1.000 | 0.000 |
| DCCE_TREND | | 1.000 | 1.000 | 1.000 | 0.000 |
| CAT_ADJ | | 1.000 | 1.000 | 1.000 | |
| CREDIBILITY | | | | | 100.00% |
| EXPENSE EXCLUSION FACTOR | | | | | 2.79% |
| ANC_INC | | 0 | 0 | 0 | 0 |
| FIT_INV | | | | | 14.73% |
| YIELD | | | | | 2.22% |

*CDI PARAMETERS:*

| | |
|---|---|
| FIT_UW | 35.00% |
| EFF_STANDARD | 24.78% |
| LEVERAGE | 0.53 |
| PREMIUM_TAX_RATE | 2.35% |
| SURPLUS_RATIO | 1.90 |
| UEP_RES_RATIO | 0.52 |
| LOSS_RES_RATIO | 4.04 |
| RISK FREE RATE OF RETURN | 1.94% |
| MAXIMUM RATE OF RETURN | 7.94% |
| MINIMUM RATE OF RETURN | -6.00% |

*CDI CALCULATIONS:*

| | | | | |
|---|---|---|---|---|
| ADJ_PREM | 0 | 0 | 0 | 750,000 |
| ADJUSTED_LOSSES | 0 | 0 | 0 | 528,750 |
| ADJUSTED_DCCE | 0 | 0 | 0 | 103,106 |
| ADJUSTED_LOSS+DCCE_RATIO | 0.00% | 0.00% | 0.00% | 84.25% |
| TRENDED_CURRENT_RATE_LEVEL_PREMIUM | #DIV/0! | #DIV/0! | #DIV/0! | 20270.27 |
| LOSS+DCCE_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 17077.20 |
| COMP_LOSS+DCCE_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 13573.61 |
| CRED_LOSS_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 17077.20 |
| ANC_INC_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 0.00 |
| FIXED_INV_INC_FACTOR | | | | 11.76% |
| VAR_INV_INC_FACTOR | | | | 7.03% |
| ANNUAL_NET_TREND | | | | 0.00% |
| COMP_TREND | | | | 0.00% |
| MAX_PROFIT | | | | 23.16% |
| MIN_PROFIT | | | | -17.50% |
| UW_PROFIT | | | | 8.26% |
| MAX_DENOM | | | | 0.591 |
| MIN_DENOM | | | | 0.998 |
| MAX_PREMIUM | | | | $25,502.37 |
| MIN_PREMIUM | | | | $15,105.46 |
| CHANGE_AT_MIN | | | | -25.48% |
| **CHANGE AT MAX** | | | | **25.81%** |

*Alternate Calculation with Reinsurance*

| | | | | |
|---|---|---|---|---|
| COMMISSION_RATE | | | | 0.00% |
| RE_PREM | - | - | - | 0 |
| RE_RECOV | | | | 0 |
| RE_PREM_PER_EXP | - | - | - | 0 |
| RE_RECOV_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 0.00 |
| COMP_LOSS_RE | #DIV/0! | #DIV/0! | #DIV/0! | 0.00 |
| RMAX_PREMIUM | #DIV/0! | #DIV/0! | #DIV/0! | 13573.61 |
| RCHANGE_AT_MAX | | | | NA |
| | | | | NA |

Exhibit 11

## Starr Indemnity & Liability Company

Starr Indemnity & Liability does not anticipate having any ancillary income items associated with the products written under this filing.

Exhibit 17

Starr Indemnity & Liability Company
Resolute PortfolioSM For Private Companies Program
Actuarial Memorandum

The Resolute Portfolio for private companies product includes directors & officers liability, employment practices liability, outside directorship liability, crime and fidelity and fiduciary liability coverages. The product will be available to private companies, which may select single or multiple coverage sections and separate or combined limits of liability.

The crime and fidelity coverage premiums are developed based on the current ISO Multistate Loss Costs and rules. The Resolute Portfolio rating plan incorporates some modifications to the ISO rules which should result in premiums which better reflect the exposure and type of experience of the accounts expected to be written in this program. Further, experience rating will only be applied for accounts which have had losses within the past three years, whether covered by insurance or not. Additionally, the crime and fidelity loss cost multiplier is based on expected production costs as well as industry average expenses for general and other acquisition expenses.

based on a review of competitors' filings for similar programs currently in use. The Company lacks sufficient historical data upon which to base rates. The final factors proposed for our program reflect these industry rating factors, anticipated program expenses, as well as additional factors based on our professional judgment which we feel increase the accuracy and adequacy of the final premium for each risk.

The Company will continue to monitor the market for this business, trends in the industry and our own book of business, as it matures, and adjust the overall Program as appropriate.

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
*Edition Date:*                    *5/15/2009*

**Company Name:**   Starr Indemnity & Liability Company
**Line of Insurance:** OTHER LIABILITY

### PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME

| Line number | | Short Term Assets | Intermediate Term Assets | | Long Term Assets | |
|---|---|---|---|---|---|---|
| | | One year or less | Over 1 yr through 5 yrs | Over 5 yrs through 10 yrs | Over 10 yrs through 20 yrs | Over 20 yrs |
| 1.7 | US governments | 24,680,919 | 1,836,223 | | 171,390 | |
| 2.7 | All other governments | | | | | |
| 3.7 | States, territories and possessions | | 3,858,967 | 18,476,276 | | |
| 4.7 | Political subdivisions | | 11,614,837 | 50,665,316 | | |
| 5.7 | Special revenue and assessment obligations | | | 19,270,604 | | |
| 6.7 | Public utilities unaffiliated | | | | | |
| 7.7 | Industrial and miscellaneous | | | | | |
| 8.7 | Credit tenant loans | 13,848,544 | 16,893,371 | | | |
| 9.7 | Parent, subsidiaries and affiliates | | | | | |

| | | One year or less | Over 1 year through 10 years | Over 10 years |
|---|---|---|---|---|
| (1) | US government bonds Sum of line 1.7 and 2.7 | 24,680,919 | 1,836,223 | 171,390 |
| (2) | Other taxable bonds Sum of line 6.7, 7.7, 8.7, 9.7 and half of 5.7 | 13,848,544 | 26,528,673 | 0 |
| (3) | Tax exempt bonds Sum of line 3.7, 4.7, and half of 5.7 | 0 | 94,250,698 | 0 |

Data on line 1.7 through 9.7 are from the insurer group's most recent consolidated statutory annual statement, schedule D, part 1A, section 1.

Page 14a

Prior Approval Rate Application
(Yield Tax Worksheet)

## PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME

| | | Invested Assets [1] | Currently Available Yield * [2] | Return On Invested Assets [3]=[1]*[2] | Federal Income Tax Rate [4] | Federal Income Taxes [5]=[3]*[4] |
|---|---|---|---|---|---|---|
| (1) | US government bonds | | | | | |
| | (A) Short | 24,680,919 | 0.15% | 37,021 | 35.00% | 12,957 |
| | (B) Intermediate | 1,836,223 | 2.60% | 47,742 | 35.00% | 16,710 |
| | (C) Long | 171,390 | 3.49% | 5,982 | 35.00% | 2,094 |
| (2) | Other taxable bonds | | | | | |
| | (A) Short | 13,848,544 | 0.95% | 131,561 | 35.00% | 46,046 |
| | (B) Intermediate | 26,528,673 | 5.44% | 1,443,160 | 35.00% | 505,106 |
| | (C) Long | 0 | 5.90% | 0 | 35.00% | 0 |
| (3) | Tax exempt bonds | | | | | |
| | (A) Short | 0 | 0.62% | 0 | 5.25% | 0 |
| | (B) Intermediate | 94,250,698 | 3.78% | 3,562,676 | 5.25% | 187,041 |
| | (C) Long | 0 | 5.18% | 0 | 5.25% | 0 |
| (4) | Common Stock | | | | | |
| | (A) Dividends | | | 0 | 14.18% | 0 |
| | (B) Capital gains | | | 0 | 34.10% | 0 |
| (5) | Preferred stock dividends | | | 0 | 14.18% | 0 |
| (6) | Mortgage loans | | | 0 | 35.00% | 0 |
| (7) | Real estate | | | 0 | 35.00% | 0 |
| (8) | Cash** | | | 0 | 35.00% | 0 |
| (9) | Other*** | | | | | |
| | (A) Dividends | | | 0 | 14.18% | 0 |
| | (B) Capital gains | | | 0 | 34.10% | 0 |
| (10) | Total Sum of line (1) thru (9) | 161,316,447 | | 5,228,142 | | 769,953 |

Data in column [1], line 4 through (9), are from the insurer group's most recent consolidated statutory annual statement page 2 - Assets.

* Currently available yields are defined in CCR §2644.20.  Latest values are posted at
http://www.insurance.ca.gov/0250-insurers/0800-rate-filings/0200-prior-approval-factors/

** Annual statement page 2, line 5, cash only.  Cash equivalents and short-term investments are included in Schedule D.

*** Annual statement page 2, line 6 through 9.

Page 14b

Prior Approval Rate Application
(Yield Tax Worksheet)

**PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME**

| | Invested Assets [1] | Currently Available Yield [2] | Return On Invested Assets [3]=[1]*[2] | Federal Income Tax Rate [4] | Federal Income Taxes [5]=[3]*[4] |
|---|---|---|---|---|---|
| (10) Total line (10) exhibit 13, page 2 | 161,316,447 | | 5,228,142 | | 769,953 |
| (11) Investment expense Annual Statement (AS) page 11, line 25 | | | | 35.00% | 0 |
| (12) Total after investment expense line (10) - line (11) | 161,316,447 | | 5,228,142 | | 769,953 |
| (13) Federal income tax rate line (12) column [5] / column [3] | | | | 14.73% | |
| (14) Projected yield on invested assets line (12) column [3] / column [1] | | 3.24% | | | |

| | Most Recent Year |
|---|---|
| (15) Loss reserves AS page 3, line 1 | 5,492,779 |
| (16) Loss adjustment expense reserves AS page 3, line 3 | 561,851 |
| (17) Unearned premium reserves AS page 3, line 9 | 13,957,391 |
| (18) Surplus as regards to policyholders AS page 3, line 35 | 215,138,310 |
| (19) Total reserves and surplus Sum of line (15) to (18) | 235,150,331 |
| (20) Projected yield adjusted to reserve and surplus base line (14) * line (12) / line (19) | 2.22% |

Page 14c

Prior Approval Rate Application
(Yield Tax Worksheet)

**Starr Indemnity & Liability Company**
90 Park Avenue
New York, NY 10016
(646) 227-6300

January 29, 2009

Re:   Letter of Authorization for Tressler, Soderstrom, Maloney & Priess, LLP
Resolute Portfolio for Private Companies

I, Honora Keane, am a duly appointed authorized officer of Starr Indemnity and Liability Company.  This letter authorizes Tressler, Soderstrom, Maloney & Priess, LLP and Carrie E. Cope to file the above-referenced program on behalf of Starr Indemnity and Liability Company, and to respond to any inquiries raised in connection with the filing of the program.

Please direct all inquires and correspondence regarding this filing to:

Carrie E. Cope
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, IL  60606-6399

Phone:  (312) 627-4188
Email:  ccope@tsmp.com

Thank you for your assistance.  Please contact me if you have any comments or questions regarding this authorization.

Sincerely Yours,

Honora M. Keane
General Counsel
(646) 227-6342

Exhibit A, Page 259

Starr Indemnity & Liability Company
Resolute Portfolio[SM] For Private Companies
Explanatory Memorandum

The Resolute Portfolio[SM] For Private Companies Program offers coverage for business risks faced by private companies.  The Policy has four coverage sections that afford coverage for the following types of risks: (1) Directors and Officers Liability; (2) Employment Practices Liability; (3) Fiduciary Liability; (4) Crime and Fidelity.  The Insureds may purchase any or all of the coverage sections. Additionally, Insureds may elect separate or combined limits of liability for the liability coverages depending on their risk appetite. The Limit of Liability available for the Crime and Fidelity Coverage Section is not shared with the Limits of Liability available for the liability coverage sections.

The policy's Directors and Officers Liability Coverage Section affords broad-based coverage to Executives for Wrongful Acts committed in their capacity as Executives, Employees or Outside Entity Insured Person for the Insured Company.  The policy extends coverage to the insured Company for Claims made against it for Wrongful Acts as well as for costs arising from Derivative Demands.

The Employment Practices Liability Coverage Section of the policy affords coverage for Discrimination, Harassment, Retaliation, Workplace Torts or Wrongful Employment Decisions committed by an Insured if the act relates to an Employee or applicant for employment with the Company or an Outside Entity.  This section also offers optional coverage for Third-Party Claims arising from Third-party Wrongful Acts.

The policy's Fiduciary Liability Coverage Section affords coverage to the Company, any Plan, Insured Persons and any other person or entity in his, her or its capacity as a fiduciary of a Plan. This section also provides coverage for HIPAA Claims and offers optional coverage for Voluntary Compliance Program Loss, as permitted under applicable state law.

The policy's Crime and Fidelity Coverage Section affords coverage for loss sustained by the Company resulting directly from an Occurrence taking place during the Policy Period, except as otherwise specified in the policy and which is Discovered by the Company during the Policy Period or Extended Period to Discover loss.  The coverages enumerated in the policy under this Coverage Section include:

- ❑ Employee Theft
- ❑ Forgery or Alteration
- ❑ Inside the Premises – Loss of Money and Securities
- ❑ Inside the Premises – Robbery or Safe Burglary of Other Property
- ❑ Outside the Premises
- ❑ Computer Fraud
- ❑ Funds Transfer
- ❑ Money Orders and Counterfeit Money
- ❑ Credit, Debit, Charge Card Forgery
- ❑ Clients Property
- ❑ Investigative Expense Incurred to Establish Amount of Covered Loss

An index is attached which identifies the forms to be used with this Program.

**STARR INDEMNITY & LIABILITY COMPANY**
RESOLUTE PORTFOLIO<sup>SM</sup> For Private Companies
Forms Index
**CALIFORNIA**

| | FORM NUMBER | TITLE | OPTIONAL/ MANDATORY | DEBIT OR CREDIT |
|---|---|---|---|---|
| 1. | CVS FL 12000 PV (1/09) | Resolute Portfolio For Private Companies Insurance Application – This is the application form used to obtain information for underwriting the Policy. | Mandatory on all new line risks that have never purchased coverage before; may be optional on risks that have current coverage in force | None |
| 2. | CVS FL 12001 PV (1/09) | Resolute Portfolio For Private Companies Declarations – This is the Declarations Page to be used with the Policy. | Mandatory – used on all risks | None |
| 3. | CVS FL 12002 PV (1/09) | Resolute Portfolio For Private Companies General Terms & Conditions– This section provides the general terms and conditions for all coverage parts of the Policy. | Mandatory – used on all risks | None |
| 4. | CVS FL 12003 PV (1/09) | Resolute Portfolio For Private Companies Directors and Officers Liability Coverage Section – This section provides directors and officers liability coverage. | Mandatory – used on all risks that purchase D&O Coverage | None |
| 5. | CVS FL 12004 PV (1/09) | Resolute Portfolio For Private Companies Employment Practices Liability Coverage Section– This section provides employment practices liability coverage. | Mandatory – used on all risks that purchase EPL Coverage | None |
| 6. | CVS FL 12005 PV (1/09) | Resolute Portfolio For Private Companies Fiduciary Liability Coverage Section– This section provides fiduciary liability coverage. | Mandatory – used on all risks that purchase Fiduciary coverage | None |
| 7. | CVS FL 12006 PV (1/09) | Resolute Portfolio For Private Companies Crime and Fidelity Coverage Section– This section provides crime and fidelity coverage. | Mandatory – used on all risks that purchase Crime and Fidelity coverage | None |
| 8. | CVS FL 10000 PPVNP (07/08) | Delete Exclusion – This endorsement amends the coverage section specified in the endorsement by deleting the exclusion specified in the | Optional | Debit 1.0 – 1.3 range.  Will depend on the magnitude of coverage being offered by the deletion of such exclusion(s) |

1

| | | endorsement. | | |
|---|---|---|---|---|
| 9. | CVS FL 10002 PPVNP (07/08) | Exclusion of Certified Acts of Terrorism - This endorsement excludes coverage for certified acts of terrorism. | Optional;  This endorsement does not apply to the Crime & Fidelity Coverage Section | None |
| 10. | CVS FL 10003 PPVNP (1/09) | Exclusion of Non-Certified Acts of Terrorism and Coverage of Certified Acts of Terrorism - This endorsement excludes coverage for non-certified acts of terrorism. | Optional | None |
| 11. | CVS FL 10004 PPVNP (07/08) | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act – This notice advises the Insured that it has a right to purchase insurance coverage arising out of an Act of Terrorism. | Optional | None |
| 12. | CVS FL 10005 PPVNP (07/08) | OFAC Exclusion (all Coverage Sections) – This endorsement amends all four coverage sections to exclude Loss for any Claim in the event that such coverage would not be in compliance with any United States of America economic or trade sanctions, laws or regulations. | Mandatory | None |
| 13. | CVS FL 10006 PPVNP (07/08) | Pending or Prior Litigation Exclusion – Increased Limits – This endorsement amends the coverage section specified in the endorsement so that coverage is excluded for Loss in connection with any Claim alleging, arising out of, based upon or attributable to any pending or prior litigation or administrative or regulatory proceeding or investigation of which an Insured had notice and it applies to the Limit of Liability as specified in the endorsement. | Optional;  This endorsement does not apply to the Crime & Fidelity Coverage Section | Credit - .85 to 1.0 range, depending on how recent the pending/prior litigation date is. |

2

| 14. | CVS FL 10007 PPVNP (07/08) | Prior Acts Exclusion – This endorsement modifies the coverage section specified in the endorsement so that coverage is excluded for Loss in connection with any Claim alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts committed, attempted, or allegedly committed or attempted in whole, or in part, prior to the date specified in the endorsement. | Optional | Credit – depending how recent the prior acts exclusion is effective a credit will be applied. A credit can range from .65-.95. A prior acts exclusion effective today would be credited .65. A prior acts exclusion that is backdate a couple of years will be offered less of a credit, such as .85 |
|---|---|---|---|---|
| 15. | CVS FL 10008 PPVNP (07/08) | Reliance Endorsement (other applications) - This endorsement is used to confirm the Insurer's reliance on the accuracy of the statements, representations and warranties made in the specified materials. | Optional | None |
| 16. | CVS FL 10014 PPVNP (07/08) | Specific Litigation/Event Exclusion – Includes SEC Filings - This endorsement modifies the coverage section specified in the endorsement so that coverage is excluded for specified "Events" as defined in the endorsement, including SEC filings. | Optional | Credit- a credit will be applied of .65-85 as a result of the type of "Event" that is being excluded from coverage. This endorsement is usually used in financial restatement cases with litigation. |
| 17. | CVS FL 10015 PPVNP (07/08) | Amend Sponsor Organization Securities Coverage – Sublimit of Liability and Retention (Fiduciary Coverage Section) – This endorsement modifies the Fiduciary Liability Coverage Section by providing a sublimit and retention for claims arising out of, based upon, or attributable to any securities of the Company. | Optional | Credit of .85-1.0 will be applied depending on the amount of company securities are included in plans, the retention applicable and sublimit offered. |
| 18. | CVS FL 10016 PPVNP (07/08) | Specific Litigation/Event Exclusion - This endorsement modifies the coverage section specified in the endorsement so that coverage is excluded for specified "Events" as defined in the endorsement. | Optional | Credit – a credit will be applied of .75-.90 as a result of the type and exposure related to such litigation. |
| 19. | CVS FL 10020 PPVNP (07/08) | Amend Sponsor Securities Investment Coverage – Separate Retention (Fiduciary Coverage Section) – This endorsement modifies the Fiduciary Liability Coverage Section by providing a retention for claims arising out | Optional | Credit- a credit will be applied should a higher retention than currently on the fiduciary policy. The credit will depend on the size of the retention relative to the base retention and will range |

3

|  |  |  |  | from .75-.95 |
|---|---|---|---|---|
|  |  | of, based upon or attributable to the investment of Plan assets in the securities of the entity named in Item 1 of the Declarations or any Subsidiary. |  |  |
| 20. | CVS FL 10021 PPVNP (07/08) | Amend Definition of "Loss" – Investment Loss Coverage (Fiduciary Coverage Section) – This endorsement modifies the Fiduciary Liability Coverage Section by expanding the definition of "Loss" to provide coverage for a monetary award or a settlement payment as respects a Claim against the Insured alleging a loss to the Plan and/or to the accounts of such Plan's participants by reason of a change in the value of the investments held by such Plan. | Optional | Debit – 1.0 - 1.05 to grant the additional scope of coverage being offered under the endorsement subject to limits and retentions also exposed. |
| 21. | CVS FL 10023 PPVNP (07/08) | Amend Definition of Plan By Adding Specific Plans (Fiduciary Coverage Section)- This endorsement modifies the Fiduciary Liability Coverage Section to include coverage for the Plan(s) specified in the endorsement. | Optional | Debit- a debit will be applied depending on the type, status and size of the plan. Debit range will be 1.05-1.5. |
| 22. | CVS FL 10024 PPVNP (07/08) | Amend Declarations Page - This endorsement modifies the Declarations Page as specified in the endorsement. | Optional | Depending on what is modified, a debit, credit or no charge could apply. For example, a change in the address would not result in a change in premium. However, if the policy period is either extended or reduced, the premium would be modified accordingly through an additional premium charge or a return premium. If the limit of liability is modified, the limit would be modified as per our filed rate plan |
| 23. | CVS FL 10027 PPVNP (1/09) | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) – This endorsement modifies Exclusion (a)(2) of the Crime and Fidelity Coverage Section so that the exclusion does not apply if the value of the Theft or dishonest act is valued at an amount lower than $10,000 as specified in the endorsement. | Optional | Credit: .85 – 1.00 depending on the Organization's policy with regard to the hiring, retention of and/or level of placement of past offenders |
| 24. | CVS FL 10028 | Conditions Amended | Optional | Debit: .85 – 1.00 depending on |

4

|   | PPVNP (1/09) | Termination As To Any Employee (Crime & Fidelity Coverage Section) - This endorsement modifies Clause 6.(b) of the Crime and Fidelity Coverage Section to provide a carveback in the event the value of the Theft or any other dishonest act committed by any Employee is valued at an amount specified in the endorsement which may not exceed $10,000. |  | the Organization's policy with regard to the hiring, retention of and/or level of placement of past offenders |
|---|---|---|---|---|
| 25. | CVS FL 10029 PPVNP (1/09) | Amend Territory Clause (General Terms & Conditions Section) – This endorsement modifies the Territory Clause in the General Terms & Conditions Section so that the policy covers Occurrences taking place in the United States of America, its possessions, Canada and the countries specified in the endorsement. | Optional | Credit: .85 – 1.00 depending on the percentage of business operations which are conducted outside of the amended territory |
| 26. | CVS FL 10030 PPVNP (1/09) | Amend Trading Exclusion (Crime & Fidelity Coverage Section) - This endorsement modifies Exclusion (b)(2) of the Crime and Fidelity Coverage Section to provide a carveback for loss covered under Insuring Agreement A. | Optional | Debit: 1.05 to 1.20 depending on the extent of trading activities conducted by the Organization and the controls in place over such activities |
| 27. | CVS FL 10031 PPVNP (1/09) | Amend Warehouse Receipts Exclusion (Crime & Fidelity Coverage Section) - This endorsement modifies Exclusion (b)(3) of the Crime and Fidelity Coverage Section to provide a carveback for loss covered under Insuring Agreement A. | Optional | Debit: 1.05 to 1.20 depending on the extent of the Organization's warehouse activities and the controls in place over such activities |
| 28. | CVS FL 10032 PPVNP (1/09) | Amend Definition of "Employee" – Convert to Schedule (Crime & Fidelity Coverage Section) - This endorsement modifies the Crime and Fidelity Coverage Section so that "Employee" only means the individuals specified in the endorsement. | Optional | Premium will contemplate only those individuals who are to be covered by the endorsement |
| 29. | CVS FL 10033 PPVNP (1/09) | Conditions Amended Duties in the Event of Loss (Crime & Fidelity Coverage Section) - This endorsement modifies Clause 6. (a)(3) of the Crime and Fidelity Coverage Section to designate the Company | Optional | None |

5

| | | | | |
|---|---|---|---|---|
| | | position/titles to which the requirements of Clause 6.(a)(3) apply. | | |
| 30. | CVS FL 10034 PPVNP (1/09) | Conditions Amended Extended Period to Discover Loss (Crime & Fidelity Coverage Section) - This endorsement modifies Clause 6. (a)(6)(i) of the Crime and Fidelity Coverage Section to cover loss Discovered during the time period specified in the endorsement in the event of cancellation of the Coverage Section. | Optional | Credit .85 to 1.00 depending on whether the Organization previously purchased Crime & Fidelity Coverage, whether that past policy was written on a Discovery or an Occurrence basis and/or the length of the past policy Extended Period to Discovery Loss (or equivalent policy condition) |
| 31. | CVS FL 10035 PPVNP (1/09) | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) - This endorsement modifies Exclusion (a)(2) of the Crime and Fidelity Coverage Section so that the carveback for Theft or a dishonest act valued at $10,000 or less is deleted. | Optional | Credit: .85 – 1.00 depending on the Organization's policy with regard to the hiring, retention of and/or level of placement of past offenders |
| 32. | CVS FL 10085 PV (07/08) | Amend Defense of Claim and Settlement Clause – Delete Insurer's Duty to Defend; With Option to Tender Defense – This endorsement modifies the General Terms & Conditions Section so that the Insured has the duty to defend and contest any Claim made against them with the option to tender the defense to the Insurer within thirty days of the date the Claim is first made against an Insured. | Optional | Credit - .80 to 1.0 range, depending on the nature of the risk and their use of legal counsel for all claims, expertise of legal counsel used, and claims handling/reporting capabilities. |
| 33. | CVS FL 10086 PV (07/08) | Absolute Bodily Injury/Property Damage Exclusion (D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section so that the exclusion applies to any Claim "alleging, arising out of, based upon or attributable to" bodily injury and property damage and it deletes the carveback for any Securities Claims. | Optional | None |
| 34. | CVS FL 10087 PV (07/08) | Amend Contract Exclusion (D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section so that Exclusion (e) applies to Insuring Agreements A. and B. as well as | Optional | Credit .85-.95 range depending on the extent of the companies contract exposures and the dependency on the business |

6

| | | C. | | |
|---|---|---|---|---|
| 35. | CVS FL 10088 PV (07/08) | Amend Definition of "Subsidiary" – Change Revenue Threshold (D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section so that the automatic subsidiary threshold for subsidiaries is changed from 25% to the percent specified in the endorsement. | Optional | A debit or credit .80-1.2 will apply depending on the percentage change greater or lesser. The closer the change to the original policy language the less of a debit or credit granted |
| 36. | CVS FL 10090 PV (07/08) | Amend Pollution Exclusion – Delete Exception for Securities Claims (D&O Coverage Section) – This endorsement modifies Exclusion (j) of the Directors & Officers Liability Coverage Section to delete the carveback for Securities Claim. | Optional | Credit- a credit will be offered of .75 to 1.0 depending on the exposure associated relative to the pollution risk |
| 37. | CVS FL 10091 PV (07/08) | Anti-Trust Claim Coverage Extension – With Separate Retention, Sublimit and Co-Insurance (D&O Coverage Section) - This endorsement modifies the Directors & Officers Liability Coverage Section so that coverage is provided for Loss in connection with an Anti-Trust Claim as defined in the endorsement subject to a Sublimit of Liability, Retention and Co-Insurance. | Optional | Debit- a debit will be offered of 1.1-1.4 depending on the amount of coverage granted coupled with the size of the retention, sublimit and co-insurance participation |
| 38. | CVS FL 10092 PV (07/08) | Anti-Trust Claim Coverage Extension – With Sublimit (D&O Coverage Section) - This endorsement modifies the Directors & Officers Liability Coverage Section so that coverage is provided for Loss in connection with an Anti-Trust Claim as defined in the endorsement subject to a Sublimit of Liability. | Optional | Debit- a debit will be offered of 1.1-1.4 depending on the amount of coverage granted coupled with the size of the retention, sublimit and co-insurance participation |
| 39. | CVS FL 10093 PV (07/08) | Anti-Trust Exclusion- Applies to Entity Only (D&O Coverage Section) - This endorsement modifies the Directors & Officers Liability Coverage Section so that coverage is excluded for Loss in connection with any Claim alleging, arising out of, based upon or attributable to any violation of any law whether statutory, regulatory or | Optional | Credit – a credit of .75-.95 may be applied to the risk when this endorsement is added (depending on the type of antitrust exposure, financial impact, past litigation history and limits exposed). |

7

| | | | | |
|---|---|---|---|---|
| | | common, as respect: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships. However, this exclusion applies only to the Company. | | |
| 40. | CVS FL 10096 PV (07/08) | Delete Non-Rescindable Clause (Fiduciary Coverage Section) – This endorsement modifies the Fiduciary Liability Coverage Section by deleting the Non-Rescindable Clause. | Optional | Credit – a credit of .85-1.0 may be applied if the non-rescindable feature for Side A claims is removed from the contract. |
| 41. | CVS FL 10097 PV (07/08) | Delete Non-Rescindable Clause ( D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section by deleting the Non-Rescindable Clause. | Optional | Credit – a credit of .85-1.0 may be applied if the non-rescindable feature for Side A claims is removed from the contract. |
| 42. | CVS FL 10170 PPV (07/08) | Director Exclusion (EPL Coverage Section) – This endorsement modifies the Employment Practices Liability Coverage Section so that coverage is excluded for Loss in connection with any Claim brought by or on behalf of any Insured Person who is or was a director of any Company. | Optional | Credit – a credit of .85- 1-0 may be applied |
| 43. | CVS FL 10172 PPV (07/08) | Employed Lawyers Coverage Extension (D&O Coverage Section) – This endorsement amends the Directors & Officers Liability Coverage Section so that coverage is provided for an "Employed Lawyer" as defined in the endorsement subject to a sublimit. | Optional | Debit of 1.0- 1.40 depending on the number of people falling within definition as well as sublimit granted |
| 44. | CVS FL 10107 PV (02/09) | California Amendatory Endorsement – This endorsement is used to comply with applicable California state laws and regulations. | Mandatory | None |

8

Starr Indemnity & Liability Company
Resolute Portfolio[SM] For Private Companies Program

Actuarial Memorandum

The Resolute Portfolio for private companies product includes directors & officers liability, employment practices liability, outside directorship liability, crime and fidelity and fiduciary liability coverages. The product will be available to private companies, which may select single or multiple coverage sections and separate or combined limits of liability.

The crime and fidelity coverage premiums are developed based on the current ISO Multistate Loss Costs and rules. The Resolute Portfolio rating plan incorporates some modifications to the ISO rules which should result in premiums which better reflect the exposure and type of experience of the accounts expected to be written in this program. Further, experience rating will only be applied for accounts which have had losses within the past three years, whether covered by insurance or not. Additionally, the crime and fidelity loss cost multiplier is based on expected production costs as well as industry average expenses for general and other acquisition expenses.

The development of premium for the remaining coverages, as detailed in the attached Rating Plan, is based on a review of competitors' filings for similar programs currently in use. The Company lacks sufficient historical data upon which to base rates. The final factors proposed for our program reflect these industry rating factors, anticipated program expenses, as well as additional factors based on our professional judgment which we feel increase the accuracy and adequacy of the final premium for each risk.

The Company will continue to monitor the market for this business, trends in the industry and our own book of business, as it matures, and adjust the overall Program as appropriate.

Exhibit A, Page 269

# C. V. Starr & Company

## Resolute Portfolio for Private Companies

## Actuarial Memorandum, Addenda

In response to the California objection letter of 07/07/2009, Objection 2, we would like to provide further information on our ratemaking process.

Below, I cite content from the original Actuarial Memorandum which describes the basics of our rates:

"The crime and fidelity coverage premiums are developed based on the current ISO Multistate Loss Costs and rules. The Resolute Portfolio rating plan incorporates some modifications to the ISO rules which should result in premiums which better reflect the exposure and type of experience of the accounts expected to be written in this program. Most notably, the Resolute Portfolio rating plan only charges premium for an insured premises if the value of money at the premises exceeds the deductible amount, and, then only charges for the amount of money exceeding the deductible amount[1]. Further, experience rating will only be applied for accounts which have had losses within the past three years, whether covered by insurance or not. Additionally, the crime and fidelity loss cost multiplier is based on expected production costs as well as industry average expenses for general and other acquisition expenses.

The development of premium for the remaining coverages, as detailed in the attached Rating Plan, is based on a review of competitors' filings for similar programs currently in use. The Company lacks sufficient historical data upon which to base rates. The final factors proposed for our program reflect these industry rating factors, anticipated program expenses, as well as additional factors based on our professional judgment which we feel increase the accuracy and adequacy of the final premium for each risk."

For the Crime and Fidelity section of the rating plan, we used the ISO rates and supplements as described in (ISO) State Insurance Manual, CR-MU-01/01/09. The Crime & Fidelity rating plan involves a loss cost multiplier which, in California, will be the LCM calculated using the LCM template in the California rate application.

For the remaining covers, as discussed above, our rates are based on those of competitors, although we have not adopted any specific competitor's rates outright. Our rates are consistent with the existing market and approved competitor plans. In reviewing our competitors' filings, we observe that our expected expense ratios (combined with profit and contingencies, 29.4 %) are similar to those of our competitors which appear to range between 25 and 35%. Given that our final rates are

---

[1] If the value of money at all insured premises is equal to or less than the deductible, the premium will be determined using one premises (headquarter/main location)

similar to the competitors, and our expenses are similar, we believe this will result in expense loads which are adequate.

We hope this will provide the necessary information to evaluate the reasonableness of our rates.

**AM Bests Data on Industry Expenses**

**Underwriting Expenses excluding LAE**

|  | 2003 | 2004 | 2005 | 2006 | 2007 | 5 yr Avg | 10 Yr Avg |
|---|---|---|---|---|---|---|---|
| P&C Agency | 25.3 | 26 | 26.2 | 27.2 | 28.3 | 26.6 | 27.4 |
| Commercial Lines | 25.2 | 25.7 | 26 | 26.8 | 28 | 26.4 | 27.3 |
| Miscellaneous Lines | 18.2 | 19 | 20.9 | 22 | 28.9 | 21.4 | 21.6 |

*Source: AM Best's Aggregates & Averages 2008, Property & Casualty, Quantitative Analysis Report, Industry Segments*

**2007 Expense Ratio Break-down**

|  | Commission / Brokerage | Tax / Lic / Fees | Other Acq | Gen Exp | Other Income less other expense | Total |
|---|---|---|---|---|---|---|
| Other Liability | 13.00% | 1.80% | 5.20% | 4.70% | -1.30% | 23.40% |
| Fidelity | 11.70% | 2.30% | 8.90% | 8.10% | -1.30% | 29.70% |

*Source: AM Best's Aggregates & Averages 2008, Property & Casualty, IEE Total Industry*

**2006 Expense Ratio Break-down**

|  | Commission / Brokerage | Tax / Lic / Fees | Other Acq | Gen Exp | Other Income less other expense | Total |
|---|---|---|---|---|---|---|
| Other Liability | 12.60% | 1.80% | 4.50% | 4.10% | -1.50% | 21.50% |
| Fidelity | 9.40% | 1.70% | 9.00% | 7.40% | -1.70% | 25.80% |

*Source: AM Best's Aggregates & Averages 2008, Property & Casualty, IEE Total Industry*

| Selected Expenses Based on Industry & Own Data | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | Comm | Tax * | Other Acq | Gen | Profit | Inv Inc | Total | LCM |
| Industry (Bests) | 17.0% | 2.0% | 5.0% | 5.0% |  |  | 29.0% | 1.408 |
| Selected | 17.0% | 2.0% | 5.0% | 5.0% | 7.5% | -7.7% | 28.8% | 1.404 |
| * Note: 2% represents an average. Will be based on actual state tax. | | | | | | | | |

Exhibit A, Page 272

**Financial Lines Excess Rating**            **Exhibit 1**
**Expense & Profit Analysis**

| (1)<br>Expense Components | (2)<br>Industry | (3)<br>Co. Selected |
|---|---|---|
| Commission | 13.00% | 17.00% |
| Taxes, Licenses & Fees | 1.80% | 2.00% |
| Other Acquisition | 5.20% | 5.00% |
| General Expense | 4.70% | 5.00% |
| Underwriting Profit & Contingencies (d) | -1.30% | -0.20% |
| Total | 23.40% | 28.80% |
| Expected Loss & LAE (a) | 76.60% | 71.20% |
| Expected non DCC LAE (b) | 4.2% | 3.9% |
| Expected Loss plus DCC (c) | 72.39% | 67.28% |

Notes:

(2) relies on data from Best's Aggregates & Averages - Property & Casualty 2007 Insurance Expense Exhibit Data

(3) based on industry averages and company projections

(a)  1.00 - total of expenses and underwriting profit & contingencies

(b) .055 x (a); 5.5% based on industry averages

(c)  (a) - (b)

(d)  See Exhibit 2 for Calculation

<div align="right">Exhibit 2</div>

**Estimated Investment Earnings on Unearned Premium Reserves and on Loss Reserves**
**Other Liability**

A.   Unearned Premium Reserve

| | | |
|---|---|---:|
| 1. | Direct Earned Premium | $15,000,000 |
| 2. | Mean Direct Unearned Premium Reserve  (1) X  0.54 | $8,100,000 |
| 3. | Deduction for Prepaid Expenses | |

| | |
|---|---:|
| Commission and Brokerage Expense | 17.0% |
| Taxes, Licenses & Fees | 2.0% |
| 50% of Other Acquisition Expense | 2.5% |
| 50% of Company Operating Expense | 2.5% |
| **Total** | **24.0%** |

| | | |
|---|---|---:|
| | | 24.0% |
| 4. | Deduction for Federal Taxes Payable | 7.0% |
| 5. | (2) X [(3) + (4)] | $2,511,000 |
| 6. | Net Subject to Investment  =  (2) - (5) | $5,589,000 |

B.   Delayed Remission of Premium (Agent's Balances)

| | | |
|---|---|---:|
| 1. | Direct Earned Premium | $15,000,000 |
| 2. | Average Agents' Balance | 15.2% |
| 3. | Delayed Remission  =  (1) X (2) | $2,280,000 |

C.   Loss and LAE Reserves

| | | |
|---|---|---:|
| 1. | Direct Earned Premium | $15,000,000 |
| 2. | Expected Incurred Losses  =  (1)  X   0.712 | $10,680,000 |
| 3. | Expected Mean Loss Reserves = (2)   X      3.500 | $37,380,000 |

| | | |
|---|---|---:|
| D. | Net Subject to Investment  =  (A.6)  -  (B.3)  +  (C.3) | $40,689,000 |
| E. | Average Rate of Return | 3.5% |
| F. | Investment Earnings on Net Subject to Investment  =  (D)  X  (E) | $1,424,115 |
| G. | Average Rate of Return as a Percent of Direct Earned Premium  =  (F)  /  (A.1) | 9.5% |
| H. | Average Rate of Return as a Percent of Direct Earned Premium After Federal Income Taxes  =  (G)  X  [(1.000) - (0.35)] | 6.2% |
| I. | Required Total Return on Premium | 6.0% |
| J. | Indicated After Tax Underwriting Profit Provision  =  (I)  -  (H) | -0.2% |
| K. | Selected After Tax Underwriting Profit Provision | -0.2% |

<div align="right">Exhibit A, Page 274</div>



**TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP**

ATTORNEYS AT LAW

Sears Tower, 22ⁿᵈ Floor
233 S. Wacker Drive
Chicago, Illinois 60606-6308

312/627-4000
Fax 312/627-1717

www.tsmp.com

Carrie E. Cope
(312) 627-4188
ccope@tsmp.com

June 15, 2009

**VIA SERFF**
Mr. Steve Poizner
Insurance Commissioner
California Department of Insurance
45 Fremont, 23ʳᵈ Floor
San Francisco, California 94105

        Re:    Starr Indemnity and Liability Company
               Resolute Portfolio$^{SM}$ For Private Companies
               Our filing no.:   CVS-FL-CA-01 (F)(R)
               NAIC:  Group Code: 0000
                          Company Code: 38318
               FEIN:   75-1670124
               **SERFF Tracking Number: TSMP-126036314**

Dear Mr. Poizner:

      Tressler, Soderstrom, Maloney & Priess, LLP is submitting the above referenced Resolute Portfolio for Private Companies Insurance Program ("Program") for your review on behalf of Starr Indemnity and Liability Company. This Program provides the following type of coverage to private companies: (1) directors' and officers' liability; (2) employment practices liability (3) fiduciary liability; and (4) crime/fidelity.  The Insureds may purchase any or all of the coverage sections. We have attached an Explanatory Memorandum that briefly describes the coverage afforded by the Program.

      Attached please find the following documents in support of this filing:

    1.     A letter authorizing Tressler, Soderstrom, Maloney & Priess, LLP to file this Program on behalf of Starr Indemnity and Liability Company;

    2.     Resolute Portfolio$^{SM}$ For Private Companies Insurance Application, Form # CVS FL 12000 PV (1/09);

    3.     Resolute Portfolio$^{SM}$ For Private Companies Declarations, Form # CVS FL 12001 PV (1/09);

    4.     Resolute Portfolio$^{SM}$ For Private Companies General Terms & Conditions, Form # CVS FL 12002 PV (1/09);

BOLINGBROOK, ILLINOIS          WHEATON, ILLINOIS          ORANGE COUNTY, CALIFORNIA

LOS ANGELES, CALIFORNIA          NEWARK, NEW JERSEY          NEW YORK, NEW YORK

Mr. Steve Poizner
Insurance Commissioner
California Department of Insurance
June 15, 2009
Page 2

5.      Resolute Portfolio[SM]  For Private Companies Directors & Officers Liability Coverage Section, Form # CVS FL 12003 PV (1/09);

6.      Resolute Portfolio[SM]  For Private Companies Employment Practices Liability Coverage Section, Form # CVS FL 12004 PV (1/09);

7.      Resolute Portfolio[SM]  For Private Companies Fiduciary Liability Coverage Section, Form # CVS FL 12005 PV (1/09);

8.      Resolute Portfolio[SM]  For Private Companies Crime and Fidelity Coverage Section, Form # CVS FL 12006 PV (1/09);

9.      Various endorsements to be used with the Program;

10.     California Amendatory Endorsement, Form # CVS FL 10107 PV (2/09);

11.     A Rating Plan which contains rates for use with the Resolute Portfolio[SM]  For Private Companies Insurance Program;

12.     An Actuarial Memorandum;

13.     An Expense Component to be used with the Resolute Portfolio[SM]  For Private Companies Insurance Program;

14.     Rating Exhibits for use with the Resolute Portfolio[SM]  For Private Companies Insurance Program;

15.     A detailed forms index which includes a brief description of each form; and

16.     The required state filing form: Prior Approval Rate Application.

Please note, we are not submitting filing fees, as we understand none are required.

We trust that you will find this filing satisfactory.  If you have any comments or questions regarding this filing, please do not hesitate to contact me. Thank you for your assistance.

Very truly yours,

*Carrie E. Cope*

Carrie E. Cope

CEC/ktm
Enclosures

Exhibit A, Page 276



**TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP**
ATTORNEYS AT LAW

Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, Illinois 60606-6399
312/627-4000
Fax 312/627-1717
www.tsmp.com

Carrie E. Cope
312-627-4188
CCope@tsmp.com

July 13, 2009

**VIA SERFF**

Mr. Gerald Hill
Associate Insurance Rate Analyst
State of California Department of Insurance
Rate Regulation Division
45 Fremont Street, 23rd Floor
San Francisco, CA 94105

|        | | |
|--------|--------------------|-------------------------------------------------|
| Re:    | Company File No.:  | SERFF-CVS-FL-CA-01 (F)(R)                       |
|        | CDI Filing No.:    | 09-4985                                         |
|        | Public Notice Date: | July 3, 2009                                   |
|        | Line of Insurance: | Commercial Other Liability                      |
|        | Program:           | E&O-Resolute Portfolio For Private Companies    |

Dear Mr. Hill:

We are responding to your letter dated July 7, 2009.

1.  The Department requested the underwriting guidelines for this Program. In this regard, please see the attached Primary Policy Underwriting Guidelines for Directors and Officers, Primary Policy Underwriting Guidelines for Employment Practices Liability, Primary Policy Underwriting Guidelines for Fiduciary Risks and Primary Policy Underwriting Guidelines for Crime & Fidelity Risks. We ask that you keep these guidelines confidential. They should not be released to the public with any other filing information.

2.  The Department requested the Company explain how its rates were derived for the Program. In this regard, please see the attached Addenda to the Actuarial Memorandum.

3.  The Department requested more details with respect to the rate ranges in the D&O Risk Modifiers, EPL Risk Modifiers, Third Party Coverage Modifier, Fiduciary Liability Risk Modifier, Table A-Hazard Exposures: Debit Factors and Table B-Restrictions of Coverage: Credit Ranges. In this regard, please see the attached revised Rating Plan.

4.  The Department requested that the Company provide the additional charges for each optional form and an explanation for how the additional charges are developed. In this regard, please see the attached Resolute Portfolio for Private Companies Forms Index - California.

BOLINGBROOK, ILLINOIS          WHEATON, ILLINOIS          ORANGE COUNTY, CALIFORNIA

LOS ANGELES, CALIFORNIA          NEWARK, NEW JERSEY          NEW YORK, NEW YORK

Mr. Gerald Hill
State of California Department of Insurance
July 13, 2009
Page 2 of 3

5.  The Department requested that the Company provide the rate offset for several forms.  In this regard, please note the following:

    a.  With respect to form number CVS FL 10000, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    b.  With respect to form number CVS FL 10002, the Company does not charge for coverage or the deletion of coverage.

    c.  With respect to form number CVS FL 10003, the Company does not charge for coverage or the deletion of coverage.

    d.  With respect to form number CVS FL 10005, this is a mandatory form and therefore there is no rate offset.

    e.  With respect to form number CVS FL 10006, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    f.  With respect to form number CVS FL 10007, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    g.  With respect to form number CVS FL 10014, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    h.  With respect to form number CVS FL 10016, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    i.  With respect to form number CVS FL 10027, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.
    j.  With respect to form number CVS FL 10030, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    k.  With respect to form number CVS FL 10031, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    l.  With respect to form number CVS FL 10035, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

    m. With respect to form number CVS FL 10086, the policy is not designed to cover this type of exposure.  The form is used only if there is a significant risk of bodily injury or property damage.  The form is also used when insuring larger risk to confirm that no bodily injury or property damage coverage exists.  There is no rate offset for this form.

    n.  With respect to form number CVS FL 10090, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

Mr. Gerald Hill
State of California Department of Insurance
July 13, 2009
Page 3 of 3

      o. With respect to form number CVS FL 10170, the rate offset is indicated on the attached revised Resolute Portfolio for Private Companies Forms Index - California.

6. In response to the Department's request, the language related to the contemplation of shifts in trends has been removed from the Private Company Rating Plan. Please see the attached revised Private Company Rating Plan.

7. The Company will use an LCM only for the Crime & Fidelity coverage. Please see the attached LCM Template.

8. The Department requested the policy term for this Program. The policy term is one year, however there could be an occasional policy issued with a six month term.

9. The Department requested that the Company revise page 14c of the application to include the Projected Yield. In this regard, please see the attached revised Tax Yield Worksheet.

If you have any comments or questions, please do not hesitate to contact me.

Very truly yours,

*Carrie E. Cope*

Carrie E. Cope

# LCM TEMPLATE

**Edition Date:**                    *5/15/2009*

CDI FILE NUMBER:              0
COMPANY/GROUP:                Starr Indemnity & Liability Company
LINE OF INSURANCE:           OTHER LIABILITY
LINE CODE:                    17

**COVERAGE:**                 0

### ADVISORY ORGANIZATION FILING INFORMATION

1   For filings that include an adoption of Advisory Organization loss costs, complete lines 1.1, 1.2, and 1.3; for all other filings skip lines 1.1, 1.2 and 1.3, and go to line 2.

    1.1 CDI Filing Number                      09-4985

    1.2 Loss Cost Percent Change Approved for the Line or Coverage                      0.00%

    1.3 AOE or LAE Load Approved for the Line or Coverage

| Type of Load | Amount of Load |
| --- | --- |
| AOE/(LOSS+DCCE) ▼ | 0.045 |

### COMPANY LCM INFORMATION

2   If this is a New Program filing, skip lines 2.1 and 2.2 and review the Max_Final LCM result on line 7; for all other filings complete lines 2.1 and 2.2.

    2.1 Current <u>Expense</u> <u>Based</u> LCM

    2.2 Current Loss Cost Modification Expressed as a Factor (see examples below)

        Example 1:  If the company's loss cost modification is +15%, enter 1.15
        Example 2:  If the company's loss cost modification is -10%, enter 0.9
        Example 3:  If the company currently does not apply a loss cost modification factor, enter 1.0

3   Insurer's Current <u>Final</u> LCM (Line 2.1 * Line 2.2)                      NA

4   Advisory Organization's AOE as a Percent of Loss and DCCE (Derived from Line 1.3 and the IncLoss&DCCE page)                      0.045

5   Max_Expense Based Loss Cost Multiplier                      1.429          17077.19595

6   Max_Loss Cost Modification (Existing program only)                      NA
    Max_Loss Cost Modification for new program is 1.0

7   Max_Final LCM (Line 5 * Line 6)                      1.429

| SERFF Tracking #: | TSMP-126036314 | State Tracking #: | 09-4985 | | Company Tracking #: | CVS-FL-CA-01 (F)(R) |
|---|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| **State:** | California | **Filing Company:** | Starr Indemnity & Liability Company |
| **TOI/Sub-TOI:** | 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability | | |
| **Product Name:** | Starr Indemnity & Liability Company Resolute PortfolioSM  For Private Companies | | |
| **Project Name/Number:** | Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R) | | |

## Superseded Schedule Items

Please note that all items on the following pages are items, which have been replaced by a newer version.  The newest version is located with the appropriate schedule on previous pages.  These items are in date order with most recent first.

| Creation Date | Schedule Item Status | Schedule | Schedule Item Name | Replacement Creation Date | Attached Document(s) |
|---|---|---|---|---|---|
| 06/02/2009 | | Rate | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 1 - Pgs. 1-42 | 07/13/2009 | Resolute Portfolio Private Company Range Rating Plan (Part 1 Pgs. 1-42).pdf (Superseded) |
| 06/02/2009 | | Rate | Private Company Management Liability: Coverage including Directors and Officers Insurance, Employment Practices Insurance, Fiduciary Liability and Crime & Fidelity Coverage - Part 2 - Pgs. 43-71 | 07/13/2009 | Resolute Portfolio Private Company Range Rating Plan (Part 2 Pgs. 43-71).pdf (Superseded) |
| 02/16/2009 | | Supporting Document | Forms Index | 07/13/2009 | CA Forms Index.pdf (Superceded) |
| 02/16/2009 | | Supporting Document | Actuarial Memorandum | 07/13/2009 | ~Private Actuarial Memorandum.pdf |
| 02/16/2009 | | Supporting Document | Prior Approval Rate Application | 07/13/2009 | CA Private Prior Approval Rate Application.pdf CV Starr Private Prior Approval Rate Application USE.xls (Superceded) |

Exhibit A, Page 281

**SERFF Tracking #:** TSMP-126036314 **State Tracking #:** 09-4985 **Company Tracking #:** CVS-FL-CA-01 (F)(R)

**State:** California **Filing Company:** Starr Indemnity & Liability Company
**TOI/Sub-TOI:** 17.0 Other Liability-Occ/Claims Made/17.0019 Professional Errors and Omissions Liability
**Product Name:** Starr Indemnity & Liability Company Resolute PortfolioSM For Private Companies
**Project Name/Number:** Resolute PortfolioSM For Private Companies Program/CVS-FL-CA-01 (F)(R)

***Attachment CV Starr Private Prior Approval Rate Application USE.xls is not a PDF document and cannot be reproduced here.***

*PDF Pipeline for SERFF Tracking Number TSMP-126036314 Generated 05/15/2020 10:50 AM*

Exhibit A, Page 282

**Private Company Management Liability:**
**Coverage including Directors and Officers Insurance, Employment Practices**
**Insurance, Fiduciary Liability and Crime & Fidelity Coverage (ed. 01-2009)**

This policy will provide primary coverage in excess of retentions. The following rating practice will be utilized in the development of policy premium.

The annual premium is determined based upon the sum of the coverage sections.
        Annual Premium =D&O + EPL+ FL+CR

Coverage Sections are available to purchase on a stand alone basis as well as in conjunction with other Coverage Sections. The General Terms and Conditions section shall serve as the basis of the policy form and the Coverage Sections shall be included upon selection by the Company. In the event Coverage Sections are not purchased, such premium calculation shall not be included in the overall sum of the annual premium.

D&O = D&O Base premium * D&O risk modifiers * limit of liability modifier * retention modifier

EPL= EPL Base premium * EPL risk modifiers * limit of liability modifier * retention modifier

FL= FL Base premium * FL risk modifiers * limit of liability modifier * retention modifier
Should the Company wish to purchase combined or shared limits of liability, a combined limit modifier will be applied to the coverage parts sharing the limit of liability. Those coverage parts shall be added to any additional coverage part(s) not combining the limits with any other coverage parts, and therefore has a separate limit of liability available to such liability. The overall maximum limit of liability shall be the total of the combined limits for shared Coverage Sections plus the separate limit for specified Coverage Sections

CR is determined using the Crime & Fidelity Rate Plan as provided below. A separate limit of liability shall apply to this coverage section.

This rating plan does not contemplate any substantial shift in trends involving legal environment, loss severity or newly emerging exposures not previously contemplated in the pricing of the risk. In the event that the Insurer either experiences or witnesses such a shift in trends, the file shall be clearly documented to reflect the increased exposure detailing the trend observations and the judgments pricing utilized.

1

**D&O Premium Calculation**

The base premium for the first $1mm of limits with $25,000 retention will be determined on the basis of assets of the covered entity and its covered affiliates.

| Total Revenue | Base Rate |
|---|---|
| Less than $100,000 | $1,800 |
| $100,001 - $250,000 | $2,000 |
| $251,000- $500,000 | $2,200 |
| $500,001-$1,000,000 | $2,500 |
| $1,000,001- $2,000,000 | $3,500 |
| $2,000,001- $3,000,000 | $4,000 |
| $3,000,001- $4,000,000 | $4,400 |
| $4,000,001- $5,000,000 | $4,700 |
| $5,000,001-$7,500,000 | $5,350 |
| $7,500,001-$10,000,000 | $6,000 |
| $10,000,001-$15,000,000 | $7,000 |
| $15,000,001-$20,000,000 | $8,000 |
| $20,000,001- $30,000,000 | $9,000 |
| $30,000,001- $40,000,000 | $10,000 |
| $40,000,001- $50,000,000 | $11,000 |
| $50,000,001- $75,000,000 | $13,000 |
| $75,000,001- $100,000,000 | $16,500 |
| $100,000,001- $125,000,000 | $17,500 |
| $125,000,001-$150,000,000 | $18,500 |
| $150,000,001- $175,000,000 | $19,500 |
| $175,000,001- $200,000,000 | $20,500 |
| $200,000,001- $300,000,000 | $21,000 |
| $300,000,001-$400,000,000 | $22,000 |
| $400,000,001-$500,000,000 | $23,000 |
| $500,000,001-$750,000,000 | $24,000 |
| $750,000,001-$1,000,000,000 | $25,000 |

**D&O Risk Modifiers**

| D&O Risk Analysis (each modifier should be underwritten separately and a risk factor should be applied to each risk characteristic) | | Factor |
|---|---|---|
| Ownership Structure | - Insiders own all the shares | .75-.90 |
| | - Insiders own majority of shares | 1.0-1.1 |
| | - Non-affiliated individuals and/or institutional investors own majority of shares | 1.1-1.3 |

2

| | | |
|---|---|---|
| Number of years in business | - Greater than 10 years<br>- 5 to 10 years<br>- 2 to 5 years<br>- Less than 2 years | .75- .90<br>.90-1.0<br>1.0-1.15<br>1.15-1.25 |
| Quality of Management and Board Composition | - Excellent<br>- Average<br>- Below Average<br>- Poor | .75-1.0<br>1.0-1.15<br>1.15-1.25<br>1.25-1.35 |
| Offering of Securities: Private Placement or public exempt filings Activity | - None<br>- Minimal<br>- Material<br>- Significant | 1.0<br>1.0-1.15<br>1.15-1.3<br>1.3-1.5 |
| Merger and Acquisition Strategy | - No activity in last two years<br>- Limited Activity in last two years<br>- Moderate Activity in last two years<br>- Significant Activity | .85-1.0<br>1.0-1.10<br>1.1-1.25<br>1.25-1.75 |
| Equity and debt structure | - Private Equity, Private Debt<br>- Private Equity , Public debt | 1.0<br>1.2-2.0 |
| Financial Condition | Debt to Equity position<br>- Below Average<br>- Average<br>- Above average<br><br>Earnings trend<br>-Below Average<br>- Average<br>- Above average<br><br>Bank credit compliance<br>- Below Average<br>- Average<br>- Above average | <br>1.15<br>1.0<br>.9<br><br><br>1.15<br>1.0<br>.9<br><br><br>1.15<br>1.0<br>.9 |
| Prior D&O Claim activity | - None in three years<br>- Minimal (payment within suggested retention and less than policy limits)<br>- Significant (payment above suggested retention and above policy limits) | .80-1.0<br>1.0-1.2<br><br>1.2-1.5 |

**Limit of Liability Modifier**

| Limit of Liability | Factor |
|---|---|
| $100,000 | .550 |
| $250,000 | .650 |
| $500,000 | .825 |
| $750,000 | .90 |

3

Exhibit A, Page 285

| $1,000,000 | 1.0 |
|---|---|
| $2,000,000 | 1.5 |
| $3,000,000 | 1.85 |
| $5,000,000 | 2.1 |
| $7,500,000 | 2.35 |
| $10,000,000 | 3.5 |

**Retention Modifier**

| Retention | Factor |
|---|---|
| $0 | 1.325 |
| $2500 | 1.300 |
| $5000 | 1.250 |
| $7500 | 1.200 |
| $10000 | 1.150 |
| $15,000 | 1.100 |
| $20,000 | 1.05 |
| $25,000 | 1.00 |
| $35,000 | 0.920 |
| $50,000 | 0.850 |
| $75,000 | 0.775 |
| $100,000 | 0.725 |
| $250,000 | 0.675 |
| $500,000 | 0.600 |

**EPL Premium Calculation**

The base premium for the first $1mm of limits with $25,000 retention will be determined on the basis of employee count of the covered entity and its covered affiliates.
(Part time, seasonal, temporary, non-US based employees shall be counted as ½ employee.)

**EPL Base Rates**

| Employee Count | Base Rate per employee | Cumulative Totals |
|---|---|---|
| 0- 25 | $2000 flat charge | $2,000 |
| 26-50 | $50 | 2000+1200= $3,200 |
| 51- 150 | $35 | 3200+3465= $6,665 |
| 151-250 | $30 | 6665+2970= $9,635 |

4

Exhibit A, Page 286

| 251-350 | $25 | 9635+2475= $12,110 |
|---|---|---|
| 351-500 | $23 | 12110+3427= $15,537 |
| 501-1000 | $18 | 15537+13972= $29,509 |
| 1001-2000 | $16 | 29509+15984= $45,493 |
| 2001-5000 | $13 | 45493+38987= $84,480 |
| 5001-10000 | $10 | 84480+ 49990= $134,470 |
| 10,001-20,000 | $7 | 134470+ 69993= $204,463 |
| 20,001-50,000 | $5 | 204463+149995= $354,458 |

**EPL Risk Modifiers**

| EPL Risk Analysis (apply factor to each risk characteristic) | | Factor |
|---|---|---|
| Financial Condition | Profitable last three years<br>-Yes<br>-No<br><br>Debt to Equity position<br>- Below Average<br>- Average<br>- Above average | <br>.90-1.0<br>1.0-1.1<br><br>1.1<br>1.0<br>.9 |
| Number of years in business | - Greater than 10 years<br>- 5 to 10 years<br>- 2 to 5 years<br>- Less than 2 years | .75- .90<br>.90-1.0<br>1.0-1.15<br>1.15-1.35 |
| Territorial Modifier | High Risk (California)<br>High to Medium Risk (FL, NY Michigan, NJ, TX)<br>Medium Risk (AL, AZ, DC, IL, MA,MN, OR)<br>Low Risk (All other States) | 1.30<br>1.15<br><br>1.0<br><br>.90 |
| Prior EPL Claim activity | - None in last three years<br>- Minimal (claims reported but unlikely payout expected greater than retention) in last three years<br>- Material (claims payout anticipated, overall severity less than policy limits) in last three years<br>- Significant (payment exceeds suggested policy limits and | .80 – 1.0<br>1.0-1.3<br><br><br>1.3-1.5<br><br><br>1.5-2.0 |

5

| | retention) in last three years | |
|---|---|---|
| Industry Modifier | Low –highly regulated, lower salaried employees, etc<br>Medium-<br>High- high salaried employees, specialists, complex pay packages etc | .8-1.0<br><br>1.0-1.15<br>1.15-1.5 |
| Employee Turnover Rate and or Reductions in workforce | Less than 10%<br>10-20%<br>21%- 30%<br>Greater than 30% | .85<br>.85-1.0<br>1.0-1.1<br>1.1-1.2 |
| HR Practices and Policies | At Will statement<br>  -  Yes<br>  -  No<br>Employee Handbook/Written Guidelines<br>  -  Yes<br>  -  No<br>Annual Performance Reviews<br>  -  Yes<br>  -  No<br>Employee Training for Harassment<br>  -  Yes<br>  -  No<br><br>Full Time HR Professional<br>- Yes<br>- No | <br>.85-1.0<br>1.0-1.2<br><br><br>.85-1.0<br>1.1-1.2<br><br>.9-1.0<br>1.0-1.1<br><br>.90-1.0<br>1.1-1.2<br><br><br>.85-1.0<br>1.0-1.1 |
| Merger and Acquisition Strategy | - No activity in last two years<br>- Limited Activity in last two years<br>- Significant Activity | .85 – 1.0<br>1.0-1.10<br>1.1-1.2 |
| Punitive Damages** | - No coverage | .80 – 1.0 |

**Interpolation should be used if sub-limits or modified retentions are applied.

### Limit Of Liability Modifier

| Limit of Liability | Factor |
|---|---|
| $100,000 | .60 |
| $250,000 | .65 |
| $500,000 | .75 |
| $1,000,000 | 1.0 |
| $2,000,000 | 1.55 |
| $3,000,000 | 1.95 |
| $5,000,000 | 2.575 |
| $7,500,000 | 3.375 |
| $10,000,000 | 3.9 |

6

**Retention**

| Retention Modifiers | Factor |
|---|---|
| $2500 | 1.40 |
| $5000 | 1.325 |
| $7500 | 1.275 |
| $10000 | 1.225 |
| $15,000 | 1.150 |
| $20,000 | 1.05 |
| $25,000 | 1.00 |
| $35,000 | .950 |
| $50,000 | .900 |
| $75,000 | .825 |
| $100,000 | .775 |
| $150,000 | .760 |
| $175,000 | .750 |
| $250,000 | .700 |
| $500,000 | .675 |
| $1,000,000 | .650 |
| $2,500,000 | .625 |

**Third Party Coverage Modifier**

| Third Party Coverage ** | | |
|---|---|---|
| | - No coverage | 1.0 |
| | - Third Party Exposure: | |
| | *Low- limited customer/vendor interaction | 1.0-1.1 |
| | *Medium- average customer/vendor interaction | 1.05-1.20 |
| | *High- high customer/vendor interaction | 1.20-1.4 |

**Interpolation should be used if sub-limits or modified retentions are applied.

**Fiduciary Liability Premium Calculation**

The base premium for the first $1mm of limits with $25,000 retention will be determined on the basis of plan assets of the covered entity and its covered affiliates.

| Total Plan Assets | Base Rate |
|---|---|
| $0-$100,000 | $1000 |
| $100,000- $500,000 | $1,250 |
| $500,005-$1,000,000 | $1,500 |

7

Exhibit A, Page 289

| | |
|---|---|
| $1,000,001-$2,000,000 | $1,850 |
| $2,000,001-$3,000,000 | $2,100 |
| $3,000,001-$4,000,000 | $2,450 |
| $4,000,001-$5,000,000 | $2,800 |
| $5,000,001-$7,5000,000 | $3,100 |
| $7,500,001-$10,000,000 | $3,800 |
| $10,000,001-$12,500,000 | $4,100 |
| $12,500,001-$15,000,000 | $4,200 |
| $15,000,001-$20,000,000 | $4,400 |
| $20,000,001-$30,000,000 | $5000 |
| $30,000,001-$50,000,000 | $5,700 |
| $50,000,001-$75,000,000 | $6,250 |
| $75,000,001-$100,000,000 | $7,400 |
| $100,000,001-$150,000,000 | $8,400 |
| $150,000,001-$200,000,000 | $9,150 |
| $200,000,001-$250,000,000 | $10,450 |
| $250,000,001-$300,000,000 | $11,700 |
| $300,000,001-$400,000,000 | $12,700 |
| $400,000,001-$500,000,000 | $13,750 |
| $500,000,001-$600,000,000 | $15,000 |
| $600,000,001-$750,000,000 | $16,250 |
| $750,000,001-$1,000,000,000 | $18,250 |

**Fiduciary Liability Risk Modifier**

| FL Risk Analysis | | Factor |
|---|---|---|
| Financial Condition of Company | Profitable last three years<br>-Yes<br>-No<br><br>Debt to Equity position<br>- Below Average<br>- Average<br>- Above average | .90-1.0<br>1.0-1.1<br><br><br>1.1<br>1.0<br>.9 |
| Type of Plan | - Welfare Only<br>- Welfare and Defined Contribution<br>- Welfare, Defined Contribution and Defined Benefit | .75-.90<br>1.0-1.15<br><br>1.1-1.25 |
| Employee Stock Ownership Plan (ESOP) | - None<br>- ESOP owns less than 50% of shares<br>- ESOP owns more than 50% of shares | 1.0<br>1.0-1.15<br><br>1.15-1.4 |

8

Exhibit A, Page 290

| Funding Level | - Funding level requirements within 10% | 1.0 |
| | - Over Funded or under funded by >10% but <25% | 1.0-1.15 |
| | - Over funded or under funded by > 25% | 1.15-1.25 |
| Investment in Company Securities | - None | 1.0 |
| | - Minimal investments, employee discretion | 1.0-1.1 |
| | - Significant investments, employer directed | 1.1-1.4 |
| Investments | - Quality of Plan investments and diversification are above average | .85-1.0 |
| | - Quality of Plan investments and diversification are average | 1.0 |
| | - Quality of Plan investments and diversification are below average | 1.05-1.15 |
| Administrative Expenses | - Expenses greater than 5% | 1.05-1.1 |
| | - Expenses less than 5% | 1.0 |
| Benefits | - Plan benefits have been modified within the last two years or are in the process of being modified | 1.1-1.25 |
| | - Plan benefits have not been modified within the last two years or are not in the process of being modified | 1.0 |
| Third Party Administrator Coverage | - Yes | 1.1-1.25 |
| | - No | 1.0 |
| Prior PTL Claim activity | - None in last three years | .80-1.0 |
| | - Minimal (claims reported but unlikely payout | 1.0-1.1 |

9

| | expected greater than retention) in last three years | 1.1-1.2 |
|---|---|---|
| | - Material (claims payout anticipated, overall severity less than policy limits) in last three years | 1.2-1.4 |
| | - Significant (payment exceeds suggested policy limits and retention) in last three years | |

**Limit of Liability Modifier**

| **Limit of Liability** | **Factor** |
|---|---|
| $100,000 | .600 |
| $250,000 | .650 |
| $500,000 | .750 |
| $1,000,000 | 1.00 |
| $2,000,000 | 1.45 |
| $3,000,000 | 1.75 |
| $5,000,000 | 2.30 |
| $7,500,000 | 2.90 |
| $10,000,000 | 3.30 |

**Retention Modifier**

| **Retention** | **Factor** |
|---|---|
| $0 | 1.10 |
| $1000 | 1.075 |
| $2500 | 1.05 |
| $5000 | 1.00 |
| $7500 | .975 |
| $10000 | .950 |
| $15,000 | .915 |
| $20,000 | .900 |
| $25,000 | .885 |
| $35,000 | .860 |
| $50,000 | .835 |
| $75,000 | .810 |
| $100,000 | .780 |
| $250,000 | .750 |
| $500,000 | .725 |

10

**Other Coverage Modifiers:**

**Combined/Shared Limit of Liability Modifier**
Credit applied to the total premium of the Coverage Sections combining/sharing limits of liability

| | |
|---|---|
| No Coverage Section combining or sharing limit of liability | 0.0% |
| Two Coverage Sections combining or sharing limit of liability | .80 |
| Three Coverage Sections combining or sharing limit of liability | .65 |

| | |
|---|---|
| Change Defense Provision to Optional Duty to Defend | .85 |

*All limit and retention tables for each Coverage Section allow for interpolation if intermediate values are needed. In the event further values are needed outside of the tables provided, extrapolation should be used to develop such values.*

11

## Crime and Fidelity Premium Calculation

This Coverage Section will provide primary coverage on a per-occurrence Limit of Liability basis, excess of a per-occurrence Deductible.  The following rating practice will be utilized in the development of policy premium.

The annual premium is determined based upon the sum of the premium for all Insuring Agreements elected by the Insured and for the Limit of Liability and Deductible chosen for each Insuring Agreement:

> I.E:  Annual Premium = Insuring Agreement (A) Premium + Insuring Agreement (B) Premium + Insuring Agreement (C) Premium, etc.

Insuring Agreements A through K, indicated in the Coverage Section, may be purchased individually or collectively or in varying combinations, with varying Limits of Liability and Deductible combinations.  Insuring Agreement A should generally be offered to all applicants, unless there is a sound business reason in support otherwise.  In any such cases, the underwriting file must be documented to confirm the rationale.  The limit offered for Insuring Agreements B through K should not exceed the limit offered under Insuring Agreement A, unless there is a sound business reason in support otherwise.  In such cases the underwriting file must be documented to confirm the rationale.

A base premium will be developed for each Insuring Agreement using the **Standard Rate Plan-Applicable to All Risks** beginning on the page that follows below.

Loss Cost Multipliers will be applied to the base premiums for each Insuring Agreement selected.

**Special Circumstance – Individual Risk Situations**

**1.  Rating Or Classifying**

The Standard Rating Plan does not contemplate unique or unusual features that may be present for a risk.  Where it can be clearly demonstrated that one or more individual risk conditions exists, the premium determined in the Standard Rate Plan will be further modified as described in **Table A** below.

**2.  Restriction of Coverage**

The Standard Rating Plan does not contemplate situations where coverage is materially restricted.  If the Insuring Agreement contemplated by an applicable classification and rate is endorsed to restrict coverage for hazards not common to all risks within the class, the premium determined in the Standard Rate Plan will be further modified in accordance with **Table B** below

12

**Standard Rate Plan – Applicable to All Risks[1]**
**Fidelity Insuring Agreements[2]**

**Employee Theft Insuring Agreement A**
**A.  Rating Data**
    1.  Based on the predominant activity of the insured, determine the applicable Class Code. Refer to the **Table 1 Crime and Fidelity Classification Table**
    2.  Using the Class Code, determine the applicable rate modifiers which will be applied during the rating process
    3.  Determine the number of ratable employees. Ratable employees consist of:
        a.  all officers;
        b.  all employees (including persons or entities construed to be employees by endorsement, other than agents, partners and members of a limited liability company) who handle, have custody or maintain records of money, securities or other property;
        c.  all directors, trustees, officers, employees, administrators and managers (other than independent contractors) not included in items **A.3**.a. and **A.3**.b. above, who handle funds or other property of employee benefit plans subject to the Employee Retirement Income Security Act (ERISA);
        d.  all leased employees and former employees hired as consultants not included in items **A.3**.a. through **A.3**.c. above;
        e.  all fiduciary, trustee, administrator or other Employee Retirement Income Security Act (ERISA) who required to be bonded by ERISA, and who is not included in items **A.3**.a. through **A.3**.d. above;
        f.  one percent (1%) of all others not included in items **A.3**.a. through **A.3**.e. above. Round to the nearest whole person; for example, 2.5 = 3.
        Add the number produced in item **A.3**.f. above to the total determined in items **A.3**.a. through **A.3**.e. above.
    4.  Determine the number of additional premises (other than the head office).
**B.  Premium Computation**
    1.  Select the limit of insurance to be written. If a deductible applies, add the deductible amount to the limit selected to produce the total limit of insurance used in rating.
    2.  Refer to **Table 2 Fidelity Exposure Units - Blanket Coverage** to determine applicable rates
    3.  Based on the total limit of insurance determined in item **B.1** above, compute the:
        (a)      exposure units for the number of ratable employees determined in item **A.3**.above; and
        (b)      exposure units for the number of additional premises determined in item **A.4**. above. The exposure units for the additional premises are subject to modification in accordance with the following:

| Number Of Additional Premises | Percentage Of Exposure Units To Be Charged |
|---|---|
| Each of the first 25 | 100% |
| Each of the next 25 | 25% |
| Each of the next 50 | 5% |
| Each Over 100 | No Charge |

---

[1] Note:  Premium developed in Standard Rate Plan shall be adjusted further where Special Conditions exist
[2] As used in this Rate Plan, Fidelity refers to:  Employee Theft, Forgery or Alteration, Computer Fraud, Funds Transfer Fraud, Credit Card Forgery, Clients' Property

13

4. Add the exposure units for the ratable employees and additional premises computed in items **B.3.**(a)and **B.3**(b) above

5. If a deductible applies, using the procedures in item **B.3.**(a) and **B.3.**(b), compute the exposure units for the deductible amount for the number of ratable employees and additional premises. Add the exposure units for the ratable employees and additional premises and multiply the result by the factor shown in **Deductible Factors Table 3**

6. Subtract the deductible amount exposure units produced in Item **B.5** from the exposure units produced in Item **B4**. The result is the base premium for the Employee Theft Insuring Agreement.

7. Multiply the base premium by the assigned **Class Rate Multiplier** shown in **Table 4**

8. Multiply the adjusted base premium produced in **B.7.** by the applicable State **Loss Cost Multipliers** shown in **Table 5** for the state in which the Insured's headquarters are located.

9. The provisions of the **Crime and Fidelity Schedule Rating Plan Table 6** shall be applied to the Premium produced in **B.8**.

> Review **Underwriting Table-Schedule Rating Plan** shown in **Table 6**. Multiply the premium produced in **B.8** by the appropriate schedule plan modifiers. Underwriting file must be documented to reflect the Underwriter's consideration of each of the Schedule Rating Plan conditions

10. If the Company has discovered no occurrences of loss within the past three (3) years, the premium produced in **B.9.** above is the final premium.

11. If the Company has discovered one or more occurrence(s) of loss within the past three (3) years prior to the proposed effective date of coverage, the premium produced in **B.9.** above shall be adjusted using the **Experience Modification Plan Table 7.**

> If no past coverage was in effect, "discovery of an occurrence", as used in **B.11.** above, shall include all circumstances that would have been covered/coverable had such coverage been in effect for a period of three (3) years prior to the proposed effective date of coverage

**Forgery Or Alteration Insuring Agreement B**

1. If limit and deductible for Insuring Agreement B are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.26.** The result is the base premium for Insuring Agreement B, or

2. If the limit and/or deductible for Insuring Agreement B vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement A. Multiply the result by **.26.** The result is the base premium for Insuring Agreement B

3. Loss Costs are to be applied to the base premium developed in either item 1 or 2 above

4. The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or2 above

5. The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Computer Fraud Insuring Agreement F**

1. If limit and deductible for Insuring Agreement F are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.20.** The result is the base premium for Insuring Agreement F, or

2. If the limit and/or deductible for Insuring Agreement F vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement A. Multiply the result by **.20.** The result is the base premium for Insuring Agreement B

Exhibit A, Page 296

3. Loss Costs are to be applied to the base premium developed in either item 1 or 2 above
4. The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above
5. The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Funds Transfer Insuring Agreement G**
1. If limit and deductible for Insuring Agreement G are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.10.** The result is the base premium for Insuring Agreement F, or
2. If the limit and/or deductible for Insuring Agreement G vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps described for Insuring Agreement A.  Multiply the result by **.10**. The result is the base premium for Insuring Agreement G
3. Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above
4. The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above
5. The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Credit, Debit, Charge Card Forgery Insuring Agreement I**
1. If limit and deductible for Insuring Agreement I are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.13.** The result is the base premium for Insuring Agreement I, or
2. If the limit and/or deductible for Insuring Agreement I vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement A.  Multiply the result by **.13**. The result is the base premium for Insuring Agreement I
3. Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above
4. The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above
5. The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Clients Property Insuring Agreement J**
1. If the limit and deductible for Insuring Agreement J are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.25.** The result is the base premium for Insuring Agreement J, or
2. If the limit and/or deductible for Insuring Agreement J vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement A.  Multiply the result by **.25**. The result is the base premium for Insuring Agreement J
3. Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above
4. The provisions of the Schedule Rating Plan shall be applied to the premium produced in items 1 or 2 above
5. The provisions of the Experience Modification Plan shall apply only if the Company has discovered a loss within the past three (3) years prior to the proposed effective date as more fully described in **B.11.** above.

**Investigative Expenses Incurred to Establish Amount of Covered-Insuring Agreement K**

1. If limit and deductible for Insuring Agreement K are the same as the limit/deductible applicable to Insuring Agreement A-Employee Theft, multiply the result by **.20.** The result is the base premium for Insuring Agreement B, or
2. If the limit and/or deductible for Insuring Agreement K vary from the limit and/or deductible of Insuring Agreement A-Employee Theft, repeat the steps describe for Insuring Agreement K.  Multiply the result by **.20**. The result is the base premium for Insuring Agreement K
3. Loss Costs are to be  applied to the base premium developed in either item 1 or 2 above

ᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒᵒ

### Standard Rate Plan Applicable to All Risks – Burglary & Theft (Crime) Insuring Agreements[3]

**Inside The Premises - Loss Of Money And Securities - Insuring Agreement C**
**A. Rating Data**

1. Based on the predominant activity of the insured, determine the applicable Class Code. Refer to the **Classification Table 1**
2. Using the Class Code, determine the applicable rate modifiers which will be applied during the rating process.
3. Determine the number of premises (including the headquarters) where the average value of "Money" on "Premises" exceeds the Deductible Amount.  For the purpose of rating this Insuring Agreement C, these premises will be referred to as "Rated Premises". If the value of "Money" on "Premises" at each locations is equal to or less than the Deductible Amount, then the "Rated Premises" will equal one (1).

**B. Premium Computation**

1. Select the limit of insurance to be written for each Rated Premises (Rated Premises subject to a different limit by endorsement are rated separately). Divide the limit selected for each Rated Premises by 1,000 to determine the number of $1,000 units of insurance.
2. Refer to **Territory Group Table 8**. Separate the Rated Premises according to the territory group tiers shown in **Table 8**
3. The premium is calculated separately for each territory group tier:
   a. Multiply the number of $1,000 units of insurance determined in item **B.1.** by the number of Ratable Premises in the territory group tier
   b. Multiply the result produced in item **B.3.a** by the appropriate territory group multiplier

| Territory Group | Multiplier |
|---|---|
| Tier I | 1.00 |
| Tier II | 0.40 |
| Tier III | 0.31 |

---

[3] For the purposes of this Rate Plan, Crime shall refer to the following Insuring Agreements:  Inside the Premises-Loss of Money and Securities; Inside the Premises-Robbery and Safe Burglary of Property Other Than Money & Securities; Outside the Premises; Money Orders & Counterfeit Paper Currency;, Inside the Premises-Theft of Property Other Than Money & Securities;, Inside the Premises-Robbery or Burglary of Property Other than Money & Securities; Inside the Premises-Robbery or Safe Burglary of Money and Securities; Lessees of Safe Deposit  Boxes, Securities Deposited with Others, Guests' Property; Safe Depository.

    **c.**   Multiply the result determined in Item **B.3.b** by the multiplier determined in Item **A.2.**

    **d.**   If a deductible applies, multiply the premium produced in Item **B.3.c.** by the appropriate deductible factor shown in **Deductible Factors Table 3**. The premium produced is then subject to the minimum premium per premises.  The result is the premium for the territory group tier.

    **e.**   Add the separate premiums developed in Item **B.3.d.** for each of the territory group tiers. The result is the premium for the Inside The Premises - Loss Of Money And Securities Insuring Agreement C.

**4.**   Applicable State Loss Cost Multipliers are to be applied to the premium developed in Item **B.3.e.** above

**5.**   The provisions of the Crime and Fidelity Schedule Rating Plan shall be applied to the premium produced in **B.4.** above

**6.**   If the Company has discovered no occurrences of loss within the past three (3) years, the premium produced in **B.5.** above is the final premium.

**7.**   If the Company has discovered one or more occurrence(s) of loss within the past three (3) years prior to the proposed effective date of coverage, the premium produced in **B.5.** above shall be adjusted using the **Experience Modification Plan Table 7.**

If no past coverage was in effect, "discovery of an occurrence", as used in **B.7.** above, shall include all circumstances that would have been covered/coverable had such coverage been in effect for a period of three (3) years prior to the proposed effective date of coverage

**Inside The Premises - Robbery Or Safe Burglary Of Other Property - Insuring Agreement D**
Follow the same steps as were completed in the computation of the premium for Insuring Agreement C above except select the premium per $1,000 of insurance for Insuring Agreement D

**Outside The Premises Insuring Agreement – Insuring Agreement E**
Follow the same steps as were completed in the computation of the premium for Insuring Agreement C above except select the premium per $1,000 of insurance for Insuring Agreement E

**Money Orders And Counterfeit Money - Insuring Agreement H**

**A.**     **Rating Data** – Annual Loss Cost Per $1,000 Limit of Liability is seventeen cents (.17)

**B.**     **Premium Computation**

**1.**   Multiply the selected Limit of Liability for Insuring Agreement H by .17 to determine the annual base premium.

**2.**   If a deductible applies, multiply the premium produced in item B.1 above by the appropriate deductible factor.  Refer to **Crime Deductible Table** (below)[4]. The result is the premium for the Money Orders And Counterfeit Money Insuring Agreement.

**3.**   Applicable State Loss Cost Multipliers are to be applied to the premium developed in **B.2.** above

**4.**   The provisions of the Crime Schedule Rating Plan shall be applied to the premium produced in **B.3.** above

**5.**   If the Company has discovered no occurrences of loss within the past three (3) years, the premium produced in **B.3.** above is the final premium.

**6.**   If the Company has discovered one or more occurrence(s) of loss within the past three (3) years prior to the proposed effective date of coverage, the premium produced in **B.3.** above shall be adjusted using the **Experience Modification Plan Table 7.**

If no past coverage was in effect, "discovery of an occurrence", as used in **B.6.** above, shall include all circumstances that would have been covered/coverable had such coverage been in effect for a period of three (3) years prior to the proposed effective date of coverage

---

[4] Note this Insuring Agreement is typically written with a $10 deductible

### Special Circumstance – Individual Risk Situations

**1. Rating Or Classifying**

The Standard Rating Plan does not contemplate unique or unusual features that may be present for a risk. Where it can be clearly demonstrated that one or more of the following conditions exists:

- **a.** the manual rate or applicable classification is clearly demonstrated to be inappropriate because of a unique or unusual feature of the risk; or
- **b.** **Note:** To the extent that consent-to-rate procedures apply, they must be followed.
- **c.** the coverage written is broader than that contained in the applicable Coverage Section, or
- **d.** **Note:** To the extent that forms filing requirements apply, they must be followed.
- **e.** there is proof that, for a specific coverage, the named risk is qualified in this state for placement of such insurance with an authorized insurer, and the Insured agrees to the proposed rate or premium to be charged; or
- **f.** the risk develops $100,000 or more annual manual basic limit premium individually; the premium shall be modified in accordance with **Table A** below.

**2. Restriction of Coverage**

The Standard Rating Plan does not contemplate situations where coverage is materially restricted. If the Insuring Agreement contemplated by an applicable classification and rate is endorsed to restrict coverage for hazards not common to all risks within the class, the Standard Rate Plan premium shall be modified in accordance with **Table B** below.

The file shall be clearly documented to demonstrate that at least one of the factors identified in **1(a)** through **1(d)** or **2**. exists. Documentation should include all details of these factors used in determining the modification.

**Note:** Rates shall not be inadequate, excessive or unfairly discriminatory.

### Table A - Rating or Classifying

**Crime Risk Factors:**

For use in circumstances where:

- o  Condition is documented clearly in the underwriting file
- o  Factor is not already contemplated in standard rate plan
- o  **Underwriting Table 6** range limitations produce a rate that is inadequate or excessive
- o  When utilizing this rating guide, the use of Underwriting Table Debits is prohibited

**Step 1:**

Each risk factor is to be underwritten separately. Consideration is to be given as to how its existence increases the risk of loss for each Insuring Agreement elected. I.E. Condition may carry a significant negative weight for Insuring Agreement A, but, may present a favorable situation for Insuring Agreement C.

Example: Insured has multiple locations, spread throughout the United States. The accounting function is decentralized with each facility acting as its own profit-center. Though satisfactory basic controls are in place at all facilities, controls vary from facility to facility.

- Insuring Agreement A – Employee Theft: There is an increased risk of loss where accounting functions are decentralized and varying controls are in place from facility to facility
- Insuring Agreement C-Loss Inside the Premises: There is a good spread of risk across the facilities. Only petty cash exposures are present and are well below the deductible amount. Each facility is in high-rise office building. While rating plan calls for a surcharge for each location, the likelihood of a loss at any location is slight. The chance of loss at multiple locations is remote.

18

**Table A – Hazard Exposures**

**Debit Range:  1.25 to 3.00**
*(to be applied in increments of .25)*

*Step 1 – Determine which Insuring Agreement(s) is/ are impacted*
*Step 2 – Assign a severity weight reflecting the degree to which each Insuring Agreement is impacted*
*Step 3 – Apply a debit factor from the range of weight assigned*

| **Weight given:** | **Debit Factor:** |
|---|---|
| **Low** | 1.25 to 1.75 |
| **Moderate** | 1.75 to 2.25 |
| **Heavy** | 2.25 to 3.00 |

**Condition:**  *List is not all encompassing; Conditions will be varied and unique to each circumstance*

| **Condition present currently (moderate to heavy)** |
|---|
| Total foreign employee count is more than 50% of the total employee count of the Insured |
| Fluctuation in activities due to peak season changes |
| Subsidiary activities are considerably different than the primary business of the Parent Company and its subsidiaries.  The nature of such activities increases risk factors |
| Limited Operating History – One year or less |
| Consolidation, merger, acquisition – moderate activity incurred within the past 12 months/projected in the upcoming 12 months |
| Material weakness in internal controls |
| Severe financial concern – Going concern qualification threat of bankruptcy |
| **Conditions present within the past 2 to 3 years (low to moderate)** |
| Consolidation, merger, acquisition activity – limited activity |
| Material increase (>15%) in staffing level |
| Reduction in staffing (greater than 10%) |
| Facility, department, division closure |
| Insured's facilities are concentrated solely in a geographic region that has been experiencing a severe economic decline and directly relates to Company's nature of operations;  The Company's operations have been negatively impacted by the decline |
| Change in auditors/disagreement (may or may not be an issue—consider other factors before debiting) |
| Limited Operating History – Greater than one year but less than three years;  Mgmt has limited direct experience |
| Moderate financial concerns within the past 2 to 3 years |

Note:  Prior Crime and Fidelity Claim activity is contemplated in the Experience Rating Plan and not as part of this component of the rate plan

Exhibit A, Page 301

**Table B – Restrictions of Coverage**

For use in circumstances where:
- o   condition is documented clearly in the underwriting file
- o   factors not already contemplated in standard rate plan
- o   **Underwriting Table 6** range limitations produce a rate that is inadequate or excessive
- o   When utilizing this rating guide, the use of **Underwriting Table 6** is prohibited

**Step 1**

Each risk factor is to be underwritten separately.  Consideration is to be given as to how its existence decreases the risk of loss for each Insuring Agreement elected.  I.E. Condition may carry a significant negative weight for Insuring Agreement A, but, may present a favorable situation for Insuring Agreement C.

Example:  Company has multiple locations, spread throughout the United States.  The accounting function is decentralized with each facility acting as its own profit-center. Though satisfactory basic controls are in place at all facilities, controls vary from facility to facility.

- -   Insuring Agreement A – Employee Theft:  There is an increased risk of loss where accounting functions are decentralized and varying controls are in place from facility to facility
- -   Insuring Agreement C-Loss Inside the Premises:  There is a good spread of risk across the facilities. Only petty cash exposures are present and are well below the deductible amount.  Each facility is in high-rise office building.  While rating plan calls for a surcharge for each location, the likelihood of a loss at any location is slight. The chance of loss at multiple locations is remote.

| Hazard Class | Condition<br>*Conditions listed are examples only*<br>*Conditions will be varied and unique to each circumstance* | Credit Ranges |
|---|---|---|
| **Reduction in risk** *factors, not contemplated elsewhere in rate plan* | • Spread of risk exists.  Minimal actual exposures are present exceeding the deductible level. I.E.  Retailer with 15 locations where maximum cash/securities exposures are $1,500 daily.  Proposed deductible is $5,000 per occurrence for Premises Theft<br>• Warranty condition included reducing coverage to moderate degree<br>• No past-acts coverage is provided under Insuring Agreement A[5] | .50 to .75 |
| **Moderate reduction in risk factors** | • Spread of risk exists to a degree that minimal actual exposures are present exceeding the deductible level. I.E.  Retailer with 15 locations where maximum cash/securities exposures are $1,500 daily.  Proposed deductible is $10,000 for Premises Theft<br>• Warranty condition is included substantially reducing coverage | .25 to .50 |

---

[5] Weight given will depend on length of operation, size/type of risk. It generally takes longer for detection of a fraudulent situation to occur at a larger organization than for detection to occur at a smaller location. The control structure may or may not encourage earlier detection

20

| | | |
|---|---|---|
| | • No past-acts coverage is provided under Insuring Agreement A | |
| **Significant reduction in risk factors** | • Spread of risk exists to a degree that minimal actual exposures are present exceeding the deductible level. I.E. Retailer with 15 locations where maximum cash/securities exposures are $1,500 daily. Proposed deductible is $25,000 for Premises Theft<br>• Warranty condition is included substantially restricting coverage<br>• No past-acts coverage is provided under Insuring Agreement A | .25 to .50 |

21

**Crime and Fidelity Classification**
**Table 1**

## INTRODUCTION

In determining the appropriate class code for a risk, use the classification description that most closely describes the predominant activity of the insured. A classification designated NOC (Not Otherwise Classified) shall apply only if no other classification more specifically describes the insured's predominant activity.  Classifications designated as "wholesale" or "distributor" mean merchant or intermediary, who sells products mainly for resale or business use and who sells chiefly to dealers or retail stores, other merchants, industrial, institutional and commercial users. Classifications designated as "dealer" or "retail" mean merchant or mercantile establishment which sells products directly to the ultimate consumer and who is not a wholesaler or distributor.

| Class Code | |
|---|---|
| **1100** | **Agricultural, forestry, fishing and hunting operations, including:** <br> Animals – draft <br> Cattle ranching (not wholesaling), dairy farms, poultry farms <br> Crop spraying, cotton gin operations, farm machinery operations <br> Distillation or extracting, honey extracting <br> Fish hatcheries <br> Logging <br> Fruit or vegetable harvesting or packing, produce handling or packing <br> Greenhouses and nurseries <br> Kennels <br> Orchard and vineyard operations |
| **2150** | **Mining, quarrying, oil and gas operations, including:** <br> Drilling (other than water) <br> Gasoline recovery - from casing head or natural gas <br> Geophysical exploration <br> Ore milling or processing <br> Stone crushing <br> Salt, borax, potash or phosphate production or refining <br> Shaft sinking |
| **2210** | **Utilities, including:** <br> Electric, natural gas companies (local distribution), sewage, steam and water <br> Irrigation works operations <br> **Rural Utilities Service projects - borrowing corporations, including:** |
| **2211** | Electric light or power cooperatives <br> Power line construction |

22

Exhibit A, Page 304

| Class Code | |
|---|---|
| 2330 | **General construction (other than oil and gas well, and special trade contractors), including:**<br>Airport runway or warming apron paving, surfacing, or scraping<br>Blasting operations and tunneling<br>Bridge or elevated highway<br>Building structure - raising or moving<br>Cable installation in conduits or subways<br>Caisson or cofferdam work - building foundations and other<br>Concrete - mixed in transit, repair - guniting or shot creting<br>Conduit construction for cables or wires<br>Construction or project manager - independent from general contractor<br>Dam, dike, jetty or breakwater, levee, reservoir or revetment<br>Dredging<br>Electric light or power line<br>Gas mains or connections<br>Hazardous materials - removal, replacement, repair or enclosure in buildings and structures<br>Hoists - hydraulic or mechanical - for dumping materials from truck<br>Irrigation or drainage<br>Metal erection - structural<br>Pipeline construction - all (including gas, oil, slurry - nonflammable mixtures)<br>Prefabricated building and modular unit erection<br>Railroad and subway<br>Rigging - boat, ship, and other<br>Street or road construction, paving, surfacing, scraping or grading<br>Tank construction, installation, erection or repair<br>Telephone, telegraph or cable television line construction<br>Underpinning buildings or structures<br>Water and sewer mains or connections |
| 2350 | **Special trade contractors (other than general construction), including:**<br>Boiler inspection, installation, cleaning or repair<br>Carpentry - (including shop)<br>Cleaning - outside surfaces of buildings and other exterior surfaces<br>Communication equipment installation - industrial or commercial (not telephone or cable television)<br>Concrete, masonry, mosaic or terrazzo work (including marble, stone, tile), plastering or stucco work<br>Door, window or assembled millwork<br>Drilling - water<br>Dry wall or wallboard installation<br>Electrical<br>Elevator or escalator inspection, installation, service or repair<br>Excavation<br>Fence erection<br>Fire suppression systems - installation, service or repair<br>Fireproofing structures<br>Floor covering installation<br>Furniture or fixtures installation in offices or stores - portable - metal or wood<br>Grading for buildings |

23

Exhibit A, Page 305

| Class Code |
|---|

| | **2350 (contd)** |
|---|---|
| | Greenhouse erection |
| | Heating or air conditioning systems or equipment - installation, servicing or repair |
| | Insulation work |
| | Machinery or equipment (farm, industrial and all other) - installation only |
| | Painting - interior or exterior (including buildings, structures, bridges, tanks, ships and shop only) |
| | Paperhanging |
| | Paving, surfacing, scraping - driveway, parking area or sidewalk |
| | Pile driving - building foundation only |
| | Plumbing |
| | Refrigeration systems or equipment - installation, servicing or repair |
| | Roofing |
| | Salvage operations (including removing, sorting, reconditioning and distributing of merchandise) |
| | Sandblasting |
| | Septic tank systems - installation, servicing or repair |
| | Sheet metal work (including shop) |
| | Siding installation |
| | Sign erection, installation or repair |
| | Solar energy |
| | Steam mains or connections, steam pipe or boiler insulation |
| | Swimming pools (above and below ground) - installation only |
| | Waterproofing |
| | Welding or cutting |
| | Wrecking - buildings or structures |
| 3110 | **Food and food products - fresh, dry or frozen, including:** |
| | Bakery plants |
| | Dextrin - when used in food |
| | Extracts - used in food manufacturing |
| | Feed - animal |
| | Grain milling |
| | Hides and skins produced in slaughtering plants |
| | Milk processing |
| | Packing houses |
| | Pet food |
| | Rendering works |
| | Sugar refining |
| 3121 | **Beverages, including:** |
| | Beer, ale, malt, wine or distilled liquor |
| | Ice (except dry ice) |
| | Soft drinks |
| | Water bottling - in siphons, spring or well |
| 3122 | **Tobacco products** |

24

| Class Code | |
|---|---|
| 3130 | **Textile mills, including:** |
| | Fiber - synthetic and other |
| | Textile bleaching, dyeing, mercerizing, printing, finishing, silk screening - new goods |
| | Textile coating or impregnating |
| | Textile spinning, weaving or knitting mills |
| | Wool combing, pulling, scouring or separating from cotton |
| 3140 | **Textile product mills, including:** |
| | Carpet or rug |
| | Cotton batting, wadding or waste |
| | Net - safety and other |
| | Parachute |
| | Rope, twine or cordage |
| | Sail |
| | Tent or canopy |
| | Textile products - fabricated |
| 3150 | **Apparel (other than leather footwear)** |
| 3160 | **Leather and allied products, including:** |
| | Fur or pelt processing |
| | Hides - tanning, currying, dressing or finishing |
| | Luggage |
| | Saddles, harnesses or horses furnishings |
| | Shoes, boots or slippers |
| 3210 | **Wood products, including:** |
| | Boxes or containers |
| | Doors or windows |
| | Ladders |
| | Lumbering |
| | Mobile homes |
| | Plywood, veneer or veneer products |
| | Prefabricated buildings |
| | Saw mills or planing mills |
| | Straw and straw products |
| | Tie, post or pole yard |
| | Wood preserving |
| 3225 | **Paper and stationery products, including:** |
| | Adhesive tape |
| | Boxes or containers - corrugated or fiberboard |
| | Paper coating or finishing |
| | Pulp |
| 3230 | **Printing and related support activities, including:** |
| | Bookbinding |
| | Lithographing |
| | Patterns - paper |
| 3240 | **Petroleum and coal products, including:** |
| | Asphalt or tar distilling or refining, asphalt works |
| | Coke |
| | Oil refineries |

25

| Class Code | |
|---|---|
| **3250** | **Chemicals, including:** |
| | Adhesives |
| | Aerosol containers - filling or charging for others |
| | Alcohol - (not beverage) |
| | Caulking compounds, putty or similar products |
| | Cellophane and cellophane products |
| | Charcoal, coal briquette |
| | Commercial, household or industrial (including toxic, flammable, explosive or reactive) |
| | Color or pigment preparation |
| | Cosmetics |
| | Detergents |
| | Dextrin - when used in adhesives |
| | Extracts - used in other than food manufacturing |
| | Explosives or fireworks |
| | Gas (including inert, toxic, flammable, explosive or reactive) |
| | Ice - dry |
| | Ink |
| | Lead - red or white |
| | Matches |
| | Paint, varnish, shellac or lacquer |
| | Salts (other than table) |
| | Soap |
| | Turpentine or resin |
| | Wax, wax products, polish |
| **3254** | **Pharmaceutical and medicine preparations and products** |
| **3260** | **Plastic and rubber products, including:** |
| | Bottles or jars |
| | Drums or containers |
| | Floor coverings (not carpets, rugs, ceramic or stone tiles) |
| | Inner tubes |
| | Insulating materials - plastic |
| | Ladders - fiberglass |
| | Lamp shades - plastic |
| | Pipes or tubes |
| | Rubber reclaiming |
| | Rubber stamps |
| | Sponge processing |
| | Tires (including retreading or recapping) |
| **3270** | **Nonmetallic mineral products, including:** |
| | Abrasive or abrasive products (including wheel) |
| | Asbestos goods |
| | Bottles or jars - glass |
| | Bricks or blocks |
| | Cement, concrete mix or plaster - bulk or packaged |
| | Ceramics |
| | China, clay, porcelain or earthenware |
| | Concrete or plaster products - prestressed, non-structural or structural |
| | Diamonds - industrial |
| | Fiberglass |

26

| Class Code |
| --- |

| | |
| --- | --- |
| | **3270 (Contd)** |
| | Glass or glassware |
| | Hone, oil or whetstone |
| | Insulating materials - mineral or organic |
| | Lamp shades - glass |
| | Lime (production) |
| | Marble |
| | Mica goods |
| | Mineral powder or polish |
| | Slate - milling, splitting or roofing |
| | Stone cutting or polishing |
| 3310 | **Primary metal, including:** |
| | Foundries |
| | Galvanizing or tinning |
| | Lead works - pipe, sheet or shot |
| | Metals - extraction or refining (including chemical or electrometallurgical processes) |
| | Metals - extraction or refining-ferrous and non-ferrous (blast furnace, other pyrometallurgical processes) |
| | Rolling mills - cold or hot process |
| | Wire cloth |
| 3320 | **Fabricated metal products, including:** |
| | Ammunition |
| | Cutlery (not powered) and flatware |
| | Doors or windows |
| | Electrical wire or cable |
| | Electroplating, engraving |
| | Forging work |
| | Metal foil |
| | Machine shops, metal works shops (including artistic, decorative and structural) |
| | Metal goods - stamping (not signs) |
| | Metal heat processing (for others) |
| | Patterns - metal (all except paper) |
| | Prefabricated buildings |
| | Razors and razor blades - non-electric |
| | Tools - hand type (not powered) |
| | Valves - (other than engine, intake and exhaust) |

27

| Class Code | |
|---|---|
| 3330 | **Machinery or parts, including:** |
| | Air conditioning or heating (including coal, electric, gas, kerosene or wood) |
| | Appliances and accessories - commercial |
| | Die casting |
| | Elevators, escalators or moving sidewalks |
| | Engine or turbine (not aircraft) |
| | Gas pumps and related equipment |
| | Nails or spikes |
| | Office machines |
| | Photographic supplies or equipment |
| | Power equipment - household type - outdoor or workshop |
| | Pumps or compressors |
| | Refrigeration equipment |
| | Sewing machines - commercial or household |
| | Tools - hand type (powered) |
| | Tools - machine - accessories |
| | Vending machines |
| 3347 | **Computer and electronic products and components, including:** |
| | Alarms - burglar, fire or smoke |
| | Clocks, watches and watchcase |
| | Communications or recording systems or equipment |
| | Hearing aids |
| | Instruments - non-musical - (including analytical, calibrating, control, measuring, testing or recording) |
| | Media - blank (including recordable CDs, DVDs and similar audio-visual materials) |
| | Radio, television or sound systems |
| | Telecommunications equipment |
| 3350 | **Electrical equipment, appliances and components, including:** |
| | Appliances - household - (including electric, gas and other) |
| | Batteries |
| | Electrical generating machinery |
| | Electrical power distribution or transmission equipment |
| | Lamps or lanterns (including electric and other) |
| | Lamp shades (except glass or plastic) |
| | Light bulbs or tubes |
| | Lighting fixtures |
| | Razors and razor blades - electric |
| | Television picture tubes |
| 3367 | **Transportation equipment, including:** |
| | Boat or ship building, repair or servicing - with or without motors |
| | Trailers |
| | Valves - engine, intake and exhaust |
| | Wheels (excluding tires) |
| 3370 | **Furniture and related products, including:** |
| | Mattress or box spring |
| | Venetian blinds |
| 3380 | **Jewelry and silverware, including gem stone cutting or polishing** |

28

| 3395 | **Other manufacturing industries NOC, including:** |
|------|---------------------------------------------------|
|      | Billiard or pool table |
|      | Bone, horn and ivory products |
|      | Brush or broom |
|      | Buttons or fasteners |
|      | Candle |
|      | Carbon paper or inked ribbon |
|      | Coffins or caskets |
|      | Composition goods (not floor coverings) |
|      | Exercise or playground equipment |
|      | Fire extinguishers or fire suppression systems |
|      | Hobby, craft or artists' supplies |
|      | Medical, dental, hospital or surgical equipment, instruments or supplies |
|      | Medical, dental or surgical diagnostic or treatment machines or devices |
|      | Media - pre-recorded (including CDs, DVDs and similar audio-visual materials) |
|      | Musical instruments |
|      | Needles, pins or tacks |
|      | Optical goods |
|      | Orthopedic, ambulation or prosthetic devices |
|      | Pencils, pens, crayons or chalk |
|      | Pipes - tobacco |
|      | Signs - electric and non-electric |
|      | Sporting goods or athletic equipment |
|      | Swimming pools or accessories |
|      | Toys or games |
|      | Umbrellas or canes |
|      | Wigs or hair pieces |
| 4210 | **Miscellaneous durable goods wholesalers NOC, including:** |
|      | Abrasive or abrasive products (including wheel) |
|      | Adhesives |
|      | Adhesive tape |
|      | Aerosol containers |
|      | Alarms - burglar, fire or smoke |
|      | Ammunition and fireworks explosives |
|      | Automobile dismantling |
|      | Bicycles (not motorized) |
|      | Billiard or pool table |
|      | Bolts, nuts, rivets, screws or washers |
|      | Bottle - glass or plastic - waste |
|      | Exercise or playground equipment |
|      | Hobby, craft or artist's supplies |
|      | Hone, oil or whetstone |
|      | Firearms |
|      | Fire protection and suppression equipment |
|      | Junk and metal scrap dealers |
|      | Lamp shades |
|      | Leather goods |
|      | Lighting fixtures - gas |
|      | Luggage |
|      | Media - pre-recorded (including CDs, DVDs and similar audio-visual materials) |

29

|      | **4210 (Contd)** |
|------|------------------|
|      | Modular units |
|      | Musical instruments |
|      | Parachute |
|      | Pipes - tobacco |
|      | Rag or rubber stock - (including secondhand) |
|      | Rubber (not mechanical, medical or rubber stamps), rubber scrap and scrap tire dealers |
|      | Signs - (other than electrical) |
|      | Sporting goods or athletic equipment distributors |
|      | Swimming pools or accessories |
|      | Toys or games |
| **4211** | **Motor vehicle and motor vehicle parts and supplies, including:** |
|      | Automotive glass |
|      | Tires and inner tubes - automobile, bus, truck and other |
|      | Tools - hand type - motor vehicle (except machinists precision) |
|      | Wheels |
| **4212** | **Furniture and home furnishings, including:** |
|      | Brush or broom |
|      | Carpet, rug or other floor coverings |
|      | China, porcelain or earthenware - household |
|      | Glassware - household type |
|      | Lamps or lanterns |
|      | Venetian blinds |
|      | **Lumber and other construction materials, including:** |
| **4213** | Ceramics |
|      | Clay products |
|      | Concrete or plaster products - prestressed, non-structural or structural |
|      | Doors or windows |
|      | Glass plate |
|      | Lime (other than agricultural) |
|      | Marble building products |
|      | Prefabricated buildings |
|      | **Professional and commercial equipment and supplies, including:** |
| **4214** | China, porcelain or earthenware - commercial |
|      | Computers |
|      | Glassware, medical |
|      | Hearing aids |
|      | Instruments - analytical, calibrating, measuring, testing or recording (not controlling or indicating) |
|      | Medical, dental, hospital or surgical equipment or supplies stores |
|      | Office machines or appliances (no repair) |
|      | Optical goods |
|      | Orthopedic, ambulation or prosthetic devices |
|      | Photographic equipment and supplies (other than video cameras - household type) |
|      | Safes or vaults |
|      | Signs - electrical |
|      | Vending machines |

30

| 4215 | Metal and mineral (except petroleum), including:<br>Cable (not insulated)<br>Coke<br>Die casting<br>Metal foil<br>Metal goods - stamping (not signs)<br>Mica goods<br>Nails or spikes<br>Steel wool or wire wool<br>Wire cloth<br>Wire rope or cable - metal |
|------|-----|
| 4216 | Electrical goods and equipment, including:<br>Appliances - household type (electric), including: vacuum, sewing machines, cooking ranges, refrigerators, washing machines, dryers, air conditioners (room), radio, television, stereo, compact disc players and video cameras<br>Battery<br>Cable (insulated)<br>Communication or recording systems or equipment<br>Electrical generating machinery<br>Electrical power distribution or transmission equipment<br>Electrical wire or cable<br>Light bulbs or tubes<br>Lighting fixtures - electric<br>Media - blank (including CDs, DVDs and similar audio-visual materials)<br>Telecommunication equipment |
| 4217 | Hardware, plumbing and heating equipment and supplies, including:<br>Air conditioning equipment (excluding room)<br>Appliances - household type (gas), including: cooking ranges and dryers<br>Cutlery (not powered) and flatware<br>Heating equipment (including coal, electric, gas, kerosene or wood)<br>Heating or combined heating and air conditioning systems or equipment<br>Needles, pins or tacks<br>Refrigeration systems or equipment - commercial<br>Tools - hand type (except motor vehicle and machinists precision tools)<br>Valves - plumbing and heating |
| 4218 | Machinery, equipment and supplies, including:<br>Aircraft or aircraft parts<br>Barber or beauty shop supplies<br>Bearings<br>Boat or ship - with or without motors<br>Bottle - glass or plastic - except waste<br>Coffins or caskets<br>Contractor's equipment dealers, including ladders, hoists, scaffolds or towers<br>Diamonds - industrial<br>Drums or containers - metal or plastic<br>Elevators, escalators or moving sidewalks<br>Engine or turbine (not aircraft) |

31

Exhibit A, Page 313

Gardening and light farming supply
Ink - printing
Instruments - controlling or indicating
Janitorial equipment and supplies (except chemicals)
Ladders - wood and other than wood
Machinery (and parts) - construction, farm, industrial, mining, metalworking, materials handling type
Machinery or equipment - construction or industrial - mobile type, farm, yard or garden
Oil or gas well supplies or equipment dealers - secondhand
Pumps or compressors
Patterns
Power equipment (except household type - outdoor or workshop)
Railroad engine, cars or car parts
Rope (except wire rope)
Rubber goods - mechanical
Sewing machines - commercial
Tools - hand type - machinists precision only (except motor vehicle)
Twine or cordage
Valves (other than plumbing and heating)

4219    Jewelry, watch, precious stone and precious metals, including:
Clocks
Diamonds - (except industrial)
Electronic games
Silverware

4221    Paper and stationery products, including:
Bookbinding and printers supplies
Boxes or containers - corrugated, fiberboard or wood
Carbon paper or inked ribbon
Cellophane tape
Ink - writing
Pencils, pens, crayons or chalk
Printers or electrotypers supplies
Rubber stamps
Stationery products

4222    Drug and druggists' sundries, including:
Drug, medicine or pharmaceutical preparations
Razors and razor blades - electric and non-electric
Rubber goods - medical
Salts - bath

4223    Apparel, piece goods and notions, including:
Fur garments and pelts
Nets - safety and other
Textile products
Umbrellas or canes

32

| | |
|---|---|
| 4225 | Farm product raw material, including: |
| | Cotton or wool merchants |
| | Grain elevator operations |
| | Feed, hay or straw - sales and/or storage including feed, hay or straw products |
| | Hide dealers and distributors - raw |
| | Livestock dealers or commission merchants or sales companies |
| 4226 | **Chemicals and allied products, including:** |
| | Alcohol - (not beverage) |
| | Anhydrous ammonia |
| | Caulking compounds, putty or similar products |
| | Detergents |
| | Explosives (except ammunition and fireworks) |
| | Gas (including inert, toxic, flammable, explosive, reactive) |
| | Ice - dry |
| | Janitorial chemicals |
| | Plastic or rubber goods - household and other |
| | Plastic - raw material |
| | Salts - industrial |
| | Soap |
| | Turpentine or resin |
| | Wax (except petroleum), wax products or polish |
| 4227 | **Petroleum and petroleum products, including:** |
| | Oil distributing - oil terminals and LPG tank farms |
| 4228 | **Beer, ale, malt, wine or distilled alcoholic beverages** |
| 4229 | **Books, periodicals and newspapers** |
| 4230 | **Groceries and related products, including:** |
| | Beverages - nonalcoholic |
| | Commission merchants - produce |
| | Milk depots or dealers or distributors |
| | Pet food |
| 4240 | **Miscellaneous non-durable goods wholesalers NOC, including:** |
| | Candles |
| | Charcoal, coal briquette |
| | Cotton batting, wadding or waste |
| | Fertilizer |
| | Ice (except dry ice) |
| | Matches |
| | Paint, varnish, shellac or lacquer |
| | Saddles, harnesses or horse furnishings |
| | Seed merchants |
| | Tobacco products |
| | Wigs or hair pieces |

33

**Retail Trade**

| | |
|---|---|
| **4410** | **Motor vehicle dealers, including:** |
| | Aircraft or aircraft parts |
| | Boats |
| | Campers or travel trailers |
| | Mobile homes |
| | Motorcycles, mopeds, scooters |
| | Recreational vehicles (including snowmobiles, all-terrain vehicles) |
| **4413** | **Automotive parts, supplies, accessories and tire stores** |
| **4420** | Furniture, home furnishings and floor covering stores |
| **4430** | Electronics and appliance stores - household, including: |
| | Air conditioning systems or equipment (room) dealers |
| | Camera and photographic equipment |
| | Computer |
| **4440** | **Building material, garden equipment and supplies dealers, including:** |
| | Electrical and lighting |
| | Feed, grain or hay dealers (other than pet) |
| | Fence |
| | Fertilizer |
| | Glass dealers and glaziers |
| | Hardware |
| | Heating and/or air conditioning |
| | Machinery or equipment |
| | Plumbing supplies and fixtures |
| | Paint, wallpaper or wall covering |
| | Power equipment (household type) outdoor or workshop |
| | Refrigeration systems or equipment |
| | Tools (hand type) - powered and not powered |
| **4451** | **Supermarkets, grocery and convenience stores** |
| **4452** | **Specialty food stores, including:** |
| | Bakeries |
| | Beverage - soft drinks |
| | Dairy products or butter and egg |
| | Fruit or vegetable |
| | Health or natural food |
| | Ice cream |
| | Meat, fish, poultry or seafood |
| **4453** | **Beer, wine and liquor stores (packaged)** |
| **4461** | **Pharmacies and drug stores (except mail order or on-line drug stores)** |
| **4462** | **Health and personal care stores, including:** |
| | Hearing aid |
| | Optical goods |
| **4470** | **Gasoline stations (full or self-service), including:** |
| | Convenience food/gasoline stores (if food store is predominant activity, use code 4451) |
| **4480** | **Clothing, clothing accessories and shoe stores, including:** |
| | Army and Navy |
| | Tailor merchants |
| | Tailoring or dressmaking establishments - custom |
| **4483** | **Jewelry, luggage and leather goods stores** |

| | |
|---|---|
| **4510** | **Sporting goods, hobby, toy, book and music stores, including:** |
| | Bicycle - sales and servicing |
| | Books and magazines |
| | Dry goods (including fabrics, yarn and piece goods) |
| | Newsstands |
| | Painting, picture or frame |
| | Video stores (other than stores renting video tapes, disks or electronic game cartridges) |
| **4520** | **General merchandise stores, including:** |
| | Catalog or premium coupon redemption stores |
| **4530** | **Miscellaneous store retailers NOC, including:** |
| | Antique stores |
| | Auctions |
| | Bazaars |
| | Fire protection equipment dealers |
| | Florists |
| | Gift shops |
| | Monuments, tombstones and statuary |
| | Office machines or appliances (with or without repair) |
| | Pet stores |
| | Powered equipment dealers |
| | Precision and scientific tools and instruments |
| | Sales or service organizations |
| | Secondhand or salvage dealers or distributors |
| | Ship chandler stores |
| | Stationery or paper products stores |
| | Swimming pools and supplies |
| | Tobacco products stores |
| **4540** | **Nonstore retailers NOC, including:** |
| | Internet retailers |
| | Mail order houses or on-line drug stores |
| | Vending machine operations (incl. beverage, confection, food, ice and tobacco products) |
| **4543** | **Fuel dealers (other than gasoline), including:** |
| | Coal, oil, kerosene or wood |
| | Gas (other than gasoline) including LPG |
| | **Transportation And Warehousing** |
| **4810** | **Air transportation - passenger and freight (not scenic or sightseeing)** |
| **4820** | **Rail transportation-haul/short line (not urban transit, commuter, scenic or sightseeing)** |
| **4835** | **Water transportation-boat/ship, passenger/freight (not scenic or sightseeing), including:** |
| | Towing services - boat or ship |
| **4840** | **Truck transportation** |
| **4850** | **Transit and ground passenger transportation, including:** |
| | Bus stations or terminals - not independently operated |
| | Bus transportation companies - passenger and commuter (not scenic or sightseeing) |
| | Limousine or taxi service |
| | Railroads - urban transit and commuter rail systems |

35

| | |
|---|---|
| 4860 | **Pipeline transportation (including gas, oil, slurry-nonflammable mixtures, other NOC)** |
| 4870 | **Scenic and sightseeing transportation, including: air, boat, bus, rail or ship** |
| 4880 | **Support activities for transportation, including:** |
| | Airport-lessees part of airport engaged in sale, servicing/repair of aircraft/pilot instructions |
| | Airports - commercial and private |
| | Bus stations or terminals - independent operation |
| | Dock operations (including coal, grain or ore) |
| | Freight forwarders or handlers |
| | Ship ceiling or scaling |
| | Snow and ice removal - streets and highways |
| | Stevedoring |
| | Stockyards |
| | Street cleaning |
| | Toll bridges |
| | Towing services - motor vehicles |
| | Weighers/samplers/inspectors of merchandise-vessels, docks, railway stations/warehouses |
| | Wharf/waterfront property-occupied by insured for freight/passenger purpose & ferry docks or terminals |
| | Wrecking - marine |
| 4920 | **Couriers, messengers and express companies** |
| 4930 | **Warehousing and storage, including:** |
| | Automobile storage |
| | Cotton compressing |
| | Tobacco re-handling or warehousing |
| | Warehouses (not lessor's risk) - including cold storage, public, private, and mini-warehouses |

| | |
|---|---|
| | **Information** |
| 5111 | **Newspaper, periodical, book and database publishers** |
| 5112 | **Software publishers, including pre-packaged computer software** |
| 5125 | **Motion picture and sound recording industries, including:** |
| | Recording studios and teleproduction studios |
| | Theaters - drive-in or motion picture |
| 5135 | **Broadcasting and telecommunications and other information services, including:** |
| | Cable or subscription television companies |
| | Radio or television broadcasting stations |
| | Telecommunication equipment or service providers |
| | Telegraph companies |
| 5145 | **Information services and data processing services, including:** |
| | Internet access or service providers |
| | Libraries |

| | |
|---|---|
| | **Finance And Insurance** |
| 5222 | **Automated teller machine providers - non-bank** |
| 5223 | **Mortgage and non-mortgage loan agents, brokers and correspondents** |
| 5224 | **Factors and pawn shops** |
| 5225 | **Automated clearing houses and associations** |

36

| Finance And Insurance | |
|---|---|
| 5229 | Check cashiers, currency exchanges and non-financial institution safe deposit companies |
| 5232 | Commodity brokers and dealers, Commodity exchanges |
| 5233 | Securities sales organizations, including mutual fund sales organizations |
| 5234 | Escrow agencies - other than real estate |
| 5239 | Investment advice |
| 5241 | Health maintenance organizations |
| 5242 | Insurance agents and brokers (other than insurance carriers), including: Claims adjusters, investigation services, loss prevention services and other related activities |
| 5252 | Employee benefit plans (labor union plans only) including health, pension and welfare |
| 5253 | Employee benefit plans (other than labor union plans) including health, pension and welfare |
| Real Estate And Rental And Leasing | |
| 5310 | Real estate operators and lessors, including: Apartment buildings or hotels Auditoriums and halls Buildings or premises - including bank, office, mercantile, manufacturing (lessor's risk only) Dwellings - family (lessor's risk only) Exhibition or convention buildings Gasoline or oil supply stations - retail (lessor's risk only) Hotels or motels (lessor's risk only) Markets - open air and not open air (lessor's risk only) Model homes Parking (public) - shopping centers (lessor's risk only) Real estate development property Shopping centers and indoor malls (lessor's risk only) Warehouses (lessor's risk only) Wharf and waterfront property (lessor's risk only) |
| 5312 | Real estate agents, brokers managers |
| 5313 | Escrow agencies (real estate) and title agents |
| 5320 | Rental and leasing services, including: Agricultural equipment and machinery Automobile renting or leasing Beach chairs and umbrellas Bicycles Boats, including canoes, motor boats, rowboat and sail boats Chairs Concrete or cementing distributing towers Contractors equipment Golf mobiles Medical, hospital and surgical supplies Rental stores, including machinery and equipment Tents or canopies Trailers Video stores Water softening equipment |

Exhibit A, Page 319

| | Professional, Scientific And Technical Services |
|---|---|
| 5405 | **Offices of lawyers and other legal services** |
| 5409 | **Accounting, tax preparation, bookkeeping and payroll services** |
| 5413 | **Architectural, engineering and related services, including:** |
| | **Draftsmen** |
| | **Surveyors - land** |
| 5414 | **Specialized design services, including interior decorating** |
| 5415 | **Computer systems design and related services, including:** |
| | Computer software (not hardware) service or repair |
| | Consulting or programming |
| | Data processing - time sharing and other operations |
| | Web site designers |
| 5416 | **Management, scientific and technical consulting services NOC** |
| 5417 | **Scientific, research and development services** |
| 5418 | **Advertising and related services, including outdoor sign companies** |
| 5419 | **Other professional, scientific and technical services NOC, including:** |
| | Diving - marine |
| | Fire extinguishers - servicing, refilling or testing |
| | Inspection and appraisal companies - inspecting for insurance or valuation purposes |
| | Marine appraisers or surveyors |
| | Photographers |
| | Sign painting or lettering inside or on buildings or structures |
| | Veterinarian or veterinary hospitals |
| | **Administrative, Support, Waste Management And Remediation Services** |
| 5613 | **Employment services (agencies)** |
| | **Business support services, including:** |
| 5614 | Auctioneers - sales conducted away from the insured's premises |
| | Copying and duplicating services - retail |
| | Internet auctions (facilitators only) |
| | Mailbox or packing stores |
| | Mailing or addressing companies |
| 5615 | **Travel arrangement and reservation services (except ticket agencies), including travel agency tours** |
| | **Management, scientific and technical consulting companies, including:** |
| 5616 | Alarms and alarm systems - installation, servicing, repair, or monitoring |
| | Detective or investigative agencies - private |
| | Locksmiths |
| | Security and patrol agencies |

38

| | Professional, Scientific And Technical Services |
|---|---|
| 5617 | **Services to buildings and dwellings, including:** |
| | Carpet, rug, furniture or upholstery cleaning - in shop or on customer's premises |
| | Chimney cleaning |
| | Floor waxing |
| | Fumigating |
| | Handyperson |
| | Janitorial services |
| | Landscape gardening |
| | Lawn care services |
| | Pest control services |
| | Snow and ice removal - driveways and parking lots |
| | Swimming pools (above or below ground) - servicing or repair |
| | Tree pruning, dusting, spraying, repairing, trimming or fumigating |
| | Water softening equipment - installation, servicing or repair |
| | Window cleaning or decorating |
| 5618 | **Collection agencies and credit reporting agencies** |
| 5620 | **Waste management and remediation services, including:** |
| | Debris removal - construction site |
| | Garbage or refuse dumps |
| | Portable toilet rentals |
| | Recycling collection centers |
| | Septic tank systems and sewer cleaning |
| | Waste and reclaimed materials |
| 5630 | **Ticket agencies** |
| 5640 | **Armored car services** |
| | Education Services |
| 6111 | **Educational services (private/public-for-profit and not-for-profit), including school and dormitory facilities** |
| | Healthcare And Social Assistance |
| 6210 | **Offices of physicians, dentists and other health practitioners (other than home health care), including:** |
| | Ambulance service, first aid or rescue squads (private) |
| | Blood banks |
| | Health care facilities, clinics, dispensaries or infirmaries - outpatient care only |
| | Medical, dental and diagnostic laboratories |
| 6216 | **Home health care services** |
| 6220 | **Hospitals, including convalescent homes (not mental or psychopathic institutions)** |
| 6230 | **Nursing and residential care facilities, including:** |
| | Health care facilities - alcohol and drug |
| | Health care facilities - homes for the aged, physically handicap., mental and psychopathic |
| | Orphan homes |
| | Shelters, mission, settlement or halfway houses |
| 6240 | **Social assistance services, including day care centers - adult and children** |

39

| Arts, Entertainment And Recreation | |
|---|---|
| 7110 | **Performing arts, spectator sports and related industries, including:** |
| | Athletic teams - professional or semi-professional |
| | Carnivals, circuses or fairs |
| | Entertainers |
| | Stadiums and sports arenas |
| | Taxidermists |
| | Theaters (other than motion picture) |
| | Theatrical companies - traveling |
| 7112 | **Racetracks and racing (motor vehicle and other)** |
| 7120 | **Museums, art galleries, historical sites, zoos and similar institutions** |
| 7130 | **Amusement and recreation (except casinos, private country clubs or golf courses, and racetracks) NOC, including:** |
| | Amusement devices operated in connection with carnivals or fairs |
| | Animals (saddle) - for rent or private |
| | Archery ranges |
| | Bathhouses or bathing pavilions |
| | Beaches |
| | Billiard or pool halls |
| | Bingo games - in public halls or theaters (commercially operated) |
| | Boat storage and moorage |
| | Boatyards or marinas - public |
| | Boats - canoes or rowboats - not for rent - not equipped with motors |
| | Boats - motor or sail (not for rent); and nonowned over 26 feet |
| | Bowling lanes |
| | Carnival or circus companies |
| | Children's play centers - indoors |
| | Clubs - handball, horseback riding (no commercial instructions), racket sports, swimming |
| | Community recreational facilities (not operated by government agency) |
| | Dance halls, ballrooms or discotheques |
| | Fireworks exhibitions |
| | Fishing piers |
| | Fishing ponds or lakes - commercially operated |
| | Golf courses - miniature |
| | Golf courses-municipal or public, driving ranges (not private country clubs or golf courses) |
| | Guides or outfitters |
| | Gymnasiums |
| | Health or exercise clubs, studios or facilities |
| | Parades |
| | Riding academies |
| | Rifle or pistol ranges, skeet shooting or trap shooting |
| | Rodeos |
| | Skating rinks - ice or roller |
| | Ski lifts, tows or runs |
| | Soap box derbies |
| | Stables - boarding, livery or racing |
| | Swimming pools (commercially operated) |
| | Youth recreation programs |
| 7132 | **Casinos** |

40

| Arts, Entertainment And Recreation | |
|---|---|
| 7139 | **Private country clubs or golf courses and similar facilities, including Clubs providing food, drink or lodging** |

| Accommodation And Food Services | |
|---|---|
| 7215 | **Accommodations, including:** |
| | Bed and breakfasts |
| | Boarding or rooming houses |
| | Camps and campgrounds |
| | Dormitories |
| | Dude ranches |
| | Hotels and motels |
| | Mobile home parks or courts |
| | Nurses homes |
| 7225 | **Food services and drinking places, including:** |
| | Caterers |
| | Commissary work |
| | Delicatessens |
| | Night clubs, cabarets and comedy clubs |

| Other Services (Except Public Administration) | |
|---|---|
| 8111 | **Automotive mechanical and electrical repair and maintenance, including:** |
| | Car washes - self-service and other |
| | Quick lubrication services |
| | Rust proofing |
| 8112 | **Electronic equipment, commercial equipment and personal and household goods repair, including:** |
| | Agricultural equipment and machinery |
| | Appliances and accessories - installation, service or repair |
| | Blacksmithing |
| | Computer hardware (not software) service or repair |
| | Electrical apparatus NOC - installation, service or repair |
| | Furniture or woodworking (shop only) - stripping, refinishing or repairing |
| | Gunsmiths |
| | Home furnishings installation |
| | Machinery or equipment (farm, industrial and all other) - servicing or repair |
| | Office machines or appliances - installation, servicing or repair |
| | Piano tuning |
| | Shoe repair shops |
| | Television or radio receiving set installation or repair |
| | Upholstering - shop and other |
| 8121 | **Other personal care services NOC, including:** |
| | Barber shops |
| | Beauty parlors, nail and hair styling salons |
| | Event, party or wedding planners |
| | Pet grooming or training |
| | Photo finishing laboratories |
| | Saunas and baths (public) |
| | Spas or personal enhancement facilities |
| | Sun tanning salons |
| | Tattoo parlors |

41

| Other Services (Except Public Administration) | |
|---|---|
| 8122 | **Death care services** |
| 8123 | **Dry cleaning and laundry services** |
| 8129 | **Parking lots and garages (public and private)** |
| 8131 | **Religious, grant making and giving services, including:** |
| | Churches or other houses of worship |
| | Convents or monasteries |
| | Rectories |
| 8133 | **Social advocacy and civic, social, business, professional, political and similar organizations, including:** |
| | Athletic programs - amateur |
| | Boy or girl scout councils |
| | Clubs (civic, service or social) - not providing food, drink or lodging |
| | Fraternal orders |
| | Fraternities and sororities |
| | Political campaign headquarters or offices |
| | Professional and trade associations |
| | Social gatherings and meetings |
| | Social services (consulting services only) - operated by the private sector |
| | Sports or outdoor activities - commercially operated |
| | YMCA, YWCA or similar institutions |
| 8139 | **Condominium, co-operative and townhouse owners' associations and planned unit developments** |
| 8140 | **Labor unions - national or international unions including local unions under a single policy** |
| 8141 | **Labor unions - national or international unions only** |
| 8142 | **Labor unions - local unions only** |

| Public Administration | |
|---|---|
| 9202 | **Federal government** |
| 9203 | **State, county, city, town, township, village, borough - including police department** |
| 9204 | **State, county, city, town, township, village, borough - excluding police department** |
| 9205 | **A police department of any state, county, city, town, township, village, borough or other political subdivision** |
| 9206 | **A department, division, office or institution of any state, county, city, town, township, village, borough or other political subdivision NOC, including:** |
| | Fire departments |
| | First aid squads |
| | Penal institutions |
| 9250 | **Local public housing authorities and urban renewal projects under the supervision of the Department of Housing and Urban Development (HUD)** |

42

**Fidelity Exposure Units - Blanket**
**TABLE 2**
*Interpolate exposure units for limits of liability not shown*

**Limit Of Liability $100 - $750**

| No. of Ratable Employees/Persons | Limit Of Liability | | | |
| --- | --- | --- | --- | --- |
| | **$100** | **$250** | **$500** | **$750** |
| 5 or less | 29.375 | 33.125 | 41.875 | 46.250 |
| 6 | 29.750 | 33.750 | 43.750 | 48.750 |
| 7 | 30.125 | 34.375 | 45.625 | 51.250 |
| 8 | 30.500 | 35.000 | 47.500 | 53.750 |
| 9 | 30.875 | 35.625 | 49.375 | 56.250 |
| 10 | 31.250 | 36.250 | 51.250 | 58.750 |
| 11 | 31.625 | 36.875 | 53.125 | 61.250 |
| 12 | 32.000 | 37.500 | 55.000 | 63.750 |
| 13 | 32.375 | 38.125 | 56.875 | 66.250 |
| 14 | 32.750 | 38.750 | 58.750 | 68.750 |
| 15 | 33.125 | 39.375 | 60.625 | 71.250 |
| 16 | 33.500 | 40.000 | 62.500 | 73.750 |
| 17 | 33.875 | 40.625 | 64.375 | 76.250 |
| 18 | 34.250 | 41.250 | 66.250 | 78.750 |
| 19 | 34.625 | 41.875 | 68.125 | 81.250 |
| 20 | 35.000 | 42.500 | 70.000 | 83.750 |
| 21 | 35.375 | 43.125 | 71.875 | 86.250 |
| 22 | 35.750 | 43.750 | 73.750 | 88.750 |
| 23 | 36.125 | 44.375 | 75.625 | 91.250 |
| 24 | 36.500 | 45.000 | 77.500 | 93.750 |
| 25 | 36.875 | 45.625 | 79.375 | 96.250 |
| **Each of next** | | | | |
| "        25        (26 - 50) | 0.375 | 0.625 | 1.875 | 2.500 |
| "        50        (51 - 100) | 0.300 | 0.500 | 1.500 | 2.000 |
| "        50        (101 - 150) | 0.225 | 0.375 | 1.125 | 1.500 |
| "        50        (151 - 200) | 0.150 | 0.250 | 0.750 | 1.000 |
| "       100       (201 - 300) | 0.120 | 0.200 | 0.600 | 0.800 |
| "       200       (301 - 500) | 0.090 | 0.150 | 0.450 | 0.600 |
| "       500       (501 - 1,000) | 0.075 | 0.125 | 0.375 | 0.500 |
| "       500       (1,001 - 1,500) | 0.060 | 0.100 | 0.300 | 0.400 |
| "     1,000     (1,501 - 2,500) | 0.045 | 0.075 | 0.225 | 0.300 |
| "     2,500     (2,501 - 5,000) | 0.030 | 0.050 | 0.150 | 0.200 |
| "     5,000     (5,001 - 10,000) | 0.021 | 0.035 | 0.105 | 0.140 |
| "    10,001     Or more | 0.015 | 0.025 | 0.075 | 0.100 |

43

| No. Of Ratable | Limit Of Liability | | | |
|---|---|---|---|---|
| All of first: | $100 | $250 | $500 | $750 |
| 50 | 46.250 | 61.250 | 126.250 | 158.750 |
| 100 | 61.250 | 86.250 | 201.250 | 258.750 |
| 150 | 72.500 | 105.000 | 257.500 | 333.750 |
| 200 | 80.000 | 117.500 | 295.000 | 383.750 |
| 300 | 92.000 | 137.500 | 355.000 | 463.750 |
| 500 | 110.000 | 167.500 | 445.000 | 583.750 |
| 1,000 | 147.500 | 230.000 | 632.500 | 833.750 |
| 1,500 | 177.500 | 280.000 | 782.500 | 1,033.750 |
| 2,500 | 222.500 | 355.000 | 1,007.500 | 1,333.750 |
| 5,000 | 297.500 | 480.000 | 1,382.500 | 1,833.750 |
| 10,000 | 402.500 | 655.000 | 1,907.500 | 2,533.750 |
| Exposure Units Per Premises | 5.500 | 6.000 | 6.500 | 6.750 |

### Limit Of Liability $1,000 - $5,000

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $1,000 | $1,500 | $2,000 | $2,500 | $5,000 |
| 5 or less | 50.625 | 55.000 | 59.375 | 63.750 | 76.250 |
| 6 | 53.750 | 58.750 | 63.750 | 68.750 | 82.500 |
| 7 | 56.875 | 62.500 | 68.125 | 73.750 | 88.750 |
| 8 | 60.000 | 66.250 | 72.500 | 78.750 | 95.000 |
| 9 | 63.125 | 70.000 | 76.875 | 83.750 | 101.250 |
| 10 | 66.250 | 73.750 | 81.250 | 88.750 | 107.500 |
| 11 | 69.375 | 77.500 | 85.625 | 93.750 | 113.750 |
| 12 | 72.500 | 81.250 | 90.000 | 98.750 | 120.000 |
| 13 | 75.625 | 85.000 | 94.375 | 103.750 | 126.250 |
| 14 | 78.750 | 88.750 | 98.750 | 108.750 | 132.500 |
| 15 | 81.875 | 92.500 | 103.125 | 113.750 | 138.750 |
| 16 | 85.000 | 96.250 | 107.500 | 118.750 | 145.000 |
| 17 | 88.125 | 100.000 | 111.875 | 123.750 | 151.250 |
| 18 | 91.250 | 103.750 | 116.250 | 128.750 | 157.500 |
| 19 | 94.375 | 107.500 | 120.625 | 133.750 | 163.750 |
| 20 | 97.500 | 111.250 | 125.000 | 138.750 | 170.000 |
| 21 | 100.625 | 115.000 | 129.375 | 143.750 | 176.250 |
| 22 | 103.750 | 118.750 | 133.750 | 148.750 | 182.500 |
| 23 | 106.875 | 122.500 | 138.125 | 153.750 | 188.750 |
| 24 | 110.000 | 126.250 | 142.500 | 158.750 | 195.000 |
| 25 | 113.125 | 130.000 | 146.875 | 163.750 | 201.250 |
| Each of next: | | | | | |
| "  25   (26 - 50) | 3.125 | 3.750 | 4.375 | 5.000 | 6.250 |
| "  50   (51 - 100) | 2.500 | 3.000 | 3.500 | 4.000 | 5.000 |
| "  50   (101 - 150) | 1.875 | 2.250 | 2.625 | 3.000 | 3.750 |
| "  50   (151 - 200) | 1.250 | 1.500 | 1.750 | 2.000 | 2.500 |
| "  100   (201 - 300) | 1.000 | 1.200 | 1.400 | 1.600 | 2.000 |
| "  200   (301 - 500) | 0.750 | 0.900 | 1.050 | 1.200 | 1.500 |

Exhibit A, Page 326

| No. Of Ratable | Limit Of Liability | | | | |
| Employees/Persons | $1,000 | $1,500 | $2,000 | $2,500 | $5,000 |
|---|---|---|---|---|---|
| "     500     (501 - 1,000) | 0.625 | 0.750 | 0.875 | 1.000 | 1.250 |
| "     500     (1,001 - 1,500) | 0.500 | 0.600 | 0.700 | 0.800 | 1.000 |
| "     1,000     (1,501 - 2,500) | 0.375 | 0.450 | 0.525 | 0.600 | 0.750 |
| "     2,500     (2,501 - 5,000) | 0.250 | 0.300 | 0.350 | 0.400 | 0.500 |
| "     5,000     (5,001 - 10,000) | 0.175 | 0.210 | 0.245 | 0.280 | 0.350 |
| "     10,001     or more | 0.125 | 0.150 | 0.175 | 0.200 | 0.250 |
| All of first: | | | | | |
| "     50 | 191.250 | 223.750 | 256.250 | 288.750 | 357.500 |
| "     100 | 316.250 | 373.750 | 431.250 | 488.750 | 607.500 |
| "     150 | 410.000 | 486.250 | 562.500 | 638.750 | 795.000 |
| "     200 | 472.500 | 561.250 | 650.000 | 738.750 | 920.000 |
| "     300 | 572.500 | 681.250 | 790.000 | 898.750 | 1,120.000 |
| "     500 | 722.500 | 861.250 | 1,000.000 | 1,138.750 | 1,420.000 |
| "     1,000 | 1,035.000 | 1,236.250 | 1,437.500 | 1,638.750 | 2,045.000 |
| "     1,500 | 1,285.000 | 1,536.250 | 1,787.500 | 2,038.750 | 2,545.000 |
| "     2,500 | 1,660.000 | 1,986.250 | 2,312.500 | 2,638.750 | 3,295.000 |
| "     5,000 | 2,285.000 | 2,736.250 | 3,187.500 | 3,638.750 | 4,545.000 |
| "     10,000 | 3,160.000 | 3,786.250 | 4,412.500 | 5,038.750 | 6,295.000 |
| Exposure Units Per Premises | 7.000 | 7.250 | 7.500 | 7.750 | 9.000 |

Limit Of Liability $7,500- $20,000

| No. Of Ratable | Limit Of Liability | | | | |
| Employees/Persons | $7,500 | $10,000 | $12,500 | $15,000 | $20,000 |
|---|---|---|---|---|---|
| 5 or less | 88.750 | 101.250 | 109.375 | 117.500 | 133.750 |
| 6 | 96.250 | 110.000 | 118.750 | 127.500 | 145.000 |
| 7 | 103.750 | 118.750 | 128.125 | 137.500 | 156.250 |
| 8 | 111.250 | 127.500 | 137.500 | 147.500 | 167.500 |
| 9 | 118.750 | 136.250 | 146.875 | 157.500 | 178.750 |
| 10 | 126.250 | 145.000 | 156.250 | 167.500 | 190.000 |
| 11 | 133.750 | 153.750 | 165.625 | 177.500 | 201.250 |
| 12 | 141.250 | 162.500 | 175.000 | 187.500 | 212.500 |
| 13 | 148.750 | 171.250 | 184.375 | 197.500 | 223.750 |
| 14 | 156.250 | 180.000 | 193.750 | 207.500 | 235.000 |
| 15 | 163.750 | 188.750 | 203.125 | 217.500 | 246.250 |
| 16 | 171.250 | 197.500 | 212.500 | 227.500 | 257.500 |
| 17 | 178.750 | 206.250 | 221.875 | 237.500 | 268.750 |
| 18 | 186.250 | 215.000 | 231.250 | 247.500 | 280.000 |
| 19 | 193.750 | 223.750 | 240.625 | 257.500 | 291.250 |
| 20 | 201.250 | 232.500 | 250.000 | 267.500 | 302.500 |
| 21 | 208.750 | 241.250 | 259.375 | 277.500 | 313.750 |
| 22 | 216.250 | 250.000 | 268.750 | 287.500 | 325.000 |

45

Exhibit A, Page 327

| No. Of Ratable | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| Employees/Persons | $7,500 | $10,000 | $12,500 | $15,000 | $20,000 |
| 23 | 223.750 | 258.750 | 278.125 | 297.500 | 336.250 |
| 24 | 231.250 | 267.500 | 287.500 | 307.500 | 347.500 |
| 25 | 238.750 | 276.250 | 296.875 | 317.500 | 358.750 |
| **Each of next:** | | | | | |
| "     25     (26 - 50) | 7.500 | 8.750 | 9.375 | 10.000 | 11.250 |
| "     50     (51 - 100) | 6.000 | 7.000 | 7.500 | 8.000 | 9.000 |
| "     50     (101 - 150) | 4.500 | 5.250 | 5.625 | 6.000 | 6.750 |
| "     50     (151 - 200) | 3.000 | 3.500 | 3.750 | 4.000 | 4.500 |
| "     100    (201 - 300) | 2.400 | 2.800 | 3.000 | 3.200 | 3.600 |
| "     200    (301 - 500) | 1.800 | 2.100 | 2.250 | 2.400 | 2.700 |
| "     500    (501 - 1,000) | 1.500 | 1.750 | 1.875 | 2.000 | 2.250 |
| "     500    (1,001 - 1,500) | 1.200 | 1.400 | 1.500 | 1.600 | 1.800 |
| "     1,000  (1,501 - 2,500) | 0.900 | 1.050 | 1.125 | 1.200 | 1.350 |
| "     2,500  (2,501 - 5,000) | 0.600 | 0.700 | 0.750 | 0.800 | 0.900 |
| "     5,000  (5,001 - 10,000) | 0.420 | 0.490 | 0.525 | 0.560 | 0.630 |
| "     10,001    or more | 0.300 | 0.350 | 0.375 | 0.400 | 0.450 |
| **All of first:** | | | | | |
| "     50 | 426.250 | 495.000 | 531.250 | 567.500 | 640.000 |
| "     100 | 726.250 | 845.000 | 906.250 | 967.500 | 1,090.000 |
| "     150 | 951.250 | 1,107.500 | 1,187.500 | 1,267.500 | 1,427.500 |
| "     200 | 1,101.250 | 1,282.500 | 1,375.000 | 1,467.500 | 1,652.500 |
| "     300 | 1,341.250 | 1,562.500 | 1,675.000 | 1,787.500 | 2,012.500 |
| "     500 | 1,701.250 | 1,982.500 | 2,125.000 | 2,267.500 | 2,552.500 |
| "     1,000 | 2,451.250 | 2,857.500 | 3,062.500 | 3,267.500 | 3,677.500 |
| "     1,500 | 3,051.250 | 3,557.500 | 3,812.500 | 4,067.500 | 4,577.500 |
| "     2,500 | 3,951.250 | 4,607.500 | 4,937.500 | 5,267.500 | 5,927.500 |
| "     5,000 | 5,451.250 | 6,357.500 | 6,812.500 | 7,267.500 | 8,177.500 |
| "     10,000 | 7,551.250 | 8,807.500 | 9,437.500 | 10,067.500 | 11,327.500 |
| **Exposure Units Per Premises** | **10.250** | **11.500** | **12.500** | **13.500** | **15.500** |

**Limits of Liability $25,000 to $75,000**

| No. Of Ratable | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| Employees/Persons | $25,000 | $30,000 | $40,000 | $50,000 | $75,000 |
| 5 or less | 150.000 | 161.250 | 183.750 | 206.250 | 256.250 |
| 6 | 162.500 | 174.500 | 198.500 | 222.500 | 275.000 |
| 7 | 175.000 | 187.750 | 213.250 | 238.750 | 293.750 |
| 8 | 187.500 | 201.000 | 228.000 | 255.000 | 312.500 |
| 9 | 200.000 | 214.250 | 242.750 | 271.250 | 331.250 |
| 10 | 212.500 | 227.500 | 257.500 | 287.500 | 350.000 |
| 11 | 225.000 | 240.750 | 272.250 | 303.750 | 368.750 |
| 12 | 237.500 | 254.000 | 287.000 | 320.000 | 387.500 |

46

Exhibit A, Page 328

| No. Of Ratable | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| Employees/Persons | $25,000 | $30,000 | $40,000 | $50,000 | $75,000 |
| 13 | 250.000 | 267.250 | 301.750 | 336.250 | 406.250 |
| 14 | 262.500 | 280.500 | 316.500 | 352.500 | 425.000 |
| 15 | 275.000 | 293.750 | 331.250 | 368.750 | 443.750 |
| 16 | 287.500 | 307.000 | 346.000 | 385.000 | 462.500 |
| 17 | 300.000 | 320.250 | 360.750 | 401.250 | 481.250 |
| 18 | 312.500 | 333.500 | 375.500 | 417.500 | 500.000 |
| 19 | 325.000 | 346.750 | 390.250 | 433.750 | 518.750 |
| 20 | 337.500 | 360.000 | 405.000 | 450.000 | 537.500 |
| 21 | 350.000 | 373.250 | 419.750 | 466.250 | 556.250 |
| 22 | 362.500 | 386.500 | 434.500 | 482.500 | 575.000 |
| 23 | 375.000 | 399.750 | 449.250 | 498.750 | 593.750 |
| 24 | 387.500 | 413.000 | 464.000 | 515.000 | 612.500 |
| 25 | 400.000 | 426.250 | 478.750 | 531.250 | 631.250 |
| **Each of next:** | | | | | |
| " 25 (26 - 50) | 12.500 | 13.250 | 14.750 | 16.250 | 18.750 |
| " 50 (51 - 100) | 10.000 | 10.600 | 11.800 | 13.000 | 15.000 |
| " 50 (101 - 150) | 7.500 | 7.950 | 8.850 | 9.750 | 11.250 |
| " 50 (151 - 200) | 5.000 | 5.300 | 5.900 | 6.500 | 7.500 |
| " 100 (201 - 300) | 4.000 | 4.240 | 4.720 | 5.200 | 6.000 |
| " 200 (301 - 500) | 3.000 | 3.180 | 3.540 | 3.900 | 4.500 |
| " 500 (501 - 1,000) | 2.500 | 2.650 | 2.950 | 3.250 | 3.750 |
| " 500 (1,001 - 1,500) | 2.000 | 2.120 | 2.360 | 2.600 | 3.000 |
| " 1,000 (1,501 - 2,500) | 1.500 | 1.590 | 1.770 | 1.950 | 2.250 |
| " 2,500 (2,501 - 5,000) | 1.000 | 1.060 | 1.180 | 1.300 | 1.500 |
| " 5,000 (5,001 - 10,000) | 0.700 | 0.742 | 0.826 | 0.910 | 1.050 |
| " 10,001 or more | 0.500 | 0.530 | 0.590 | 0.650 | 0.750 |
| **All of first:** | | | | | |
| " 50 | 712.500 | 757.500 | 847.500 | 937.500 | 1,100.000 |
| " 100 | 1,212.500 | 1,287.500 | 1,437.500 | 1,587.500 | 1,850.000 |
| " 150 | 1,587.500 | 1,685.000 | 1,880.000 | 2,075.000 | 2,412.500 |
| " 200 | 1,837.500 | 1,950.000 | 2,175.000 | 2,400.000 | 2,787.500 |
| " 300 | 2,237.500 | 2,374.000 | 2,647.000 | 2,920.000 | 3,387.500 |
| " 500 | 2,837.500 | 3,010.000 | 3,355.000 | 3,700.000 | 4,287.500 |
| " 1,000 | 4,087.500 | 4,335.000 | 4,830.000 | 5,325.000 | 6,162.500 |
| " 1,500 | 5,087.500 | 5,395.000 | 6,010.000 | 6,625.000 | 7,662.500 |
| " 2,500 | 6,587.500 | 6,985.000 | 7,780.000 | 8,575.000 | 9,912.500 |
| " 5,000 | 9,087.500 | 9,635.000 | 10,730.000 | 11,825.000 | 13,662.500 |
| " 10,000 | 12,587.500 | 13,345.000 | 14,860.000 | 16,375.000 | 18,912.500 |
| **Exposure Units Per Premises** | **17.500** | **19.000** | **22.000** | **25.000** | **32.500** |

**Limits of Liability $100,000 to $250,000**

47

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $100,000 | $125,000 | $150,000 | $200,000 | $250,000 |
| 5 or less | 287.500 | 303.125 | 318.750 | 346.875 | 375.000 |
| 6 | 307.500 | 323.750 | 340.000 | 368.750 | 397.500 |
| 7 | 327.500 | 344.375 | 361.250 | 390.625 | 420.000 |
| 8 | 347.500 | 365.000 | 382.500 | 412.500 | 442.500 |
| 9 | 367.500 | 385.625 | 403.750 | 434.375 | 465.000 |
| 10 | 387.500 | 406.250 | 425.000 | 456.250 | 487.500 |
| 11 | 407.500 | 426.875 | 446.250 | 478.125 | 510.000 |
| 12 | 427.500 | 447.500 | 467.500 | 500.000 | 532.500 |
| 13 | 447.500 | 468.125 | 488.750 | 521.875 | 555.000 |
| 14 | 467.500 | 488.750 | 510.000 | 543.750 | 577.500 |
| 15 | 487.500 | 509.375 | 531.250 | 565.625 | 600.000 |
| 16 | 507.500 | 530.000 | 552.500 | 587.500 | 622.500 |
| 17 | 527.500 | 550.625 | 573.750 | 609.375 | 645.000 |
| 18 | 547.500 | 571.250 | 595.000 | 631.250 | 667.500 |
| 19 | 567.500 | 591.875 | 616.250 | 653.125 | 690.000 |
| 20 | 587.500 | 612.500 | 637.500 | 675.000 | 712.500 |
| 21 | 607.500 | 633.125 | 658.750 | 696.875 | 735.000 |
| 22 | 627.500 | 653.750 | 680.000 | 718.750 | 757.500 |
| 23 | 647.500 | 674.375 | 701.250 | 740.625 | 780.000 |
| 24 | 667.500 | 695.000 | 722.500 | 762.500 | 802.500 |
| 25 | 687.500 | 715.625 | 743.750 | 784.375 | 825.000 |
| **Each of next:** | | | | | |
| "      25      (26 - 50) | 20.000 | 20.625 | 21.250 | 21.875 | 22.500 |
| "      50      (51 - 100) | 16.000 | 16.500 | 17.000 | 17.500 | 18.000 |
| "      50      (101 - 150) | 12.000 | 12.375 | 12.750 | 13.125 | 13.500 |
| "      50      (151 - 200) | 8.000 | 8.250 | 8.500 | 8.750 | 9.000 |
| "      100      (201 - 300) | 6.400 | 6.600 | 6.800 | 7.000 | 7.200 |
| "      200      (301 - 500) | 4.800 | 4.950 | 5.100 | 5.250 | 5.400 |
| "      500      (501 - 1,000) | 4.000 | 4.125 | 4.250 | 4.375 | 4.500 |
| "      500      (1,001 - 1,500) | 3.200 | 3.300 | 3.400 | 3.500 | 3.600 |
| "      1,000      (1,501 - 2,500) | 2.400 | 2.475 | 2.550 | 2.625 | 2.700 |
| "      2,500      (2,501 - 5,000) | 1.600 | 1.650 | 1.700 | 1.750 | 1.800 |
| "      5,000      (5,001 - 10,000) | 1.120 | 1.155 | 1.190 | 1.225 | 1.260 |
| "      10,001      or more | 0.800 | 0.825 | 0.850 | 0.875 | 0.900 |
| **All of first:** | | | | | |
| "      50 | 1,187.500 | 1,231.250 | 1,275.000 | 1,331.250 | 1,387.500 |
| "      100 | 1,987.500 | 2,056.250 | 2,125.000 | 2,206.250 | 2,287.500 |
| "      150 | 2,587.500 | 2,675.000 | 2,762.500 | 2,862.500 | 2,962.500 |
| "      200 | 2,987.500 | 3,087.500 | 3,187.500 | 3,300.000 | 3,412.500 |

48

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $100,000 | $125,000 | $150,000 | $200,000 | $250,000 |
| " 300 | 3,627.500 | 3,747.500 | 3,867.500 | 4,000.000 | 4,132.500 |
| " 500 | 4,587.500 | 4,737.500 | 4,887.500 | 5,050.000 | 5,212.500 |
| " 1,000 | 6,587.500 | 6,800.000 | 7,012.500 | 7,237.500 | 7,462.500 |
| " 1,500 | 8,187.500 | 8,450.000 | 8,712.500 | 8,987.500 | 9,262.500 |
| " 2,500 | 10,587.500 | 10,925.000 | 11,262.500 | 11,612.500 | 11,962.500 |
| " 5,000 | 14,587.500 | 15,050.000 | 15,512.500 | 15,987.500 | 16,462.500 |
| " 10,000 | 20,187.500 | 20,825.000 | 21,462.500 | 22,112.500 | 22,762.500 |
| Exposure Units Per Premises | 37.500 | 40.000 | 42.500 | 47.500 | 52.500 |

**Limits of Liability - $500,000 to $5,000,000**

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | $500,000 | $1,000,000 | $1,500,000 | $2,500,000 | $5,000,000 |
| 5 or less | 515.625 | 787.500 | 928.125 | 1,156.250 | 1,656.250 |
| 6 | 541.250 | 817.500 | 961.250 | 1,195.000 | 1,707.500 |
| 7 | 566.875 | 847.500 | 994.375 | 1,233.750 | 1,758.750 |
| 8 | 592.500 | 877.500 | 1,027.500 | 1,272.500 | 1,810.000 |
| 9 | 618.125 | 907.500 | 1,060.625 | 1,311.250 | 1,861.250 |
| 10 | 643.750 | 937.500 | 1,093.750 | 1,350.000 | 1,912.500 |
| 11 | 669.375 | 967.500 | 1,126.875 | 1,388.750 | 1,963.750 |
| 12 | 695.000 | 997.500 | 1,160.000 | 1,427.500 | 2,015.000 |
| 13 | 720.625 | 1,027.500 | 1,193.125 | 1,466.250 | 2,066.250 |
| 14 | 746.250 | 1,057.500 | 1,226.250 | 1,505.000 | 2,117.500 |
| 15 | 771.875 | 1,087.500 | 1,259.375 | 1,543.750 | 2,168.750 |
| 16 | 797.500 | 1,117.500 | 1,292.500 | 1,582.500 | 2,220.000 |
| 17 | 823.125 | 1,147.500 | 1,325.625 | 1,621.250 | 2,271.250 |
| 18 | 848.750 | 1,177.500 | 1,358.750 | 1,660.000 | 2,322.500 |
| 19 | 874.375 | 1,207.500 | 1,391.875 | 1,698.750 | 2,373.750 |
| 20 | 900.000 | 1,237.500 | 1,425.000 | 1,737.500 | 2,425.000 |
| 21 | 925.625 | 1,267.500 | 1,458.125 | 1,776.250 | 2,476.250 |
| 22 | 951.250 | 1,297.500 | 1,491.250 | 1,815.000 | 2,527.500 |
| 23 | 976.875 | 1,327.500 | 1,524.375 | 1,853.750 | 2,578.750 |
| 24 | 1,002.500 | 1,357.500 | 1,557.500 | 1,892.500 | 2,630.000 |
| 25 | 1,028.125 | 1,387.500 | 1,590.625 | 1,931.250 | 2,681.250 |
| **Each of next:** | | | | | |
| " 25 (26 - 50) | 25.625 | 30.000 | 33.125 | 38.750 | 51.250 |
| " 50 (51 - 100) | 20.500 | 24.000 | 26.500 | 31.000 | 41.000 |
| " 50 (101 - 150) | 15.375 | 18.000 | 19.875 | 23.250 | 30.750 |
| " 50 (151 - 200) | 10.250 | 12.000 | 13.250 | 15.500 | 20.500 |
| " 100 (201 - 300) | 8.200 | 9.600 | 10.600 | 12.400 | 16.400 |
| " 200 (301 - 500) | 6.150 | 7.200 | 7.950 | 9.300 | 12.300 |
| " 500 (501 - 1,000) | 5.125 | 6.000 | 6.625 | 7.750 | 10.250 |
| " 500 (1,001 - 1,500) | 4.100 | 4.800 | 5.300 | 6.200 | 8.200 |
| " 1,000 (1,501 - 2,500) | 3.075 | 3.600 | 3.975 | 4.650 | 6.150 |

49

| No. Of Ratable Employees/Persons | Limit Of Liability | | | | |
|---|---|---|---|---|---|
| | **$500,000** | **$1,000,000** | **$1,500,000** | **$2,500,000** | **$5,000,000** |
| "      2,500   (2,501 - 5,000) | 2.050 | 2.400 | 2.650 | 3.100 | 4.100 |
| "      5,000   (5,001 - 10,000) | 1.435 | 1.680 | 1.855 | 2.170 | 2.870 |
| "     10,001      or more | 1.025 | 1.200 | 1.325 | 1.550 | 2.050 |
| All of first: | | | | | |
| "          50 | 1,668.750 | 2,137.500 | 2,418.750 | 2,900.000 | 3,962.500 |
| "         100 | 2,693.750 | 3,337.500 | 3,743.750 | 4,450.000 | 6,012.500 |
| "         150 | 3,462.500 | 4,237.500 | 4,737.500 | 5,612.500 | 7,550.000 |
| "         200 | 3,975.000 | 4,837.500 | 5,400.000 | 6,387.500 | 8,575.000 |
| "         300 | 4,795.000 | 5,797.500 | 6,460.000 | 7,627.500 | 10,215.000 |
| "         500 | 6,025.000 | 7,237.500 | 8,050.000 | 9,487.500 | 12,675.000 |
| "       1,000 | 8,587.500 | 10,237.500 | 11,362.500 | 13,362.500 | 17,800.000 |
| "       1,500 | 10,637.500 | 12,637.500 | 14,012.500 | 16,462.500 | 21,900.000 |
| "       2,500 | 13,712.500 | 16,237.500 | 17,987.500 | 21,112.500 | 28,050.000 |
| "       5,000 | 18,837.500 | 22,237.500 | 24,612.500 | 28,862.500 | 38,300.000 |
| "      10,000 | 26,012.500 | 30,637.500 | 33,887.500 | 39,712.500 | 52,650.000 |
| **Exposure Units Per Premises** | **77.500** | **127.500** | **152.500** | **192.500** | **280.000** |

### Limits of Liability - $10,000,000

| No. Of Ratable Employees/Persons | $10,000,000 |
|---|---|
| 5 or less | 2,515.625 |
| 6 | 2,588.750 |
| 7 | 2,661.875 |
| 8 | 2,735.000 |
| 9 | 2,808.125 |
| 10 | 2,881.250 |
| 11 | 2,954.375 |
| 12 | 3,027.500 |
| 13 | 3,100.625 |

50

| No. Of Ratable Employees/Persons | $10,000,000 |
|---|---|
| 14 | 3,173.750 |
| 15 | 3,246.875 |
| 16 | 3,320.000 |
| 17 | 3,393.125 |
| 18 | 3,466.250 |
| 19 | 3,539.375 |
| 20 | 3,612.500 |
| 21 | 3,685.625 |
| 22 | 3,758.750 |
| 23 | 3,831.875 |
| 24 | 3,905.000 |
| 25 | 3,978.125 |
| **Each of next:** | |
| "        25      (26 - 50) | 73.125 |
| "        50      (51 - 100) | 58.500 |
| "        50      (101 - 150) | 43.875 |
| "        50      (151 - 200) | 29.250 |
| "        100    (201 - 300) | 23.400 |
| "        200    (301 - 500) | 17.550 |
| "        500    (501 - 1,000) | 14.625 |
| "        500    (1,001 - 1,500) | 11.700 |
| "        1,000 (1,501 - 2,500) | 8.775 |
| "        2,500 (2,501 - 5,000) | 5.850 |
| "        5,000 (5,001 - 10,000) | 4.095 |
| "        10,001         or more | 2.925 |
| **All of first:** | |
| "        50 | 5,806.250 |
| "        100 | 8,731.250 |
| "        150 | 10,925.000 |
| "        200 | 12,387.500 |
| "        300 | 14,727.500 |
| "        500 | 18,237.500 |
| "        1,000 | 25,550.000 |
| "        1,500 | 31,400.000 |
| "        2,500 | 40,175.000 |
| "        5,000 | 54,800.000 |
| "        10,000 | 75,275.000 |
| **Exposure Units Per Premises** | **430.000** |

51

**Table 3**

**DEDUCTIBLES**

**Deductible Factors For Deductibles Less Than $1,000**

| Deductible | | Deductible Buy-Back Factor |
|---|---|---|
| $ | 0 | 1.08 |
| | 100 | 1.05 |
| | 250 | 1.02 |
| | 500 | 1.00 |

**Deductible Factors For Deductibles From $1,000 To $25,000**

| Deductible | Limit Of Insurance | Deductible Factor |
|---|---|---|
| $ 1,000 | $    50,000 or less | .84 |
| | 50,001 - 100,000 | .87 |
| | 100,001 - 250,000 | .89 |
| | Over 250,000 | .95 |
| 2,500 | 100,000 or less | .65 |
| | 100,001 - 250,000 | .72 |
| | 250,001 - 500,000 | .79 |
| | Over 500,000 | .85 |
| 5,000 | 250,000 or less | .57 |
| | 250,001 - 500,000 | .67 |
| | 500,001 - 1,000,000 | .73 |
| | Over 1,000,000 | .77 |
| 10,000 | 250,000 or less | .42 |
| | 250,001 - 500,000 | .55 |
| | 500,001 - 1,000,000 | .61 |
| | 1,000,001 - 5,000,000 | .67 |
| | Over 5,000,000 | .71 |
| 25,000 | 500,000 or less | .37 |
| | 500,001 - 1,000,000 | .48 |
| | 1,000,001 - 5,000,000 | .53 |
| | 5,000,001 - 10,000,000 | .58 |
| | Over 10,000,000 | .61 |

52

**Deductible Factors For Deductibles Over $25,000**

| Deductible | Limit Of Insurance | Deductible Factor |
|---|---|---|
| $   50,000 | $        1,000,000 or less | .34 |
|  | 1,000,001 - 3,500,000 | .43 |
|  | 3,500,001 - 5,500,000 | .45 |
|  | 5,500,001 - 10,000,000 | .50 |
|  | Over 10,000,000 | .53 |
| 75,000 | 1,000,000 or less | .29 |
|  | 1,000,001 - 3,500,000 | .38 |
|  | 3,500,001 - 5,500,000 | .40 |
|  | 5,500,001 - 10,000,000 | .46 |
|  | Over 10,000,000 | .48 |
| 100,000 | 1,000,000 or less | .25 |
|  | 1,000,001 - 3,500,000 | .34 |
|  | 3,500,001 - 5,500,000 | .36 |
|  | 5,500,001 - 10,000,000 | .40 |
|  | Over 10,000,000 | .44 |
| 250,000 | 1,000,000 or less | .22 |
|  | 1,000,001 - 3,500,000 | .29 |
|  | 3,500,001 - 5,500,000 | .32 |
|  | 5,500,001 - 10,000,000 | .35 |
|  | Over 10,000,000 | .39 |
| 500,000 | 1,000,000 or less | .19 |
|  | 1,000,001 - 3,500,000 | .25 |
|  | 3,500,001 - 5,500,000 | .27 |
|  | 5,500,001 - 10,000,000 | .30 |
|  | Over 10,000,000 | .33 |
| 1,000,000 | 3,500,000 or less | .12 |
|  | 3,500,001 - 5,500,000 | .17 |
|  | 5,500,001 - 10,000,000 | .21 |
|  | Over 10,000,000 | .26 |
| 2,000,000 | 3,500,000 or less | .10 |
|  | 3,500,001 - 5,500,000 | .12 |
|  | 5,500,001 - 10,000,000 | .15 |
|  | Over 10,000,000 | .20 |

53

| | | | | Table 4 - Class Rate Multipliers | | | | |
|---|---|---|---|---|---|---|---|---|
| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
| 1100 | 0.764 | 1.138 | 2.011 | 0.233 | 7.370 | 5.264 | 1.196 |
| 2150 | 0.647 | 1.138 | 1.340 | 0.233 | 5.071 | 3.622 | 1.196 |
| 2210 | 0.714 | 2.125 | 2.011 | 0.305 | 7.370 | 5.264 | 2.294 |
| 2211 | 0.637 | 2.125 | 1.340 | 0.305 | 5.071 | 3.622 | 2.294 |
| 2330 | 1.029 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 2350 | 1.029 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3110 | 1.299 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3121 | 1.263 | 0.632 | 2.011 | 0.186 | 7.370 | 5.264 | 0.635 |
| 3122 | 1.263 | 0.632 | 2.011 | 0.186 | 7.370 | 5.264 | 0.635 |
| 3130 | 0.970 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3140 | 0.970 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3150 | 1.674 | 0.632 | 2.011 | 0.186 | 7.370 | 5.264 | 0.635 |
| 3160 | 1.101 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3210 | 0.914 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3225 | 0.914 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3230 | 0.743 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3240 | 1.336 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3250 | 1.259 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3254 | 1.079 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3260 | 0.943 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3270 | 1.061 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3310 | 1.069 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3320 | 1.069 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 3330 | 1.338 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3347 | 1.404 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3350 | 1.338 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3367 | 0.843 | 0.526 | 2.888 | 0.186 | 10.896 | 7.784 | 0.520 |
| 3370 | 0.914 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 3380 | 2.022 | 0.526 | 4.229 | 0.186 | 15.967 | 11.405 | 0.520 |
| 3395 | 1.101 | 0.526 | 2.011 | 0.186 | 7.370 | 5.264 | 0.520 |
| 4210 | 1.138 | 1.217 | 4.229 | 0.238 | 15.967 | 11.405 | 1.284 |
| 4211 | 1.255 | 1.217 | 2.888 | 0.238 | 10.896 | 7.784 | 1.284 |
| 4212 | 0.695 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4213 | 0.868 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4214 | 1.138 | 1.217 | 4.229 | 0.238 | 15.967 | 11.405 | 1.284 |
| 4215 | 0.707 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4216 | 1.315 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |

Exhibit A, Page 336

| 4217 | 0.906 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4218 | 0.903 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4219 | 1.377 | 1.217 | 4.229 | 0.238 | 15.967 | 11.405 | 1.284 |
| 4221 | 0.868 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4222 | 1.151 | 1.217 | 2.888 | 0.238 | 10.896 | 7.784 | 1.284 |
| 4223 | 1.020 | 1.503 | 4.229 | 0.238 | 15.967 | 11.405 | 1.594 |
| 4225 | 1.486 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4226 | 0.781 | 1.217 | 2.888 | 0.238 | 10.896 | 7.784 | 1.284 |

| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
|---|---|---|---|---|---|---|---|
| 4227 | 0.904 | 1.503 | 2.011 | 0.238 | 7.370 | 5.264 | 1.594 |
| 4228 | 1.252 | 2.525 | 2.888 | 0.238 | 10.896 | 7.784 | 2.708 |
| 4229 | 0.806 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 4230 | 1.486 | 1.503 | 1.340 | 0.238 | 5.071 | 3.622 | 1.594 |
| 4240 | 1.138 | 1.217 | 2.011 | 0.238 | 7.370 | 5.264 | 1.284 |
| 4410 | 1.508 | 3.820 | 4.229 | 0.435 | 15.967 | 11.405 | 4.166 |
| 4413 | 1.566 | 3.820 | 4.229 | 0.435 | 15.967 | 11.405 | 4.166 |
| 4420 | 1.429 | 3.820 | 2.011 | 0.435 | 7.370 | 5.264 | 4.166 |
| 4430 | 1.429 | 3.820 | 2.888 | 0.435 | 10.896 | 7.784 | 4.166 |
| 4440 | 1.092 | 3.820 | 2.011 | 0.435 | 7.370 | 5.264 | 4.166 |
| 4451 | 0.944 | 12.050 | 2.888 | 0.435 | 10.896 | 7.784 | 13.130 |
| 4452 | 0.820 | 5.326 | 2.888 | 0.435 | 10.896 | 7.784 | 5.834 |
| 4453 | 0.816 | 8.231 | 2.888 | 0.435 | 10.896 | 7.784 | 8.965 |
| 4461 | 0.761 | 8.231 | 2.888 | 0.435 | 10.896 | 7.784 | 8.965 |
| 4462 | 1.064 | 3.820 | 1.340 | 0.435 | 5.071 | 3.622 | 4.166 |
| 4470 | 1.566 | 5.326 | 2.888 | 0.413 | 10.896 | 7.784 | 5.834 |
| 4480 | 0.894 | 4.787 | 2.011 | 0.413 | 7.370 | 5.264 | 5.210 |
| 4483 | 1.362 | 3.820 | 4.229 | 0.413 | 15.967 | 11.405 | 4.166 |
| 4510 | 0.552 | 4.787 | 4.229 | 0.413 | 15.967 | 11.405 | 5.210 |
| 4520 | 1.003 | 4.787 | 2.888 | 0.413 | 10.896 | 7.784 | 5.210 |
| 4530 | 0.552 | 3.820 | 2.888 | 0.413 | 10.896 | 7.784 | 4.166 |
| 4540 | 1.003 | 3.820 | 1.340 | 0.413 | 5.071 | 3.622 | 4.166 |
| 4543 | 0.813 | 4.787 | 2.011 | 0.413 | 7.370 | 5.264 | 5.210 |
| 4810 | 1.611 | 2.125 | 1.340 | 0.305 | 5.071 | 3.622 | 2.294 |
| 4820 | 1.192 | 2.652 | 2.011 | 0.305 | 7.370 | 5.264 | 2.861 |
| 4835 | 1.412 | 2.652 | 2.011 | 0.305 | 7.370 | 5.264 | 2.861 |
| 4840 | 1.179 | 2.652 | 2.888 | 0.305 | 10.896 | 7.784 | 2.861 |
| 4850 | 1.192 | 2.652 | 2.011 | 0.305 | 7.370 | 5.264 | 2.861 |
| 4860 | 0.647 | 1.138 | 1.340 | 0.233 | 5.071 | 3.622 | 1.196 |
| 4870 | 1.166 | 4.787 | 2.011 | 0.435 | 7.370 | 5.264 | 5.210 |
| 4880 | 1.179 | 2.125 | 2.011 | 0.305 | 7.370 | 5.264 | 2.294 |
| 4920 | 0.829 | 13.043 | 2.888 | 0.463 | 10.896 | 7.784 | 14.213 |

| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
|---|---|---|---|---|---|---|---|
| 4930 | 1.224 | 2.125 | 2.011 | 0.305 | 7.370 | 5.264 | 2.294 |
| 5111 | 0.743 | 0.526 | 1.340 | 0.186 | 5.071 | 3.622 | 0.520 |
| 5112 | 0.829 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 5125 | 0.948 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 5135 | 1.071 | 3.883 | 2.011 | 0.440 | 7.370 | 5.264 | 4.235 |
| 5145 | 1.312 | 0.119 | 2.011 | 0.155 | 7.370 | 5.264 | 0.069 |
| 5222 | 2.901 | 6.144 | 2.011 | 0.294 | 7.370 | 5.264 | 6.668 |
| 5223 | 0.887 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5224 | 2.632 | 4.214 | 4.229 | 0.294 | 15.967 | 11.405 | 4.562 |
| 5225 | 2.560 | 2.344 | 1.340 | 0.320 | 5.071 | 3.622 | 2.539 |
| 5229 | 2.901 | 13.043 | 2.011 | 0.463 | 7.370 | 5.264 | 14.213 |
| 5232 | 2.566 | 3.254 | 1.340 | 0.320 | 5.071 | 3.622 | 3.547 |
| 5233 | 2.464 | 3.254 | 1.340 | 0.320 | 5.071 | 3.622 | 3.547 |
| 5234 | 0.887 | 4.448 | 1.340 | 0.381 | 5.071 | 3.622 | 4.873 |
| 5239 | 0.829 | 5.414 | 1.340 | 0.440 | 5.071 | 3.622 | 5.930 |
| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
| 5241 | 0.424 | 3.883 | 4.229 | 0.440 | 15.967 | 11.405 | 4.235 |
| 5242 | 0.887 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5252 | 0.129 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5253 | 0.091 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5310 | 0.600 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5312 | 0.611 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5313 | 0.887 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 5320 | 0.931 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5405 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5409 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5413 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5414 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5415 | 0.829 | 3.883 | 2.011 | 0.440 | 7.370 | 5.264 | 4.235 |
| 5416 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5417 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5418 | 0.853 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5419 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5613 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5614 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5615 | 1.166 | 8.231 | 1.340 | 0.435 | 5.071 | 3.622 | 8.965 |
| 5616 | 0.829 | 5.414 | 2.888 | 0.440 | 10.896 | 7.784 | 5.930 |
| 5617 | 0.829 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 5618 | 0.860 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 5620 | 1.138 | 1.217 | 1.340 | 0.238 | 5.071 | 3.622 | 1.284 |
| 5630 | 1.166 | 8.231 | 1.340 | 0.435 | 5.071 | 3.622 | 8.965 |

| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
|---|---|---|---|---|---|---|---|
| 5640 | 0.829 | 3.883 | 2.011 | 0.440 | 7.370 | 5.264 | 4.235 |
| 6111 | 0.583 | 2.175 | 2.888 | 0.281 | 10.896 | 7.784 | 2.332 |
| 6210 | 0.341 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6216 | 0.341 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6220 | 0.495 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6230 | 0.411 | 3.883 | 2.888 | 0.440 | 10.896 | 7.784 | 4.235 |
| 6240 | 0.411 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 7110 | 0.723 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 7112 | 0.621 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 7120 | 0.321 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 7130 | 0.723 | 12.248 | 2.888 | 0.440 | 10.896 | 7.784 | 13.346 |
| 7132 | 0.723 | 3.883 | 4.229 | 0.440 | 15.967 | 11.405 | 4.235 |
| 7139 | 0.549 | 5.414 | 4.229 | 0.440 | 15.967 | 11.405 | 5.930 |
| 7215 | 1.495 | 3.820 | 2.888 | 0.435 | 10.896 | 7.784 | 4.166 |
| 7225 | 1.103 | 8.231 | 2.888 | 0.435 | 10.896 | 7.784 | 8.965 |
| 8111 | 1.111 | 5.326 | 2.011 | 0.435 | 7.370 | 5.264 | 5.834 |
| 8112 | 1.111 | 3.820 | 2.888 | 0.435 | 10.896 | 7.784 | 4.166 |
| 8121 | 1.064 | 3.820 | 2.011 | 0.435 | 7.370 | 5.264 | 4.166 |
| 8122 | 0.391 | 3.190 | 1.340 | 0.381 | 5.071 | 3.622 | 3.479 |
| 8123 | 1.073 | 8.231 | 1.340 | 0.435 | 5.071 | 3.622 | 8.965 |
| 8129 | 1.236 | 5.326 | 2.011 | 0.435 | 7.370 | 5.264 | 5.834 |
| 8131 | 0.265 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| Class Code | Employee Theft | Inside The Premises-Theft of Money & Securities | Inside The Premises-Robbery Or Safe Burglary Of Other Property | Outside The Premises | Inside The Premises-Theft Of Other Property | Inside The Premises Robbery Of A Watchperson Or Burglary Of Other Property | Inside The Premises-Robbery Of A Custodian Or Safe Burglary Of Money & Securities |
| 8133 | 0.276 | 5.413 | 2.888 | 0.440 | 10.896 | 7.784 | 5.930 |
| 8139 | 0.429 | 3.190 | 2.888 | 0.381 | 10.896 | 7.784 | 3.479 |
| 8140 | 0.968 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 8141 | 0.539 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 8142 | 0.719 | 3.883 | 1.340 | 0.440 | 5.071 | 3.622 | 4.235 |
| 9202 | 0.330 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9203 | 0.380 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9204 | 0.256 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9205 | 0.320 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9206 | 0.262 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |
| 9250 | 0.281 | 2.863 | 1.340 | 0.362 | 5.071 | 3.622 | 3.108 |

*TABLE 5 Crime & Fidelity Expense Exhibit – Refer to attachment*

Exhibit A, Page 339

**Table 6 - Underwriting Table – Schedule Rating Plan**

**A.      Fidelity – Table 6(a)**

A schedule rating modification may also be applied to the otherwise chargeable premium for Insuring Agreements (A) Fidelity, (B) Forgery, (F) Computer Fraud, (G) Funds Transfer Fraud, (I) Credit, Debit, Charge Card Forgery and (J) Clients Property in accordance with Table 6(a), subject to a maximum credit or debit of 25%, to reflect such characteristics of the risk as are not reflected in its experience, or that have not been taken into account in calculating the otherwise chargeable premium.

| Risk Characteristic | Description | Range Of Modifications | | |
|---|---|---|---|---|
| | | Credit | | Debit |
| Audit Procedures | Conduct of audits having regard to the prescribed procedures of professional accounting organizations. | 15% | to | 15% |
| Classification Peculiarities | Particular characteristics of the risk which would make it better, or worse, than the average risk for the class of business. | 15% | to | 15% |
| Internal Controls | Procedures established by the insured to control potential dishonest acts, including safeguards relating to check signing, securities controls and separation of money handling duties. | 15% | to | 15% |
| Management And Personnel | Selection, training and supervision of employees. | 10% | to | 10% |

**B.      Burglary/Theft – Table 6(b)**

A schedule rating modification may also be applied to the otherwise chargeable premium for Insuring Agreements C-Inside the Premises Loss of Money & Securities, D-Inside the Premises-Robbery Or Safe Burglary of Other Property and E-Outside The Premises in accordance with Table 6(b) below, subject to a maximum credit or debit of 25%, to reflect such characteristics of the risk as are not reflected in its experience, or that have not been taken into account in calculating the otherwise chargeable premium.

| Risk Characteristic | Description | Range Of Modifications | | |
|---|---|---|---|---|
| | | Credit | | Debit |
| Classification Peculiarities | Particular characteristics of the risk which would make it better, or worse, than the average risk for the type of business. | 15% | to | 15% |
| Location | Accessibility to the location - and aspects of the surrounding area having a beneficial, or adverse, effect on the risk. | 7% | to | 7% |
| Personnel | Selection, training and supervision of employees. | 6% | to | 6% |

58

| Risk Characteristic | Description | Range Of Modifications | | |
| --- | --- | --- | --- | --- |
| | | Credit | | Debit |
| Management | Cooperation in safeguarding insured property. | 7% | to | 7% |
| Protective Features | Quality or standard of protective features such as, safes, vaults, alarm systems and security personnel. | 20% | to | 20% |

59

## EXPERIENCE AND SCHEDULE RATING PLAN - Table 7

**A.        Application Of Experience Rating**
The use of the experience rating provisions of this Plan is optional. Experience rating may be applied to any risk that develops a credibility from the tables contained in **Table 7**. of 0.02 or more for the Crime and the Fidelity exposures to be rated.

**B.        Application Of Schedule Rating**
The use of the schedule rating provisions of this Plan is optional. Schedule rating may be applied to any risk rated under this plan

**C.        Expected Loss Ratio**
Expenses are not taken into consideration in the parameters of this Plan. Instead, individual companies must multiply their premiums by their own Expected Loss Ratio (ELR) to produce the annual company loss costs (expected losses) for the risk which is being rated under this Plan. In this context, company ELR represents the company's manual provision for losses excluding all expenses. This company ELR shall be that ELR which has been filed by the company for use with this Plan for the class of business being rated.

## ESTABLISHMENT OF RATING FOR THE RISK

**A.        Applicability**
The risk modification determined from the application of this Plan shall be applicable to the company premiums at the effective date of the modification.

**B.        Term And Limit Of Insurance**
Each risk modification shall be understood to be established for the premium period for which the primary insurance is to be written and, unless otherwise provided for, to be applicable to the company premiums for the total limit of each of the various forms of eligible Crime or Fidelity insurance to be carried by the risk, except in the circumstances described in Paragraph **D.**

**C.        Multi-Policy Risks**
In the event a risk involves two or more policies with different effective dates, the risk modification for the primary insurance shall apply to such policies during the premium period for which the primary insurance is to be written. That portion of the premium for insurance written beyond the premium period of the primary policy shall be calculated on the basis of the current risk modification or unity, whichever is higher, subject to adjustment when the next risk modification applicable to the primary policy is calculated.

**D.        Mid-Term Changes In The Policy**
Where there are either; additions or deletions of optional insurance, or additions, deletions or changes in deductible(s), a revised risk modification shall be established based upon the last used company rates, rating factors and experience for the unexpired portion of the original premium period. In the event the insured makes a request, in writing, for a new premium period in order to conform the anniversary date with that of other insurance, a revised risk modification shall be established, based upon the last used company rates, current company rating factors and current experience for the extended period only.

60

## COMPANY RATE MODIFICATION

**A.      Determination Of Experience Modification**
The experience modification for the risk is to be determined in accordance with the experience rating procedure described in this Plan. Separate experience modifications may be established for Crime and Fidelity coverages, utilizing the appropriate Credibility and Maximum Single Loss Tables. Those modifications are then applied to the otherwise chargeable premiums for the policy being rated.

**B.      Determination Of Schedule Modification**
Apart from any experience modification, a modification reflecting specified characteristics of the risk may be applied in accordance with the Underwriting Table Schedule Rating Plan-See Tables 6(a) and 6(b). Separate schedule modifications may be established for Crime and Fidelity coverages.

## EXPERIENCE USED

**A.      Number Of Years Of Experience**
The experience modification shall be determined from the latest available three year Crime and Fidelity experience incurred by the company establishing the rating in this state or in all states. In the event the experience for the full experience period is not available, at least one completed policy year shall be used. The experience period shall end at least three months prior to the rating date.

**B.      Other Companies' Experience And Self-Insured Experience**
Experience incurred by companies other than the company establishing the modification, or self-insured experience, may be used subject to the periods specified in Paragraph A. Such experience may be excluded from the rating if its reliability cannot be established.

## DETERMINATION OF EXPERIENCE MODIFICATION

**A.      Company Subject Loss Cost**

**1.      Definition Of Company Subject Loss Cost**
The term "company subject loss cost" is used to describe the total company loss costs (expected losses) subject to experience modification.

**2.      Determination Of Annual Company Premium**
Determine the annual company premium for the policy being rated. The policy being rated is the policy to which the experience modification of Paragraph F. shall apply. Annual company premium is premium prior to the application of any individual risk modification. Package modification factors and company deviations are included in the annual company premium. Multiply the annual company premium by the company Expected Loss Ratio (ELR) for the risk. The result is the annual company  loss cost (expected losses) for the risk.

**3.      Determination Of Annual Company Loss Cost Subject To Experience Modification**
The annual company loss cost subject to experience modification, for a given year of the experience period, is the annual company loss cost (expected losses) for the policy being rated multiplied by the appropriate detrend factor from the table contained in Rule 12.

61

4.      **Determination Of Company Subject Loss Cost**
        The sum of the annual company loss costs subject to experience modification for the years included in the experience period is the company subject loss cost.

**B.      Losses To Be Included In Experience Modification Calculation**
The losses to be included in the rating shall be the total of paid and outstanding     losses (exclusive of loss adjustment expenses) for each year in the experience     period, less any salvage expense from such loss payments, with the amount of  loss resulting from any single occurrence limited by the maximum single loss  (MSL) value specified in the tables contained in **Table C**. based on the company  subject loss cost. Outstanding losses shall be valued in light of all information      available at the time of evaluation.

**C.      Actual Experience Ratio**
Determine the Actual Experience Ratio (AER) by dividing the losses subject to experience modification by the company subject loss cost.

**D.      Expected Experience Ratio**
Expected Experience Ratio (EER) is specified in **Table C.,** based on the company subject loss cost.

**E.      Credibility**
The credibility for the risk is obtained in **Table C**, based on the company subject loss cost.

<div align="center">

**Experience Modification**

$$\frac{\text{AER} - \text{EER}}{\text{EER}} \times \text{CREDIBILITY} = \text{EXPERIENCE MODIFICATION}$$

</div>

If the experience modification is positive, it is a debit; if negative, it is a credit.

**G.      Provisions For Deductible Coverage**
Full coverage experience for risks which are to be written on a deductible basis shall be adjusted to the deductible basis, and vice versa, any deductible experience for operations which are to be written on a full coverage basis shall be built up to a full coverage basis before using in the rating calculation.

**H.      Effect Of A Significant Exposure Change In Determination Of Company Subject Loss Costs**
If the actual exposures of the risk have been subject to a significant change in volume, and or, composition, during or since the experience period, it may be appropriate to apply the following advisory procedure to determine the company subject loss cost:

1.      Determine the actual historical exposures on the present rating basis by classification and location for each policy of the experience period.

2.      The actual exposures by classification and location for a given year of the experience period, when extended by the present company rates and then multiplied by the appropriate detrend factor from the tables contained in Rule 12., yields the annual company premium for that year of the experience period. Multiply each of these by the company Expected Loss Ratio (ELR) for the risk to obtain the company loss cost (expected losses) for each year.

3.      The sum of the annual company loss costs (expected losses) for the years included in the experience period is the company subject loss cost

# RATING EXAMPLE

## A.    Introduction

This example shows how to apply the experience rating plan. The policy is being rated on 7/1/2000 and is to be in effect from 10/1/2000 to 9/30/2001. For this example we will assume a company expected loss ratio of 0.55. The example is in respect of Fidelity coverages, utilizing the Fidelity tables in Rule 13., but the experience modification for Crime coverages would be calculated in the same way, using **Table C**

## B.    Using The Example

1.    According to the experience rating plan**,** we determine the annual company premium as $40,000. Annual company loss cost (expected losses) is therefore $22,000 ($40,000 X .55) for the policy being rated.

2.    The loss information from the policies of the experience period is as follows:

| Policy Year | Policies Of The Experience Period | Indemnity | Indemnity Limited By MSL |
|---|---|---|---|
| 10/1/1998 – 9/30/1999 | Latest Year | $    5,000<br>$    4,000 | $    5,000<br>4,000 |
| 10/1/1997 – 9/30/1998 | 2nd Latest Year | $ 150,000 | 35,400 |
| 10/1/1996 – 9/30/1997 | 3rd Latest Year | NIL | NIL |
| | | | $  44,400 |

3.    The incurred losses are valued as of 7/1/2000, and are limited by the Maximum Single Loss (MSL) value of $35,400 calculated later in this example. The resulting losses represent the losses subject to experience rating.

4.    The final column can be filled in once the MSL value is known. In this example, an MSL value of $35,400 was assigned from **Table C** based on the company subject loss cost of $62,194 (see later in this example for more information on how these values were obtained).

5.    Company subject loss cost (expected losses) is calculated using the annual company loss cost for the policy being rated and the appropriate detrend factors from the tables described below.

| Annual Company Loss Cost For The Policy Being Rated | Detrend Factor | Annual Company Loss Cost Subject To Experience Modification |
|---|---|---|
| **Latest Year**<br>$ 22,000 | x    .961 | =      $ 21,142 |
| **2nd Latest Year**<br>$ 22,000 | x    .942 | =      $ 20,724 |
| **3rd Latest Year**<br>$ 22,000 | x    .924 | =      $ 20,328<br>$ 62,194 |

6.    The company subject loss cost being the sum of the annual company loss costs subject to experience rating is $62,194. This company subject loss cost value is then used to obtain the other applicable rating values from **Table C**

7.    The company subject loss cost falls into the $59,791 - $62,765 subject loss cost range, corresponding to a 0.29 credibility level and a $35,400 maximum

63

single loss value. The expected experience ratio is then 0.572. To summarize, the experience rating values are:

**COMPANY EXPENSE VARIATION FACTOR**

If the Expected Loss Ratio (ELR) underlying the company premium for the class is different than the actual ELR for the risk, multiply the otherwise chargeable premium (after experience modification) by the following Expense Variation Factor (EVF):

$$\text{EVF} = \frac{\text{ELR Underlying the company premium for the class}}{\text{Actual ELR for the risk}}$$

**PROCEDURE FOR CONVERSION OF THE PLAN TO A COMPANY PREMIUM BASIS**

**A.    Conversion From A Loss Cost Basis To A Company Premium Basis**

This Plan may be converted from a Loss Cost basis to a Premium basis so  that annual company premium may be used in the rating in lieu of annual company loss costs. Under this option, once the annual company premium has been determined it is not converted to company loss cost using the company ELR for the risk as described above. All further references to company loss cost in the Plan shall then be assumed to refer instead to company premium.

**B.    Adjustments Needed To Complete Conversion**

In order to complete the conversion, the following adjustments must be made to the tables contained in **Table C**.

1.    The EER values must be multiplied by the company ELR for the risk.

2.    The upper bound of each subject loss cost range and the lower bound of the first range listed (.02 credibility) must be divided by the company ELR for the risk to obtain the corresponding subject premiums. The remaining lower bounds (credibilities .03 to 0.50) of subject premium ranges are then calculated as one dollar greater than the upper bound of the subject premium range corresponding to credibility (Z-.01). The Credibility and Maximum Single Loss values need no adjustment.

**DETREND FACTORS**

Detrend factors are applied to the company loss costs for each of the years in the experience period as part of the adjustment to reflect the ultimate level of losses. The ISO Advisory Detrend Factors are as follows:

| Year Of The Experience Period | Crime Detrend Factor | Fidelity Detrend Factor |
|---|---|---|
| **Latest Year** | 0.961 | 0.961 |
| **2nd Latest Year** | 0.942 | 0.942 |
| **3rd Latest Year** | 0.924 | 0.924 |

64

**Table C**

**CREDIBILITY AND MAXIMUM SINGLE LOSS TABLES**

The Tables of Credibility and Maximum Single Loss are used in determining the experience modification. Separate Tables are provided for Crime and Fidelity coverages.

**Credibility And Maximum Single Loss – Crime – C(a)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $    762 | - | $   1,282 | 0.02 | 0.598 | $   6,850 |
| 1,283 | - | 1,813 | 0.03 | 0.628 | 8,050 |
| 1,814 | - | 2,356 | 0.04 | 0.643 | 8,750 |
| 2,357 | - | 2,910 | 0.05 | 0.652 | 9,200 |
| 2,911 | - | 3,475 | 0.06 | 0.659 | 9,600 |
| 3,476 | - | 4,054 | 0.07 | 0.664 | 9,900 |
| 4,055 | - | 4,644 | 0.08 | 0.668 | 10,150 |
| 4,645 | - | 5,248 | 0.09 | 0.672 | 10,400 |
| 5,249 | - | 5,865 | 0.10 | 0.676 | 10,650 |
| 5,866 | - | 6,497 | 0.11 | 0.680 | 10,900 |
| 6,498 | - | 7,142 | 0.12 | 0.683 | 11,100 |
| 7,143 | - | 7,803 | 0.13 | 0.686 | 11,300 |
| 7,804 | - | 8,479 | 0.14 | 0.690 | 11,550 |
| 8,480 | - | 9,171 | 0.15 | 0.692 | 11,750 |
| 9,172 | - | 9,880 | 0.16 | 0.695 | 11,950 |
| 9,881 | - | 10,606 | 0.17 | 0.698 | 12,150 |
| 10,607 | - | 11,349 | 0.18 | 0.701 | 12,400 |
| 11,350 | - | 12,111 | 0.19 | 0.703 | 12,600 |
| 12,112 | - | 12,893 | 0.20 | 0.706 | 12,850 |
| 12,894 | - | 13,694 | 0.21 | 0.709 | 13,050 |
| 13,695 | - | 14,516 | 0.22 | 0.712 | 13,300 |
| 14,517 | - | 15,359 | 0.23 | 0.714 | 13,500 |
| 15,360 | - | 16,225 | 0.24 | 0.717 | 13,750 |
| 16,226 | - | 17,114 | 0.25 | 0.719 | 14,000 |
| 17,115 | - | 18,027 | 0.26 | 0.722 | 14,250 |
| 18,028 | - | 18,965 | 0.27 | 0.725 | 14,500 |
| 18,966 | - | 19,930 | 0.28 | 0.728 | 14,800 |
| 19,931 | - | 20,921 | 0.29 | 0.730 | 15,050 |
| 20,922 | - | 21,942 | 0.30 | 0.733 | 15,350 |
| 21,943 | - | 22,992 | 0.31 | 0.735 | 15,600 |

65

**Credibility And Maximum Single Loss – Fidelity Table C(b)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $ 22,993 | - | $ 24,074 | 0.32 | 0.738 | $ 15,900 |
| 24,075 | - | 25,187 | 0.33 | 0.741 | 16,200 |
| 25,188 | - | 26,335 | 0.34 | 0.743 | 16,500 |
| 26,336 | - | 27,519 | 0.35 | 0.746 | 16,850 |
| 27,520 | - | 28,740 | 0.36 | 0.749 | 17,150 |
| | | | | | |
| 28,741 | - | 30,000 | 0.37 | 0.751 | 17,500 |
| 30,001 | - | 31,300 | 0.38 | 0.754 | 17,850 |
| 31,301 | - | 32,644 | 0.39 | 0.757 | 18,200 |
| 32,645 | - | 34,033 | 0.40 | 0.759 | 18,600 |
| 34,034 | - | 35,470 | 0.41 | 0.762 | 19,000 |
| | | | | | |
| 35,471 | - | 36,956 | 0.42 | 0.765 | 19,400 |
| 36,957 | - | 38,495 | 0.43 | 0.768 | 19,800 |
| 38,496 | - | 40,090 | 0.44 | 0.770 | 20,200 |
| 40,091 | - | 41,743 | 0.45 | 0.773 | 20,650 |
| 41,744 | - | 43,457 | 0.46 | 0.776 | 21,100 |
| | | | | | |
| 43,458 | - | 45,238 | 0.47 | 0.779 | 21,600 |
| 45,239 | - | 47,087 | 0.48 | 0.781 | 22,100 |
| 47,088 | - | 49,009 | 0.49 | 0.784 | 22,600 |
| 49,010 | - | AND OVER | 0.50 | 0.787 | 23,150 |

66

Exhibit A, Page 348

**Credibility And Maximum Single Loss – Fidelity Table C(b)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $  2,285 | - | $  3,846 | 0.02 | 0.311 | $ 10,650 |
| 3,847 | - | 5,440 | 0.03 | 0.360 | 13,850 |
| 5,441 | - | 7,068 | 0.04 | 0.386 | 15,750 |
| 7,069 | - | 8,730 | 0.05 | 0.404 | 17,150 |
| 8,731 | - | 10,427 | 0.06 | 0.417 | 18,200 |
| 10,428 | - | 12,162 | 0.07 | 0.428 | 19,100 |
| 12,163 | - | 13,934 | 0.08 | 0.437 | 19,950 |
| 13,935 | - | 15,745 | 0.09 | 0.446 | 20,700 |
| 15,746 | - | 17,597 | 0.10 | 0.453 | 21,400 |
| 17,598 | - | 19,491 | 0.11 | 0.460 | 22,100 |
| 19,492 | - | 21,428 | 0.12 | 0.467 | 22,750 |
| 21,429 | - | 23,410 | 0.13 | 0.474 | 23,450 |
| 23,411 | - | 25,438 | 0.14 | 0.480 | 24,100 |
| 25,439 | - | 27,514 | 0.15 | 0.487 | 24,750 |
| 27,515 | - | 29,640 | 0.16 | 0.493 | 25,450 |
| 29,641 | - | 31,818 | 0.17 | 0.499 | 26,100 |
| 31,819 | - | 34,049 | 0.18 | 0.505 | 26,800 |
| 34,050 | - | 36,335 | 0.19 | 0.512 | 27,500 |
| 36,336 | - | 38,679 | 0.20 | 0.518 | 28,200 |
| 38,680 | - | 41,082 | 0.21 | 0.524 | 28,950 |
| 41,083 | - | 43,548 | 0.22 | 0.530 | 29,700 |
| 43,549 | - | 46,078 | 0.23 | 0.536 | 30,450 |
| 46,079 | - | 48,675 | 0.24 | 0.542 | 31,200 |
| 48,676 | - | 51,342 | 0.25 | 0.548 | 32,000 |
| 51,343 | - | 54,081 | 0.26 | 0.554 | 32,800 |
| 54,082 | - | 56,896 | 0.27 | 0.560 | 33,650 |
| 56,897 | - | 59,790 | 0.28 | 0.566 | 34,500 |
| 59,791 | - | 62,765 | 0.29 | 0.572 | 35,400 |
| 62,766 | - | 65,827 | 0.30 | 0.578 | 36,300 |
| 65,828 | - | 68,978 | 0.31 | 0.585 | 37,250 |

Exhibit A, Page 349

**Credibility and Maximum Single Loss – Fidelity – Table C (a)**

| Company Subject Loss Cost | | | Credibility | Expected Experience Ratio | Maximum Single Loss |
|---|---|---|---|---|---|
| $ 68,979 | - | $ 72,222 | 0.32 | 0.591 | $ 38,200 |
| 72,223 | - | 75,563 | 0.33 | 0.597 | 39,200 |
| 75,564 | - | 79,007 | 0.34 | 0.603 | 40,200 |
| 79,008 | - | 82,558 | 0.35 | 0.609 | 41,250 |
| 82,559 | - | 86,220 | 0.36 | 0.616 | 42,350 |
| 86,221 | - | 90,000 | 0.37 | 0.622 | 43,450 |
| 90,001 | - | 93,902 | 0.38 | 0.628 | 44,650 |
| 93,903 | - | 97,933 | 0.39 | 0.635 | 45,850 |
| 97,934 | - | 102,100 | 0.40 | 0.641 | 47,050 |
| 102,101 | - | 106,410 | 0.41 | 0.647 | 48,350 |
| 106,411 | - | 110,869 | 0.42 | 0.653 | 49,650 |
| 110,870 | - | 115,486 | 0.43 | 0.660 | 51,050 |
| 115,487 | - | 120,270 | 0.44 | 0.666 | 52,450 |
| 120,271 | - | 125,229 | 0.45 | 0.673 | 53,950 |
| 125,230 | - | 130,373 | 0.46 | 0.679 | 55,450 |
| 130,374 | - | 135,714 | 0.47 | 0.686 | 57,050 |
| 135,715 | - | 141,262 | 0.48 | 0.692 | 58,700 |
| 141,263 | - | 147,029 | 0.49 | 0.698 | 60,400 |
| 147,030 | - | AND OVER | 0.50 | 0.705 | 62,200 |

| Credibility Factor | EER | MSL Value |
|---|---|---|
| 0.29 | 0.572 | $35,400 |
| Total Includable Losses | AER | |
| $44,400 | $44,400  =  0.714 $62,194 | |

Since the AER is more than the EER, an experience debit is indicated, calculated as follows:

$$\text{EXPERIENCE MODIFICATION} = \frac{0.714 - 0.572}{0.572} * 0.29 = 0.072,$$

or a 7.2% debit.

68

| State | Territory – Table 8 | Code | Tier |
|---|---|---|---|
| **AL** | Jefferson County | | I |
| | Remainder of State | | II |
| **AK** | Entire State | | III |
| **AZ** | Entire State | | II |
| **AR** | Entire State | | II |
| **CA** | Alameda County | | I |
| | Los Angeles (excluding Catalina Island) | | I |
| | San Francisco | | I |
| | Remainder of State | | III |
| **CO** | Denver City and County (including Glendale) | | II |
| | Denver Suburban | | II |
| This territory comprises all territory outside of the City and County of Denver and Glendale situated in Adams, Arapahoe, Boulder and Jefferson Counties lying west of Range Line 65 on the east and east of Range Line 71 on the west; and south of Township Line 1 South on the north and north of Township Line 6 South on the south including all of the following places in Adams, Arapahoe, Boulder and Jefferson Counties: Adams City, Arvada, Aurora, Broomfield, Broomfield Heights, Cherry Hills, Derby, Dupont, Edgewater, Englewood, Fitzsimmons, Ft. Logan, Golden, Lakeside, Lakewood, Littleton, Mount Morrison, Normandy, Sheridan, Sullivan, Thornton, Westminster and Wheat Ridge. | | | |
| | Remainder of State | | III |
| **CT** | Entire State | | III |
| **DE** | Entire State | | II |
| **DC** | Entire District | | I |
| **FL** | Entire State | | I |
| **GA** | Entire State | | I |
| **HI** | Entire State | | II |
| **ID** | Entire State | | III |
| **IL** | Cook County | | II |
| | Remainder of State | | III |
| **IN** | Entire State | | I |
| **IA** | Entire State | | II |
| **KS** | Entire State | | I |
| **KY** | Entire State | | II |
| **LA** | Entire State | | II |
| **ME** | Entire State | | III |
| **MD** | Baltimore City and Baltimore County | | I |
| | Remainder of State | | II |
| **MA** | Norfolk County | | III |
| | Remainder of State | | II |

69

**Territorial Tier Group - Table 8**

| | | |
|---|---|---|
| MI | Detroit City Metro District | I |

Detroit Metropolitan District consists of the cities and towns within the area bounded as follows:

Commencing at the intersection of Lake St. Clair with the Wayne County Line; thence westerly along the Wayne County Line to its intersection with Inkster Road; thence southerly on Inkster Road to its intersection with Van Horn Road; thence easterly on Van Horn Road to the Detroit River; including the entire island of Grosse Isle and the following cities and villages in their entirety:

District consists of: Allen Park, Dearborn, Detroit, Ecorse, Garden City, Grosse Pointe, Grosse Pointe Farms, Grosse Pointe Park, Grosse Pointe Shores, Hamtramck, Highland Park, Inkster, Lincoln Park, Melvindale, River Rouge, Trenton and Wyandotte

(Both sides of the streets named are included in Detroit District. Garden City, Inkster and Trenton are included in the District even though not entirely within the aforesaid boundaries.)

| | | |
|---|---|---|
| | Remainder of State | III |
| MN | Hennepin County | II |
| | Ramsey County | II |
| | Remainder of State | III |
| MS | Entire State | II |
| MO | Jackson County | I |
| | Remainder of State | II |
| MT | Entire State | II |
| NE | Douglas County | I |
| | Remainder of State | II |
| NV | Entire State | I |
| NH | Entire State | II |
| NJ | Bergen County | II |
| | Essex County (excluding Newark International Airport and Port Newark Marine Terminal) | II |
| | Hudson County | II |
| | Remainder of State | III |
| NM | Entire State | I |
| NY | Bronx County | I |
| | Kings County (Brooklyn) | I |
| | New York County (Manhattan) | I |
| | Queens County | I |
| | Remainder of State | II |
| NC | Entire State | III |
| ND | Entire State | II |
| OH | Cuyahoga County | II |
| | Franklin County | II |
| | Mahoning County | II |
| | Remainder of State | III |
| OK | Oklahoma County | I |
| | Tulsa County | I |
| | Remainder of State | II |
| OR | Entire State | II |

70

| PA | Philadelphia County | I |
|----|---------------------|---|
|    | Remainder of State | III |
| PR | Entire Commonwealth | I |
| RI | Entire State | II |
| SC | Entire State | II |
| SD | Entire State | II |
| TN | Davidson County | I |
|    | Shelby County | I |
|    | Remainder of State | II |
| TX | Entire State | I |
| UT | Entire State | II |
| VT | Entire State | III |
| VA | Entire State | III |
| WA | Entire State | II |
| WV | Entire State | II |
| WI | Milwaukee County | II |
|    | Remainder of State | III |
| WY | Entire State | III |

71

**STARR INDEMNITY & LIABILITY COMPANY**
RESOLUTE PORTFOLIO<sup>SM</sup> For Private Companies
Forms Index
**CALIFORNIA**

|  | FORM NUMBER | TITLE |
|---|---|---|
| 1. | CVS FL 12000 PV (1/09) | <u>Resolute Portfolio For Private Companies Insurance Application</u> – This is the application form used to obtain information for underwriting the Policy. |
| 2. | CVS FL 12001 PV (1/09) | <u>Resolute Portfolio For Private Companies Declarations</u> – This is the Declarations Page to be used with the Policy. |
| 3. | CVS FL 12002 PV (1/09) | <u>Resolute Portfolio For Private Companies General Terms & Conditions</u>– This section provides the general terms and conditions for all coverage parts of the Policy. |
| 4. | CVS FL 12003 PV (1/09) | <u>Resolute Portfolio For Private Companies Directors and Officers Liability Coverage Section</u> – This section provides directors and officers liability coverage. |
| 5. | CVS FL 12004 PV (1/09) | <u>Resolute Portfolio For Private Companies Employment Practices Liability Coverage Section</u>– This section provides employment practices liability coverage. |
| 6. | CVS FL 12005 PV (1/09) | <u>Resolute Portfolio For Private Companies Fiduciary Liability Coverage Section</u>– This section provides fiduciary liability coverage. |
| 7. | CVS FL 12006 PV (1/09) | <u>Resolute Portfolio For Private Companies Crime and Fidelity Coverage Section</u>– This section provides crime and fidelity coverage. |
| 8. | CVS FL 10000 PPVNP (07/08) | <u>Delete Exclusion</u> – This endorsement amends the coverage section specified in the endorsement by deleting the exclusion specified in the endorsement. |
| 9. | CVS FL 10002 PPVNP (07/08) | <u>Exclusion of Certified Acts of Terrorism</u> - This endorsement excludes coverage for certified acts of terrorism. |
| 10. | CVS FL 10003 PPVNP (1/09) | <u>Exclusion of Non-Certified Acts of Terrorism and Coverage of Certified Acts of Terrorism</u> - This endorsement excludes coverage for non-certified acts of terrorism. |
| 11. | CVS FL 10004 PPVNP (07/08) | <u>Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act</u> – This notice advises the Insured that it has a right to purchase insurance coverage arising out of an Act of Terrorism. |
| 12. | CVS FL 10005 PPVNP (07/08) | <u>OFAC Exclusion (all Coverage Sections)</u> – This endorsement amends all four coverage sections to exclude Loss for any Claim in the event that such coverage would not be in compliance with any United States of America economic or trade sanctions, laws or regulations. |
| 13. | CVS FL 10006 PPVNP (07/08) | <u>Pending or Prior Litigation Exclusion – Increased Limits</u> – This endorsement amends the coverage section specified in the endorsement so that coverage is excluded for Loss in connection with any Claim alleging, arising out of, based upon or attributable to any pending or prior litigation or administrative or regulatory proceeding or investigation of which an Insured had notice and it applies to the Limit of Liability as specified in the endorsement. |

1

| 14. | CVS FL 10007 PPVNP (07/08) | <u>Prior Acts Exclusion</u> – This endorsement modifies the coverage section specified in the endorsement so that coverage is excluded for Loss in connection with any Claim alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts committed, attempted, or allegedly committed or attempted in whole, or in part, prior to the date specified in the endorsement. |
|-----|----------------------------|---|
| 15. | CVS FL 10008 PPVNP (07/08) | <u>Reliance Endorsement (other applications)</u> - This endorsement is used to confirm the Insurer's reliance on the accuracy of the statements, representations and warranties made in the specified materials. |
| 16. | CVS FL 10014 PPVNP (07/08) | <u>Specific Litigation/Event Exclusion – Includes SEC Filings</u> - This endorsement modifies the coverage section specified in the endorsement so that coverage is excluded for specified "Events" as defined in the endorsement, including SEC filings. |
| 17. | CVS FL 10015 PPVNP (07/08) | <u>Amend Sponsor Organization Securities Coverage – Sublimit of Liability and Retention (Fiduciary Coverage Section)</u> – This endorsement modifies the Fiduciary Liability Coverage Section by providing a sublimit and retention for claims arising out of, based upon, or attributable to any securities of the Company. |
| 18. | CVS FL 10016 PPVNP (07/08) | <u>Specific Litigation/Event Exclusion</u> - This endorsement modifies the coverage section specified in the endorsement so that coverage is excluded for specified "Events" as defined in the endorsement. |
| 19. | CVS FL 10020 PPVNP (07/08) | <u>Amend Sponsor Securities Investment Coverage – Separate Retention (Fiduciary Coverage Section)</u> – This endorsement modifies the Fiduciary Liability Coverage Section by providing a retention for claims arising out of, based upon or attributable to the investment of Plan assets in the securities of the entity named in Item 1 of the Declarations or any Subsidiary. |
| 20. | CVS FL 10021 PPVNP (07/08) | <u>Amend Definition of "Loss" – Investment Loss Coverage (Fiduciary Coverage Section)</u> – This endorsement modifies the Fiduciary Liability Coverage Section by expanding the definition of "Loss" to provide coverage for a monetary award or a settlement payment as respects a Claim against the Insured alleging a loss to the Plan and/or to the accounts of such Plan's participants by reason of a change in the value of the investments held by such Plan. |
| 21. | CVS FL 10023 PPVNP (07/08) | <u>Amend Definition of Plan By Adding Specific Plans (Fiduciary Coverage Section)</u>- This endorsement modifies the Fiduciary Liability Coverage Section to include coverage for the Plan(s) specified in the endorsement. |
| 22. | CVS FL 10024 PPVNP (07/08) | <u>Amend Declarations Page</u> - This endorsement modifies the Declarations Page as specified in the endorsement. |
| 23. | CVS FL 10027 PPVNP (1/09) | <u>Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section)</u> – This endorsement modifies Exclusion (a)(2) of the Crime and Fidelity Coverage Section so that the exclusion does not apply if the value of the Theft or dishonest act is valued at an amount lower than $10,000 as specified in the endorsement. |

2

| 24. | CVS FL 10028 PPVNP (1/09) | Conditions Amended Termination As To Any Employee (Crime & Fidelity Coverage Section) - This endorsement modifies Clause 6.(b) of the Crime and Fidelity Coverage Section to provide a carveback in the event the value of the Theft or any other dishonest act committed by any Employee is valued at an amount specified in the endorsement which may not exceed $10,000. |
|---|---|---|
| 25. | CVS FL 10029 PPVNP (1/09) | Amend Territory Clause (General Terms & Conditions Section) – This endorsement modifies the Territory Clause in the General Terms & Conditions Section so that the policy covers Occurrences taking place in the United States of America, its possessions, Canada and the countries specified in the endorsement. |
| 26. | CVS FL 10030 PPVNP (1/09) | Amend Trading Exclusion (Crime & Fidelity Coverage Section) - This endorsement modifies Exclusion (b)(2) of the Crime and Fidelity Coverage Section to provide a carveback for loss covered under Insuring Agreement A. |
| 27. | CVS FL 10031 PPVNP (1/09) | Amend Warehouse Receipts Exclusion (Crime & Fidelity Coverage Section) - This endorsement modifies Exclusion (b)(3) of the Crime and Fidelity Coverage Section to provide a carveback for loss covered under Insuring Agreement A. |
| 28. | CVS FL 10032 PPVNP (1/09) | Amend Definition of "Employee" – Convert to Schedule (Crime & Fidelity Coverage Section) - This endorsement modifies the Crime and Fidelity Coverage Section so that "Employee" only means the individuals specified in the endorsement. |
| 29. | CVS FL 10033 PPVNP (1/09) | Conditions Amended Duties in the Event of Loss (Crime & Fidelity Coverage Section) - This endorsement modifies Clause 6. (a)(3) of the Crime and Fidelity Coverage Section to designate the Company position/titles to which the requirements of Clause 6.(a)(3) apply. |
| 30. | CVS FL 10034 PPVNP (1/09) | Conditions Amended Extended Period to Discover Loss (Crime & Fidelity Coverage Section) - This endorsement modifies Clause 6. (a)(6)(i) of the Crime and Fidelity Coverage Section to cover loss Discovered during the time period specified in the endorsement in the event of cancellation of the Coverage Section. |
| 31. | CVS FL 10035 PPVNP (1/09) | Amend Exclusion Prior Theft or Dishonest Acts (Crime & Fidelity Coverage Section) - This endorsement modifies Exclusion (a)(2) of the Crime and Fidelity Coverage Section so that the carveback for Theft or a dishonest act valued at $10,000 or less is deleted. |
| 32. | CVS FL 10085 PV (07/08) | Amend Defense of Claim and Settlement Clause – Delete Insurer's Duty to Defend; With Option to Tender Defense – This endorsement modifies the General Terms & Conditions Section so that the Insured has the duty to defend and contest any Claim made against them with the option to tender the defense to the Insurer within thirty days of the date the Claim is first made against an Insured. |
| 33. | CVS FL 10086 PV (07/08) | Absolute Bodily Injury/Property Damage Exclusion (D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section so that the exclusion applies to any Claim "alleging, arising out of, based upon or attributable to" bodily injury and property damage and it deletes the carveback for any Securities Claims. |
| 34. | CVS FL 10087 PV (07/08) | Amend Contract Exclusion (D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section so that Exclusion (e) applies to Insuring Agreements A. and B. as well as C. |

3

| 35. | CVS FL 10088 PV (07/08) | Amend Definition of "Subsidiary" – Change Revenue Threshold (D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section so that the automatic subsidiary threshold for subsidiaries is changed from 25% to the percent specified in the endorsement. |
|---|---|---|
| 36. | CVS FL  10090 PV (07/08) | Amend Pollution Exclusion – Delete Exception for Securities Claims (D&O Coverage Section) – This endorsement modifies Exclusion (j) of the Directors & Officers Liability Coverage Section to delete the carveback for Securities Claim. |
| 37. | CVS FL 10091 PV (07/08) | Anti-Trust Claim Coverage Extension – With Separate Retention, Sublimit and Co-Insurance (D&O Coverage Section) - This endorsement modifies the Directors & Officers Liability Coverage Section so that coverage is provided for Loss in connection with an Anti-Trust Claim as defined in the endorsement subject to a Sublimit of Liability, Retention and Co-Insurance. |
| 38. | CVS FL 10092 PV (07/08) | Anti-Trust Claim Coverage Extension – With Sublimit (D&O Coverage Section) - This endorsement modifies the Directors & Officers Liability Coverage Section so that coverage is provided for Loss in connection with an Anti-Trust Claim as defined in the endorsement subject to a Sublimit of Liability. |
| 39. | CVS FL 10093 PV (07/08) | Anti-Trust Exclusion- Applies to Entity Only (D&O Coverage Section) - This endorsement modifies the Directors & Officers Liability Coverage Section so that coverage is excluded for Loss in connection with any Claim alleging, arising out of, based upon or attributable to any violation of any law whether statutory, regulatory or common, as respect: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships.  However, this exclusion applies only to the Company. |
| 40. | CVS FL 10096 PV (07/08) | Delete Non-Rescindable Clause (Fiduciary Coverage Section) – This endorsement modifies the Fiduciary Liability Coverage Section by deleting the Non-Rescindable Clause. |
| 41. | CVS FL 10097 PV (07/08) | Delete Non-Rescindable Clause ( D&O Coverage Section) – This endorsement modifies the Directors & Officers Liability Coverage Section by deleting the Non-Rescindable Clause. |
| 42. | CVS FL 10170 PPV (07/08) | Director Exclusion (EPL Coverage Section) – This endorsement modifies the Employment Practices Liability Coverage Section so that coverage is excluded for Loss in connection with any Claim brought by or on behalf of any Insured Person who is or was a director of any Company. |
| 43. | CVS FL 10172 PPV (07/08) | Employed Lawyers Coverage Extension (D&O Coverage Section) – This endorsement amends the Directors & Officers Liability Coverage Section so that coverage is provided for an "Employed Lawyer" as defined in the endorsement subject to a sublimit. |
| 44. | CVS FL 10107 PV (02/09) | California Amendatory Endorsement – This endorsement is used to comply with applicable California state laws and regulations. |

Exhibit A, Page 357