UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6658-GW-MAAx | | Date | January 25, 2021 |
|---|---|---|---|---|
| Title | *James River Insurance Company v. Rawlings Sporting Goods Company, Inc.* | | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Counter-Claimants: | Attorneys Present for Counter-Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - RULING ON THIRD-PARTY COUNTER-DEFENDANT STARR INDEMNITY & LIABILITY COMPANY'S MOTION FOR SUMMARY JUDGMENT [60] and DEFENDANT RAWLINGS SPORTING GOODS COMPANY INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT [50]

Attached hereto is the Court's Final Ruling. The Court GRANTS Rawlings' motion for partial summary judgment on the coverage issue. The Court DENIES Starr's motion for summary judgment.

:

Initials of Preparer   JG

<u>*James River Insurance Co. v. Rawlings Sporting Goods Company, Inc.*</u>; Case No. 2:19-cv-06658
Final Rulings on: (1) Defendant Rawlings' Motion for Partial Summary Judgment, and (2) Third-Party Starr Indemnity & Liability Co.'s Motion for Summary Judgment

**I. Background[1]**

This is an insurance dispute over whether a certain claim is covered under a policy, or if it falls within a coverage exception. Before the Court are the parties' cross-motions for summary judgment.

    A. <u>The Underlying Lawsuit</u>

Rawlings Sporting Goods Company, Inc. is a major sports equipment manufacturer in the United States. Rawlings SUF ¶ 1. It is well known for its baseball equipment, including gloves, baseballs, and batting helmets. *Id.*

In October 2018, a class action complaint was filed against Rawlings alleging that it misrepresented the weight of its baseball bats. *See Richard Sotelo v. Rawlings Sporting Goods Co., Inc.*, Case No., 2:18-cv-09166-GW-(MAAx) (the "*Sotelo* Action"). The *Sotelo* plaintiff alleges that the actual weight of a Rawlings' bat is often heavier than the sticker weight or the weight implied by the other information on the bat's labeling. He asserts several consumer protection claims against Rawlings, including violations of California's: (1) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and (3) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*. The *Sotelo* action, which is also before this Court, is still pending.

    B. <u>The Present Insurance Dispute</u>

In June 2018, Rawlings underwent a change of ownership. Rawlings MSJ at 3. Rawlings' new corporate parent purchased a directors and officers ("D&O") liability insurance policy from counter-defendant Starr Indemnity and Liability Company. Rawlings SUF ¶ 2; Starr SUF ¶ 1.

---

[1] The following abbreviations are used for the filings: (1) Complaint ("Compl."), ECF No. 1; (2) Rawlings' Answer ("Ans."), ECF No. 17; (3) Rawlings' Motion for Partial Summary Judgment ("Rawlings MSJ"), ECF No. 50; (4) Declaration of Nathan Cazier in support of Rawlings' Motion for Summary ("Rawlings Exhs."), ECF No. 53; (5) Starr's Motion for Summary Judgment ("Starr MSJ"), ECF No. 65; (6) Starr's Opposition to Rawlings' Motion for Summary Judgment ("Starr Opp."), ECF No. 68; (7) Rawlings' Request for Evidentiary Ruling ("Rawlings Evid. Challenge"), ECF No. 78; (8) Starr's Statement of Uncontroverted Facts ("Starr SUF"), ECF No. 83; (9) Starr's Request for Evidentiary Ruling ("Starr Evid. Challenge"), ECF No. 84; (10) Rawlings' Response to Evidentiary Challenges ("Rawlings Response to Evid. Challenge"), ECF No. 86; (11) Rawlings' Statement of Uncontroverted Facts ("Rawlings SUF"), ECF No. 87.

This policy (the "Going-Forward Policy") was effective for one year starting in June 2018. It did not provide prior acts coverage, meaning it did not cover claims arising from acts which occurred prior to the policy's inception date. Starr SUF ¶ 1. Rawlings' former corporate parent also obtained a D&O policy from Starr. This policy (the "Run-Off Policy"; together with the Going-Forward Policy, "the Policies") is effective for six years starting in June 2018. *Id.* ¶ 2. Unlike the Going-Forward Policy, it provides prior acts coverage but no coverage for events occurring during the policy's duration. *Id.*

Four months after the *Sotelo* Action was filed, Rawlings tendered it to Starr seeking defense and indemnity under the Going-Forward Policy. Rawlings SUF ¶ 15. Starr denied coverage, arguing that it fell under the policy's "Anti-trust Exclusion." *Id.* ¶ 16. Rawlings challenged the denial and lawyers for the two parties debated the proper scope of both the Going-Forward and Run-Off Policies. However, Starr maintained its position that the *Sotelo* Action was not covered by either of the Policies. *Id.* ¶¶ 17-18. The parties' dispute boils down to the interpretation of two identical antitrust exclusions in the Policies and whether the *Sotelo* Action falls within them.

C. Procedural History

In July 2019, plaintiff James River Insurance Company ("JRIC") filed this lawsuit against Rawlings seeking declaratory relief determining that the commercial general-liability insurance policy it issued to Rawlings did not cover the *Sotelo* Action. *See* Compl. In its answer, Rawlings brought in Starr as a third-party, asserting counter-claims against Starr for allegedly breaching the Policies by failing to defend and indemnify Rawlings in the *Sotelo* Action. *See* Ans. JRIC dismissed its action against Rawlings and, in turn, Rawlings dismissed its counterclaim against JRIC. *See* ECF No. 80.

Rawlings filed its motion for partial summary judgment, seeking declaratory relief determining that the antitrust exclusions in the Policies do not apply to the *Sotelo* Action. *See* Rawlings MSJ. Starr filed this cross-motion for summary judgment to dismiss Rawlings' counterclaims against it. *See* Starr MSJ.

II. Legal Standard

A. Summary judgment

Summary judgment shall be granted when a movant "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue

of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citations omitted). However, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 325. Rather, the moving party's initial burden "may be discharged by 'showing' – that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id*.

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249. A court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "When the parties file cross-motions for summary judgment, [the court] review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences." *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016).

B. <u>Applicable substantive law</u>

This case falls within the Court's diversity jurisdiction under 28 U.S.C. § 1332. *See* Compl. ¶ 2; Ans. ¶ 9.[2] In diversity cases, federal courts apply the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Therefore, California law governs which state's substantive law governs the interpretation of the Policies (the Policies

---

[2] JRIC is an Ohio corporation with its principal place of business in Virginia. Compl. ¶ 4. Rawlings is a Delaware corporation with it principal place of business in Missouri. *Id.* ¶ 5. Starr is a Texas company with its principal place of business in New York.

3

do not appear to contain any choice-of-law provision).

Under California law, an insurance policy is a contract subject to the choice of law provisions codified in Civil Code section 1646. *Gitano Group, Inc. v. Kemper Group*, 26 Cal. App. 4th 49, 57 (1994). Section 1646 provides that "[a] contract is to be interpreted according to the law and usage of the place where it is being performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." The *Sotelo* Action was filed in this district and so the alleged duty for Starr to defend and indemnify Rawlings is in California. Therefore, the Court agrees with the parties that California law governs the interpretation of the Policies.

In interpreting an insurance policy, a court "must give effect to the mutual intention of the parties" and, where possible, to infer such intent "solely from the written provisions of the contract." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal.4th 465, 470 (2004) (citing Cal. Civ. Code § 1636).

The insured has the initial burden of proof to show that an act is covered by the policy. Once the insured shows that an event falls within the scope of the basic coverage of the policy, the burden shifts to the insurer who then "has the burden of proving that an otherwise covered claim is barred by a policy exclusion." *Davis v. Farmers Ins. Grp.*, 134 Cal. App. 4th 100, 104 (2005).

"When determining whether a particular policy provides a potential for coverage," a court "[is] guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982). The purpose is "to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." *Id.* at 808. "Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer." *Id.*

**III. Discussion**

    A. Whether the Anti-Trust Exclusion applies to the *Sotelo* Action

At their core, the Policies protect Rawlings for "any actual or alleged breach of duty, neglect, error, *misstatement, misleading statement, omission* or act by [Rawlings]." Rawlings

Exhs. at 49, 186 (emphasis added).  Both of the Policies provide that Starr "shall pay on behalf of [Rawlings] the Loss arising from a Claim first made during the Policy Period (or Discovery Period, if applicable) against [Rawlings] for any Wrongful Act."  *Id.* at 45, 182.  A "Wrongful Act" in turn is defined by the previously quoted language: "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by [Rawlings]."  *Id.* at 49, 186.  The claims against Rawlings in the *Sotelo* Action clearly constitute Wrongful Acts.  Therefore, the burden is on Starr to show that an exclusion applies.

The dispute boils down to competing interpretations of the "Anti-Trust Exclusion" contained in the Policies and whether that exclusion takes the *Sotelo* Action out of the Policies' coverage.  The identical Anti-Trust Exclusion appears in both the Going-Forward and Run-Off Policies.  It states:

> It is understood and agreed that Clause 3, EXCLUSIONS, of the Directors & Officers Liability Coverage Section is amended by adding the following exclusion:
>
> This policy shall not cover any Loss in connection with any Claim alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships; provided, however, that this exclusion shall apply only to the Company.[3]

Rawlings Exhs. at 139, 250.  The question is whether the consumer protection claims in the *Sotelo* Action are "[c]laim[s] alleging, arising out of, based upon or attributable to any violation of any law . . . as respects . . . *unfair trade practices*" (emphasis added).

The key phrase "unfair trade practices" is not defined by the Policies.  Starr nonetheless contends that Rawlings' alleged wrongdoing in the *Sotelo* Action clearly constitutes "unfair trade practices" because of similar language contained in the consumer protection statutes.  Starr Opp. at 8.  For example, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The FAL provides that certain false advertising acts "are deceptive and constitute unfair trade practices."  Cal. Bus. & Prof. Code § 17537.2.  And finally, the CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or

---

[3] The Company is defined in the Policies to refer Rawlings Parent, Inc. – the current corporate parent of Rawlings – and its subsidiaries, which includes Rawlings.  Rawlings Exhs. at 34, 171.

5

lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).[4] However, the fact that California's consumer protection statutes refer to unfair trade practices does not, by itself, determine the meaning of "unfair trade practices" within the Policies. Indeed, in addition to the three statutory provisions cited by Starr, there are: (1) a statute named the "Unfair Trade Practices Act" (Ins. Code §§ 790 *et seq*.) which (even though broadly named) is limited to insurance companies and generally deals with their settlement practices, and (2) a set of statutory provisions situated immediately prior and adjacent to the UCL called the "Unfair Practices Act" (Bus. & Prof. Code §§ 17000 through 17101) covering antitrust issues (a sort of California's version of the federal Robinson-Patman Act).

Rawlings highlights the fact that the exclusions are titled "Anti-Trust Exclusion." Besides "unfair trade practices," the other categories of excluded behavior are: "anti-trust," "business competition," and "tortious interference in another's business or contractual relationships." Rawlings Exhs. at 139, 150. "[A] word takes meaning from the company it keeps." *Credit Suisse First Bos. Mortg. Capital, LLC v. Danning, Gill, Diamond & Kollitz*, 178 Cal. App. 4th 1290, 1298 n. 6 (2009) (referring to the rule of construction *noscitur a sociis*). The anti-trust, business competition, and tortious interference categories all refer to conduct by businesses targeted at its business competitors. According to Rawlings, read in context, "unfair trade practices" must also be similarly limited and therefore should not include false advertising by businesses targeted at consumers. Rawlings MSJ at 14-15.

Starr, on the other hand, focuses on the exclusion's use of broad language to cover "any" loss "arising out of" the excluded categories of conduct. Starr Opp. at 10, 14. However, the fact that the exclusion is meant to apply broadly to any claims connected to "unfair trade practices" does not help to define what that phrase means. It is true, as Starr notes, that California courts have interpreted "any" to be "broad, general and all embracing." *Id.* at 11 (citing *California State Auto. Ass'n Inter-Ins. Bureau v. Warwick*, 17 Cal. 3d 190, 195 (1976)). It is also true that California courts have "consistently given a broad interpretation to the clause 'arising from' in an insurance contract." *Id.* at 14 (citing (*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017)). However, the fact that an exclusion applies to "any claims arising out of XYZ" does not help with figuring out what XYZ means in the first place. *See, e.g.*, *Big Bridge Holdings,*

---

[4] Courts have echoed that language in analyzing the statutes. *See, e.g.*, *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal.3d 442, 445 (1979) (referring to a particular banking practice as "an unfair trade practice under [the FAL]").

*Inc. v. Twin City Fire Ins. Co.*, 132 F.Supp.3d 982, 987 (N.D. Ill. 2015) (acknowledging the "broadly worded prefatory language in the exception, which incorporates *any* claim *based upon, arising from, or in any way related to any actual or alleged* unfair trade practices" but finding that "it does not help to define 'unfair trade practices'").

Accepting Starr's interpretation appears to run contrary to those principles and the general rule that coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured while exclusionary clauses are interpreted narrowly against the insurer. The issue here is whether "unfair trade practices" has both an antitrust component and a consumer protection component.[5] Starr's position is that "unfair trade practices" has both components. The Court is skeptical of that interpretation because then the exception would swallow the rule. The Policies purport to cover "any actual or alleged breach of duty, neglect, error, *misstatement, misleading statement, omission* or act by [Rawlings]." Rawlings Exhs. at 49, 186 (emphasis added). Under Starr's reading, the Anti-Trust Exclusion would virtually read the "misstatement, misleading statement, omission" language right out of the Policies' coverage, vitiating them. Starr appears to acknowledge as much. But it argues that this is no big deal because the Anti-Trust Exclusion applies only to coverage of Rawlings the corporate entity. According to Star, the Policies would still protect Rawlings' directors and officers from consumer protection claims alleging misleading statements or omissions. *See* Starr Reply at 17. The Court does not find this very persuasive. It would be a strange result if an innocuously titled "Anti-Trust Exclusion" could vitiate half of a policy's coverage designed to protect (both the company and its directors and officers) against claims arising out of misleading statements or omissions.[6]

Other courts faced with similar situations have reached mixed results. A district court in Illinois rejected an insurer's argument that an antitrust exclusion for "unfair trade practices" barred

---

[5] The Court does not see the distinction as between "claims brought by business competitors" versus "claims brought by consumers." *See* Starr Opp. at 13.

[6] As observed by a leading treatise on California insurance law in the context of exclusions for claims arising out of antitrust, restraint of trade, or unfair competition in professional liability insurance policies:

> This exclusion precludes coverage for antitrust violations, restraints of trade, or unfair competition. However, in situations where unfair competition is alleged in conjunction with other conduct covered by the policy, insurers will generally provide defense coverage with respect to the unfair competition allegations.

*See* Croskey, Heeseman et al., *California Practice Guide: Insurance Litigation* (The Rutter Group 2020) § 7:2576.

coverage for a class action asserting UCL and CLRA claims.  *See Big Bridge Holdings*, 132 F.Supp.3d 982.  The exclusion in that case provided that:

> The insurer shall not pay Loss under Insuring Agreement (C) in connection with any Claim based upon, arising from, or in any way related to any actual or alleged:
>
> (5) price fixing, restraint of trade, monopolization, *unfair trade practices* or any violation of the Federal Trade Commission Act, Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities . . . .

*Id.* at 987 (emphasis added).  Applying Minnesota law (which the court noted was "insured-friendly" and in this context was not materially different from California law) in interpreting policy, the court concluded that at best the insurer had created an ambiguity as to the meaning of "unfair trade practices" and that the ambiguity had to be resolved in the insured's favor.  It observed that "[i]f the insurers wanted to include consumer-protection or consumer-fraud violations into the exclusion, they should have mentioned those well-known bodies of law expressly, not indirectly through a provision clearly aimed at antitrust laws."[7]  *Id.* at 990.  Another district court faced with a similar exclusion reached the same result.  *See Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. 08-906-AA, 2010 WL 1753210, at *1 (D. Or. Apr. 29, 2010).[8]  On the other hand, one district court faced with an antitrust exclusion that eliminated coverage for any claim:

---

[7] This Court would note that in the specific policy language in *Big Bridge Holdings* all references to the excluded conduct were, with the exception of the term "unfair trade practices," related to anti-competitive business practices and not to consumer protection provisions.  *See* 132 F.Supp.3d at 987-88.  As observed in *Big Bridge Holdings*:

> Read as a whole, these eight categories [delineated in the exclusion] are best described as relating to antitrust violations.  One need look no further than the catch-all exception (No. 8) to reach this conclusion, as that exclusion describes the prior seven exclusions (or at least the prior three) as laws "regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities."

*Id.*

[8] A district court in Washington also rejected an insurer's argument similar to Starr's.  *See Integra Telecom, Inc. v. Twin City Fire Ins. Co.*, No. 08-906-AA, 2010 WL 1753210 (D. Or. Apr. 29, 2010).  The policy at issue in *Integra* excluded coverage for any claim:

> based upon arising from, or in any way related to price fixing, restraint to trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Anti–Trust Act, Clayton Act, or any similar law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities.

*Integra*, 2010 WL 1753210, at *1.  The insured's claim stemmed from a lawsuit where the insured was found to have engaged in an "unfair or deceptive act or practice" in violation of Washington's Consumer Protection Act by charging and collecting improper surcharges for telecommunications services.  *Id.* at *2. The court found that the underlying "unfair or deceptive act or practice" was not an "unfair trade practice" as contemplated by the policy, primarily because the exclusion was reasonably read as limited to anti-competitive conduct.  *Id.* at *4.

8

> alleging, arising out of, based upon or attributable to, or in any way involving either directly or indirectly, antitrust violations, price fixing, price discriminations, unfair competition, deceptive trade practices and/or monopolies, including actions, proceedings, claims or investigations related thereto

found that "[n]othing in the text of the exclusion limits it solely to antitrust claims." *Welch Foods, Inc. v. Nat'l Union Fire Ins. Co.*, No. 09-12087-RWZ, 2010 WL 3928704, at *2 (D. Mass. Oct. 1, 2010).

Starr's responses to the unfavorable case law are well-taken. It is true, as Starr notes, that the *Big Bridge* exclusion's catch-all provision covering "any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities" made it especially clear that the exclusion was limited to antitrust claims. *See* Starr Opp. at 16-17. Same with the exclusion in *Integra*, which had a catch-all for "any similar law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities." *Integra*, 2010 WL 1753210 at *1.

However, there are still some problems with Starr's interpretation. For example, the court in *Big Bridge* also noted "the total absence of any mention of fraud-based or consumer-protection claims" in the exclusion. *Big Bridge*, 132 F.Supp.3d at 988. The Anti-Trust Exclusion similarly fails to mention anything – other than "unfair trade practices" – that would suggest consumer protection claims. It would be strange for Starr to intend to include a consumer-protection component in an exclusion titled "Anti-Trust Exclusion" without mentioning words such as "fraud" or "misrepresentation" or "consumer protection." *See id.* at 989 (observing that "it would be an odd bit of contract drafting to aim to incorporate consumer-protection and other fraud-based violations without mentioning the words 'fraud' or 'consumer protection' at all"). Indeed, other than the ambigous term "unfair trade practices," all of the excluding conduct identified in the Anti-trust Exclusion refer to anti-competitive *business* practices and not to any conduct directed at consumers. It would be especially strange − given that Starr has used exclusions in other of its policies that specifically removed coverage for false-advertising claim. For example, one of Starr's exclusions in another policy eliminated coverage for claims "arising out of, based upon or attributable to any false advertising, misrepresentation in advertising or labeling, or unfair or deceptive trade practices." Rawlings MSJ at 5; Rawlings SSUF ¶ 31.[9] Finally, one wonders why

---

[9] Starr objects to the evidence as irrelevant and lacking foundation. *See* Starr Evid. Challenge at 4-5. According to Starr, the fact that it may have included a false-advertising exclusion in a policy for another client is not relevant to interpreting a policy it issued to Rawlings. Furthermore, it argues that Rawlings has not shown that the policy is

9

Starr chose to label the provision as the "Anti-trust Exclusion" which by definition would be limited to restraints of trade/business/competition, rather than "Anti-trust/Consumer Fraud Exclusion" which would clearly indicate that conduct directed at both businesses and consumers was within the scope of the provision.

It appears to the Court that the phrase "unfair trade practices" is ambiguous as used in the Anti-Trust Exclusion. Starr's final argument makes much of the fact that limiting the "unfair trade practices" to only an antitrust component would make it "mere surplusage" given that the Anti-Trust Exclusion already refers to "anti-trust, business competition . . . or tortious interference in another's business or contractual relationships." Starr Opp. at 11. However, Starr's argument that an interpretation that creates surplusage is something "a court cannot do" goes too far. *Id.* It is true that where possible, a court should "give effect to every part of the policy with each clause helping to interpret the other." *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1115 (1999). However, this is not an inflexible rule that a court must follow. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, *if reasonably practicable*, each clause helping to interpret the other.") (emphasis added); *Flintkote Co. v. General Acc. Assur. Co.*, 410 F.Supp.2d 875, 890 (N.D. Cal. 2006) (observing that in "adopt[in]g the only reasonable construction of the contract," "[t]he fact that some redundancy results is not fatal"). Moreover, Starr's argument on this point is somewhat logically defective. While limiting the "unfair trade practices" to only an antitrust component would might make it "mere surplusage" given that the Anti-Trust Exclusion already refers to "anti-trust, business competition . . . or tortious interference in another's business or contractual relationships;" that problem does not arise if one limits "unfair trade practices" to anti-business practices.

Merely showing that a phrase is ambiguous and can have a meaning as argued by the insurer is insufficient for Starr's purposes. The issues is admittedly a close one. However, in the insured-friendly state of California, "any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer." *Reserve Ins. Co.*, 30 Cal.3d at 807. For these reasons, the Court would find that the Anti-Trust Exclusion does not apply to the *Sotelo* Action.

---

ambiguous and therefore extrinsic evidence such as this should not be admitted. As discussed earlier, the Court finds that *at best* Starr has shown there is ambiguity, and so extrinsic evidence such as this would be admitted if Rawlings did not win outright. Furthermore, the Court finds this relevant, because it shows that Starr clearly knew how to draft a false-advertising exclusion and in fact did do so. Accordingly, the Court overrules the evidentiary objection.

B. <u>Whether Starr breached its duty of good faith and fair dealing</u>

Rawlings in its counterclaim alleged a cause of action against Starr for tortious breach of the implied covenant of good faith and fair dealing which included a request for punitive damages. At the hearing on these motion, Rawlings indicated that the parties had reached a stipulation "to withdraw the bad faith component of Starr's summary judgment motion" and asked that the Court exclude its ruling on that subject which was delineated on pages 10-11 of the intial tentative ruling. The Court does so herein.

C. <u>The parties' requests for evidentiary rulings</u>

Rawlings filed several pro forma objections to Starr's inclusion of several letters that its outside counsel sent to Rawlings during this dispute "to the extent Starr submits the letter as evidence of the truth of the matters asserted in the letter." *See* Rawlings Evid. Challenge. Those objections are overruled insofar as the letters are admissible in regards to what Starr received from its attorneys and the letters "speaking for themselves" − not as to factual matters but in regards to the legal opinions proffered therein. Rawlings also objects to an alleged fact in Starr's statement of uncontroverted facts which states that Rawlings knew of the existence of the Run-Off Policy before its July 30, 2019 communication with Starr. According to Rawlings, this fact "is irrelevant and has no bearing on the interpretation of the Anti-Trust Exclusion." *Id.* at 4. However, *Rawlings* brought this issue up in its motion for partial summary judgment, suggesting that Starr attempted to conceal the existence of the Run-Off Policy from Rawlings and that this could support its claim for breach of good faith and fair dealing claim and punitive damages. *See* Rawlings MSJ at 6-7; *see also* footnote 10. This alleged fact and the evidence supporting it therefore is relevant. The objection is therefore overruled.

Starr objects to Rawlings' inclusion of several evidence items on the grounds that they are all extrinsic evidence and that where there is no ambiguity in the policy language, extrinsic evidence cannot be considered. *See* Starr Evid. Challenge. But as already noted, the Court found that the Policies were ambiguous and therefore extrinsic evidence is appropriate. The Court overrules all of the objections, but notes that the parties have agreed to seal some of the exhibits that Rawlings submitted. *See* Rawlings Response to Evid. Challenge at 2.

**III. Conclusion**

Based on the foregoing discussion, the Court would GRANT Rawlings' motion for partial summary judgment on the coverage issue. The Court would DENY Starr's motion for summary

judgment. The parties' evidentiary objections are all OVERRULED.